## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NOX MEDICAL EHF,       )

      )    C.A. No. 15-709-RGA

      Plaintiff,       )

      )    **JURY TRIAL DEMANDED**

      v.       )

      )    **PUBLIC VERSION**

NATUS NEUROLOGY INC.,       )

      )

      Defendant.       )

## PLAINTIFF NOX MEDICAL EHF'S BRIEF IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF DR. JUSTIN WILLIAMS THAT THE CLAIMS OF U.S. PATENT NO. 9,059,532 ARE INVALID

OF COUNSEL:

Chad E. Nydegger
Brittany Frandsen
WORKMAN NYDEGGER
60 East South Temple, Suite 1000
Salt Lake City, UT 84111
Tel: (801) 533-9800

Dated: July 19, 2017
PUBLIC VERSION
Dated: July 26, 2017
5320760 / 42707

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Plaintiff Nox Medical Ehf*

# TABLE OF CONTENTS

**Page**

I.   NATURE AND STAGE OF THE PROCEEDINGS ...........................................................1

II.  SUMMARY OF THE ARGUMENT ..............................................................................2

III. STATEMENT OF FACTS ...........................................................................................4

IV.  ARGUMENT .............................................................................................................6

    A.    The Standard for Obviousness Under 35 U.S.C. § 103(a).......................................7

    B.    Dr. Williams Should Not Be Allowed To Testify that a General Market Demand for a "Low Cost, Mass-Producible Electrode Belt" Would Have Motivated a PHOSITA To Combine Elements from the Prior Art into the Claimed Combinations...........................................................................................8

    C.    Dr. Williams Has No Valid Motivation to Combine the Features of McIntire To Which He Points.......................................................................................9

    D.    Dr. Williams' Anticipation and Obviousness Theories Based on Incorrect Claim Constructions Should Be Excluded..............................................................13

        1.    Dr. Williams' Anticipation and Obviousness Theories Premised on a Flawed Construction of "Configured To" Should Be Excluded.............13

        2.    Dr. Williams' Anticipation and Obviousness Theories Premised on a Flawed Construction of "Elongated Member" Should Be Excluded ...........................................................................................15

V.   CONCLUSION..........................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks v. Verizon Communications,*
 694 F.3d 1312 (Fed. Cir. 2012)................................................................................12

*Daddio v. Nemours Found.,*
 399 Fed. Appx. 711 (3d Cir. 2010)............................................................................7

*Daubert v. Merrell Dow Pharm., Inc.,*
 509 U.S. 579 (1993)................................................................................... *passim*

*Elcock v. Kmart Corp.,*
 233 F.3d 734 (3d Cir. 2000)......................................................................................6

*EMC Corp. v. Pure Storage, Inc.,*
 154 F. Supp. 3d 81 (D. Del. 2016)............................................................13, 15, 17

*Greatbatch Ltd. v. AVX Corp.,*
 C.A. No. CV 13-723-LPS, 2015 WL 9171042 (D. Del. Dec. 11, 2015) ...............13

*Innogenetics, N.V. v. Abbott Labs.,*
 512 F.3d 1363 (Fed. Cir. 2008).................................................................................9

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.,*
 751 F.3d 1327 (Fed. Cir. 2014).................................................................................8

*In re Kahn,*
 441 F.3d 977 (Fed. Cir. 2006)........................................................................7, 9, 10

*KSR Int'l Co. v. Teleflex, Inc.,*
 550 U.S. 398 (2007)................................................................................7, 8, 9, 10

*Liquid Dynamics Corp. v. Vaughan Co.,*
 449 F.3d 1209 (Fed. Cir. 2006)...............................................................................13

*Personalized User Model, L.L.P. v. Google, Inc.,*
 C.A. No. 09-525-LPS, 2014 WL 807736 (D. Del. Feb. 27, 2014) .........................13

*Schneider Ex Rel. Estate of Schneider v. Fried,*
 320 F. 3d 396 (3d. Cir. 2003).....................................................................................6

*Takeda Chem. Indus. v. Alphapharm Pty. Ltd.,*
 492 F.3d 1350 (Fed. Cir. 2007).................................................................................8

**Statutes**

35 U.S.C. § 103(a) ..........................................................................................................7

**Other Authorities**

D. Del. LR 7.1.1 ..............................................................................................................2

