IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NOX MEDICAL EHF,

    Plaintiff,

v.

NATUS NEUROLOGY INC.,

    Defendant.

Civil Action No. 15-709-RGA

## Memorandum Opinion

David E. Moore, Esq., Bindu A. Palapura, Esq., Stephanie E. O'Byrne, Esq., POTTER, ANDERSON & CORROON, Wilmington, Delaware; Chad E. Nydegger, Esq., Brent P. Lorimer, Esq., Brittany Frandsen, Esq., WORKMAN NYDEGGER, Salt Lake City, Utah.

Attorneys for Plaintiff.

Arthur G. Connolly, III, Esq., Ryan P. Newell, Esq., Mary I. Akhimien, Esq., CONNOLLY GALLAGHER LLP, Wilmington, Delaware; Thomas S. Reynolds, Esq., Jeremy Adelson, Esq., HANSEN REYNOLDS DICKINSON & CRUEGER LLC, Milwaukee, Wisconsin; Alan W. Nicgorski, Esq., Joseph J. Jacobi, Esq., HANSEN REYNOLDS DICKINSON & CRUEGER LLC, Chicago, Illinois; John W. McCauley, Esq., HANSEN REYNOLDS DICKINSON & CRUEGER LLC, Madison, Wisconsin.

Attorneys for Defendant.

March __, 2018

*[signature]*
**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before the Court are Defendant's Motion to Exclude the Lost Profits Opinion of Scott W. Cragun Pursuant to Federal Rule of Evidence 702 (D.I. 147) and related briefing (D.I. 148, 178, 201), and Plaintiff's Motion to Exclude the Opinions of Richard Bero with Respect to Damages Based on a Reasonable Royalty (D.I. 152) and related briefing (D.I. 153, 184, 199).

For the reasons that follow, the Court will **GRANT** in part and **DENY** in part Defendant's Motion to Exclude the Lost Profits Opinion of Scott W. Cragun Pursuant to Federal Rule of Evidence 702 (D.I. 147), and **DENY** Plaintiff's Motion to Exclude the Opinions of Richard Bero with Respect to Damages Based on a Reasonable Royalty (D.I. 152).

## I. LEGAL STANDARD

Federal Rule of Evidence 702 sets out the requirements for expert witness testimony and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Third Circuit has explained:

> Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit. Qualification refers to the requirement that the witness possess specialized expertise. We have interpreted this requirement liberally, holding that "a broad range of knowledge, skills, and training qualify an expert." Secondly, the testimony must be reliable; it "must be based on the 'methods and procedures of science' rather than on 'subjective belief or

2

> unsupported speculation'; the expert must have 'good grounds' for his o[r] her belief. In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity." Finally, Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact. The Supreme Court explained in *Daubert* that "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."
>
> By means of a so-called "*Daubert* hearing," the district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury. *See Daubert* ("Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a) [of the Federal Rules of Evidence] whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.").

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404-05 (3d Cir. 2003) (footnote and internal citations omitted).[1]

## II. DISCUSSION

### A. Defendant's Motion to Exclude the Lost Profits Opinion of Scott W. Cragun Pursuant to Federal Rule of Evidence 702

Defendant seeks to preclude Plaintiff's expert Mr. Scott W. Cragun from testifying about lost profits. (D.I. 148 at 1). Defendant does not seek to exclude Mr. Cragun's reasonable royalty opinion. (*Id.*).

Mr. Cragun plans to testify that, but for Defendant's infringement, Plaintiff would have sold its patented belt in place of 75% of Defendant's belt sales. (D.I. 149-1, Exh. A at 3, 11-44). Mr. Cragun opines that Plaintiff's increased belt sales would come from "three areas": (1) sales to current users of Plaintiff's sleep-monitoring devices (Plaintiff's

---

[1] The Court of Appeals wrote under an earlier version of Rule 702, but the recent amendments to it were not intended to make any substantive change.

3

"install base"), (2) sales to additional users who would have purchased Plaintiff's sleep-monitoring devices but for infringement (expanding Plaintiff's install base), and (3) sales to users of Defendant's or third-parties' sleep-monitoring devices.[2] (D.I. 183, Exh. 63, 166:7-17; D.I. 201 at 1).