Federal Rule of Evidence 702...................................................................................6, 9

Plaintiff Nox Medical Ehf ("Nox Medical") respectfully moves the Court to exclude certain opinions and testimony by Natus Neurology, Inc.'s ("Natus") technical expert Dr. Justin C. Williams ("Dr. Williams") who has opined that the asserted claims of U.S. Patent No. 9,059,532 (the "'532 patent") are invalid.  Specifically, Nox Medical seeks to exclude (1) Dr. Williams' opinions and testimony that general market demands for a "low cost, mass-producible electrode belt" would have provided a motivation for a person of skill in the art to combine teachings in the prior art to arrive at the claimed inventions, (2) Dr. Williams' obviousness opinions and testimony based on U.S. Pat. No. 8,251,736 to McIntire ("McIntire"), and (3) Dr. Williams' opinions and testimony asserting anticipation and obviousness theories based on incorrect claim constructions.

## I.     NATURE AND STAGE OF THE PROCEEDINGS

Nox Medical filed this action asserting the '532 patent against Natus in August 2015. [D.I. 1.] Natus has stipulated that its accused products infringe the '532 patent. [D.I. 73.] Natus submitted the *Expert Invalidity Report of Dr. Justin C. Williams Regarding U.S. Patent No. 9,059,532* on March 16, 2017 [D.I. 138-2], setting forth Williams' opinions that the asserted claims of the '532 patent are invalid for both anticipation and/or obviousness. Dr. Williams also submitted the *Expert Invalidity Reply Report of Dr. Justin C. Williams Regarding U.S. Patent No. 9,059,532* on May 18, 2017. [D.I. 139-10.] Expert discovery in this case closed on June 16, 2017.   Plaintiff Nox Medical now moves for an order to exclude certain portions of Dr. Williams' opinions and testimony.

According to the Court's scheduling order, all objections to expert testimony made pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) are to be submitted no later than the deadline for dispositive motions, July 19, 2017. [D.I. 13 at 10; D.I. 135, p. 2; D.I. 143, p. 2.]

Pursuant to D. Del. LR 7.1.1., the parties met and conferred, and Natus will oppose this motion.

## II.   SUMMARY OF THE ARGUMENT

Dr. Williams' theories that general market demands would have motivated a person having ordinary skill in the art (a "PHOSITA") to combine teachings of the prior art should be excluded because he fails to apply those teachings to any specific prior art combinations. Rather, Dr. Williams merely offers the vague and unsupported statement that a PHOSITA would have been motivated by a market demand for a "low cost, mass-producible electrode belt" to combine teachings in the prior art without ever explaining if or how the cited combinations would result in cost savings or be more easily mass-produced. Indeed, Dr. Williams testified that neither he, nor a PHOSITA, would know which products resulting from the multiple combinations encompassed by his opinions would be less expensive, or easier to mass produce. Thus, his opinions and testimony on this issue should be excluded for failure to apply the analysis to the facts of the case, and as unreliable because they are not based on his knowledge.

Dr. Williams' obviousness theories that rely on elements drawn from the embodiments set forth in Figs. 11-14 of McIntire should be excluded for two reasons. First, Dr. Williams has not identified any specific combination of the claim elements allegedly disclosed by the three different embodiments of McIntire that he relies on. Rather Dr. Williams has simply compiled a catalog of where in these three embodiments (and in other references to be combined with McIntire) the claim elements may allegedly be found, sometimes listing multiple places where a claim element may allegedly be found. Second, Dr. Williams has not provided any valid motivation to combine these particular prior art elements in the specific manner claimed in the '532 patent. Instead, Dr. Williams points to the boilerplate statement in McIntire that "[e]ach component…of one embodiment…can also be used in combination with other components…of

2

other embodiments." [D.I. 138-2, Williams Rpt.,¶101 (citing *McIntire*, 13:14-17).] Dr. Williams also asserts that "[t]he prior art...teach the existence of the market driven desire to produce low-cost, mass-producible, electrode belts that can adjust to a wide range of patient sizes" and that "a PHOSITA would have been highly motivated to combine features taught by the prior art to meet market demands for a low-cost mass producible electrode belt into a single device as claimed by the '532 patent." [*Id.*, ¶140.] These general motivations do not provide any reason for selecting the specific prior art features identified by Dr. Williams or for combining those features into the particular combinations claimed in the '532 patent because they are all generic statements that bear no relation to any specific combination of prior art elements. Further, Dr. Williams has not applied those theories to any specific combination of prior art elements derived from the different embodiments of McIntire he cites (or from the other references to be combined with McIntire). Thus, his opinions and testimony on this issue should be excluded as unhelpful and confusing to the jury because he has not provided any opinion or testimony concerning any specific combination of those elements, and because he has failed to apply the alleged motivations to the facts of the case.