Defendant argues that Mr. Cragun has no basis to support the second and third "areas" providing increased sales. (D.I. 201 at 1).

As to the second "area," Defendant argues in its opening brief that Mr. "Cragun's claim that [Plaintiff] lost *any* [sleep-monitoring] device sales due to [Defendant's] introduction of the accused belts is rank speculation. [Mr.] Cragun could not identify a single customer who would have but did not purchase [Plaintiff's] device due to [Defendant's] alleged infringement." (D.I. 148 at 9). Further, Defendant notes that Mr. Cragun "admits he cannot quantify [Plaintiff's] loss" of device sales due to Defendant's infringement. (*Id.* at 10). Defendant continues, "Without knowing how many additional devices [Plaintiff] supposedly would have sold, [Mr.] Cragun has no way of knowing how many attendant belts it would have sold." (*Id.*). Plaintiff does not respond to this argument in its answering brief. Plaintiff does not claim that Mr. Cragun can quantify the loss. (D.I. 178 at 17, n.6). Rather, Plaintiff only notes that Mr. Cragun identified a single customer who "who would have but did not purchase [Plaintiff's] device due to [Defendant's] alleged infringement." (*Id.* at 17, n.7). Accordingly, I agree that Mr. Cragun has no reliable basis to quantify Plaintiff's loss of sleep-monitoring device sales due to Defendant's infringement. I will not permit Mr. Cragun to testify about lost

---

[2] RIP belts, like Plaintiff's patented belt and Defendant's accused belt, are used in conjunction with sleep-monitoring devices.

4

profits insofar as his opinion relies on forecasted sales to additional users who would have purchased Plaintiff's sleep-monitoring devices but for infringement.

As to the third "area," RIP belts require adapters to operate with sleep-monitoring devices. (D.I. 148 at 4). In the United States, Plaintiff only offers adapters to connect its patented belts to its own install base. (*Id.*; D.I. 149-10, Exh. J at 5-6). Plaintiff does not offer any adapter in the United States that can connect the patented belts to Defendant's or third-parties' sleep-monitoring devices. (*Id.*). Accordingly, for Mr. Cragun to testify that Plaintiff would have made sales to users of Defendant's or third-parties' sleep-monitoring devices in the but for world, Mr. Cragun must demonstrate than an adapter would have been available in the United States to use Plaintiff's patented belt with Defendant's or third-parties' sleep-monitoring devices. Defendant argues that Mr. Cragun does not do so. (D.I. 148 at 10-12). However, Mr. Cragun provides evidence that either Plaintiff or Defendant would have introduced such an adapter in the but for world. (D.I. 178 at 15-18). Accordingly, Defendant's argument amounts to a failure of proof argument, rather than a *Daubert* argument. Defendant can address it in cross-examination at trial.

Defendant also argues that Mr. Cragun arbitrarily restricts the market and ignores non-infringing alternatives. (D.I. 148 at 12; *Rite Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (explaining a four-part test for a patentee to prove entitlement to lost profit damages, which includes the absence of non-infringing substitutes); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983) (demonstrating that a patentee can prove entitlement to lost profit damages by showing that there are only two suppliers in the relevant market)). However, Mr. Cragun puts forth evidence to support

his market definition and opinions about the absence of non-infringing alternatives. (D.I. 178 at 18-20). Accordingly, Defendant's arguments amount to failure of proof arguments, rather than *Daubert* arguments. Defendant can address them in cross-examination at trial.

Accordingly, I will partially grant Defendant's Motion to Exclude the Lost Profits Opinion of Scott W. Cragun Pursuant to Federal Rule of Evidence 702 (D.I. 147), and prohibit Mr. Cragun from testifying about lost profits insofar as his opinion relies on forecasted sales to additional users who would have purchased Plaintiff's sleep-monitoring devices but for infringement. Otherwise, I will deny Defendant's Motion.

### B. Plaintiff's Motion to Exclude the Opinions of Richard Bero with Respect to Damages Based on a Reasonable Royalty

Plaintiff seeks to preclude Defendant's expert Mr. Richard Bero from testifying about damages based on a reasonable royalty. (D.I. 153 at 1).