Finally, Dr. Williams' anticipation and obviousness theories based on improper claim constructions should be excluded. Specifically, Dr. Williams' anticipation and obviousness theories based on Hermannsson, the Nox RES Belt, the CareFusion Catalog, and the PRIP Belt prior art references each relies on a flawed construction of the phrase "the receiving hole being configured to function as a female snap button fastener for receiving and fastening the frame to a protrusion of the male portion of the snap connector electrode" in claim 1. Specifically, Williams' interpretation does not require the "receiving hole" to "fasten" to a male snap protrusion at all and would cause the claim language to be satisfied if the "receiving hole" can be

3

fastened to a male snap protrusion of any sized electrode.  His opinion based on such a broad reading of this language in claim 1 of the '532 patent should be excluded because his construction of that term is contrary to the plain language and structure of the claim, and would be confusing to the jury.  Similarly, Dr. Williams' anticipation and obviousness arguments based on Hermannsson, the Nox RES Belt, CareFusion Catalog, the PRIP Belt, Harhen, and Gobron prior art references each relies on a construction of the term "elongated member" in Claim 1 that does not require any distinct portion of the molded plastic frame.  Instead, Dr. Williams opines that so long as he is able to draw imaginary lines to define a portion of the molded plastic frame that is "longer than it is wide" then that claim element is satisfied.  This construction renders other language in the claim meaningless, and must therefore be rejected.  Instead, an "elongated member" must be a distinct portion of the molded plastic frame that is longer than it is wide.  Dr. Williams' opinions based his overbroad construction of "elongated member" should be excluded because it is contrary to the plain language and structure of the claim, and would be confusing to the jury.

## III.    STATEMENT OF FACTS

Dr. Williams opines that "the existence of the market driven desire to produce low-cost, mass-producible, electrode belts that can adjust to a wide range of patient sizes" would have motivated a PHOSITA to combine various teachings in the prior art to arrive at the combinations for a belt connector claimed in the '532 patent. [D.I. 138-2, Williams Rpt., ¶¶140, 144, 147.] However, Dr. Williams does not opine that any particular belt connector would be more or less expensive, or easier or harder to mass produce, than any other particular belt connector.  Indeed, Dr. Williams testified that he did not know, and PHOSITA would not know, whether any of the combinations encompassed by his opinions would be more or less expensive, or easier or harder

to mass produce, than any other combination.  [Ex. 31, Williams 5/05/17 Depo., 113:16-115:18, 116:11-118:21; *see also* Ex. 10, Williams 6/02/17 Depo., 261:23-264:9.]

Dr. Williams testified that the various features for a belt connector taught in McIntire could be combined into a "semi-infinite" number of combinations, a number of combinations so large that he "couldn't number them."  [Ex. 31, Williams 5/05/17 Depo., 125:4-17; 129:15-21; 134:8-17.]  Of the connector features taught by McIntire, Dr. Williams opines that the various elements of belt connector in claim 1 of the '532 patent are found independently in the embodiment of Figures 11 and 12, embodiment of Figure 13, and embodiment of Figure 14 of McIntire.  [D.I. 138-3, Williams Rpt., Attach. A, pp. 24-33, 33-41, 41-43, 50-56.]  Dr. Williams does not opine that a PHOSITA would have combined the various features he identifies as being taught in the embodiments of Figures 11-14 into any specific combination.  Moreover, Dr. Williams does not provide any reason or motivation that would have caused a PHOSITA to take the specific features he identifies as being taught in the embodiments of Figures 11-14 and combine them into the particular combination claimed in claim 1 of the '532 patent.