Mr. Bero uses a "hypothetical negotiation" to calculate damages based on a reasonable royalty for the allegedly infringing products. (D.I. 184 at 2). Mr. Bero offers a starting royalty of $0.65 per infringing belt-set.[3] (*Id.* at 4).

Plaintiff argues that this starting royalty of $0.65 is "not based on accepted methodologies or sufficiently tied to the facts of the case." (D.I. 153 at 5). A reasonable royalty analysis does not require selecting a starting point. However, if a starting point is selected, it must be "tied to the relevant facts and circumstances of the particular case at issue and the hypothetical negotiations that would have taken place in light of those facts and circumstances at the relevant time." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d

---

[3] Both parties' experts calculate a reasonable royalty for a set consisting of two belts (a "belt-set"). (D.I. 153 at 2, n.2).

6

1292, 1318 (Fed. Cir. 2011). Plaintiff cites *Sloan Valve Co. v. Zurn Indus., Inc.*, 33 F. Supp. 3d 984, 1000-01 (N.D. Ill. 2014) for the proposition that a "reasonable royalty calculation based on an arbitrary starting point is inadmissible." (D.I. 153 at 5).

To arrive at his starting point of $0.65 per infringing belt-set, Mr. Bero estimates that 85% of Defendant's accused belts were sold to customers using Defendant's or a third-party's sleep-monitoring device. (D.I. 159, Exh. 12 at 41; D.I. 184 at 4). As discussed above, adapters were not available to use Plaintiff's belts with those sleep-monitoring devices. Thus, asserts Mr. Bero, Plaintiff could not have sold its belts to those 85% of Defendant's customers. (D.I. 159, Exh. 12 at 41). Mr. Bero asserts that Defendant could have sold substitute cut-to-fit belts in lieu of the accused belts to the 85% of customers using Defendant's or a third-party's sleep-monitoring device. (*Id.* at 42). Mr. Bero therefore "attributes 15% of [Defendant's] infringing sales and 15% of the attendant profits to the patented technology." (D.I. 184 at 4; D.I. 159, Exh. 12 at 41).[4] Defendant's profit gross profit per belt-set in mid-2015 was $4.34. (D.I. 159, Exh. 12 at 40). Mr. Bero takes 15% of this gross profit to arrive at a starting royalty of $0.65 per belt-set. (*Id.* at 41).

Defendant characterizes Mr. Bero's method as "the income valuation approach." (D.I. 184 at 6). Defendant urges that his method is "standard" and "well-accepted." (*Id.*).

Plaintiff argues that "the income valuation approach" typically involves comparing the infringer's profits without infringement to the infringer's profits with

---

[4] Mr. Bero finds that "the cut-to-fit belt garnered a higher profit margin than the accused belts, meaning [Defendant] actually made less profit by selling the accused belts." (D.I. 184 at 4) (emphasis omitted). Mr. Bero therefore does not apportion any additional profit to the patented technology. (*Id.*).

7

infringement. (D.I. 153 at 6-7). Plaintiff asserts that Mr. Bero does not use this approach, but rather uses an arbitrary approach that is not well-accepted. (*Id.*; D.I. 199 at 1-5). Plaintiff also argues that Defendant could have lost 100%, rather than just 15%, of its sales to Plaintiff. (D.I. 199 at 5).

However, Defendant asserts that Mr. Bero does compare the infringer's profits without infringement to the infringer's profits with infringement. (D.I. 184 at 7). Mr. Bero asserts that even absent infringement, Defendant would have made 85% of its sales made with infringement. (*Id.*; D.I. 159, Exh. 12 at 41).

I find that Mr. Bero's testimony is based on an acceptable methodology. Defendant's remaining arguments amount to failure of proof arguments, rather than *Daubert* arguments. Defendant can address them in cross-examination at trial.

I will deny Plaintiff's Motion to Exclude the Opinions of Richard Bero with Respect to Damages Based on a Reasonable Royalty. (D.I. 152).

### III. CONCLUSION

A separate order will be entered.

8