Dr. Williams opines that each of Hermannsson, the Nox RES Belt, the CareFusion Catalog, and the PRIP Belt prior art references teach a "*receiving hole* being *configured to* function as a female snap button fastener for receiving and *fastening* the frame to a protrusion of *the* male portion of *the* snap connector electrode" as required by claim 1 of the '532 patent.  [D.I. 138-3, Williams Rpt., Attach. A, pp. -3 (Hermannsson), 8-9 (CareFusion Catalog), 12-14 (Nox RES Belt), 18-21 (PRIP Belt).]  These opinions are based at least in part on Dr. Williams' construction of the claim term "configured to" in claim 1 to mean "capable of."  [*See* Ex. 10, Williams 6/02/17 Depo., 71:19-72:13, 74:1-75:10.]

Dr. Williams opines that each of Hermannsson, the Nox RES Belt, the CareFusion Catalog, the PRIP Belt, Harhen, and Gobron teaches an "elongated member" as required by claim 1 of the '532 patent. [D.I. 139-10, Williams Reply Rpt., ¶¶77 (Hermannsson), 108 (Nox RES Belt), 159 (Harhen), 182 (CareFusion Catalog), 191 (Gobron).]   In rendering these opinions, Dr. Williams has not identified any distinct portion of a molded plastic frame, but rather Dr. Williams has used arbitrary lines to identify the boundaries for the portions of the connectors that he opines constitute an "elongated member." [*Id.*]

## IV.   ARGUMENT

Federal Rule of Evidence 702 governs the admissibility of qualified expert testimony, providing that an expert witness may testify if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." The Third Circuit, in applying the *Daubert* principles, has interpreted and construed Rule 702 as "embodying three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability and fit." *Elcock v. Kmart Corp.,* 233 F.3d 734, 741 (3d Cir. 2000).

With regard to the second requirement of reliability, Rule 702 mandates that the relevant expert testimony "must be supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590; *see also Schneider Ex Rel. Estate of Schneider v. Fried*, 320 F. 3d 396, 404 (3d. Cir. 2003). The information provided by experts should be "ground[ed] in the methods and procedures of science" and be "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590; *see also Schneider*, 320 F.3d at 404.   In examining this requirement, a court's focus must be on "principles and methodology" rather than

6

on the conclusions generated by the expert. *Daubert*, 509 U.S. at 595; *see also Daddio v. Nemours Found.*, 399 Fed. Appx. 711, 713 (3d Cir. 2010)

The burden is placed on the party offering expert testimony to show that it is admissible. *Daubert*, 509 U.S. at 592 n.10.

### A.    The Standard for Obviousness Under 35 U.S.C. § 103(a)

35 U.S.C. § 103(a) provides that a patent may not be obtained "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious to a person having ordinary skill in the art." 35 U.S.C. § 103(a). A party seeking to challenge the validity of a patent based on obviousness must demonstrate by "clear and convincing evidence" that the invention described in the patent would have been obvious to a person of ordinary skill in the art at the time the invention was made.

"[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 418 (2007). Further, a conclusion of obviousness "'cannot be sustained by mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness.'" *KSR*, 550 U.S. at 418 (quoting *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006)). Importantly, in determining what would have been obvious to one of ordinary skill in the art, the use of hindsight is not permitted. *See KSR*, 550 U.S.at 421 (cautioning the trier of fact against "the distortion caused by hindsight bias" and "arguments reliant upon ex post reasoning" in determining obviousness).

**B.** **Dr. Williams Should Not Be Allowed To Testify that a General Market Demand for a "Low Cost, Mass-Producible Electrode Belt" Would Have Motivated a PHOSITA To Combine Elements from the Prior Art into the Claimed Combinations**

To prove obviousness, the defendant must explicitly provide "[a] reason for combining disparate prior art references." *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1351 (Fed. Cir. 2014). The U.S. Supreme Court in *KSR* acknowledged the importance of identifying "a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does in an obviousness determination." *Takeda Chem. Indus. v. Alphapharm Pty. Ltd.*, 492 F.3d 1350, 1356–57 (Fed. Cir. 2007) (quoting *KSR*, 550 U.S. at 418) (internal quotation marks omitted).

Throughout his expert report, Dr. Williams asserts that a primary motivation to combine the prior art references is the market demand for "low-cost, mass-producible electrode belts." [D.I. 138-2, Williams Rpt., ¶¶140, 144, 147.] However, Dr. Williams never applied this theory to any particular combination of prior art elements. In fact, Dr. Williams admitted at his deposition that neither he nor a PHOSITA would be able to determine whether any of the configurations encompassed by his report would be more or less expensive than another configuration. [Ex. 31, Williams 5/05/17 Depo., 113:16-115:18; *see also* Ex. 10, Williams 6/02/17 Depo., 261:23-264:9 (Q You don't know whether combining two pieces of prior art to come up with a new product is more or less expensive than producing each product disclosed in the prior without combining. [Objection] A No, I couldn't immediately tell you that one was -- that one would be more or less inexpensive. As I stated before, that there's lots of things that go into that. … Q So it's not contained in your opinion then, certainly, that one combination is more expensive or less or expensive than another combination. A I have not put that in my opinion here.")] Dr. Williams also admitted that the same holds true for whether one

8

configuration would be more or less conducive to mass production than another.   [Ex. 31, Williams 5/05/17 Depo., 116:11-118:21.]

Having failed to offer any opinion that any particular belt connector made by combining elements in the prior art would be more or less expensive than any other belt connector, or that any belt connector made by combining elements in the prior art would be more or less conducive to being mass produced than any other belt connector, Dr. Williams has failed to provide the requisite "articulated reasoning with some rational underpinning" to support a conclusion that a general market demand for "low-cost, mass producible electrode belts" would have motivated a PHOSITA to make a connector belt have the particular combination of features claimed in the '532 patent. *See KSR*, 550 U.S. at 418, 127 S.Ct. 1727 (quoting *In re Kahn*, 441 F.3d at 988).  As a result, Dr. Williams' report and testimony concerning the alleged motivation provided by the market demands for low-cost, mass-producible electrode belts is vague and conclusory, and so should be excluded. *See Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373–74 (Fed. Cir. 2008) ("Such vague testimony would not have been helpful to a lay jury in avoiding the pitfalls of hindsight that belie a determination of obviousness."). In other words, Dr. Williams' expert report and testimony evidence should be excluded under Rule 702(d) because he has not reliably applied these alleged motivations to combine prior art features to the facts of a specific prior art combination that would render the claims of the '532 patent invalid for obviousness.

### C.   Dr. Williams Has No Valid Motivation to Combine the Features of McIntire To Which He Points

In his effort to invalidate claim 1 of the patent-in-suit, Dr. Williams used hindsight to cherry pick elements from three separate embodiments disclosed in McIntire by listing them independently in a claim chart, and then opining that those elements comprise the "connector" disclosed in claim 1 of the '532 patent. [D.I. 138-3, Williams Rpt., Attach. A, pp. 24-33, 33-41,

41-43, 50-56.] Dr. Williams' theories therein rely on the embodiment shown in Figures 11-12, the embodiment in 13, and the embodiment shown in 14. [*Id.*] In his claim chart, he alleges that many of the same claim elements are taught by more than one of these three embodiments. [*Id.*] Dr. Williams then concludes that the connector required by claim 1 would have been obvious in light of those embodiments of McIntire, and that it would have then been obvious to combine that connector with any one of the belts disclosed in Hermannsson, Kristbjarnarson, Linville, or Uehara. [*Id.*] Dr. Williams uses the same methodology for the other references that he asserts should be combined with McIntire, sometimes listing multiple places where a claim element can allegedly be found in the prior art.

Even if all of the claim elements for the connector required by claim 1 were to be found independently scattered across the three McIntire embodiments identified by Dr. Williams (or the references to be combined with McIntire), Dr. Williams' theory of obviousness still fails to meet the requirements of *Daubert* because he has not identified any specific combination of those elements. At most, Dr. Williams' claim charts amount to merely a showing that each of the claim elements was independently known in the prior art. *KSR*, 550 U.S. at 418. Dr. Williams must identify the *specific* combination of features from McIntire (or associated references) that he asserts renders the claims obvious, and must provide "some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness.'" *KSR*, 550 U.S. at 418 (quoting *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006)).

In a failed attempt to provide this reasoning, Dr. Williams provides a general section in his report separate and apart from the claim charts entitled "Motivation to Combine." [D.I. 138-2, Williams Rpt., pp. 66-70.] In that section, the only things that could be characterized as reasons or motivations for combining prior art features and elements are the following: (1) "the

existence of the market driven desire to produce low-cost, mass-producible, electrode belts that can adjust to a wide range of patient sizes" [*id.*, ¶¶140, 144, 147]; (2) "the basic design requirements of an electrode belt and connector, namely to encircle a patient's body (i.e., be a belt)" [*id.*, ¶141]; (3) "the specific teachings of the presented prior art references," such as the teaching of "well-known methods of attaching and adjusting belt lengths" and "the use of specific geometry and material properties of an electrode connector body...to retain and connect an electrode connector to the male portion of a snap connector" [*id.*, ¶¶142-143]; (4) the fact that "PHOSITAs use such belts and connectors to measure and monitor more than one physiological function at the same time" [*id.*, ¶145]; (5) "regulatory and design standards in the medical device industry," [*id.*, ¶146]; and (6) the fact that "devices in general...must be designed and/or packaged so that the devices maintain their integrity and appearance while being shipped, stored, and used" [*id.*, ¶146]. But Dr. Williams never applies any of these generalized "motivations" to any of the features disclosed in McIntire, and some of them are obviously inapplicable to combining the elements of the connector of claim 1 (as opposed to combining the connector with a belt).

The only other "motivation" to which Dr. Williams points in connection with the McIntire combinations is the boilerplate statement in McIntire that "[e]ach component...of one embodiment...can also be used in combination with other components...of other embodiments." [*See* D.I. 138-3, Williams Rpt., Attach. A, pp. 24-25 (citing D.I. 139-5, McIntire, 13:14-17).) But Dr. Williams admitted that under his reading of this boilerplate statement, it teaches a "semi-infinite" number of combinations, a number of combinations so large that he "couldn't number them." [Ex. 31, Williams 5/05/17 Depo., 125:4-17; 129:15-21; 134:8-17.] Thus, the boilerplate statement does not provide any reason for combining the *specific* features from the *specific*

embodiments to which Dr. Williams points. General statements like this are insufficient because they "[fail] to explain why a person of ordinary skill in the art would have combined elements from specific references in the way the claimed invention does." *ActiveVideo Networks v. Verizon Communications*, 694 F.3d 1312, 1328 (Fed. Cir. 2012) (rejecting proffered testimony on motivation to combine as a matter of law because "[t]his testimony is generic and bears no relation to any specific combination of prior art elements"). Indeed, when asked to identify a motivation for combining the *particular* elements of claim 1 in the *particular* manner claimed in claim 1, as opposed to any of the other "semi-infinite" number of possible combinations taught by McIntire, after a rambling attempt to evade answering the question, Dr. Williams was ultimately unable to articulate any such motivation. [Ex. 31, Williams 5/05/17 Depo., 129:15-138:3.] The motivations to combine the teachings of McIntire in this case are indistinguishable from those proffered (and rejected) in *ActiveVideo*.

As noted above, Dr. Williams' opinion about "meet[ing] market demands for a low-cost mass producible electrode belt" suffers from the same problem. Dr. Williams does not opine as to whether any of the combinations of prior art elements encompassed by his claim charts would result in a lower cost or would be easier to mass produce. Instead, Dr. Williams simply uses hindsight to compile a list of features disclosed in Figures 11-14 of McIntire (and the other references to be combined with McIntire) that correspond to the requirements of the connector of claim 1 without indicating how those features would be combined into a single connector, or providing any motivation for how or why those features would be so combined. Consequently, his conclusory opinions of obviousness based on McIntire should be excluded (1) because they will not help the trier of fact to understand how the features disclosed in McIntire would have been combined by a PHOSITA or why a PHOSITA would have so combined those features, (2)

because they are not based on sufficient facts as he does not know which combinations are more or less expensive or easier or more difficult to mass produce, and (3) because he has not reliably applied those principles and methods to the facts of any particular combination of the elements disclosed in McIntire (or in the references to be combined with McIntire).

### D. Dr. Williams' Anticipation and Obviousness Theories Based on Incorrect Claim Constructions Should Be Excluded

Expert testimony that is based on an incorrect claim construction should be excluded under the *Daubert* standard because "expert testimony inconsistent with the Court's claim construction is unreliable and unhelpful to the finder of fact*." EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 109 (D. Del. 2016) (quoting *Personalized User Model, L.L.P. v. Google, Inc.*, C.A. No. 09-525-LPS, 2014 WL 807736, at *1 (D. Del. Feb. 27, 2014)). "Expert testimony based on an impermissible claim construction is properly excluded as irrelevant and on the basis that the evidence could confuse the jury." *Id.* (citing *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006) (affirming district court's exclusion of expert testimony "as irrelevant because it was based on an impermissible claim construction")); *see also Greatbatch Ltd. v. AVX Corp.*, C.A. No. 13-723-LPS, 2015 WL 9171042, at *5 (D. Del. Dec. 11, 2015) (excluding portions of an expert's testimony that relied on an incorrect claim construction). Dr. Williams' theories of anticipation and obviousness premised on incorrect claim constructions should be excluded.

### 1. Dr. Williams' Anticipation and Obviousness Theories Premised on a Flawed Construction of "Configured To" Should Be Excluded

Dr. Williams' anticipation and obviousness theories based on Hermannsson, the Nox RES Belt, the CareFusion Catalog, and the PRIP Belt prior art references each relies on a flawed construction of the phrase "the ***receiving hole*** being ***configured to*** function as a female snap

button fastener for receiving and *fastening* the frame to a protrusion of *the* male portion of *the* snap connector electrode."

As set forth more fully in Section III.D.1.b of *Plaintiff Nox Medical's Combined (1) Brief In Opposition To Natus' Motion For Summary Judgment Of Invalidity, (2) Opening Brief In Support Of Nox Medical's Motion For Summary Judgment Of No Invalidity, And (3) Opening Brief In Support Of Nox Medical's Proposed Claim Constructions* ("Nox Medical's SJ Motion"), filed concurrently herewith and incorporated herein by reference, this phrase requires the plastic defining the "receiving hole" to be able to "fasten" to the male snap protrusion of the electrode for which the connector has been designed.

Dr. Williams, however, construed this phrase to be satisfied if anything associated with the "receiving hole" can "fasten" to a male snap protrusion of any electrode when rendering his opinions that Hermannsson, the Nox RES Belt, the CareFusion Catalog, and the PRIP Belt prior art references satisfy this phrase. [D.I. 138-3, Williams Rpt., Attach. A, pp. 2-3 (Hermannsson), 8-9 (CareFusion Catalog), 12-14 (Nox RES Belt), 18-21 (PRIP Belt); D.I. 139-10, Williams Reply Rpt., ¶¶22-26, 64-67, 93-95 115.] As an example of the unreasonable breadth of Dr. Williams' construction of "the receiving hole configured to function as a female snap button fastener for receiving and fastening the frame to a protrusion of the male portion of the snap connector electrode," Dr. Williams testified that under his construction, the doorway to a child's plastic playhouse meets this claim limitation: "...if the hole of the door was appropriately situated, such that -- and we had a snap that was large enough and of the appropriate size and could be -- that there weren't other things that prevent it from going in, then in that hypothetical situation, with that hypothetical snap and the hypothetical constraints on the door -- we'll call it a

door so it makes sense -- then that would be configured to function as that male snap fastener."
[Ex. 10, Williams 6/02/17 Depo., 71:19-72:13, 74:1-75:10.]

The Court should exclude Dr. Williams' opinions and testimony that Hermannsson, the Nox RES Belt, the CareFusion Catalog, and the PRIP Belt teach a "receiving hole configured to function as a female snap button fastener for receiving and fastening the frame to a protrusion of the male portion of the snap connector electrode," because he applied in incorrect construction of that phrase in rendering those opinions. As such, these opinions are irrelevant and would only serve to confuse the jury. *EMC Corp.*, 154 F. Supp. 3d at 109.

### 2. Dr. Williams' Anticipation and Obviousness Theories Premised on a Flawed Construction of "Elongated Member" Should Be Excluded

Dr. Williams' anticipation and obviousness theories based on Hermannsson, the Nox RES Belt, CareFusion Catalog, the PRIP Belt, Harhen, and Gobron prior art references each relies on a construction of the term "elongated member" in Claim 1 that does not require any distinct portion of the molded plastic frame. Instead, Dr. Williams opines that so long as he is able to draw imaginary lines to define a portion of the frame that is "longer than it is wide" then that claim element is satisfied.

As set forth more fully in Section III.D.3.a of Nox Medical's SJ Motion, filed concurrently herewith and incorporated herein by reference, the term "elongated member" in claim 1 means a "distinct portion of the plastic frame that is longer than it is wide."

In contrast to this meaning, in his Reply Report Dr. Williams opines that Hermannsson, the Nox RES Belt, CareFusion Catalog, Harhen, and Gobron have the required "elongated member" by pointing to the following shaded portions of those connectors:



[D.I. 139-10, Williams Reply Rpt., ¶¶77 (Hermannsson), 108 (Nox RES Belt), 159 (Harhen),

182 (CareFusion Catalog referencing arguments of Hermannsson), 191 (Gobron).]  Notice that

these shaded areas are merely arbitrary portions of a plastic structure and are not distinct portions

of that plastic structure.  In fact, the boundaries of these shaded areas have only been drawn as

they have for the sole purpose of being able to say that those portions are "elongated" and have a

"longitudinal axis" with the required orientation.  By doing so, Dr. Williams has implicitly

adopted an interpretation of "elongated member" that includes any arbitrarily-located portion of

a structure as long as the identified "portion" is longer than it is wide.  Indeed, Dr. Williams

concedes that the "boundaries" of the "elongated members" he identifies are completely

arbitrary.  For example, Dr. Williams opines, "Hermannsson [F]ig. 2 (annotated to illustrate the

'elongated members,' as identified in my opening report, ***the boundaries of which can be***

***understood to begin and end in different locations*** because the term 'elongated member' has no

specific meaning to a PHOSITA other than a portion of material larger in one direction than in

other directions."  [*Id.*, ¶77.]  According to this definition, a plain unadorned unitary surface has

an unlimited number of "elongated members" wherever one wishes to draw imaginary dotted lines to define them.

To have any substantive limitation on the claim, "elongated member" must be a distinct portion of the plastic frame that is longer than it is wide. If an "elongated member" could have boundaries defined by arbitrarily-located, imaginary lines that could be drawn anywhere on an object, then "transverse to its longitudinal axis" would have no real meaning and no limiting effect on claim 1. [D.I. 138-4, Oslan Rpt., ¶69.] This is because any object could be characterized as having an "elongated member" with a "longitudinal axis" in any direction. [Id.] The Court should exclude Dr. Williams' opinions and testimony that Hermannsson, the Nox RES Belt, the CareFusion Catalog, the PRIP Belt, Harhen, and Gobron teach an "elongated member" because these opinions are based on his overbroad, flawed construction of "elongated member." Therefore, these opinions and testimony should be excluded as they are contrary to the proper construction of the term "elongated member," are irrelevant, and would only serve to confuse the jury. *EMC Corp.*, 154 F. Supp. 3d at 109.

## V.  CONCLUSION

For the foregoing reasons, Nox Medical respectfully requests that the Court issue an order excluding (1) Dr. Williams' opinions and testimony that general market demands for a "low cost, mass-producible electrode belt" provided a motivation to combine teachings in the prior art into the claimed inventions, (2) Dr. Williams' opinions that the claims of the '532 patent are invalid as obviousness over combinations involving McIntire, (3) Dr. Williams' opinions and testimony that Hermannsson, the Nox RES Belt, the CareFusion Catalog, and the PRIP Belt teach a "receiving hole configured to function as a female snap button fastener for receiving and fastening the frame to a protrusion n of the male portion of the snap connector electrode," and (4)

Dr. Williams' opinions and testimony that Hermannsson, the Nox RES Belt, the CareFusion

Catalog, the PRIP Belt, Harhen, and Gobron teach an "elongated member."

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Chad E. Nydegger
Brittany Frandsen
WORKMAN NYDEGGER
60 East South Temple, Suite 1000
Salt Lake City, UT 84111
Tel: (801) 533-9800


Dated: July 19, 2017
PUBLIC VERSION
Dated: July 26, 2017
5320760 / 42707

By:   /s/ Bindu A. Palapura
      David E. Moore (#3983)
      Bindu A. Palapura (#5370)
      Stephanie E. O'Byrne (#4446)
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, DE 19801
      Tel: (302) 984-6000
      dmoore@potteranderson.com
      bpalapura@potteranderson.com
      sobyrne@potteranderson.com

*Attorneys for Plaintiff Nox Medical Ehf*