# EXHIBIT A

## I.     NOX MEDICAL'S STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED

1.     The parties identify the following issues of law that remain to be litigated, along with a citation of authorities relied upon by each party.  If any issue identified in the parties' statement of issues of law is more properly considered an issue of fact, it should be so considered.

### A.     Issues on which Plaintiff Nox Medical Bears the Burden of Proof

#### 1.     Willful Infringement

2.     Whether Nox Medical has met its burden to prove by a preponderance of the evidence that Natus willfully infringed any of claims 1 and 4-9 of the '532 patent.

3.     Willful infringement is an issue of fact for the jury. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016). Nox Medical has the burden to prove willfulness, along with entitlement to enhanced damages, by a preponderance of the evidence. *Halo Electronics, Inc. v. Pulse Electronics*, 136 S. Ct. 1923, 1934 (2016). Knowledge of the asserted patent is a prerequisite to willfulness (*WBIP*, 829 F.3d at 1341) but deliberate copying of the commercial embodiment of the patent owner before issuance of the patent can be evidence of willfulness.  *Kaufman Co. v. Lantech, Inc.* 807 F.2d 970, 979 (Fed. Cir. 1986), *Avia Group International, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557 (Fed. Cir. 1988), *Botts Corp. v. Four Star Corp.,* 807 F.2d 1567, 1572 (Fed. Cir. 1986); *GTE Products Corp. v. Kennametal, Inc.,* 772 F.Supp. 907 (W.D. Va. 1991).  Willfulness is assessed "at the time of the challenged conduct" and therefore defenses that an infringer was not aware of until later are irrelevant when assessing willfulness. *Halo*, 136 S.Ct. at 1933. Proof of an objectively reasonable litigation-inspired defense to Infringement or invalidity is not a defense to willful infringement.  *WBIP, LLC v. Kohler Co.,* 829 F.3d 1317, 1341 (Fed. Cir. 2016).

1

4.      Conduct that is "willful, wanton, malicious, bad faith, deliberate, consciously wrongful, or flagrant" may justify the award of enhanced damages. *Halo*, 136 S. Ct. at 1932. Enhanced damages, however, "are not to be meted out in a typical infringement case but are instead designed as a 'punitive' or 'vindictive' sanction for egregious behavior." *Halo*, 136 S. Ct. at 1932; *see also id.* at 1934 ("[S]uch punishment should generally be reserved for egregious cases typified by willful misconduct."). Proof of an objectively reasonable litigation-inspired defense to infringement is not a defense to willful infringement. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016). "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id.* at 1933. An example of subjective willfulness is a defendant who acted "despite a risk of infringement that was 'either known or so obvious that it should have been known to the accused infringer . . .."" *WesternGeco*, 837 F.3d at 1362  (citation omitted), (*cert. granted on other grounds*, 138 S.Ct. ); *Stryker Corp. v. Zimmer, Inc.*, 837 F.3d 1268, 1279 (Fed. Cir. 2016); *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017); *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Group*, 879 F.3d 1332, 1353 (Fed. Cir. 2018).  When exercising its discretion, district courts should "'tak[e] into account the particular circumstances of each case,' and consider all relevant factors in determining whether to award enhanced damages." *WesternGeco L.L.C.*, 837 F.3d at 1363 (citing *Halo*, 136 S.Ct. at 1933-34).

## 2.      Damages

5.      Whether Nox Medical has met its burden to prove by a preponderance of the evidence that it is entitled to a damages award, and if so, the amount of that award.

6.      There are three primary damages issues. First, determining the amount of compensation, in the form of a reasonable royalty, to which Nox Medical is entitled should the '532 patent be found valid and enforceable. Second, the amount of enhanced damages to which

Nox Medical entitled should the jury find that Natus willfully infringed the '532 patent. Lastly, whether the preponderance of the evidence shows that this is an exceptional case for which Natus must pay Nox Medical's attorneys' fees as provided by 35 U.S.C. § 285.

7.     35 U.S.C § 284 states in relevant part as follows:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer. . .. The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances.

8.     The purpose of compensatory damages is to make the patent owner "whole" or "fully compensate" him for the infringement, such that the patent owner is restored to the financial position he would have been in had the infringement not occurred. *Lucent Techs., v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc).

9.     "[T]he amount of a prevailing party's damages is a finding of fact on which the plaintiff bears the burden of proof by a preponderance of the evidence." *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991). Depending on the circumstances of the case, compensatory damages may take the form of (1) lost profits, (2) an established royalty, or (3) a reasonable royalty. *Id.* at 1167 & n.5; *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983).

### 3.     Reasonable Royalty

10.     Having established infringement, in the event that any of  the asserted claims of the '532 patent is held valid and enforceable, Nox Medical is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284.   The determination of a reasonable royalty "necessarily involves an element of

approximation and uncertainty." *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009) (citing *Unisplay, S.A. v. Am. Elec. Sign Co., Inc.*, 69 F.3d 512, 517 (Fed. Cir. 1995)).

11.    The common approach to determining a reasonable royalty is to consider the outcome of a hypothetical arms-length negotiation between a willing licensor and licensee just before infringement began. *Lucent Techs.*, 580 F.3d at 1324–25. In other words, the reasonable royalty is "the royalty upon which the parties would have agreed had they successfully negotiated an agreement" at that time. *Id.* But later events can also be considered under the "Book of Wisdom" approach. "[T]he Supreme Court recognized that factual developments occurring after the date of the hypothetical negotiation can inform the damages calculation." *Id.* at 1333 (citing *Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 698 (1933) And Federal Circuit "case law affirms the availability of post-infringement evidence as probative in certain circumstances." *Id.* "[P]arties in a hypothetical negotiation are presumed to have perfect knowledge of all facts and circumstances, some of which were unknown during the actual patent negotiations and acquisition." *Intellectual Ventures I LLC v. Check Point Software*, C.A. Nos. 10-1067-LPS, 12-1581-LPS, D.I. 579 at *11 (D. Del. Mar. 31, 2014) (citing *Mobil Oil Corp. v. Amoco Chems. Corp.*, 915 F. Supp. 1333, 1353 (D. Del. 1994)). In applying the construct of the hypothetical negotiation, the fact-finder must assume that the parties know that the patents-in-suit are valid, enforceable, and infringed. *Lucent Techs.,* 580 F.3d at 1324–25.

12.    Courts consider a variety of factors in determining the reasonable royalty that the parties would have agreed to in the "hypothetical negotiation," outlined in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). These include the following:

1.  The royalties received by the patentee for the licensing of the patents-in-suit, proving or tending to prove an established royalty;

2.  The rates paid by the licensee for the use of other patents comparable to the patents-in-suit;

3.  The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

4.  The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly;

5.  The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter;

6.  The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as the generator of sales of his non-patented items, and the extent of such derivative or convoyed sales;

7.  The duration of the patent and the term of the license;

8.  The established profitability of the product made under the patents, its commercial success, and its current popularity;

9.  The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

11. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use;

12. The portion of the profit or of the selling price that may be customary in the business or incomparable business to allow for the use of the invention or analogous inventions;

13. The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

14. The opinion and testimony of qualified experts;

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the

> amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

*Id.* at 1120. The Federal Circuit has approved the use of the *Georgia-Pacific* factors in numerous decisions. *See, e.g.*, *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1372 (Fed. Cir. 2008).

13.     The *Georgia-Pacific* factors are non-exclusive. *Energy Transp. Gp., Inc. v. Sonic Innovations, Inc.*, C.A. No. 05-422 (GMS), 2011 WL 2222066, at *21 n.29 (D. Del. June 7, 2011). One additional factor that may be considered is the availability and cost of non-infringing alternatives to the patented invention at the time of the hypothetical negotiation. *See MobileMedia Ideas LLC v. Apple Inc.*, 209 F. Supp. 3d 756, 766 (D. Del. 2016) (citing *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571 (Fed. Cir. 1996).)   To be an available, acceptable non-infringing substitute, the substitute must have been on the market during the accounting period.

14.     As described in *Georgia-Pacific*, there is no mathematical formula for determining reasonable royalties:

> [A] multiplicity of inter-penetrating factors bear[s] upon the amount of a reasonable royalty. But there is no formula by which these factors can be rated precisely in the order of their relative importance or by which their economic significance can be automatically transduced into their pecuniary equivalent. . . .. In discharging its responsibility as fact finder, the Court has attempted to exercise a discriminating judgment reflecting its ultimate appraisal of all pertinent factors in the context of the credible evidence.

*Georgia-Pacific*, 318 F. Supp. at 1120–21. "Any reasonable royalty analysis 'necessarily involves an element of approximation and uncertainty.'" *Lucent Techs.*, 580 F.3d at 1325 (quoting *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995)).

### 4.     Enhanced Damages

15.     Additionally, the "court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284.  "That language contains no explicit limit or condition, and

we have emphasized that the word 'may' clearly connotes discretion." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1931 (2016) (internal citations omitted).

16.     "Awards of enhanced damages under the Patent Act over the past 180 years establish that they are not to be meted out in a typical infringement case but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior. The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* at 1932. "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id.* at 1933.  Willfulness is assessed "at the time of the challenged conduct," and therefore defenses that an infringer was not aware of until later are irrelevant when assessing willfulness.  *Id.* Proof of an objectively reasonable litigation-inspired defense to infringement is not a defense to willful infringement. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016).

17.     Deliberate copying of the commercial embodiment of the patent owner before issuance of the patent can be evidence of willfulness.  *Kaufman Co. v. Lantech, Inc.* 807 F.2d 970, 979 (Fed. Cir. 1986), *Avia Group International, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557 (Fed. Cir. 1988), *Botts Corp. v. Four Star Corp.,* 807 F.2d 1567, 1572 (Fed. Cir. 1986); *GTE Products Corp. v. Kennametal, Inc.,* 772 F.Supp. 907 (W.D. Va. 1991).

18.     "Section 284 allows district courts to punish the full range of culpable behavior. Yet none of this is to say that enhanced damages must follow a finding of egregious misconduct. As with any exercise of discretion, courts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount. Section 284 permits district courts to exercise their discretion in a manner free from the inelastic constraints

7

of the *Seagate* test. Consistent with nearly two centuries of enhanced damages under patent law, however, such punishment should generally be reserved for egregious cases typified by willful misconduct." *Id.* at 1933–34. "Section 284 gives district courts discretion in meting out enhanced damages. It 'commits the determination' whether enhanced damages are appropriate 'to the discretion of the district court ....'" *Id.* at 1934. "[P]atent-infringement litigation has always been governed by a preponderance of the evidence standard. Enhanced damages are no exception." *Id.*

### 5. Exceptionality

19.    Section 285 states that "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "This text is patently clear. It imposes one and only one constraint on district courts' discretion to award attorney's fees in patent litigation: The power is reserved for 'exceptional' cases." *Octane Fitness, LLC v. ICON Health & Fitness*, *Inc.*, 134 S. Ct. 1749, 1755–56 (2014). An "'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1756. A "district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id.* at 1757. Fees can be awarded for a portion of a case that the Court finds to be "exceptional." *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1377-80 (Fed. Cir. 2017).

20.    Entitlement to fees under Section 285 is established by the preponderance of the evidence. *Octane*, 134 S.Ct. at 1758.

### 6. Costs and Interest

21.    Upon a finding of patent infringement, a court should award the patentee costs and pretrial interest. Federal Rule of Civil Procedure 54 states "[u]nless a federal statute, these rules,

or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Pursuant to Federal Rule of Civil Procedure 54(d), costs should be awarded to the prevailing party. Under 28 U.S.C. § 1920, the prevailing party may recover the following costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in this case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828.

22.     "Prejudgment interest shall ordinarily be awarded absent some justification for withholding such an award." *Nickson Indus., Inc. v. Rol Mfg. Co., Ltd.*, 847 F.2d 795, 800 (Fed. Cir. 1988) (citing *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983)). "[P]rejudgment interest should be awarded from the date of infringement to the date of judgment." *Id.* (citing *General Motors*, 461 U.S. at 656).

23.     Section 1961(a) of Title 28 of the United States Code states that "interest shall be allowed on any money judgment in a civil case recovered in a district court." "Post-judgment interest is awarded on monetary judgments recovered in all civil cases," including ones for patent infringement. *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999); *see also nCUBE Corp. v. SeaChange Int'l, Inc.*, 313 F. Supp. 2d 361, 392 (D. Del. 2004), *aff'd*, 436 F.3d 1317 (Fed. Cir. 2006) (awarding post-judgment interest to patentee for defendant's willful infringement); *TruePosition Inc. v. Andrew Corp.*, 611 F. Supp. 2d 400, 414 (D. Del. 2009), *aff'd*, 389 F. App'x 1000 (Fed. Cir. 2010) (awarding post-judgment interest for patent infringement). Post-judgment interest is governed by regional circuit law. *Id.* at 1348. In the Third Circuit, interest

begins to accrue on the date of the entry of judgment. *Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 97 (3d Cir. 1993).

### 7.    Permanent Injunction

24.    Having established infringement, in the event any of the asserted claims of the '532 patent are held valid and enforceable, Nox Medical may seek injunctive relief under section 283 of Title 35 of the United States Code, which allows the court to grant Nox Medical injunctive relief in accordance with the principles of equity on such terms as the court deems reasonable. To demonstrate it is entitled to a permanent injunction, a patentee must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

### 8.    IPR Estoppel and Related Matters

25.    Whether Natus is barred from asserting certain combinations to support its defense of obviousness by 35 U.S.C. §315(e)(2). *Parallel Networks Licensing v. Int'l Business Machines*, 2017 WL 1045912, *11-*12 (D. Del. 2017); *Network-1 Technologies v. Alcatel-Lucent USA*, 2017 WL 4856473, *1-*2 (E.D. Tex. 2017) (collecting cases). This issue is addressed in Nox Medical's Motion *in Limine* No. 2.

26.    Whether issue preclusion bars Natus from arguing that particular prior art references disclose particular features.  *MaxLinear, Inc. v. CF Crespe LLC*, 880 F.3d 1373, 1376 (Fed. Cir. 2018); *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006).  This issue is addressed in Nox Medical's Motion *in Limine* No. 2.

27.    Whether Natus is barred from asserting certain combinations to support its claim of obviousness for failure to disclose those combinations prior to the close of discovery and they are

not disclosed in the expert report of Dr. Williams.  This issue is addressed in Nox Medical's Motion *in Limine* No. 2.

### B.      Issues on which Defendant Natus Bears the Burden of Proof

#### 1.      Validity – Obviousness Under 35 U.S.C. § 103

28.      Whether Natus can prove by clear and convincing evidence that each of the Asserted Claims of the '532 patent is invalid.

29.      All patents are presumed valid. *Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*, 719 F.3d 1346, 1352 (Fed. Cir. 2013) ("It is black-letter law that a patent is presumed valid."). Natus bears the burden of proving its invalidity defenses by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 131 S. Ct. 2238, 2242 (2011); *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003). Natus bears this burden throughout the entirety of the litigation. *Novo Nordisk*, 719 F.3d at 1352 ("[B]ecause the presumption of validity remains intact . . . throughout the litigation, the burden of persuasion never shifts to the patentee . . ..").

30.      A patent is invalid for obviousness under § 103 if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious to a PHOSITA at the time the invention was made. 35 U.S.C. § 103.

31.      The question of obviousness is a legal determination based on underlying facts, and the "ultimate judgment of obviousness is a legal determination." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 426–27 (2007) (citing *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17–18 (1966)). The underlying facts include: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) any objective indicators of non-obviousness, more commonly termed secondary considerations. *Graham*, 383 U.S. at 17–18.

32.     "Obviousness cannot be based on the hindsight combination of components selectively culled from the prior art to fit the parameters of the patented invention." *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1352 (Fed. Cir. 2013); *In re NTP, Inc.*, 654 F.3d 1279, 1299 (Fed. Cir. 2011) ("Care must be taken to avoid hindsight reconstruction by using 'the patent in suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit.'"). "[W]hen the prior art teaches away from combining certain known elements, discovery of a successful means of combining them is more likely to be nonobvious." *KSR*, 550 U.S at 416. "A reference may be said to teach away when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant. The degree of teaching away will of course depend on the particular facts; in general, a reference will teach away if it suggests that the line of development flowing from the reference's disclosure is unlikely to be productive of the result sought by the applicant." *In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994).

33.      "Although common sense directs one to look with care at a patent application that claims as innovation the combination of two known devices according to their established functions, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does. This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known." *KSR,* 550 U.S. at 418–19.

34.     To show that a claim is invalid for obviousness, all elements of that claim must be accounted for.  *In re Royka*, 490 F.2d 981, 985 (CCPA 1974). Nevertheless, "a patent composed

of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR.*, 550 U.S. at 418. "When considering obviousness of a combination of known elements, the operative question is [however] 'whether the improvement is more than the predictable use of prior art elements according to their established functions.'" MPEP § 2141 (quoting *KSR*, 550 U.S. at 417). Cir. 1983). *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 418 (2007).  While an "expansive and flexible approach" should be used in evaluating obviousness, a conclusion of obviousness "'cannot be sustained by mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness.'"  *KSR*, 550 U.S. at 418 (quoting *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006)) *Id.* "What a prior art reference teaches and whether a skilled artisan would have been motivated to combine references are questions of fact." *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1051 (Fed. Cir. 2016) (citing *Par Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1196–97 (Fed. Cir. 2014); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1303 (Fed. Cir. 2010)).

35.     General statements of motivations to combine that are not applied to specific combinations are insufficient because they "[fail] to explain why a person of ordinary skill in the art would have combined elements from specific references in the way the claimed invention does." *ActiveVideo Networks v. Verizon Communications*, 694 F.3d 1312, 1328 (Fed. Cir. 2012) (rejecting proffered testimony on motivation to combine as a matter of law because "[t]his testimony is generic and bears no relation to any specific combination of prior art elements").

36.     The person of ordinary skill in the art is a "hypothetical person who is presumed to be aware of all the pertinent prior art." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985). "A person of ordinary skill is also a person of ordinary creativity, not an

automaton." *KSR*, 550 U.S. at 421. Assessment of obviousness "requires [the] consideration of common knowledge and common sense" possessed by a person of ordinary skill. *DyStar*, 464 F. 3d at 1367 (Fed. Cir. 2006); *see also KSR*, 550 U.S. 421 (quoting same with approval).

37.     The patent holder "may rebut a prima facie showing of obviousness with objective indicia of nonobviousness." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1305 (Fed. Cir. 2010) ("If all of the factual disputes regarding the objective evidence resolve in favor of [plaintiff], it has presented a strong basis for rebutting the prima facie case [of obviousness].").

38.     Secondary considerations, or objective indicia of non-obviousness, must be considered to guard against hindsight bias. *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1079 (Fed. Cir. 2012).  Such factors include: (i) copying; (ii) long felt but unresolved need; (iii) failure of others to develop the invention; (iv) licenses showing industry respect for the invention; (v) commercial success; (vi) unexpected results created by the claimed invention; (vii) whether the claimed invention was praised by others in the field; and (vii) skepticism of skilled artisans before the invention. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1368 (Fed. Cir. 2013); *Cross Med. Prods.*, 424 F.3d at 1322–23; *Ormco*, 463 F.3d at 1311. This list is not exhaustive, however, and may also include additional factors related to obviousness or non-obviousness. *Graham*, 383 U.S. at 17–18. Before finding a patent claim invalid for obviousness, a court must consider all of these factors. *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 663 (Fed. Cir. 2000).

39.     "Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success." *Ormco*,

463 F.3d at 1311–12. It is the patentee's burden to demonstrate a nexus between the claimed invention and the secondary considerations. *See, e.g.*, *MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1336 (Fed. Cir. 2014). "When a patentee can demonstrate commercial success, usually shown by significant sales in a relevant market, and that the successful product is the invention disclosed and claimed in the patent, it is presumed that the commercial success is due to the patented invention." *J.T. Eaton & Co. v. Atlantic Paste & Glue Co.,* 106 F.3d 1563, 1571 (Fed. Cir. 1997). If the patentee shows that a product embodies a claim at issue, there is a presumption of a nexus between the commercial success of that product and the patented invention. *PPC Broadband, Inc. v. Corning Optical Communications RF LLC*, 815 F.3d 734, 747 (Fed. Cir. 2016). If, however, "the commercial success is due to an unclaimed feature of the device," or if "the feature that creates the commercial success was known in the prior art," the success is irrelevant and not pertinent. *Ormco*, 463 F.3d at 1312; *see also PPC*, 815 F.3d at 747 (citing *Ormco* as holding "that evidence that commercial success was due to unclaimed or non-novel features of device 'clearly rebuts the presumption that [the product's] success was due to the claimed and novel features.'"); *WBIP*, 829 F. 3d at 1329 (holding same).  However, once a presumption of nexus has been established, the patent challenger must prove that the commercial success is solely due to something else.  *Ecolochem, Inc. v. Southern California Edison Co.*, 227 F.3d 1361, 1378 (Fed. Cir. 2000).

### C.    Enforceability

40.    Whether Natus can prove by clear and convincing evidence that the '532 patent is not enforceable due to inequitable conduct by individuals involved in the prosecution of the '532 patent before the U.S. Patent and Trademark Office.

41.     Inequitable conduct is not an issue for the jury, but rather is an issue for the Court to decide. *Paragon Podiatry Lab. v. KLM Labs.,* 984 F.2d 1182, 1190 (Fed. Cir. 1993) (citing *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1211-13 (Fed. Cir. 1987)).

42.      The USPTO requires applicants under 37 C.F.R. § 1.56 to disclose all information material to patentability so that "the Office is aware of and [can evaluate] the teachings" of such information.

43.     To establish its inequitable conduct defense and unenforceability of the '532 patent, Natus must prove by clear and convincing evidence that 1) a person "misrepresented or omitted material information" before the USPTO, and 2) did so "with the specific intent to deceive the PTO."  *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (en banc).

## 1.     Intent to Deceive

44.     When the accused infringer claims the applicant has withheld information from the USPTO, the accused infringer must show "that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Therasense*, 649 F.3d at 1290.  The applicant's intent to deceive must be "the single most reasonable inference able to be drawn from the evidence." *Id.; see also Star Scientific, Inc. v. R.J. Reynolds Tobacco Co*., 537 F.3d 1357, 1366-67 (Fed. Cir. 2008); *Fujitsu Ltd. v. Tellabs Operations, Inc.*, No. 09 C 4530, 2012 WL 3133548, at *3 (N.D. Ill. July 31, 2012) ("Because more than one reasonable inference may be drawn from the undisputed facts before the court, Tellabs cannot prevail on its inequitable conduct defense with respect to the *Sugaya* reference."). "Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Therasense*, 649 F.3d at 1290.

45.     The Federal Circuit has explained that "the evidence 'must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances'" and that "when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Therasense,* 649 F.3d at 1290 (emphasis in original). "Because the party alleging inequitable conduct bears the burden of proof, the 'patentee need not offer any good faith explanation unless the accused infringer first…prove[s] a threshold level of intent to deceive by clear and convincing evidence." *Therasense*, 649 F.3d at 1291 (quoting *Star Scientific*, 537 F.3d at 1368). "Partial disclosure of material information about the prior art to the PTO cannot absolve a patentee of intent if the disclosure is intentionally selective." *Amer. Calcar Inc. v. Amer. Honda Motor Co.*, 768 F.3d 1185, 1190 (Fed. Cir. 2014) (holding intent to deceive and inequitable conduct for failing to properly disclose material references, even though some information about those references was disclosed as prior art in the specification). But "[t]he absence of a good faith explanation for withholding a material reference does not, by itself, prove intent to deceive." *Therasense*, 649 F.3d at 1291.

46.     When an applicant believes a reference to be cumulative of another reference that was before the PTO, he cannot form the requisite intent to deceive required under the inequitable conduct analysis. *See*, *e.g.*, *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1379 (Fed. Cir. 2010) ("At best, the failure to disclose what was believed to be cumulative information was a mistake or exercise of poor judgment that does not support an inference of intent to deceive."); *see also Precision Fabrics Grp., Inc. v. Tietex Int'l, Ltd.*, No. 1:13-cv-645, 2016 WL 6839394, at *11 (M.D.N.C. Nov. 21, 2016) ("Intent to deceive cannot be inferred simply from the decision to withhold [information] where the reasons given for the withholding are plausible.") (quoting *Astrazeneca Pharm, LP v. Teva Pharm, USA, Inc.*, 583 F.3d 766, 777 (Fed. Cir. 2009)).

## 2.     Materiality

47.     A reference is material only "if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Therasense*, 649 F.3d at 1291. Submission of a reference to the PTO in an Information Disclosure Statement is not an admission that the submitted reference is material. *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 816 F.3d 788, 803 n.8 (Fed. Cir. 2016) (citing *Abbott Labs. v. Baxter Pharm. Prods., Inc.*, 334 F.3d 1274, 1279 (Fed. Cir. 2003)).  An undisclosed reference that is cumulative of prior art submitted to the PTO also cannot support a finding of inequitable conduct because the cumulative prior art negates a finding of materiality.  *See Technology Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1337 (Fed. Cir. 2008).

# EXHIBIT B

**NATUS' STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED**

1. The parties identify the following issues of law that remain to be litigated, along with a citation of authorities relied upon by each party.  If any issue identified in the parties' statement of issues of law is more properly considered an issue of fact, it should be so considered.

### A.    Issues on which Plaintiff Nox Medical Bears the Burden of Proof

### 1.  Willful Infringement

2. Whether Nox Medical has met its burden to prove by a preponderance of the evidence that Natus willfully infringed any of claims 1 and 4-9 of the '532 patent.

3. Willful infringement is an issue of fact for the jury. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016). Nox Medical has the burden to prove willfulness, along with entitlement to enhanced damages, by a preponderance of the evidence. *Halo Electronics, Inc. v. Pulse Electronics*, 136 S. Ct. 1923, 1934 (2016). Knowledge of the asserted patent is a prerequisite to willfulness, *WBIP*, 829 F.3d at 1341; but a court may not award enhanced damages simply because the evidence shows the infringer knew about the patent, without more, *Halo*, 136 S.Ct. at 1936 (Breyer, J., concurring).

4. Willfulness is assessed "at the time of the challenged conduct." *Halo*, 136 S.Ct. at 1933. "[I]n ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007) (en banc), *abrogated on other grounds by Halo Elecs. v. Pulse Elecs.*, — U.S. —, 136 S.Ct. 1923 (2016). Where a product found to be infringing at trial had been manufactured before the patent-in-suit issued, the infringer cannot be held liable for infringement, and thus not for willful infringement, for the period before the patent issued. *Gustafson v. Intersystems Indus.*, 897 F.2d 508, 510–11 (Fed. Cir. 1990); *State Industries v. A.O. Smith Corp.*, 751 F.2d 1226, 1234-38 (Fed. Cir. 1985). "To

willfully infringe a *patent*, the patent must exist and one must have knowledge of it." *State Indus.*, 751 F.2d at 1236.

5.  Conduct that is "willful, wanton, malicious, bad faith, deliberate, consciously wrongful, or flagrant" may justify the award of enhanced damages. *Halo*, 136 S. Ct. at 1932. Enhanced damages, however, "are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious behavior." *Halo*, 136 S. Ct. at 1932; *see also id.* at 1934 ("[S]uch punishment should generally be reserved for egregious cases typified by willful misconduct."). "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id.* at 1933. An example of subjective willfulness is a defendant who acted "despite a risk of infringement that was 'either known or so obvious that it should have been known to the accused infringer . . . .'" *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016) (citation omitted), *cert. granted on other grounds*, 138 S.Ct. 734 (2018); *Stryker Corp. v. Zimmer, Inc.*, 837 F.3d 1268, 1279 (Fed. Cir. 2016); *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017); *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Group*, 879 F.3d 1332, 1353 (Fed. Cir. 2018). When exercising its discretion, district courts should "'tak[e] into account the particular circumstances of each case,' and consider all relevant factors in determining whether to award enhanced damages." *WesternGeco L.L.C.*, 837 F.3d at 1363 (citing *Halo*, 136 S.Ct. at 1933-34). Accordingly, the objective reasonableness of an accused infringer's positions can be a relevant factor for a district court to consider when exercising its discretion. 837 F.3d at 1363.

## 2.  Damages

6.  Whether Nox Medical has met its burden to prove by a preponderance of the evidence that it is entitled to a damages award, and if so, the amount of that award.

7.  There are three primary damages issues. First, determining the amount of compensation, in the form of lost profits and/or a reasonable royalty, to which Nox Medical is entitled should the '532 patent be found valid and enforceable. Second, the amount of enhanced damages to which Nox Medical is entitled should the jury find that Natus willfully infringed the '532 patent. Lastly, whether the preponderance of the evidence shows that this is an exceptional case for which Natus must pay Nox Medical's attorneys' fees as provided by 35 U.S.C. § 285.

8.  35 U.S.C § 284 states in relevant part as follows:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer. . . . The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances.

9.  The purpose of compensatory damages is to make the patent owner "whole" or "fully compensate" him for the infringement, such that the patent owner is restored to the financial position he would have been in had the infringement not occurred. *Lucent Techs., v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc).

10. "[T]he amount of a prevailing party's damages is a finding of fact on which the plaintiff bears the burden of proof by a preponderance of the evidence." *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991). Depending on the circumstances of the case, compensatory damages may take the form of (1) lost profits, (2) an established royalty, or (3) a reasonable royalty. *Id.* at 1167 & n.5; *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983). As a general matter, a "patentee may seek to recover

actual damages, usually, the amount of profits actually lost, or if unable to prove actual damages, the patentee is entitled to a reasonable royalty." *SmithKline*, 926 F.2d at 1164.

### 3. Reasonable Royalty

11. In the event that the assert claims of the '532 patent are held valid and enforceable , Nox Medical may be awarded "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284.  The determination of a reasonable royalty "necessarily involves an element of approximation and uncertainty." *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009) (citing *Unisplay, S.A. v. Am. Elec. Sign Co., Inc.*, 69 F.3d 512, 517 (Fed. Cir. 1995)).

12. The common approach to determining a reasonable royalty is to consider the outcome of a hypothetical arms-length negotiation between a willing licensor and licensee just before infringement began. *Lucent Techs.*, 580 F.3d at 1324–25. In other words, the reasonable royalty is "the royalty upon which the parties would have agreed had they successfully negotiated an agreement" at that time. *Id.* But when the presentation of evidence is delayed by years, later events can also be considered under the "Book of Wisdom" approach. "[T]he Supreme Court recognized that factual developments occurring after the date of the hypothetical negotiation can inform the damages calculation." *Id.* at 1333 (citing *Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 698 (1933) (contrasting the circumstances when a "trial follows quickly after the issue of the patent" with "a different situation" when "years have gone by before the evidence is offered.")). And Federal Circuit "case law affirms the availability of post-infringement evidence as probative in certain circumstances." *Id.* "[P]arties in a hypothetical negotiation are presumed to have perfect knowledge of all facts and

circumstances, some of which were unknown during the actual patent negotiations and acquisition." *Intellectual Ventures I LLC v. Check Point Software*, C.A. Nos. 10-1067-LPS, 12-1581-LPS, D.I. 579 at *11 (D. Del. Mar. 31, 2014) (citing *Mobil Oil Corp. v. Amoco Chems. Corp.*, 915 F. Supp. 1333, 1353 (D. Del. 1994)). In applying the construct of the hypothetical negotiation, the fact-finder must assume that the parties know that the patents-in-suit are valid, enforceable, and infringed. *Lucent Techs.,* 580 F.3d at 1324–25.

13. Courts consider a variety of factors in determining the reasonable royalty that the parties would have agreed to in the "hypothetical negotiation," outlined in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). These include the following:

1. The royalties received by the patentee for the licensing of the patents-in-suit, proving or tending to prove an established royalty;

2. The rates paid by the licensee for the use of other patents comparable to the patents-in-suit;

3. The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

4. The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly;

5. The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter;

6. The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as the generator of sales of his non-patented items, and the extent of such derivative or convoyed sales;

7. The duration of the patent and the term of the license;

8. The established profitability of the product made under the patents, its commercial success, and its current popularity;

9. The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

11. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use;

12. The portion of the profit or of the selling price that may be customary in the particular business or incomparable business to allow for the use of the invention or analogous inventions;

13. The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

14. The opinion and testimony of qualified experts;

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

*Id.* at 1120. The Federal Circuit has approved the use of the *Georgia-Pacific* factors in numerous decisions. *See, e.g.*, *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1372 (Fed. Cir. 2008).

14. The *Georgia-Pacific* factors are non-exclusive. *Energy Transp. Gp., Inc. v. Sonic Innovations, Inc.*, C.A. No. 05-422 (GMS), 2011 WL 2222066, at *21 n.29 (D. Del. June 7, 2011). One additional factor that may be considered is the availability and cost of non-infringing alternatives to the patented invention.  *See MobileMedia Ideas LLC v. Apple Inc.*, 209 F. Supp. 3d 756, 766 (D. Del. 2016) (citing *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571 (Fed. Cir. 1996).)

15. As described in *Georgia-Pacific*, there is no mathematical formula for determining reasonable royalties:

> [A] multiplicity of inter-penetrating factors bear[s] upon the amount of a reasonable royalty. But there is no formula by which these factors can be rated precisely in the order of their relative importance or by which their economic significance can be automatically transduced into their pecuniary equivalent. . . . In discharging its responsibility as fact finder, the Court has attempted to exercise a discriminating judgment reflecting its ultimate appraisal of all pertinent factors in the context of the credible evidence.

*Georgia-Pacific*, 318 F. Supp. at 1120–21. "Any reasonable royalty analysis 'necessarily involves an element of approximation and uncertainty.'" *Lucent Techs.*, 580 F.3d at 1325 (quoting *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995)).

16. A patentee is also entitled to an accounting of damages for post-verdict sales of products found to infringe the patents-in-suit. In patent cases, post-verdict accounting is standard practice. *See Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 2001 U.S. Dist. LEXIS 23416, *52-65 (D. Nev. Aug. 1, 2001) (describing numerous instances of accountings in patent cases); *see also, e.g.*, *Edwards Lifesciences AG v. CoreValve, Inc.*, No. 08–91–GMS, 2011 WL 446203, at *16 (D. Del. Feb. 7, 2011), *aff'd in part, remanded in part*, 699 F.3d 1305 (Fed. Cir. 2012) ("The court will grant . . . an accounting of the number of [infringing] devices made, used, sold . . . through the date of the order accompanying this memorandum."). Courts in this District have permitted additional discovery to properly complete a post-trial accounting of damages. *TruePosition Inc. v. Andrew Corp.*, No. Civ. 05–747–SLR, 2009 WL 1651042, at *1 n. 2 (D. Del. June 10, 2009), *aff'd*, 389 F. App'x 1000 (Fed. Cir. 2010).

## 4.  Enhanced Damages

17. Additionally, the "court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284.  "That language contains no explicit limit or condition, and we have emphasized that the word 'may' clearly connotes discretion." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1931 (2016) (internal citations omitted).

18. "Awards of enhanced damages under the Patent Act over the past 180 years establish that they are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior. The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* at 1932. "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id.* at 1933.  Willfulness is assessed "at the time of the challenged conduct." *Id.*

19.  "Section 284 allows district courts to punish the full range of culpable behavior. Yet none of this is to say that enhanced damages must follow a finding of egregious misconduct. As with any exercise of discretion, courts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount. Section 284 permits district courts to exercise their discretion in a manner free from the inelastic constraints of the *Seagate* test. Consistent with nearly two centuries of enhanced damages under patent law, however, such punishment should generally be reserved for egregious cases typified by willful misconduct." *Id.* at 1933–34. "Section 284 gives district courts discretion in meting out enhanced damages. It 'commits the determination' whether enhanced damages are appropriate 'to the discretion of the district court ....'" *Id.* at 1934. "[P]atent-infringement litigation has always been governed by a preponderance of the evidence standard. Enhanced damages are no exception." *Id.*

### 5.  Attorneys' Fees

20. Section 285 states that "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "This text is patently clear. It imposes one and only one

constraint on district courts' discretion to award attorney's fees in patent litigation: The power

is reserved for 'exceptional' cases." *Octane Fitness, LLC v. ICON Health & Fitness*, Inc., 134

S. Ct. 1749, 1755–56 (2014). An "'exceptional' case is simply one that stands out from others

with respect to the substantive strength of a party's litigating position (considering both the

governing law and the facts of the case) or the unreasonable manner in which the case was

litigated." *Id.* at 1756. A "district court may award fees in the rare case in which a party's

unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so

'exceptional' as to justify an award of fees." *Id.* at 1757. Fees can be awarded for a portion of

a case that the Court finds to be "exceptional." *Inventor Holdings, LLC v. Bed Bath & Beyond,*

*Inc.*, 876 F.3d 1372, 1377-80 (Fed. Cir. 2017).

21. Entitlement to fees under Section 285 is established by the preponderance of the evidence.

*Octane*, 134 S.Ct. at 1758.

### 6.   Costs and Interest

22. Upon a finding of patent infringement, a court should award the patentee costs and pretrial

interest. Federal Rule of Civil Procedure 54 states "[u]nless a federal statute, these rules, or a

court order provides otherwise, costs—other than attorney's fees—should be allowed to the

prevailing party." Pursuant to Federal Rule of Civil Procedure 54(d), costs should be awarded

to the prevailing party. Under 28 U.S.C. § 1920, the prevailing party may recover the following

costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded

transcripts necessarily obtained for use in this case; (3) fees and disbursements for printing and

witnesses; (4) fees for exemplification and the costs of making copies of any materials where

the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923;

and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828.

23. "Prejudgment interest shall ordinarily be awarded absent some justification for withholding such an award." *Nickson Indus., Inc. v. Rol Mfg. Co., Ltd.*, 847 F.2d 795, 800 (Fed. Cir. 1988) (citing *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983)). "[P]rejudgment interest should be awarded from the date of infringement to the date of judgment." *Id.* (citing *General Motors*, 461 U.S. at 656).

24. Section 1961(a) of Title 28 of the United States Code states that "interest shall be allowed on any money judgment in a civil case recovered in a district court." "Post-judgment interest is awarded on monetary judgments recovered in all civil cases," including ones for patent infringement. *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999); *see also nCUBE Corp. v. SeaChange Int'l, Inc.*, 313 F. Supp. 2d 361, 392 (D. Del. 2004), *aff'd*, 436 F.3d 1317 (Fed. Cir. 2006) (awarding post-judgment interest to patentee for defendant's willful infringement); *TruePosition Inc. v. Andrew Corp.*, 611 F. Supp. 2d 400, 414 (D. Del. 2009), *aff'd*, 389 F. App'x 1000 (Fed. Cir. 2010) (awarding post-judgment interest for patent infringement). Post-judgment interest is governed by regional circuit law. *Id.* at 1348. In the Third Circuit, interest begins to accrue on the date of the entry of judgment. *Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 97 (3d Cir. 1993).

### 7.  Permanent Injunction

25. In the event the claims of the '532 patent are held valid and enforceable, Nox Medical may seek injunctive relief under section 283 of Title 35 of the United States Code, which allows the court to grant Nox Medical injunctive relief in accordance with the principles of equity on such terms as the court deems reasonable. To demonstrate it is entitled to a permanent

injunction, a patentee must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

### 8.   IPR Estoppel and Related Matters

*26.* A petitioner in an *inter partes* review proceeding that results in a final written decision may be estopped from asserting that a patent claim is invalid based on any ground of invalidity that the petitioner raised or reasonably could have raised during the *inter partes* review. 35 U.S.C. § 315 (e)(2). Such estoppel provisions clearly do not relate to invalidity grounds based on physical prior art, because *inter partes* review proceeding are limited to invalidity "only on the basis of prior art consisting of patents or printed publications." *See* 35 U.S.C. § 311(b). Moreover, when the Patent Trial and Appeals Board does not institute an IPR or decides not to institute an IPR on additional grounds out of concern for administrative efficiency, estoppel does not attach to those grounds. *Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.*, 817 F.3d 1293, 1300 (Fed. Cir. 2016), *cert. denied*, 137 S. Ct. 374 (2016); *HP Inc. v. MPHJ Tech. Inv., LLC*, 817 F.3d 1339, 1347 (Fed. Cir. 2016); *Intellectual Ventures I LLC v. Toshiba Corp.*, 2016 WL 7341713, at *12-13 (D. Del. Dec. 19, 2016). This Court has recognized that *Shaw* precludes estoppel even for grounds that could have been raised, but were not, in a petition for IPR. *Intellectual Ventures I*, 2016 WL 7341713, at *13.

27. Final written decisions by the PTAB that have been appealed *and* affirmed by the Federal Circuit may give rise to collateral estoppel in patent cases. *MaxLinear, Inc. v. CF Crespe LLC*, 880 F.3d 1373, 1376 (Fed. Cir. 2018). The Third Circuit recognizes four standard requirements

11

for the application of collateral estoppel or issue preclusion: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action.'" *Henglein v. Colt Indus. Operating Corp.,* 260 F.3d 201, 209 (3d Cir. 2001) (quoting *Raytech Corp. v. White,* 54 F.3d 187, 190 (3d Cir. 1995). The requirement that a preclusive finding must have been necessary to a judgment is rooted in principles of fairness. *Jean Alexander Cosmetics, Inc. v. L'OREAL USA*, 458 F. 3d 244, 250 (3d Cir. 2006). Courts and administrative bodies may reach different results when different standards are applied to similar (but not exactly the same) evidence. *Acorda Therapeutics, Inc. v. Roxane Labs., Inc.*, No. 14-882, 2017 WL 1199767, at *41 n.1 (D. Del. Mar. 31, 2017) (holding claims invalid as obvious even though the PTAB had reached the opposite conclusion, noting that "two of the three references the PTAB was considering are not part of the trial record"). If an administrative body construes a term that the District Court has not construed, or construes that term differently, and the construction of that term bears on an issue central to the earlier decision it cannot be said that the "*identical issue* was previously adjudicated."

### B.   Issues on which Defendant Natus Bears the Burden of Proof

#### 1.   Invalidity

28. Whether Natus can prove by clear and convincing evidence that each of the Asserted Claims of the '532 patent is invalid.

29. All patents are presumed valid. *Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*, 719 F.3d 1346, 1352 (Fed. Cir. 2013) ("It is black-letter law that a patent is presumed valid."). Natus bears the burden of proving its invalidity defenses by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 131 S. Ct. 2238, 2242 (2011); *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003). Natus bears this burden

12

throughout the entirety of the litigation. *Novo Nordisk*, 719 F.3d at 1352 ("[B]ecause the presumption of validity remains intact . . . throughout the litigation, the burden of persuasion never shifts to the patentee . . . .").

## 2. Obviousness under 35 U.S.C. § 103

30. A patent is invalid for obviousness under § 103 "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103.

31. The question of obviousness is a legal determination based on underlying facts, and the "ultimate judgment of obviousness is a legal determination." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 426–27 (2007) (citing *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17–18 (1966)). The underlying facts include: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) any objective indicators of non-obviousness, more commonly termed secondary considerations. *Graham*, 383 U.S. at 17–18. The obviousness analysis is not to "be confined by a formalistic conception of the words teaching, suggestion, and motivation, or by overemphasis on the importance of published articles and the explicit content of issued patents." *KSR*, 550 U.S. 419. "An obviousness determination is not the result of a rigid formula disassociated from the consideration of the facts of a case." *Leapfrog Enterprises, Inc. v. Fisher-Price Inc.*, 485 F.3d 1157, 1161 (Fed. Cir. 2007) ("Indeed, the common sense of those skilled in the art demonstrates why some combinations would have been obvious where others would not."). In determining whether "a patent claim is obvious, neither the particular motivation nor the avowed purpose of the patentee controls. What matters is the objective

reach of the claim. If the claim extends to what is obvious, it is invalid under § 103." *KSR*, 550 U.S. 419.

32. To show that a claim is invalid for obviousness, all elements of that claim must be accounted for. *In re Royka*, 490 F.2d 981, 985 (CCPA 1974). Nevertheless, "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR.*, 550 U.S. at 418. "Although common sense directs one to look with care at a patent application that claims as innovation the combination of two known devices according to their established functions, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does. This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known." *Id.* at 418–19. "When considering obviousness of a combination of known elements, the operative question is [however] 'whether the improvement is more than the predictable use of prior art elements according to their established functions.'" MPEP § 2141 (quoting *KSR*, 550 U.S. at 417). Moreover, it is "not necessary that the inventions of the references be physically combinable to render obvious the invention under review." *In re Sneed*, 710 F.2d 1544, 1550 (Fed. Cir. 1983). The criterion is "not whether the references could be physically combined but whether the claimed inventions are rendered obvious by the teachings of the prior art as a whole." *In re Etter*, 756 F.2d 852, 859 (Fed. Cir. 1985); *see also Allied Erecting and Dismantling Co. v. Genesis Attachments, LLC*, 825 F.3d 1373, 1381 (Fed. Cir. 2016).

33. While an "expansive and flexible approach" should be used in evaluating obviousness, a conclusion of obviousness "'cannot be sustained by mere conclusory statements; instead, there

must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness.'" *KSR*, 550 U.S. at 418 (quoting *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006)). The analysis, however, "need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *KSR.*, 550 U.S. at 418.

34. A patent claim can be found obvious, simply by showing "that the combination of elements was 'obvious to try.'" *KSR*, 550 U.S. at 421 (internal citation omitted). For example, "[w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp." *KSR*, 550 U.S. at 421. "If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense," and is obvious under § 103. *Id.*  Patent claims "can be proved obvious . . . by noting that there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims." *Id.* at 419-420.

35.  "What a prior art reference teaches and whether a skilled artisan would have been motivated to combine references are questions of fact." *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1051 (Fed. Cir. 2016) (citing *Par Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1196–97 (Fed. Cir. 2014); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1303 (Fed. Cir. 2010)).  "[T]here is no requirement that the prior art contain an express suggestion to combine known elements to achieve the claimed invention; rather "the suggestion to combine may come *from* the prior art, as filtered through the knowledge of one skilled in the art." *Motorola, Inc. v. Interdigital Technology Corp.*, 121 F.

3d 1461, 1472 (Fed. Cir. 1997). "An implicit motivation to combine exists not only when a suggestion may be gleaned from the prior art as a whole, but when the 'improvement' is technology-independent and the combination of references results in a product or process that is more desirable, for example because it is stronger, cheaper, cleaner, faster, lighter, smaller, more durable, or more efficient." *DyStar Textilfarben GmbH & Co. v. CH Patrick Co.*, 464 F. 3d 1356, 1367 (Fed. Cir. 2006). In such situations a motivation to combine is "common-sensical," and exists "even absent any hint of suggestion in the references themselves," with the proper inquiry being "whether the ordinary artisan possesses knowledge and skills rendering him *capable* of combining the prior art references." *Id.* (emphasis in original).

36. The person of ordinary skill in the art is a "hypothetical person who is presumed to be aware of all the pertinent prior art." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985). "A person of ordinary skill is also a person of ordinary creativity, not an automaton." *KSR*, 550 U.S. at 421. Assessment of obviousness "*requires* [the] consideration of common knowledge and common sense" possessed by a person of ordinary skill. *DyStar*, 464 F. 3d at 1367 (Fed. Cir. 2006); *see also KSR*, 550 U.S. 421 (quoting same with approval).

37. "Obviousness cannot be based on the hindsight combination of components selectively culled from the prior art to fit the parameters of the patented invention." *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1352 (Fed. Cir. 2013); *In re NTP, Inc.*, 654 F.3d 1279, 1299 (Fed. Cir. 2011) ("Care must be taken to avoid hindsight reconstruction by using 'the patent in suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit.'"). "[W]hen the prior art teaches away from combining certain known elements, discovery of a successful means of combining them is more likely to be nonobvious." *KSR*, 550 U.S at 416. "A reference

may be said to teach away when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant. The degree of teaching away will of course depend on the particular facts; in general, a reference will teach away if it suggests that the line of development flowing from the reference's disclosure is unlikely to be productive of the result sought by the applicant." *In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994).

38. The patent holder "may rebut a prima facie showing of obviousness with objective indicia of nonobviousness." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1305 (Fed. Cir. 2010) ("If all of the factual disputes regarding the objective evidence resolve in favor of [plaintiff], it has presented a strong basis for rebutting the prima facie case [of obviousness]."). However, "[e]vidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success." *Ormco*, 463 F.3d at 1311–12. It is the patentee's burden to demonstrate a nexus between the claimed invention and the secondary considerations. *See, e.g.*, *MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1336 (Fed. Cir. 2014). "When a patentee can demonstrate commercial success, usually shown by significant sales in a relevant market, and that the successful product is the invention disclosed and claimed in the patent, it is presumed that the commercial success is due to the patented invention." *J.T. Eaton & Co. v. Atlantic Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997). If the patentee shows that a product embodies a claim at issue, there is a presumption of a nexus between the commercial success of that product and the patented invention. *PPC Broadband, Inc. v. Corning Optical Communications RF LLC*, 815 F.3d 734, 747 (Fed. Cir. 2016). If, however, "the commercial

success is due to an unclaimed feature of the device," or if "the feature that creates the commercial success was known in the prior art," the success is irrelevant and not pertinent. *Ormco*, 463 F.3d at 1312; *see also PPC*, 815 F.3d at 747 (citing *Ormco* as holding "that evidence that commercial success was due to unclaimed or non-novel features of device 'clearly rebuts the presumption that [the product's] success was due to the claimed and novel features.'"); *WBIP*, 829 F. 3d at 1329 (holding same).

39. Secondary considerations, or objective indicia of non-obviousness include: (i) copying; (ii) long felt but unresolved need; (iii) failure of others to develop the invention; (iv) licenses showing industry respect for the invention; (v) commercial success; (vi) unexpected results created by the claimed invention; (vii) whether the claimed invention was praised by others in the field; and (vii) skepticism of skilled artisans before the invention. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1368 (Fed. Cir. 2013); *Cross Med. Prods.*, 424 F.3d at 1322–23; *Ormco*, 463 F.3d at 1311. This list is not exhaustive, however, and may also include additional factors related to obviousness or non-obviousness. *Graham*, 383 U.S. at 17–18. Before finding a patent claim invalid for obviousness, a court must consider all of these factors. *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 663 (Fed. Cir. 2000). Regardless, "when a claimed invention represents no more than the predictable use of prior art elements according to established functions, as here, evidence of secondary indicia are frequently deemed inadequate to establish non-obviousness." *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F. 3d 1333, 1344 (Fed. Cir. 2013); *see also Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*, slip op. 15-2082 at 18-19 (Fed. Cir. Sep. 5, 2017).

40. There is nothing unlawful about copying an unpatented (or not yet patented) product. *See Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111 at 122 (1938) ("Sharing in the goodwill of an

article unprotected by patent . . . is the exercise of a right possessed by all . . . ."). Moreover, "[i]t is simplistic to assert that copying per se should bolster the validity of a patent." *Cable Elec. Products, Inc. v. Genmark, Inc.*, 770 F. 2d 1015, 1028 (Fed. Cir. 1985); *see also Sparton Corp. v. U.S.*, 89 Fed. Cl. 196, 242 (2009) (alleged copying did not establish non-obviousness; instead, it evidenced accused infringer's belief that it could not be sued for infringement).

### 3.   Enforceability

41. Whether Natus can prove by clear and convincing evidence that the '532 patent is not enforceable due to inequitable conduct by individuals involved in the prosecution of the '532 patent before the U.S. Patent and Trademark Office.

42. Inequitable conduct is not an issue for the jury, but rather is an issue for the Court to decide. *Paragon Podiatry Lab. v. KLM Labs.,* 984 F.2d 1182, 1190 (Fed. Cir. 1993) (citing *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1211-13 (Fed. Cir. 1987)). "Inequitable conduct is an offense against the PTO and the public. . . . [T]he offense deserves its penalty because the processes of the PTO have been transgressed." *Akron Polymer Container Corp.*, 148 F. 3d at 1383 (noting that inequitable conduct most commonly occurs by intentional failure to submit material references or by making false or misleading statements, which subvert the patent prosecution process). The U.S. PTO requires applicants under 37 C.F.R. § 1.56 to disclose all information to material to patentability so that "the Office is aware of and [can evaluate] the teachings" of such information.

43. To establish its inequitable conduct defense and unenforceability of the '532 patent, Natus must prove by clear and convincing evidence that 1) a person "misrepresented or omitted material information" before the USPTO, and 2) did so "with the specific intent to deceive the

PTO." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (en banc).

### (a)  Intent to Deceive

44. When the accused infringer claims the applicant has withheld information from the USPTO, the accused infringer must show "that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Therasense*, 649 F.3d at 1290.  The applicant's intent to deceive must be "the single most reasonable inference able to be drawn from the evidence." *Id.; see also Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366-67 (Fed. Cir. 2008); *Fujitsu Ltd. v. Tellabs Operations, Inc.*, No. 09 C 4530, 2012 WL 3133548, at *3 (N.D. Ill. July 31, 2012) ("Because more than one reasonable inference may be drawn from the undisputed facts before the court, Tellabs cannot prevail on its inequitable conduct defense with respect to the *Sugaya* reference."). "Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Therasense*, 649 F.3d at 1290.

45. The Federal Circuit has explained that "the evidence 'must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances'" and that "when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Therasense,* 649 F.3d at 1290 (emphasis in original). "Because the party alleging inequitable conduct bears the burden of proof, the 'patentee need not offer any good faith explanation unless the accused infringer first…prove[s] a threshold level of intent to deceive by clear and convincing evidence." *Therasense*, 649 F.3d at 1291 (quoting *Star Scientific*, 537 F.3d at 1368). "The absence of a good faith explanation for withholding a material reference does not, by itself, prove intent to deceive." *Id*. "Partial disclosure of material information about the prior art to the PTO cannot absolve a patentee of intent if the disclosure is intentionally selective." *Amer.*

*Calcar Inc. v. Amer. Honda Motor Co.*, 768 F.3d 1185, 1190 (Fed. Cir. 2014) (holding intent to deceive and inequitable conduct for failing to properly disclose material references, even though some information about those references was disclosed as prior art in the specification).

46. When an applicant believes a reference to be cumulative of another reference that was before the PTO, he cannot form the requisite intent to deceive required under the inequitable conduct analysis. *See*, *e.g.*, *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1379 (Fed. Cir. 2010) ("At best, the failure to disclose what was believed to be cumulative information was a mistake or exercise of poor judgment that does not support an inference of intent to deceive."); *see also Precision Fabrics Grp., Inc. v. Tietex Int'l, Ltd.*, No. 1:13-cv-645, 2016 WL 6839394, at *11 (M.D.N.C. Nov. 21, 2016) ("Intent to deceive cannot be inferred simply from the decision to withhold [information] where the reasons given for the withholding are plausible.") (quoting *Astrazeneca Pharm, LP v. Teva Pharm, USA, Inc.*, 583 F.3d 766, 777 (Fed. Cir. 2009)). An intent to deceive can be found even if PTO rules were technically complied with when such compliance still results in material information being concealed from the PTO. *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 204 F.3d 1368, 1376-77 (Fed. Cir. 2000) (holding applicants cannot "selectively disclose what they know as long as what they selected for disclosure was accurate, [because] applicants could easily mislead the examiner by explaining all but one of the relevant elements."); *see also Amer. Calcar*, 768 F.3d at 1191 (affirming that the disclosure of a reference while withholding its relevant details demonstrates "a deliberative process, not an accident or mistake" that supports a finding of intent to deceive the PTO.).

### (b) Materiality

47. A reference is material only "if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Therasense*, 649 F.3d at 1291. Submission of a reference to the PTO

21

in an Information Disclosure Statement is not an admission that the submitted reference is material. *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 816 F.3d 788, 803 n.8 (Fed. Cir. 2016) (citing *Abbott Labs. v. Baxter Pharm. Prods., Inc.*, 334 F.3d 1274, 1279 (Fed. Cir. 2003)).   An undisclosed reference that is cumulative of prior art submitted to the PTO also cannot support a finding of inequitable conduct because the cumulative prior art negates a finding of materiality.  *See Technology Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1337 (Fed. Cir. 2008). Under 35 U.S.C. § 102(e) a prior pending patent application by the same applicant cannot be considered prior art to the later application. 35 U.S.C. § 102(e) ("A person shall be entitled to a patent unless — (e) the invention was described in a patent granted on an application for patent by *another* filed in the United States before the invention thereof by the applicant for patent . . .") (emphasis added); *see also In re Land*, 368 F.2d 866, 875 (C.C.P.A. 1966) (holding "'another' clearly means another than 'the applicant[s].'"). In other words, the inventive entity is the same and ineligible as prior art under 35 U.S.C. § 102(e), unless there are different named inventors. MPEP 2136.04 [R-8.2017]; *In re Matthews*, 408 F. 2d 1393, 1395-96 (C.C.P.A. 1969). A pending application naming the same inventor is therefore not prior art to the later application, such that its disclosure cannot render other disclosures of the same subject matter cumulative. *See id*.

# EXHIBIT C

**PLAINTIFFS' EXHIBIT LIST**

| PTX | Document Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| 1 | 2015-08-17 Complaint for Patent Infringement | | | Natus stipulates to authenticity, but objects to the admission of Nox's Complaint into evidence.  If it is admitted, then Natus' answer, affirmative defenses and counterclaim must also be admitted. |
| 2 | U.S. Patent No. 9,059,532 | | | Natus stipulates to admissibility. |
| 3 | Overview NOX versus Natus Online PSG System | NOX00028247 | NOX00028262 | Natus objects to PTX as lacking foundation, and also FRE 402, 403 and 802. |
| 4 | 2016-12-01 Stipulation and Order | | | Natus stipulates to authenticity, but objects to this order being admitted to evidence in front of the jury.   The jury will be instructed as to the parties' stipulation |

| PTX | Document Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | with respect to infringement. |
| 5 | 2015-06-11 Natus Cease and Desist | | | Natus Stipulates to Admissibility of all portions of the letter, but not to the attached 2014-10-21 letter and related attachment, which it objects to based on FRE 402, 403 and 802. |
| 6 | 2014-10-21 Embla Cease and Desist | | | Natus stipulates to authenticity, but objects based on FRE 402, 403, 802. |
| 7 | T. Murphy Deposition Exh. 2 - 2011-11-04 Email chain | NATUS0004508 | NATUS0004511 | Stipulates to authenticity; Objects: FRE 402, 403. |
| 8 | T. Murphy Deposition Exh. 3 – 2012-07-31 Email chain | NATUS0004594 | NATUS0004596 | Stipulate to authenticity; Objects:  FRE 402, 403. |
| 9 | T. Murphy Deposition Exh. 4 – 2012-07-27 Email and attachment | NATUS0007110 | NATUS0007111 | Stipulated to authenticity; objects: FRE 402, 403. |
| 10 | T. Murphy Deposition Exh. 5 – 2012-07-27 Email chain | NATUS0004549 | NATUS0004550 | Stipulated to authenticity; |

| PTX | Document Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | objects: FRE 402, 403. |
| 11 | T. Murphy Deposition Exh. 6 – 2012-07-30 Email chain | NATUS0003447 | NATUS0003448 | Stipulated to authenticity; objects: FRE 402, 403. |
| 12 | T. Murphy Deposition Exh. 7 – 2012-08-15 Email chain and attachment | NATUS0007118 | NATUS0007126 | Stipulated to authenticity; objects: FRE 402, 403. |
| 13 | T. Murphy Deposition Exh. 8 – 2012-08-17 Email chain | NATUS0004614 | NATUS0004615 | Stipulated to authenticity; objects: FRE 402, 403. |
| 14 | T. Murphy Deposition Exh. 9 – 2012-09-02 Email chain | NATUS0004618 | NATUS0004620 | Stipulated to authenticity; objects: FRE 402, 403. |
| 15 | T. Murphy Deposition Exh. 10 – 2012-09-03 Email chain | NATUS0004629 | NATUS0004633 | Stipulated to authenticity; objects: FRE 402, 403. |
| 16 | T. Murphy Deposition Exh. 11 – 2012-09-26 Email chain and attachments | NATUS0010443 | NATUS0010461 | Stipulated to authenticity; objects: FRE 402, 403. |
| 17 | T. Murphy Deposition Exh. 12 – 2012-10-26 Email chain | NATUS0008064 | NATUS0008067 | Stipulated to authenticity; objects: FRE 402, 403. |

| PTX | Document Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| 18 | T. Murphy Deposition Exh. 14 – 2012-11-02 Email chain | NATUS0008074 | NATUS0008075 | Stipulated to authenticity; objects: FRE 402, 403. |
| 19 | T. Murphy Deposition Exh. 15 – 2013-01-16 Email chain | NATUS0005291 | NATUS0005294 | Stipulated to authenticity; objects: FRE 402, 403. |
| 20 | T. Murphy Deposition Exh. 16 – 2013-01-16 Email chain | NATUS0008384 | NATUS0008386 | Stipulated to authenticity; objects: FRE 402, 403. |
| 21 | T. Murphy Deposition Exh. 17 – 2013-03-05 Email chain | NATUS0010284 | NATUS0010286 | Stipulated to authenticity; objects: FRE 402, 403. |
| 22 | T. Murphy Deposition Exh.18 – 2013-03-14 Email chain and attachment | NATUS0002329 | NATUS002332 | Stipulated to authenticity; objects: FRE 402, 403. |
| 23 | T. Murphy Deposition Exh. 22 – 2013-09-26 Email chain | NATUS0007875 | NATUS007878 | Stipulated to authenticity; objects: FRE 402, 403. |
| 24 | T. Murphy Deposition Exh. 25 – 2014-02-12 Email chain | NATUS0009018 | NATUS009019 | Stipulated to authenticity; objects: FRE 402, 403. |
| 25 | T. Murphy Deposition Exh. 26 – 2014-02-28 Email chain | NATUS0009023 | | Stipulated to authenticity; |

| PTX | Document Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | objects: FRE 402, 403. |
| 26 | T. Murphy Deposition Exh. 27 – 2014-03-13 Email chain | NATUS0008714 | NATUS008716 | Stipulated to authenticity; objects: FRE 402, 403. |
| 27 | T. Murphy Deposition Exh. 28 – 2014-05-01 Email chain | NATUS0009053 | NATUS009055 | Stipulated to authenticity; objects: FRE 402, 403. |
| 28 | T. Murphy Deposition Exh. 29 – 2014-11-05 Email chain | NATUS0009064 | NATUS009066 | Stipulated to authenticity; objects: FRE 402, 403. |
| 29 | T. Duffy Deposition Exh. 3 – XactTrace Respiratory Belts document | NATUS0000650 | NATUS00677 | Stipulated to authenticity; objects: FRE 402, 403. |
| 30 | T. Duffy Deposition Exh. 4 – B/W photos | NATUS0000614 | NATUS00624 | Stipulated to authenticity; objects: FRE 402, 403. |
| 31 | T. Duffy Deposition Exh. 10 – 2012-04-05 Email chain | NATUS0007088 | NATUS007089 | Stipulated to authenticity; objects: FRE 402, 403, 802. |
| 32 | T. Duffy Deposition Exh. 14 - 2012-08-02 Email chain | NATUS0007116 | NATUS007117 | Stipulated to authenticity; objects: FRE 402, 403. |

| PTX | Document Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| 33 | T. Duffy Deposition Exh. 21 – Embla document | NATUS0001958 | NATUS001963 | Stipulated to authenticity; objects: FRE 402, 403. |
| 34 | T. Duffy Deposition Exh. 23 – 2012-09-05 Email chain | NATUS0012647 | | Stipulated to authenticity; objects: FRE 402, 403. |
| 35 | T. Duffy Deposition Exh. 28 – 2012-10-11 Email chain and attachment | ALLY_003781 | ALLY_003789 | Stipulated to authenticity; objects: FRE 402, 403. |
| 36 | T. Duffy Deposition Exh. 30 – 2013-01-03 Email chain and attachments | ALLY_003370 | ALLY_003372 | Stipulated to authenticity; objects: FRE 402, 403. |
| 37 | T. Duffy Deposition Exh. 31 – 2013-01-10 Email chain | ALLY_003790 | ALLY_003798 | Stipulated to authenticity; objects: FRE 402, 403. |
| 38 | T. Duffy Deposition Exh. 33 – 2013-01-23 Email chain | ALLY_003759 | ALLY_003776 | Stipulated to authenticity; objects: FRE 402, 403, 802. |
| 39 | T. Duffy Deposition Exh. 41 – 2013-08-12 Email chain and attachment | NATUS0000533 | ALLY_0000534 | Stipulated to authenticity; objects: FRE 402, 403. |
| 40 | T. Duffy Deposition Exh. 43 - 2014-03-12 Email chain | ALLY_004070 | ALLY_004072 | Stipulated to authenticity; |

| PTX | Document Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | objects: FRE 402, 403, 802. |
| 41 | A. Rashid Deposition Exh. 5 – 2012-10-11 Email chain and attachment | ALLY_003781 | ALLY_003789 | Stipulated to authenticity; objects: FRE 402, 403, 802. |
| 42 | A. Rashid Deposition Exh. 21 – 2014-02-12 Email chain and attachments | ALLY_004227 | ALLY_004237 | Stipulated to authenticity; objects: FRE 402, 403, 802. |
| 43 | A. Bhave Deposition Exh. 25 – 2013-03-08 Email chain | NATUS0007865 | NATUS007866 | Stipulated to authenticity; objects: FRE 402, 403. |
| 44 | A. Noll Deposition Exh. 3 – 2014-09-07 Email chain | NATUS0008898 | | Stipulates to authenticity; objects to foundation, FRE 402, 403. |
| 45 | A. Noll Deposition Exh. 4 – 2016-12-07 Email chain | NATUS00019808 | NATUS0019810 | Stipulate to Admissibility. |
| 46 | A. Noll Deposition Exh. 7 – 2012-09-06 Email chain | NATUS0014601 | NATUS0014605 | Stipulated to authenticity; objects: FRE 402, 403. |
| 47 | A. Noll Deposition Exh. 8 – 2014-02-27 Email chain and attachments | NATUS0016227 | NATUS0016229 | Stipulated to authenticity; objects: FRE 402, 403, 802. |
| 48 | A. Noll Deposition Exh. 15 – 2012-12-13 Email chain | NATUS0008101 | NATUS008102 | Stipulated to authenticity; |

| PTX | Document Description | Beg. Bates No. | End Bates No. | Objections |
|-----|---------------------|----------------|---------------|------------|
| | | | | objects: FRE 402, 403. |
| 49 | A. Noll Deposition Exh. 16 – 2014-01-07 Email chain | NATUS0008966 | NATUS008967 | Stipulated to authenticity; objects: FRE 402, 403. |
| 50 | A. Noll Deposition Exh. 17 – 2014-03-07 Email chain | NATUS0008699 | NATUS008700 | Stipulated to authenticity; objects: FRE 402, 403. |
| 51 | Natus 30(b)(6) Deposition Exh. 1-Amended Notice of 30(b)(6) deposition | | | Stipulate to Authenticity; Objects: FRE 402. Deposition Notice not typically entered into evidence. |
| 52 | Natus 30(b)(6) Deposition Exh. 5-2014-03-12 Email chain and attachments | NATUS0025125 | NATUS0025129 | Stipulated to authenticity; objects: FRE 402, 403, 602. |
| 53 | Natus 30(b)(6) Deposition Exh. 8-sales spreadsheet produced in native format | NATUS00000001 | | Stipulated to Admissibility. |
| 54 | Natus 30(b)(6) Deposition Exh. 9-spreadsheet produced in native format | NATUS00002331 | | Stipulated to Admissibility. |
| 55 | Natus 30(b)(6) Deposition Exh. 10-sales spreadsheet produced in native format | NATUS0014282 | | Stipulated to Admissibility. |
| 56 | Natus 30(b)(6) Deposition Exh. 11-spreadsheet US/Canada Natus Neuro Supplies Price List produced in native format | NATUS0003183 | | Stipulated to Admissibility. |
| 57 | Natus 30(b)(6) Deposition Exh. 12-spreadsheet produced in native format | NATUS0017916 | | Stipulated to Admissibility. |

| PTX | Document Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| 58 | Natus 30(b)(6) Deposition Exh. 14 - 2015-03-20 Email chain | NATUS0017895 | NATUS0017897 | Stipulated as to authenticity; Natus objects to lack of foundation. |
| 59 | Natus 30(b)(6) Deposition Exh. 15 – 2015-09-29 Email chain and attachments | NATUS0007904 | NATUS007910 | Stipulated to authenticity; Natus objects to lack of foundation; FRE 802. |
| 60 | Natus 30(b)(6) Deposition Exh. 16 – 2016-05-20 Email chain and attachments | NATUS0019657 | NATUS0019659 | Stipulated to authenticity; FRE 402, 403, 802. |
| 61 | Natus 30(b)(6) Deposition Exh. 17 – 2016-06-24 Email chain | NATUS0024218 | NATUS0024225 | Stipulated to authenticity; Natus objects to lack of foundation; FRE 802. |
| 62 | Natus 30(b)(6) Deposition Exh. 19 – 2016-06-30 email chain | NATUS0024251 | | Stipulated to authenticity; Natus objects to lack of foundation; FRE 802. |
| 63 | Natus 30(b)(6) Deposition Exh. 20 – 2016-07-18 email chain | NATUS0024252 | | Stipulated to authenticity; Natus objects to lack of foundation; FRE 802. |
| 64 | Natus 30(b)(6) Deposition Exh. 21 – 2014-11-13 email chain | NATUS0016738 | NATUS0016743 | Stipulated to authenticity; Natus objects to lack of foundation. |

| PTX | Document Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| 65 | Natus 30(b)(6) Deposition Exh. 22 – 2014-03-12 email chain and attachments | NATUS0014920 | NATUS0014925 | Stipulated to authenticity; Natus objects to lack of foundation; FRE 802. |
| 66 | Natus 30(b)(6) Deposition Exh. 23 – 2014-03-19 email chain | NATUS0016413 | NATUS0016415 | Stipulated to authenticity; FRE 402, 403, 802. |
| 67 | 2009 CareFusion Catalog | NATUS0000744 | NATUS0000881 | Stipulate to admissibility. |
| 68 | 2017-03-17 Expert Report of Scott W. Cragun | | | Stipulate to Authenticity; Objects: FRE 402, 403, 702, 802. Expert reports may be used for impeachment, but are not typically entered into evidence. |
| 69 | 2017-04-21 Expert Rebuttal Report of Alan L. Oslan | | | Stipulate to Authenticity; Objects: FRE 402, 403, 702, 802. Expert reports may be used for impeachment, but are not typically entered into evidence. |

| PTX | Document Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| 70 | 2017-05-19 Expert Rebuttal Report of Scott W. Cragun | | | Stipulate to Authenticity; Objects: FRE 402, 403, 702, 802. Expert reports may be used for impeachment, but are not typically entered into evidence. |
| 71 | 2016-04-19 Email chain and attachments | NOX00047753 | NOX00047755 | Lack of foundation; FRE 802. |
| 72 | 2011-09-15 Natus press release | NATUS0015456 | NATUS0015457 | Stipulated to admissibility. |
| 73 | 2015-08-27 Email string | CAREFUSION000556 | CAREFUSION000558 | FRE 402, 403, 802. |
| 74 | 2015-08-27 Email | CAREFUSION000559 | | Lack of Foundation; FRE 802. |
| 75 | 2016-06-02 Email | CAREFUSION000070 | | Lack of Foundation; FRE 802. |
| 76 | 2016-09-03 Email string | CAREFUSION000072 | CAREFUSION00074 | Lack of Foundation; FRE 802. |
| 77 | 2016-10-12 Email | CAREFUSION000077 | | Lack of Foundation; FRE 802. |

| PTX | Document Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| 78 | 2016-10-25 Email | CAREFUSION000122 | | Lack of Foundation; FRE 802. |
| 79 | 2016-11-29 Email string | CAREFUSION000156 | CAREFUSION000160 | Lack of Foundation; FRE 802. |
| 80 | Sales spreadsheet produced in native format | NOX00091600 | | Stipulate to Admissibility. |
| 81 | 2012-07-27 Email and attachment | NATUS0004545 | NATUS004548 | Stipulated to authenticity; objects: FRE 402, 403, 602, 802. |
| 82 | 2013-09-26 Email and attachment | NATUS0009458 | NATUS009496 | Stipulated to authenticity; objects: FRE 402, 403, 602. |
| 83 | 2012-09-06 Email chain | NATUS0014596 | NATUS0014600 | Stipulated to authenticity; objects: FRE 402, 403. |
| 84 | Project Plan and Schedule Detail | NATUS0003784 | NATUS003792 | Natus objects to lack of foundation; FRE 402, 403. |
| 85 | 2013-07-18 Email | NATUS0000535 | | Stipulated to authenticity; objects: lack of foundation, FRE 402, 403. |
| 86 | 2013-09-09 Email chain | NATUS0009457 | | Stipulated to authenticity; |

| PTX | Document Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | objects: FRE 402, 403. |
| 87 | 2016-10-13 Email chain and attachments | ALLY_002318 | ALLY_002328 | Stipulated to authenticity; objects: lack of foundation, FRE 402, 403. |
| 88 | 2014-02-26 Email chain and attachment | NATUS0025113 | NATUS0025116 | Stipulated to authenticity; objects: FRE 402, 403; 602; 803. |
| 89 | 2014-01-29 Email chain | NATUS0012621 | NATUS0012626 | Stipulated to authenticity; objects: lack of foundation, FRE 402, 403. |
| 90 | 2012-10-29 Email chain | NATUS0007153 | NATUS007154 | Stipulated to authenticity; objects: FRE 402, 403. |
| 91 | Embla XactTrace marketing | NOX00032408 | NOX00032409 | Stipulate to admissibility. |
| 92 | Nox Sleep 2012 Boston presentation | NOX00070464 | NOX00070512 | Natus objects to lack of foundation; FRE 402, 403, 802. |
| 93 | 2014-07-21 Email chain | NOX00045010 | NOX00045014 | Natus objects to lack of foundation; FRE 402, 403, 802. |

| PTX | Document Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| 94 | 2015-04-27 Email chain | NATUS0011052 | NATUS0011055 | Stipulated to authenticity; objects: FRE 402, 403, 802. |
| 95 | 2013-10-01 Verification Plan | NOX0022268 | NOX000222310 | Natus objects to lack of foundation; FRE 402, 403, 802. |
| 96 | The Clinical Respiratory Journal: Setting up an ambulatory sleep research unit | NOX0025829 | NOX00025831 | Natus objects to lack of foundation; FRE 402, 403, 802. |
| 97 | Nox The Effect of folding RIP belts on QDC calibration presentation | NOX00060348 | NOX00060353 | Natus objects to lack of foundation; FRE 402, 403, 802. |
| 98 | Nox White Paper - RIP signal assessment | NOX00091620 | NOX00091641 | Natus objects to lack of foundation; FRE 402, 403, 802. |
| 99 | 2017-04-21 Statement on RIP Belt Quality Assessment | NOX00091614 | | Natus objects to lack of foundation; FRE 402, 403, 802. |
| 100 | 2013-01-16 Email chain | NATUS0008384 | NATUS008386 | Stipulated to authenticity; objects: FRE 402, 403. |
| 101 | 2018-02-13 Summary Judgment Order | | | This is not a proper trial exhibit; to the |

| PTX | Document Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | extent necessary, any rulings will be conveyed via jury instructions. |
| 102 | U.S. Patent No. 6,461,307 (Kristbjarnarson) | NATUS0001293 | NATUS0001305 | Stipulated to Admissibility. |
| 103 | U.S. Patent No. 8,025,539 (Hermannson) | NATUS0000737 | NATUS0000743 | Stipulated to Admissibility. |
| 104 | 2016-02-26 Natus' Responses to Nox' First Set of Interrogatories | | | Stipulate to Authenticity; FRE 402, 403.  To the extent Nox wishes to propose stipulations of fact based on the answer to interrogatories, Natus is willing to discuss.  However, the interrogatory responses and objections should not be entered into evidence. |
| 105 | 2016-05-16  Natus' Responses to Nox' Second Set of Interrogatories | | | Stipulate to Authenticity; FRE 402, 403.  To the extent Nox wishes to propose stipulations of fact based on the answer to |

| PTX | Document Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | interrogatories, Natus is willing to discuss.  However, the interrogatory responses and objections should not be entered into evidence. |
| 106 | 2016-12-08  Natus' Responses to Nox' Third Set of Interrogatories | | | Stipulate to Authenticity; FRE 402, 403.  To the extent Nox wishes to propose stipulations of fact based on the answer to interrogatories, Natus is willing to discuss.  However, the interrogatory responses and objections should not be entered into evidence. |
| 107 | 2017-05-17  Natus' Supplemental Responses to Nox' Interrogatories 6, 8, and 10 | | | Stipulate to Authenticity; FRE 402, 403.  To the extent Nox wishes to propose stipulations of fact based on the answer to |

| PTX | Document Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | interrogatories, Natus is willing to discuss.  However, the interrogatory responses and objections should not be entered into evidence. |
| 108 | 2017-03-23 IPR Institution Decision | | | Stipulated to Authenticity; Objects:  FRE 402, 403, 802. |
| 109 | PRIP Picture | NOX00089161 | | Stipulated to Admissibility. |
| 110 | PRIP Picture | NOX00089172 | | Stipulated to Admissibility |
| 111 | EMBA-Signal Quality Tests | NOX00050814 | NOX00050830 | Stipulated to Admissibility. |
| 112 | NOX RIPDx for Embletta Gold Technical bulletin | NOX00072088 | NOX00072095 | Stipulated to Admissibility. |
| 113 | Natus Embla XactTrace Marketing Flyer | NATUS0024890 | NATUS0024891 | Stipulated to Admissibility. |
| 114 | 2012-04-26 Email and attachment | NATUS0003677 | NATUS0003700 | Stipulated to authenticity; objects: FRE 402, 403; 602; 802. |
| 115 | Nox Sales spreadsheet produced in native format | NOX0091600 | | Stipulated to Admissibility. |
| 116 | Natus Sales spreadsheet produced in native format | NATUS0025596 | | Stipulated to admissibility. |

| PTX | Document Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| 117 | Natus Sales spreadsheet produced in native format | NATUS00014282 | | Stipulated to Admissibility. |
| 118 | Nox Sales spreadsheet produced in native format | NOX00091656 | | Stipulated to admissibility. |
| 119 | Nox Medical Marketing flyer | NOX00089040 | NOX00089041 | FRE 402, 403, 802. |
| 120 | Nox RIP Cable Kit E Instructions for Use | NOX00005098 | NOX00005099 | FRE 402, 403, 802. |
| 121 | Nox T3 Manual | NOX0026166 | NOX0026205 | FRE 402, 403, 802. |
| 122 | Single Use XactTrace Belt System User Instructions | NATUS0010839 | NATUS0010846 | Stipulated to Admissibility. |
| | | | | |
| 123 | T. Duffy Deposition Exh. 11 (also PTX 81) | NATUS0004545 | NATUS0004548 | Stipulated to authenticity; objects: FRE 402, 403, 602, 802. |
| 124 | T. Duffy Deposition Exh. 13 (also PTX 8, Murphy Deposition Ex. 3) | NATUS0004594 | NATUS0004596 | Natus objects to PTX 124 as lacking foundation, and also FRE 402, 403 and 802. |
| 125 | T. Duffy Deposition Exh. 18 (also PTX 13, Murphy Deposition Ex. 8) | NATUS0004614 | NATUS0004615 | Stipulated to authenticity; objects: FRE 402, 403. |
| 126 | T. Duffy Deposition Exh. 26 (also PTX 16, Murphy Deposition Ex. 11) | NATUS0010443 | NATUS0010461 | Stipulated to authenticity; objects: FRE 402, 403. |

| PTX | Document Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| 127 | T. Duffy Deposition Exh. 34 (also PTX 21, Murphy Deposition Ex. 17) | NATUS0010284 | NATUS0010286 | Stipulated to authenticity; objects: FRE 402, 403. |
| 128 | T. Duffy Deposition Exh. 44 (also PTX 88) | NATUS0025113 | NATUS0025116 | Stipulated to authenticity; objects: FRE 402, 403; 602; 803. |
| 129 | Prosecution History of '532 Patent | NOX0000001 | NOX0000377 | Stipulated to Admissibility. |
| 130 | 2014-01-20 Email to Sinbon and Attachment | NOX0028715 | NOX0028717 | FRE 402, 403; 602; 803. |

**PLAINTIFFS' PHYSICAL EXHIBIT LIST**

| PTX | Document Description | Objections |
|---|---|---|
| 124 | Nox Disposable RIP Belt | Stipulated to authenticity; objects: FRE 402, 403. |
| 125 | Nox Semi-Disposable RIP Belt | Stipulated to Admissibility. |
| 126 | Nox RIP Cable Kit | Natus needs to inspect this exhibit as it is unclear what it is. |
| 127 | XactTrace Belt | Natus needs to inspect this exhibit as it is unclear what it is. |
| 128 | Natus Snap Sensor for Pre-sized Single Use Belts | Natus needs to inspect this exhibit as it is unclear what it is. |
| 129 | XactTrace Lock-Abdomen | Natus needs to inspect this exhibit as it is unclear what it is. |
| 130 | XactTrace Single Use Pre-Sized RIP Belt | Stipulated to Admissibility |

|  |  | (under the assumption that this is the accused product; e.g., the original design of this product). |
|--|--|--|

# EXHIBIT D

## DEFENDANT'S EXHIBIT LIST

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| 1 | K.Hermannsson Deposition Ex. 1 – 12.27.2016 Subpoena | | | FRE 402 Depo subpoena not typically admitted into evidence |
| 2 | K.Hermannsson Deposition Ex. 2 – 10.08.2002 U.S. Patent | NATUS0001293 | NATUS0001305 | Stipulate to authenticity. Object FRE 402; not relied on in support of obviousness allegations |
| 3 | K.Hermannsson Deposition Ex. 3 – 12.05.2005 Email chain | KORMAKUR004339 | KORMAKUR004354 | Stipulate to authenticity. Object FRE 402 |
| 4 | K.Hermannsson Deposition Ex. 4 – 12.05.2005 Email | KORMAKUR006370 | | Stipulate to authenticity. Object FRE |
| 5 | K.Hermannsson Deposition Ex. 5 – Nox Medical Profile and Vision | KORMAKUR003133 | KORMAKUR003148 | Stipulate to authenticity. FRE 402 |
| 6 | Nox RES Belt also known as semi-disposable belt | | | Admissible to show development of disposable belt, but object to its use in certain combinations, as combinations were not previously disclosed, as set forth below. Object FRE 402, 403. |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
|  |  |  |  | Object to use as primary reference alone against claims 1, 4-9 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report as obviousness combination. Object to use as primary reference in view of Harhen against claims 1, 4-9 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report as obviousness combination. Object to use as primary reference in view of Harhen in further view of Abizaid or Orewiler against claims 6-8 (as identified in 3/25/18 email |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|-----|-------------------|----------------|---------------|------------|
| | | | | from Jeremy Adelson) because not identified in Williams expert report as obviousness combination. |
| | | | | Object to use as primary reference in view of McIntire in view of McIntire against claims 4-7, 9 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report as obviousness combination. |
| | | | | Object to use as primary reference in view of McIntire in further view of Abizaid or Orewiler against claims 6-8 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | Williams expert report as obviousness combination.<br><br>See, also, Nox MIL No. 1. |
| 7 | K.Hermannsson Deposition Ex. 7 – Carefusion Disposables and Accessories Catalog | | | Object FRE 602, FRE 802 |
| 8 | K.Hermannsson Deposition Ex. 8 – 09.27.2011 U.S. Patent | | | Stipulate to authenticity. Object FRE 802, 402. |
| 9 | K.Hermannsson Deposition Ex. 9 – CardinalHealth instructional photograph | NOX00086658 | | Object FRE 602, 402, 802. |
| 10 | Nox Disposable Belt | | | Admissible |
| 11 | K.Hermannsson Deposition Ex. 11 | NOX0015866 | NOX0015963 | Object to authenticity. Object FRE 602, 402 802 |
| 12 | K.Hermannsson Deposition Ex. 12 – Notes | NOX0015964 | NOX0016063 | Object to authenticity. Object FRE 602, 402, 802 |
| 13 | K.Hermannsson Deposition Ex. 13 – 08.30.2007 Beijing Sinbon Electronic ColLTD Quotation | KORMAKUR000247 | | Object FRE 402, 602 802 |
| 14 | K.Hermannsson Deposition Ex. 14 – 11.29.2009 Email chain | NOX00077461 | NOX00077464 | Object FRE 402, 802 |
| 15 | K.Hermannsson Deposition Ex. 15 – 12.07.2009 Email chain | NOX00077443 | NOX00077448 | Object FRE, 602, 802 |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| 16 | K.Hermannsson Deposition Ex. 16 – 04.20.2010 Email chain | NOX00077074 | NOX00077076 | Object FRE, 802 |
| 17 | K.Hermannsson Deposition Ex. 17 – Arnason Faktor Unofficial translation of Employment Contract, Point 9 | NOX0000980 | NOX0000984 | Object FRE, 802 |
| 18 | K.Hermannsson Deposition Ex. 18 – 10.10.2008 Design View Registration | | | Object, 402, 602, 802 |
| 19 | K.Hermannsson Deposition Ex. 19 – Combined Declaration and Power of Attorney for Patent and Design Applications | | | Stipulate to authenticity. Object FRE 402 |
| 20 | K.Hermannsson Deposition Ex. 20 – 03.10.2011 Nox Medical Product Proposal | NOX0002551 | NOX0002560 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 21 | K.Hermannsson Deposition Ex. 21 – 10.10.2008 Design View Registration | | | Stipulate to authenticity. Object FRE 402 |
| 22 | K.Hermannsson Deposition Ex. 22 – 04.12.2016 Email and attachment | NOX00028425 | NOX00028427 | Admissible |
| 23 | K.Hermannsson Deposition Ex. 23 – 11.23.2015 Arnason Faktor letter regarding response to opposition | NOX0000967 | NOX0000979 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 24 | K.Hermannsson Deposition Ex. 24 – 09.10.2015 Declaration of Kormakur Harmannsson | NOX0000966 | | Admissible |
| 25 | K.Hermannsson Deposition Ex. 25 – 10.01.2014 Nox Medical Patent Review | NOX00028385 | NOX00028396 | Stipulate to authenticity. Object FRE 402, 802 |
| 26 | K.Hermannsson Deposition Ex. 26 – 10.06.2014 Email and attachment | NoX00032446 | | Stipulate to authenticity. Object FRE 402, 802; object because the |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | translation is incorrect |
| 27 | K.Hermannsson Deposition Ex. 27 – 04.11.2008 Email | NOX00077897 | | Stipulate to authenticity. Object FRE 602, 402, 802 |
| 28 | K.Hermannsson Deposition Ex. 28 – 05.03.2015 Email chain | NOX0031213 | NOX00031215 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 29 | K.Hermannsson Deposition Ex. 29 – 08.22.2012 Email chain | NOX00068401 | NOX00068404 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 30 | K.Hermannsson Deposition Ex. 30 – 10.14.2014 Nox Product Catalog | | | Stipulate to authenticity. Object FRE 402, 802 |
| 31 | K.Hermannsson Deposition Ex. 31 – 04.23.2006 Email and attachment | KORMAKUR003700 | KORMAKUR003707 | Stipulate to authenticity. Object FRE, 802 |
| 32 | K.Hermannsson Deposition Ex. 32 – 0510.2006 Email and attachment | KORMAKUR006273 | KORMAKUR006277 | Stipulate to authenticity. Object FRE, 802 |
| 33 | K.Hermannsson Deposition Ex. 33 – 12.26.2016 Subpoena | | | FRE 402 Depo subpoena not typically admitted into evidence |
| 34 | K.Hermannsson Deposition Ex. 34 – 01.19.17 Third Party Arnason Faktor's Notice of Person to Testify | | | FRE 402 Not typically admitted into evidence |
| 35 | K.Hermannsson Deposition Ex. 35 – 06.16.2015 Declaration of Einar Karl Fridriksson | NOX Exhibit 2003-1 IPR2016-01822 | NOX Exhibit 2003-7 IPR2016-01822 | Object, there is no exhibit 35 to Hermannsson deposition. |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | Stipulate to authenticity. Object, FRE 402, 403.  Not relevant to issues before jury. |
| 36 | K.Hermannsson Deposition Ex. 36 – 05.15.2009 Instructions to file U.S. Provisional Patent Application | ARNASON00588 | | Object, there is no exhibit 36 to Hermannsson deposition. Stipulate to authenticity. Object, FRE 402, 403.  Not relevant to issues before jury. |
| 37 | K.Hermannsson Deposition Ex. 37 – 05.14.2010 Letter | ARNASON00400 | ARNASON00412 | Object, there is no exhibit 37 to Hermannsson deposition. Stipulate to authenticity. Object, FRE 402, 403.  Not relevant to issues before jury. |
| 38 | K.Hermannsson Deposition Ex. 38 – 05.17.2010 Letter | ARNASON00415 | ARNASON00416 | Object, there is no exhibit 38 to Hermannsson deposition. Stipulate to authenticity. Object, FRE 402, 403.  Not relevant to issues before jury. |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| 39 | K.Hermannsson Deposition Ex. 39 – Notice Regarding Information Disclosure Statements | ARNASON00422 | | Object, there is no exhibit 39 to Hermannsson deposition. Not relevant to issues before jury. |
| 40 | K.Hermannsson Deposition Ex. 40 – 06.16.2015 U.S. Patent | | | Object, there is no exhibit 40 to Hermannsson deposition.<br><br>If this is Exhibit 40 to the Fridrikksson deposition and is the '532 patent, Nox stipulates to its admissibility. |
| 41 | K.Hermannsson Deposition Ex. 41 – 06.23.2011 Email chain | NOX0001676 | NOX0001678 | Object, there is no exhibit 41 to Hermannsson deposition. Stipulate to authenticity. Object, FRE 402, 403.  Not relevant to issues before jury. |
| 42 | K.Hermannsson Deposition Ex. 42 – Nox Medical Employment Contract | NOX00088868 | NOX00088871 | Object, there is no exhibit 42 to Hermannsson deposition. Stipulate to authenticity. Object, FRE 402, 403.  Not relevant |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|-----|-------------------|----------------|---------------|------------|
| | | | | to issues before jury. |
| 43 | K.Hermannsson Deposition Ex. 43 – 03.18.2013 Statement to Correct Inventorship Under 37 C.F.R. 1.324(b)(1) | | | Object, there is no exhibit 43 to Hermannsson deposition.<br><br>Stipulate to authenticity. Object, FRE 402, 403.  Not relevant to issues before jury. |
| 44 | K.Hermannsson Deposition Ex. 44 – 07.27.2010 Email | NOX0000491 | | Object, there is no exhibit 44 to Hermannsson deposition. Stipulate to authenticity. Object, FRE 402, 403.  Not relevant to issues before jury. |
| 45 | S.Hoskuldsson Deposition Ex. 45 – Nox Medical Portable Sleep Diagnostic System | NOX00087731 | | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 46 | Nox RES Belt also known as semi-disposable belt | | | Admissible to show development of disposable belt, but object to its use in certain combinations, as combinations were not previously |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|-----|--------------------|----------------|----------------|------------|
|     |                    |                |                | disclosed, as set forth below. Object FRE 402, 403.<br><br>Object to use as primary reference alone against claims 1, 4-9 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report as obviousness combination. Object to use as primary reference in view of Harhen against claims 1, 4-9 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report as obviousness combination.<br><br>Object to use as primary reference in view of Harhen in further view of |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|-----|--------------------|----------------|---------------|------------|
|     |                    |                |               | Abizaid or Orewiler against claims 6-8 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report as obviousness combination. |
|     |                    |                |               | Object to use as primary reference in view of McIntire in view of McIntire against claims 4-7, 9 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report as obviousness combination. |
|     |                    |                |               | Object to use as primary reference in view of McIntire in further view of Abizaid or Orewiler against claims 6-8 (as |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report as obviousness combination.<br><br>See, also, Nox MIL No. 1. |
| 47 | Nox Disposable Belt | | | Admissible |
| 48 | S.Hoskuldsson Deposition Ex. 48 – Nox Medical Product Release Control | NOX00031226 | NOX00031229 | Admissible |
| 49 | S.Hoskuldsson Deposition Ex. 49 – 07.09.2007 Mutual Non-Disclosure Agreement | NOX00089150 | NOX00089151 | Stipulate to authenticity. Object FRE 402, 802 |
| 50 | S.Hoskuldsson Deposition Ex. 50 – Project RIP (2009-024) – Closure of Phase 1 Date 22 March 2011 | NOX0001709 | | Stipulate to authenticity. Object FRE 402, 802 |
| 51 | S.Hoskuldsson Deposition Ex. 51 – Nox Medical Product Proposal | NOX0008615 | NOX0008623 | Stipulate to authenticity. Object FRE 402, 802 |
| 52 | S.Hoskuldsson Deposition Ex. 52 – 01.31.2012 Nox Medical Technical bulletin | NOX00072088 | NOX00072095 | Stipulate to authenticity. Object FRE 402, 802 |
| 53 | S.Hoskuldsson Deposition Ex. 53 – Nox Medical Legal Assessment | NOX0019273 | | Stipulate to authenticity. |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|-----|-------------------|----------------|---------------|------------|
| | | | | Object FRE 402, 802 |
| 54 | S.Hoskuldsson Deposition Ex. 54 – 10.06.2014 Email | NOX00032441 | NOX00032442 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 55 | S.Hoskuldsson Deposition Ex. 55 – 01.21.2016 Patent Assignment Cover Sheet | | | Stipulate to authenticity. Object FRE |
| 56 | S.Hoskuldsson Deposition Ex. 56 – Photograph | | | Stipulate to authenticity. Object FRE |
| 57 | S.Hoskuldsson Deposition Ex. 57 – 01.16.2017 XFT Meeting Minutes NR #7 | NOX00088785 | NOX00088792 | Stipulate to authenticity. Object FRE 402, 802 |
| 58 | S.Hoskuldsson Deposition Ex. 58 – 10.10.2008 Design View | NATUS0014288 | NATUS0014291 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 59 | S.Hoskuldsson Deposition Ex. 59 – 10.10.2008 Design View | NATUS0014292 | NATUS0014295 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 60 | S.Hoskuldsson Deposition Ex. 60 – 12.16.2016 Marketing Assessment Nox Sleep System | NOX00085383 | NOX00085390 | Stipulate to authenticity. Object FRE 402, 802 |
| 61 | S.Hoskuldsson Deposition Ex. 61 – 02.22.2013 Email | NOX00064605 | NOX00064606 | Stipulate to authenticity. Object FRE 402, 802 |
| 62 | S.Hoskuldsson Deposition Ex. 62 – Product Overview for Sourcing | NOX00089015 | NOX00089021 | Stipulate to authenticity. |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | Object FRE 402, 602, 802 |
| 63 | S.Hoskuldsson Deposition Ex. 63 – Nox Medical Manufacturing and Operational Assessment | NOX0019274 | NOX0019276 | Stipulate to authenticity. Object FRE 402, 802 |
| 64 | S.Hoskuldsson Deposition Ex. 64 – Nox Medical Technical Assessment | NOX0019270 | NOX0019271 | Stipulate to authenticity. Object FRE 402, 802 |
| 65 | S.Hoskuldsson Deposition Ex. 65 – 04.04.2006 Email and attachment | KORMAKUR006280 | KORMAKUR006288 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 66 | S.Hoskuldsson Deposition Ex. 66 – 05.11.2006 Email | KORMAKUR006271 | KORMAKUR006272 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 67 | S.Hoskuldsson Deposition Ex. 67 – 06.20.2006 Letter | NOX00088872 | | Stipulate to authenticity. Object FRE 402, 802 |
| 68 | P.Halldorsson Deposition Ex. 68 – Natus Embla XactTrace Respiratory Effort Belts | | | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 69 | P.Halldorsson Deposition Ex. 69 – Photograph | | | Object FRE 402, 602, 802 |
| 70 | P.Halldorsson Deposition Ex.70 – 05.25.2016 Nox Product Catalog | NOX00027838 | NOX00027861 | Admissible |
| 71 | P.Halldorsson Deposition Ex.71 – 06.30.2016 Email chain | NOX00027453 | NOX00027457 | Stipulate to authenticity. Object FRE 402, 602, 802 |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| 72 | P.Halldorsson Deposition Ex.72 – Home Sleep Testing | NOX00058344 | NOX00058346 | Stipulate to authenticity. Object FRE 402 |
| 73 | P.Halldorsson Deposition Ex.73 – Nox RIP Cable Kit E | | | Stipulate to authenticity. Object FRE 402, 802; not clear whether this is a complete kit |
| 74 | P.Halldorsson Deposition Ex.74 - Nox Abdomen Cable | | | Admissible |
| 75 | P.Halldorsson Deposition Ex.75 – QDC-PRO Abdomen Cable | | | Admissible |
| 76 | P.Halldorsson Deposition Ex.76 – 11.13.2015 Email chain | NOX00034109 | NOX00034112 | Admissible |
| 77 | P.Halldorsson Deposition Ex.77 – 06.06.2016 Email | NOX00027755 | NOX00027757 | Admissible |
| 78 | P.Halldorsson Deposition Ex.78 – 12.13.2013 Email | NOX00059092 | | Stipulate to authenticity. Object FRE 402 |
| 79 | P.Halldorsson Deposition Ex.79 – 01.29.2014 Email | NOX00058364 | NOX00058365 | Stipulate to authenticity. Object FRE 402 |
| 80 | P.Halldorsson Deposition Ex.80 – 03.02.2016 Email and attachment | NOX00028715 | NOX00028717 | Admissible |
| 81 | P.Halldorsson Deposition Ex.81 – 03.05.2014 Email | NOX00057801 | NOX00057802 | Stipulate to authenticity. Object FRE 402 |
| 82 | P.Halldorsson Deposition Ex.82 – 07.07.2016 NOX Medical XFT Meeting Minutes | NOX00073862 | NOX00073863 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 83 | P.Halldorsson Deposition Ex.83 – 04.23.2012 Email chain | NOX00071395 | NOX00071397 | Stipulate to authenticity. |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | Object FRE 402, 602, 802 |
| 84 | P.Halldorsson Deposition Ex. 84– 12.17.2014 Email | NOX00032037 | | Stipulate to authenticity. Object FRE 402, 802 |
| 85 | P.Halldorsson Deposition Ex. 85 – 08.27.2015 Email and attachment | NOX00030341 | NOX00030344 | Stipulate to authenticity. Object FRE 402, 802 |
| 86 | S.Hoskuldsson Deposition Ex. 86 – 02.01.2017 Defendant's Amended Notice Of Rule 30(B)(6) Deposition of Nox Medical EHF | | | Stipulate to authenticity. The notice of deposition is not a proper exhibit for trial |
| 87 | S.Hoskuldsson Deposition Ex. 87 – 02.06.2017 Letter | | | Stipulate to authenticity. but not a proper trial exhibit |
| 88 | S.Hoskuldsson Deposition Ex. 88 – Nox Medical Team Intro ERS 2010 | NOX00051570 | NOX00051579 | Stipulate to authenticity. Object FRE 402, 802 |
| 89 | S.Hoskuldsson Deposition Ex. 89 - | NOX00088915 | NOX00088935 | Stipulate to authenticity. Object FRE 402, 802 |
| 90 | S.Hoskuldsson Deposition Ex. 90 – Photographs | NOX00089161 | NOX00089176 | Stipulate to authenticity. Object FRE 402 |
| 91 | S.Hoskuldsson Deposition Ex. 91 – Photograph | NOX00089771 | | Stipulate to authenticity. Object FRE 402 |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| 92 | S.Hoskuldsson Deposition Ex. 92 – 10.07.2015 Nox Medical Important Statement | NOX0003750 | | Admissible |
| 93 | P.Halldorsson Deposition Ex. 93 - Photograph | | | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 94 | P.Halldorsson Deposition Ex. 94 - 08.22.2014 Email and attachment | NOX00032999 | NOX00033020 | Admissible |
| 95 | P.Halldorsson Deposition Ex. 95 – Nox Disposable Sales 2011-2016 | NOX0027192 | NOX0027200 | Admissible |
| 96 | P.Halldorsson Deposition Ex. 96 – 01.26.2012 Email | Nox00059998 | | Admissible |
| 97 | P.Halldorsson Deposition Ex. 97 – 09.22.2015 Email chain | NOX00030247 | NOX00030250 | Stipulate to authenticity of Icelandic version; Object FRE 402, 602, 802, incorrect translations |
| 98 | P.Halldorsson Deposition Ex. 98 – 12.08.2015 Meeting Minutes | NOX00029012 | NOX00029014 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 99 | P.Halldorsson Deposition Ex. 99 – Photograph | | | Device is admissible, photograph is not |
| 100 | P.Halldorsson Deposition Ex. 100 – 07.13.2012 Email chain | NOX00069425 | NOX00069427 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 101 | P.Halldorsson Deposition Ex. 101 – 12.31.2016 Extract from Nox Sales database on Belts | NOX00085804 | | Admissible |
| 102 | P.Halldorsson Deposition Ex. 102 – 04.18.2016 US sales Belts | NOX00028338 | | Admissible |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|-----|-------------------|----------------|---------------|------------|
| 103 | P.Halldorsson Deposition Ex. 103 – 04.19.2016 Email and attachment | NOX00028309 | NOX00028310 | Admissible |
| 104 | P.Halldorsson Deposition Ex. 104 – Sinbon Invoices and Shipment documents | NOX00028312 | NOX00028333 | Admissible |
| 105 | P.Halldorsson Deposition Ex. 105 – Nox Medical Presentation | NOX00067820 | NOX00067845 | Stipulate to authenticity. Object FRE 802 |
| 106 | P.Halldorsson Deposition Ex. 106 – 11.28.2016 Nox Medical Lunch Update | NOX00085061 | NOX00085073 | Stipulate to authenticity. Object FRE 402, 802 |
| 107 | P.Halldorsson Deposition Ex. 107 – 06.21.2016 Email and attachment | NOX00052134 | NOX00052138 | Stipulate to authenticity. Object FRE 402, 802 |
| 108 | P.Halldorsson Deposition Ex. 108 – 08.12.2016 Email | NOX00034004 | NOX00034007 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 109 | P.Halldorsson Deposition Ex. 109 – 11.18.2015 Email | NOX00052961 NOX00052961P-0001 | NOX00052962 NOX00052961P-0002 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 110 | P.Halldorsson Deposition Ex. 110 – Nox Medical EHF'S Responses to Natus Neurology Inc.'s Third Set of Interrogatories | | | Stipulate to authenticity.  To the extent Natus wishes to propose stipulations of fact based on the answer to interrogatories, Natus is willing to discuss.  However, the interrogatory should not be |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|-----|--------------------|----------------|----------------|------------|
| | | | | entered into evidence. |
| 111 | P.Halldorsson Deposition Ex. 111 – Photographs | | | Stipulate to authenticity to the extent that photo is a photo of the belts in question; Object FRE 402, 602, 802 |
| 112 | P.Halldorsson Deposition Ex. 112 – Nox Medical EHF'S Supplemental Responses to Natus Neurology Inc.'s Interrogatory Nos. 6-11 and 13 | | | Stipulate to authenticity.  To the extent Natus wishes to propose stipulations of fact based on the answer to interrogatories, Natus is willing to discuss.  However, the interrogatory should not be entered into evidence. |
| 115-O | A.Oslan Deposition Ex. 115 – Expert Rebuttal Report of Alan Oslan and Prior Art | | | Stipulate to authenticity.  Object FRE 402, 403, 702, 802.  Expert reports may be used for impeachment but are not typically entered into evidence. |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| 115-P | A.Puleo Deposition Ex. 115 – 03.07.2017 Subpoena to Testify At a Deposition in a Civil Action | | | Deposition subpoena is not proper trial exhibit |
| 116-O | A.Oslan Deposition Ex. 116 – Expert Invalidity Report of Dr. Justin C. Williams | | | Stipulate to authenticity. Object FRE 402, 403, 702, 802. Expert reports may be used for impeachment but are not typically entered into evidence.  Nox further objects to Expert report of Justin C. Williams to the extent it urges combinations objected to herein and in Nox's MIL No. 1. |
| 116-P | A.Puleo Deposition Ex. 116 – 01.19.2017 Subpoena to Produce Documents | | | Deposition subpoena is not proper trial exhibit |
| 117-O | A.Oslan Deposition Ex. 117 – Alan L. Oslan Resume | | | Stipulate to authenticity. Object FRE 402, 403, 702, 802. Expert reports may be used for impeachment but are not typically entered into evidence. |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| 117-P | A.Puleo Deposition Ex. 117 – Portable Sleep Monitor – NOX/T3 Sleep Diagnostics | CAREFUSION000001 | CAREFUSION000002 | Stipulate to authenticity. Object FRE 402, 802. |
| 118-O | A.Oslan Deposition Ex. 117 - Biography of Alan L. Oslan | | | Stipulate to authenticity. Expert reports may be used for impeachment but are not typically entered into evidence. |
| 118-P | A.Puleo Deposition Ex. 118 – Nox T3 Product Catalog | CAFEFUSION00009 | CAFEFUSION00015 | Stipulate to authenticity. Object FRE 402, 802 |
| 119-O | A.Oslan Deposition Ex. 119 – Electrosurge – Services | | | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 119-P | A.Puleo Deposition Ex. 119 - Pre-sized RIP belt | | | This is a physical exhibit retained by counsel for Natus. Nox needs to be able to inspect the device to determine whether it objects to its admissibility, and is willing to examine it in a timely fashion to make that determination. |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| 120-O | A.Oslan Deposition Ex. 120 – 04.21.2017 Expert Rebuttal Report of Alan L. Oslan | | | Stipulate to authenticity. Expert reports may be used for impeachment but are not typically entered into evidence. |
| 120-P | A.Puleo Deposition Ex. 120 – Orders | CAREFUSION000161 | CAREFUSION000554 | Stipulate to authenticity. Object FRE 402, 802 |
| 121-O | A.Oslan Deposition Ex. 121 – Exhibit 1001 to the Expert Invalidity Report of Dr. Justin C. Williams | | | Nox understand this exhibit to be the '532 patent, which it agrees is admissible. |
| 121-P | A.Puleo Deposition Ex. 121- Orders | CAREFUSION000595 | CAREFUSION000603 | Stipulate to authenticity. Object FRE 402, 802 |
| 122-O | A.Oslan Deposition Ex. 122 - Exhibit 1018 to the Expert Invalidity Report of Dr. Justin C. Williams | | | See objections to Exhibit 1018, the McIntire patent |
| 122-P | A.Puleo Deposition Ex. 122 – Carefusion's sales of Nox's disposable RIP belts: 2012-2016 | | | Stipulate to authenticity. Object FRE 402, 802 |
| 123-O | A.Oslan Deposition Ex. 123 – 08.28.2012 U.S. Patent | | | Object FRE 403, misleading without remainder of patent of which this exhibit is a part and related testimony |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| 123-P | A.Puleo Deposition Ex. 123 - 10.12.16 Email | CAREFUSION000077 | | Admissible |
| 124-O | A.Oslan Deposition Ex. 124– 06.16.2015 U.S. Patent | | | Object FRE 403, misleading without remainder of patent of which this exhibit is a part and related testimony |
| 124-P | A.Puleo Deposition Ex. 124– 10.25.2016 Email | CAREFUSION000122 | | Admissible |
| 125-O | A.Oslan Deposition Ex. 125– 04.21.2017 White Paper RIP signal assessment | NOX00091620 | NOX00091641 | Admissible |
| 125-P | A.Puleo Deposition Ex. 125 – 11.03.2016 Email chain | CAREFUSION000123 | CAREFUSION000132 | Admissible |
| 126-O | A.Oslan Deposition Ex. 126 – 04.21.2017 Statement on RIP Belt Quality Assessment | NOX00091614 | | Admissible |
| 126-P | A.Puleo Deposition Ex. 126 – 10.07.2015 Compliance of Nox Medical Systems with the Medical Devices Directive | CAREFUSION000067 | | Stipulate to authenticity. Object FRE 402, 802 |
| 127 | A.Puleo Deposition Ex. 127 – 01.29.2014 Email | NOX00058367 | | Stipulate to authenticity. Object FRE 402, 802 |
| 128 | A.Puleo Deposition Ex. 128 – 06.30.2016 Email chain | NOX00027492 | NOX00027495 | Stipulate to authenticity. Object FRE 402, 403, 802 |
| 150 | S.Cragun Deposition Ex. 150 – 03.17.2017 Expert Report of Scott W. Cragun | | | Stipulate to authenticity. Expert reports may be used for impeachment but |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | are not typically entered into evidence. |
| 151 | S.Cragun Deposition Ex. 151 – 04.06.2017 – First Supplemental Expert Report of Scott W. Cragun | | | Stipulate to authenticity. Expert reports may be used for impeachment but are not typically entered into evidence. |
| 152 | S.Cragun Deposition Ex. 152 – 04.20.2017 – Second Supplemental Expert Report of Scott W. Cragun | | | Stipulate to authenticity. Expert reports may be used for impeachment but are not typically entered into evidence. |
| 153 | S.Cragun Deposition Ex. 153 – 05.19.2017 – Rebuttal Expert Report of Scott W. Cragun | | | Stipulate to authenticity. Expert reports may be used for impeachment but are not typically entered into evidence. |
| 154 | S.Cragun Deposition Ex. 154 – 12.16.2016 Letter and attachments | | | Admissible |
| 155 | S.Cragun Deposition Ex. 155 – Natus Neurology Neurodiagnostic Supplies Global Catalog | NATUS0002733 | NATUS0002832 | Admissible |
| 156 | S.Cragun Deposition Ex. 156 – 12.08.2015 Meeting Minutes | NOX00029012 | NOX00029014 | Stipulate to authenticity. Object FRE 402, 602, 802 |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| 157 | S.Cragun Deposition Ex. 157 – 02.09.2017 Data Analysis: Supplies | NATUS0025561 | NATUS0025586 | Object FRE 402, 602, 802 |
| 158 | S.Cragun Deposition Ex. 158 – 12.08.16 Patent Infringement Practical Guide and Best Practice | | | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 159 | S.Cragun Deposition Ex. 159 –The "Analytical Approach", Chapter 11 | | | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 160 | S.Cragun Deposition Ex. 160 – 11.11.2016 Email and attachments | | | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 161 | S.Cragun Deposition Ex. 161 – XactTrace Respiratory Belts | NATUS0000650 | NATUS0000677 | Admissible |
| 162 | S.Cragun Deposition Ex. 162 – 01.31.2012 Nox Medical Technical bulletin | NOX00072088 | NOX00072095 | Admissible |
| 163 | Natus Spreadsheet - Sales Information Re Accused Belt and Other Products in native format | NATUS0017916 | | Admissible |
| 164 | Natus Spreadsheet - Sales Information Re Accused Belt in native format | NATUS0025202 | | Admissible |
| 165 | Natus PowerPoint - XactTrace Respiratory Belts in native format | NATUS0000650 | NATUS0000677 | Admissible |
| 166 | Natus Spreadsheet - Embletta MPR Sales in native format | NATUS0025203 | | Admissible |
| 167 | Natus Global Catalog - 2017-2018 | NATUS0025204 | NATUS0025311 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 168 | Natus Spreadsheet (Embletta Gold) in native format | NATUS0025312 | | Admissible |
| 169 | Natus Spreadsheet (Kaiser/Regions Sales) in native format | NATUS0025314 | | Admissible |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| 170 | Natus Spreadsheet (Sales Info Kits) in native format | NATUS0025315 | | Admissible |
| 171 | US Market Report for Sleep Diagnostics | NATUS0025316 | NATUS0025560 | Object FRE 402, 403, 602 802 |
| 172 | Updated Nox Sales Data - through 2017 | NOX00091600 | | Admissible |
| 173 | Natus' First Amended Answer, Affirmative Defenses, and Counterclaims (D.I. 29) | | | Stipulate to authenticity.  The answer is superseded by the pre trial order and is not a proper exhibit at trial. |
| 174 | Expert Report of Richard F. Bero, CPA, CVA dated 4/21/17 | | | Stipulate to authenticity. Object  FRE 402, 403, 702, 802. Expert reports may be used for impeachment but are not typically entered into evidence. |
| 175 | Product Proposal: Disposable RIP Belts (3/10/11) | NOX0008615 | NOX0008623 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 176 | Market Requirements Document dated 03/14/11 (MRD) | NOX0001720 | NOX0001731 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 177 | Technical Bulletin dated 1/31/12 | NOX2088 | NOX72095 | Stipulate to authenticity. Object FRE 402, 602, 802 |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|-----|---------------------|----------------|---------------|------------|
| 178 | E-mail dated2/23/12 | NOX71395 | NOX71397 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 179 | E-mail dated2/18/13 | NOX64695 | NOX64696 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 180 | E-mail dated9/24/13 | NOX74889 | NOX74890 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 181 | E-mail dated6/19/13 | NOX74895 | NOX74896 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 182 | 10/10/13 E-mail | Nox59935 | Nox59937 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 183 | 12/13/13 E-mail | Nox59084 | Nox59085 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 184 | 12/11/13 E-mail | Nox46127 | Nox46128 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 185 | 1/8/14 E-mail (Translated Version) | Nox58915 | | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 186 | 5/27/14 E-mail, Nox 56305-09 | Nox56305 | Nox56309 | Stipulate to authenticity. |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | Object FRE 402, 602, 802 |
| 187 | 12/9/14 E-mail, Nox 75147 | Nox75147 | | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 188 | 3/23/15 E-mail, Nox 54345 | Nox54345 | | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 189 | 3/24/15 E-mail, Nox 54341-42 | Nox54341 | Nox54342 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 190 | 3/23/15 Board Meeting Slide Deck, Nox 00027517-27558 | Nox00027517 | Nox00027558 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 191 | 8/02/16 E-mail, Nox 27395-72400 | Nox27395 | Nox72400 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 192 | 8/31/16 E-mail, Nox 00084580-584 | Nox00084580 | Nox00084584 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 193 | 10/13/16 Project Status Report, Nox 00084283-84302 | Nox00084283 | Nox00084302 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 194 | 10/25/16 E-mail, Nox 00081206-81225 | Nox00081206 | Nox00081225 | Stipulate to authenticity. Object FRE 402, 602, 802 |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| 195 | XactTrace Respiratory Belts, Natus 00000625-649 | Natus00000625 | Natus00000649 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 196 | Nox's Responses to 1st Set of Interrogatories dated 4/22/16 | | | Stipulate to authenticity.  FRE 402, 403.  The requests for production and responses thereto are not properly admitted into evidence at trial. |
| 197 | Nox's Responses to 2nd Set of Interrogatories dated 5/19/16 | | | Stipulate to authenticity.  FRE 402, 403.  To the extent Natus wishes to propose stipulations of fact based on the answer to interrogatories, Nox is willing to discuss.  However, the interrogatory responses and objections should not be entered into evidence. |
| 198 | Nox's Supplemental Response to Interrogatories 6-11 and 13 dated 11/28/16 | | | Stipulate to authenticity.  FRE 402, 403.  To the extent Natus wishes to propose stipulations of fact based on the |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | answer to interrogatories, Nox is willing to discuss.  However, the interrogatory responses and objections should not be entered into evidence. |
| 199 | Nox's Responses to 3rd Set of Interrogatories dated 1/20/17 | | | Stipulate to authenticity.  FRE 402, 403.  To the extent Natus wishes to propose stipulations of fact based on the answer to interrogatories, Nox is willing to discuss.  However, the interrogatory responses and objections should not be entered into evidence. |
| 200 | Nox's Response to 4th Set of Interrogatories dated 3/6/17 | | | Stipulate to authenticity.  FRE 402, 403.  To the extent Natus wishes to propose stipulations of fact based on the answer to interrogatories, Nox is willing to discuss.  However, |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | the interrogatory responses and objections should not be entered into evidence. |
| 201 | Photograph of the Nox PRIP | NOX00089161 | | Stipulate to authenticity. Object FRE 402 See objections to Exhibit 90 |
| 202 | Photograph of the Nox RIP belt | NOX00089172 | | Stipulate to authenticity. Object FRE 402 See objections to Exhibit 91 |
| 203 | U.S. Patent No. 4,308,872, titled "Method and Apparatus for Monitoring Respiration," issued January 5, 1982 | | | Object FRE 402, 403; Not part of any combination asserted in this action based on email of Jeremy Adelson of 3/25/18.  See, also, Nox MIL No. 1. |
| 204 | Nox RES Belt Connector w/ adjustment loop 3-D Model produced in native IPT format | NOX00089764 | | Admissible to show development of disposable belt, but object to its use in certain combinations, as combinations were not previously disclosed, as set forth below. |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|-----|-------------------|----------------|---------------|------------|
| | | | | Object FRE 402, 403.<br><br>Object to use as primary reference alone against claims 1, 4-9 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report as obviousness combination. Object to use as primary reference in view of Harhen against claims 1, 4-9 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report as obviousness combination.<br><br>Object to use as primary reference in view of Harhen in further view of Abizaid or Orewiler against |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | claims 6-8 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report as obviousness combination. |
| | | | | Object to use as primary reference in view of McIntire in view of McIntire against claims 4-7, 9 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report as obviousness combination. |
| | | | | Object to use as primary reference in view of McIntire in further view of Abizaid or Orewiler against claims 6-8 (as identified in 3/25/18 email |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | from Jeremy Adelson) because not identified in Williams expert report as obviousness combination.<br><br>See, also, Nox MIL No. 1. |
| 205 | Nox RES Belt Connector w/o adjustment loop 3-D Model produced in native IPT format | NOX00089767 | | Admissible to show development of disposable belt, but object to its use in certain combinations, as combinations were not previously disclosed, as set forth below. Object FRE 402, 403.<br><br>Object to use as primary reference alone against claims 1, 4-9 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report as obviousness combination. |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | Object to use as primary reference in view of Harhen against claims 1, 4-9 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report as obviousness combination.<br><br>Object to use as primary reference in view of Harhen in further view of Abizaid or Orewiler against claims 6-8 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report as obviousness combination.<br><br>Object to use as primary reference in view of McIntire in view of McIntire against |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | claims 4-7, 9 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report as obviousness combination.<br><br>Object to use as primary reference in view of McIntire in further view of Abizaid or Orewiler against claims 6-8 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report as obviousness combination.<br><br>See, also, Nox MIL No. 1. |
| 1001 | U.S. Patent No. 9,059,532 B2 ("the '532 Patent") | | | Admissible, but duplicative |
| 1002 | Expert Invalidity Report of Dr. Justin C. Williams and all attachments thereto | | | Stipulate to authenticity. Object FRE 402, 403, 702, 802. |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | Expert reports may be used for impeachment but are not typically entered into evidence. Nox objects to use of any combinations in Dr. Williams' expert report that are barred by 35 U.S.C. 315(e)(2) and that are different than those now asserted, as set forth in the 3/25/18 email of Jeremy Adelson. Nox further objects to the use of any combinations not previously identified in Dr. Williams' report and combinations that are barred by 35 U.S.C. § 315(e)(2). See, *e.g.*, Nox MIL No. 1. |
| 1003 | U.S. Patent No. 937,130 to Williams ("Williams") | | | Object FRE 402, 403, 702.  Not part of any specific |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | combination asserted in this action based on email of Jeremy Adelson of 3/25/18. See, also, Nox MIL No. 1. |
| 1004 | U.S. Patent No. 1,001,054 to Lawrence ("Lawrence") | | | Object FRE 402, 403,702. Object to use as secondary reference in view of Gobron against claims 4-5, 9, (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams in that combination.<br><br>Object to the extent used in combination barred by 35 U.S.C. § 315(e)(2)<br><br>See, also, Nox MIL No. 1. |
| 1005 | U.S. Patent No. 1,115,459 to Abizaid ("Abizaid") | | | Object FRE 402, 403, 702.  Object to use as secondary reference to Nox RES Belt in view of Harhen against |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | claims 6-8 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report in that combination.<br><br>Object to use as secondary reference to RES Belt in view of McIntire against claims 6-8 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report in that combination.<br><br>Object to use as secondary reference to Hermannsson in view of McIntire against claims 6-8 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|-----|--------------------|----------------|---------------|------------|
|  |  |  |  | Williams expert report in that combination. Object to use as secondary reference to Hermannsson in view of Harhen against claims 6-8 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report in that combination. Object to use in combinations barred by 35 U.S.C. § 315(e)(2). See, also, Nox MIL No. 1. |
| 1006 | U.S. Patent No. 1,193,050 to Orewiler ("Orewiler") |  |  | Object FRE 402, 403, 702.  Object to use as secondary reference to Nox RES Belt in view of Harhen against claims 6-8 (as identified in 3/25/18 email |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|-----|-------------------|----------------|---------------|------------|
| | | | | from Jeremy Adelson) because not identified in Williams expert report in that combination.<br><br>Object to use as secondary reference to Nox RES Belt in view of McIntire against claims 6-8 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report in that combination.<br><br>Object to use as secondary reference to Hermannsson in view of McIntire against claims 6-8 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report in that combination. |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | Object to use as secondary reference to Hermannsson in view of Harhen against claims 6-8 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report in that combination. Object to use in combinations barred by 35 U.S.C. § 315(e)(2). See, also, Nox MIL No. 1. |
| 1007 | U.S. Patent No. 3,092,759 to Sommer ("Sommer") | | | Object FRE 402, 403, 702.  Object to use as secondary reference to Gobron against claims 4-5, 9 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | report in that combination.<br><br>Object to use in combinations barred by 35 U.S.C. § 315(e)(2). See, also, Nox MIL No. 1. |
| 1008 | U.S. Patent No. 4,671,591 to Archer ("Archer") | | | Object FRE 402, 403, 702. Not disclosed as part of any combination relied upon in 3/25/18 email from Jeremy Adelson. Object to use in combinations barred by 35 U.S.C. § 315(e)(2). See, also, Nox MIL No. 1. |
| 1009 | U.S. Patent No. 4,832,608 to Kroll ("Kroll") | | | Object FRE 402, 403, 702. Not disclosed as part of any combination relied upon in 3/25/18 email from Jeremy Adelson.<br><br>Object to use in combinations |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | barred by 35 U.S.C. § 315(e)(2). See, also, Nox MIL No. 1. |
| 1010 | U.S. Patent No. 5,326,272 to Harhen et al. ("Harhen") | | | Object FRE 402, 403, 702.  Object to use as secondary reference to RES Belt against claims 1, 4-9 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report in that combination.  Object to use as secondary reference to Hermannsson in further view of Abaizaid or Orewiler against claims 6-8 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|-----|--------------------|-----------------|----------------|------------|
|     |                    |                 |                | report in that combination.

Object to use as secondary reference to Hermannsson against claims 4-5, (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report in that combination.

Object to use as secondary reference to Hermannsson against claims 1, 6-9, (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report in that combination.

Object to use as secondary reference to Hermannsson in further view of |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | Abizaid or Orewiler against claims 6-8, (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report in that combination.<br><br>Object to use in combinations barred by 35 U.S.C. § 315(e)(2). See, also, Nox MIL No. 1. |
| 1011 | U.S. Patent No. 6,148,486 to Uehara et al. ("Uehara") | | | Object FRE 402, Object FRE 402, 403, 702. Not disclosed as part of any combination relied upon in 3/25/18 email from Jeremy Adelson.<br><br>Object to use in combinations barred by 35 U.S.C. § 315(e)(2). See, also, Nox MIL No. 1. |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| 1012 | U.S. Patent No. 6,461,307 to Kristbjarnarson et al. ("Kristbjarnarson") | | | Object FRE 402, 403, 702. Not disclosed as part of any combination relied upon in 3/25/18 email from Jeremy Adelson. Object to use in combinations barred by 35 U.S.C. § 315(e)(2). See, also, Nox MIL No. 1. |
| 1013 | U.S. Patent Application Publication No. 2006/0258948 to Linville ("Linville") | | | Object FRE 402, 403, 702. Not disclosed as part of any combination relied upon in 3/25/18 email from Jeremy Adelson. Object to use in combinations barred by 35 U.S.C. § 315(e)(2). See, also, Nox MIL No. 1. |
| 1014 | U.S. Patent Application Publication No. 2007/0167089 to Gobron et al. ("Gobron") | | | Object FRE 402, 403, 702. |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | Object to use as primary reference in view of Lawrence or Sommer against claims 4-5, 9 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report in that combination.<br><br>Object to use in combinations barred by 35 U.S.C. § 315(e)(2). See, also, Nox MIL No. 1. |
| 1015 | International Patent Application Publication No. WO 2008/102140 to Caldecott ("Caldecott") | | | Object FRE 402, 403, 702. Not disclosed as part of any combination relied upon 3/25/18 email from Jeremy Adelson.<br><br>Object to use in combinations barred by 35 U.S.C. § 315(e)(2). See, |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | also, Nox MIL No. 1. |
| 1016 | U.S. Patent Application Publication No. 2010/0075527 to McIntire et al. ("McIntire Pub.") | | | Object FRE 402, 403, 702. Not disclosed as part of any combination relied upon in 3/25/18 email from Jeremy Adelson. Object to use in combinations barred by 35 U.S.C. § 315(e)(2). See, also, Nox MIL No. 1. |
| 1017 | U.S. Patent No. 8,025,539 to Hermannsson ("Hermannsson") | | | Object FRE 402, 403, 702. Object to use as primary reference in view of Harhen against claims 4-5 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report in that combination. Object to use as primary reference |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | in view of McIntire against claims 1, 4-9 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report in that combination. Object to use as primary reference in view of Harhen against claims 1, 6-9 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report in that combination. Object to use as primary reference in view of McIntire in further view of Abizaid or Orewiler against claims 6-8 (as identified in 3/25/18 email from Jeremy Adelson) because |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | not identified in Williams expert report in that combination.<br><br>Object to use as primary reference in view of Harhen in further view of Abizaid or Orewiler against claims 6-8 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report in that combination.<br><br>Object to use in combinations barred by 35 U.S.C. § 315(e)(2). See, also, Nox MIL No. 1. |
| 1018 | U.S. Patent No. 8,251,736 to McIntire et al. ("McIntire") | | | Object FRE 402, 403, 702. Object to use as secondary reference to RES Belt against claim 8 (as identified in 3/25/18 email |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | from Jeremy Adelson) because not identified in Williams expert report in that combination.<br><br>Object to use as secondary reference to Hermannsson against claims 1, 4-9 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report in that combination.<br><br>Object to use as secondary reference to Nox RES Belt against claims 4-7, 9 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report in that combination. |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | Object to use as secondary reference to Nox RES Belt in further view of Abizaid or Oreiler against claims 6-8 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report in that combination. Object to use as secondary reference to Hermannsson in further view of Abizaid or Oreiler against claims 6-8 (as identified in 3/25/18 email from Jeremy Adelson) because not identified in Williams expert report in that combination. Object to use in combinations barred by 35 U.S.C. § |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | 315(e)(2). See, also, Nox MIL No. 1. |
| 1019 | U.S. Provisional Application No. 61/358,472 | | | Object FRE 402, 403, 702. Not disclosed as part of any combination relied upon in 3/25/18 email from Jeremy Adelson. <br><br> Object to use in combinations barred by 35 U.S.C. § 315(e)(2). See, also, Nox MIL No. 1. |
| 1020 | PCT Application No. IS/050010 | | | Admissible |
| 1021 | File History U.S. Application No. 13/806,834, Application as filed Dec. 24, 2012 | | | Object, FRE 403, partial copy of prosecution history |
| 1022 | File History U.S. Application No. 13/806,834, Non-Final Rejection, Oct. 1, 2014 | | | Object, FRE 403, partial copy of prosecution history |
| 1023 | File History U.S. Application No. 13/806,834, Applicant Remarks, Mar. 24, 2015 | | | Object, FRE 403, partial copy of prosecution history |
| 1024 | File History U.S. Application No. 13/806,834, Request to Correct Inventorship (Jan. 19, 2016), Response to Request (Feb. 2, 2016) and Certificate of Correction (Mar. 1, 2016) | | | Object, FRE 402, 403, not relevant |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | to issues to be tried to jury. |
| 1025 | File History European Patent No. 2584962, Response to Opposition, Nov. 23, 2015 | | | Object, FRE 402, 403 |
| 1026 | File History U.S. Application No. 13/806,834, Applicant Summary of Examiner Interview (and attachments thereto), Jun. 3, 2015 | | | Object, FRE 403, partial copy of prosecution history |
| 1027 | European Patent No. EP 2,584,962 (European equivalent of '532 Patent) | | | Admissible |
| 1028 | 2009 CareFusion Catalog | | | Object FRE 402, 403, 702. Not disclosed as part of any combination relied upon in 3/25/18 email from Jeremy Adelson.<br><br>Object to use in combinations barred by 35 U.S.C. § 315(e)(2). See, also, Nox MIL No. 1.<br><br>Not relevant to any issue to be tried to jury. |
| 1029 | U.S. Patent No. 4,430,777 to Takeda ("Takeda") | | | Object FRE 402, 403, 702. Not disclosed as part of any |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | combination relied upon in 3/25/18 email from Jeremy Adelson.<br><br>Object to use in combinations barred by 35 U.S.C. § 315(e)(2). See, also, Nox MIL No. 1. |
| 1030 | Nu-Way Snaps and Snap Leads: an Important Connection in the History of Behavior Analysis (BEHAVANALYST (2014) 37:95–107) | | | Object FRE 402, 403, 702. Not disclosed as part of any combination relied upon in 3/25/18 email from Jeremy Adelson.<br><br>Object to use in combinations barred by 35 U.S.C. § 315(e)(2). See, also, Nox MIL No. 1. |
| 1031 | Mr. Hoskuldsson's notes (HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) | | | Objection because it is not clear what this exhibit comprises and is therefore impossible to properly review |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | and object or agree to admissibility |
| 1032 | Declaration of Sveinbjorn Hoskuldsson (dated July 17, 2017) (HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) (also Ex. 1041) | | | Admissible |
| 1033 | Declaration of Sveinbjorn Hoskuldsson (dated Aug. 9, 2017) (HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) | | | Admissible |
| 1034 | Spreadsheet (overview info) for creation of White Paper (HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) | | | Admissible |
| 1035 | Spreadsheet (overview info) for creation of White Paper (HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) | | | Admissible |
| 1036 | Study 0 Data (HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) | | | Admissible |
| 1037 | Spreadsheet (correlation info) listing epochs and parameters (HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) | | | Admissible |
| 1038 | Spreadsheet (Signal Quality info) HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) | | | Admissible |
| 1039 | Declaration of Alan L. Oslan (dated June 29, 2017) (HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) (also Ex. 2013) | | | Admissible |
| 1040 | Declaration of Sveinbjorn Hoskuldsson (dated June 29, 2017) (HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) (also Ex. 2012) | | | Admissible |
| 1041 | Declaration of Sveinbjorn Hoskuldsson (dated July 17, 2017) (HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) (also Ex. 1032) | | | Admissible |
| 1042 | Declaration of Alan L. Oslan (dated July 15, 2017) (HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) | | | Admissible |
| 1043 | U.S. Patent No. 8,025,539 (also Ex. 1017) | | | See objections to exhibit No. 1017 |
| 1044 | U.S. Patent No. 5,326,272 (also Ex. 1010) | | | See objections to exhibit no. 1010 |
| 1045 | U.S. Patent No. 9,059,532 (also Ex. 1001) | | | Admissible |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| 1046 | Statement on RIP Belt Quality Assessment (CONFIDENTIAL) (also Ex. 2024) | NOX00091614 | | See, Exhibit 126-O |
| 1047 | White Paper: RIP Signal Assessment dated April 21, 2017 (CONFIDENTIAL) (also Ex. 2015) | NOX00091620 | NOX00091641 | See, Exhibit 125-O |
| 1048 | U.S. Patent No. 8,251,736 (also Ex. 1018) | | | See objections to Exhibit 1018 |
| 1049 | U.S. Patent App. 2007/0167089 A1 (also Ex. 1014) | | | See objections to Exhibit 1014 |
| 1050 | Engineering Definition | | | Object, FRE 402, 403, 602, 802. Defendants have not identified or disclosed these "definitions" and because they have not been disclosed they are inadmissible. |
| 1051 | U.S. Patent No. 5,833,688 | | | Object, FRE 402, 403.  This patent has never been disclosed or provided as part of the basis for any claim or defense in this action and is therefore inadmissible. |
| 1052 | M.P.E.P. § 2141 | | | Object FRE 402, 403, 602, 802, usurps the province of the Court, not relevant to any issue before the jury |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| 1053 | Hand sketched drawing from deposition of Alan L. Oslan dated August 31, 2017<br>(HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) | | | Admissible |
| 1054 | McIntire Figure 14, annotated and used in deposition of Alan L. Oslan dated August 31, 2017<br>(HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) | | | Object FRE 403, misleading without remainder of patent of which this exhibit is a part and related testimony |
| 1055 | McIntire Figure 14, annotated and used in deposition of Alan L. Oslan dated August 31, 2017<br>(HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) | | | Object FRE 403, misleading without remainder of patent of which this exhibit is a part and related testimony |
| 1056 | EMBA – Signal Quality Tests – RIP (2009-024)<br>(HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) | NOX00050814 | NOX00050830 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 1057 | Technical bulletin<br>(HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) | NOX00072088 | NOX00072095 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 1058 | Email string<br>(HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) | NOX00032571 | NOX00032573 | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 1064 | McIntire Figs. 11-12, annotated and used as Exhibit 123 in deposition of Alan L. Oslan dated May 18, 2017<br>(HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) | | | Object FRE 403, misleading without remainder of patent of which this exhibit is a |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | part and related testimony |
| 1065 | Expert Invalidity Report of Dr. Justin C. Williams dated Mar. 16, 2017 (HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) | | | Stipulate to authenticity. Object FRE 402, 403, 702, 802. Expert reports may be used for impeachment but are not typically entered into evidence. Nox objects to use of any combinations in the expert report that are barred by 35 U.S.C. 315(e)(2) and that are different than those now asserted, as set forth in the 3/25/18 email of Jeremy Adelson. See, also, Nox MIL No. 1. |
| 1066 | Expert Invalidity Reply Report of Dr. Justin C. Williams dated May 18, 2017 (HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) | | | Stipulate to authenticity. Object FRE 402, 403, 702, 802. Expert reports may be used for impeachment but are not typically entered into |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | evidence. Nox objects to use of any combinations in the expert report that are barred by 35 U.S.C. 315(e)(2) and that are different than those now asserted, as set forth in the 3/25/18 email of Jeremy Adelson. See, *e.g.,* Nox MIL No. 1. |
| 1067 | Email string (CONFIDENTIAL) | NOXIPR00003 | NOXIPR000011 | Admissible |
| 1068 | Important Statement | NOX0003750 | | See Exhibit 92 |
| 1069 | Email string (HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) | NOX0060354 | NOX0060355 | Stipulate to authenticity. Object FRE 402, 403, 602, 802 |
| 1070 | Email string and attachment (HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) | NOX00032999 | NOX00033020 | Admissible |
| 1071 | Excerpt of "2017.08.10.Overview.csv" file provided by Nox Medical (CONFIDENTIAL) | | | Admissible |
| 1072 | Bucklar G.BlKaplan VlBloch K.ElSignal processing technique for non-invasive real-time estimation of cardiac output by inductance cardiography (thoracocardiography), Med. Biol. Eng. Comput. 2003, 41, 2, 302-309. | | | Stipulate to authenticity. Object FRE 402, 403, 602, 802 |
| 1073 | Expert Report of Report of Richard F. Bero, CPA, CVA dated April 21, 2017 (HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) | | | Stipulate to authenticity. Object FRE 402, 403, 702, 802. Expert reports may be used for |

| DTX | Exhibit Description | Beg. Bates No. | End Bates No. | Objections |
|---|---|---|---|---|
| | | | | impeachment but are not typically entered into evidence. |
| 1074 | Excerpts from 30(b)(6) Deposition of Nox Medical of Petur Mar Halldorsson dated February 16, 2017<br>(HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) | | | Object 30(b)(6) testimony is not a proper exhibit to be offered in evidence, any more than testimony from other depositions. |
| 1075 | Product status and change in management<br>(HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) | NOX00073081 | | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 1076 | Email | NOX0000491 | | Stipulate to authenticity. Object FRE 402, 602, 802 |
| 1077 | Natus Comparative Sales Data<br>(HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) | NATUS0025579 | NATUS0025580 | Object FRE 402, 602, 802 |
| 1078 | Excerpts from Deposition of Andre P. Puleo dated March 17, 2017<br>(HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY) | | | Object Portions of a deposition transcript are not a proper exhibit to be offered in evidence, any more than testimony from other depositions. |

# EXHIBIT E

## PLAINTIFFS' DEPOSITION DESIGNATIONS

### Witness:  Terrence Murphy – January 19, 2017

| Plaintiff's Designations (Murphy – 2017) | | Defendant's Objections | Defendant's Counter-Designations | | Plaintiff's Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| Natus objects to each and every line of Nox's designation of deposition of Terrence Murphy on grounds that Mr. Murphy will appear as a live witness at trial. Natus further objects to each and every one of Nox's deposition designations on grounds that this testimony is largely irrelevant to any issue at trial, is cumulative, and cannot be introduced into evidence at trial within the time period allotted by the Court for this trial. Nox has designated nearly all of Mr. Murphy's approximately six hours of deposition testimony. | | | | | |
| 11:11 | 11:17 | | | | |
| 17:12 | 18:22 | | | | |
| 18:23 | 19:4 | | | | |
| 19:9 | 19:20 | | | | |
| 23:12 | 26:9 | | | | |
| 34:16 | 34:23 | | | | |
| 35:5 | 35:20 | | | | |
| 35:21 | 36:6 | | | | |
| 36:13 | 36:22 | | | | |
| 37:10 | 37:17 | | | | |
| 37:18 | 37:19 | | | | |
| 38:13 | 39:6 | | | | |
| 39:7 | 39:13 | | | | |
| 40:16 | 41:10 | | | | |
| 42:7 | 42:12 | | | | |
| 42:13 | 42:22 | | | | |
| 42:23 | 43:18 | | | | |
| 43:19 | 44:3 | | | | |
| 45:15 | 46:4 | | | | |
| 46:10 | 46:16 | | | | |
| 47:6 | 47:7 | | | | |
| 47:8 | 48:3 | | | | |
| 48:11 | 49:3 | | | | |
| 49:4 | 49:16 | | | | |
| 49:23 | 50:3 | | | | |
| 50:22 | 50:24 | | | | |
| 50:25 | 51:16 | | | | |
| 53:6 | 53:9 | | | | |

| Plaintiff's Designations (Murphy – 2017) | | Defendant's Objections | Defendant's Counter-Designations | | Plaintiff's Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| 62:12 | 62:25 | | | | |
| 63:12 | 63:15 | | | | |
| 63:21 | 64:15 | | | | |
| 68:24 | 69:2 | | | | |
| 69:5 | 69:12 | | | | |
| 72:4 | 73:6 | | | | |
| 73:7 | 73:15 | | | | |
| 74:14 | 74:15 | | | | |
| 74:22 | 75:4 | | | | |
| 75:20 | 76:4 | | | | |
| 78:15 | 79:2 | | | | |
| 82:5 | 82:8 | | | | |
| 85:22 | 86:8 | | | | |
| 86:11 | 86:12 | | | | |
| 88:19 | 89:7 | | | | |
| 89:8 | 89:11 | | | | |
| 89:12 | 90:12 | | | | |
| 90:13 | 90:16 | | | | |
| 94:23 | 95:16 | | | | |
| 95:17 | 95:25 | | | | |
| 96:2 | 97:24 | | | | |
| 98:3 | 98:22 | | | | |
| 98:23 | 100:6 | | | | |
| 100:7 | 101:16 | | | | |
| 102:15 | 103:2 | | | | |
| 103:4 | 103:9 | | | | |
| 103:10 | 103:16 | | | | |
| 105:15 | 105:19 | | | | |
| 105:20 | 105:25 | | | | |
| 106:3 | 107:4 | | | | |
| 107:5 | 107:23 | | | | |
| 107:24 | 108:10 | | | | |
| 108:11 | 109:22 | | | | |
| 109:23 | 109:25 | | | | |
| 110:3 | 110:13 | | | | |
| 112:6 | 112:19 | | | | |
| 116:9 | 116:25 | | | | |
| 119:8 | 121:16 | | | | |
| 127:10 | 128:6 | | | | |

| Plaintiff's Designations (Murphy – 2017) | | Defendant's Objections | Defendant's Counter-Designations | | Plaintiff's Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| 132:5 | 132:7 | | | | |
| 132:9 | 132:23 | | | | |
| 134:15 | 134:25 | | | | |
| 135:2 | 136:2 | | | | |
| 136:3 | 137:4 | | | | |
| 137:5 | 137:11 | | | | |
| 143:5 | 143:11 | | | | |
| 143:12 | 145:2 | | | | |
| 145:12 | 146:3 | | | | |
| 146:16 | 147:24 | | | | |
| 147:25 | 148:17 | | | | |
| 148:23 | 149:9 | | | | |
| 149:15 | 149:20 | | | | |
| 149:22 | 150:19 | | | | |
| 151:9 | 151:18 | | | | |
| 151:19 | 151:25 | | | | |
| 152:2 | 152:22 | | | | |
| 155:12 | 157:7 | | | | |
| 157:22 | 158:10 | | | | |
| 165:14 | 166:23 | | | | |
| 168:12 | 168:25 | | | | |
| 169:1 | 169:17 | | | | |
| 169:17 | 170:5 | | | | |
| 170:14 | 171:9 | | | | |
| 171:15 | 172:14 | | | | |
| 172:15 | 173:5 | | | | |
| 173:8 | 174:7 | | | | |
| 174:8 | 175:10 | | | | |
| 175:11 | 176:11 | | | | |
| 178:24 | 179:10 | | | | |
| 179:11 | 180:4 | | | | |
| 182:19 | 183:16 | | | | |
| 185:23 | 186:4 | | | | |
| 186:12 | 186:22 | | | | |
| 188:2 | 188:15 | | | | |
| 188:16 | 188:19 | | | | |
| 192:18 | 193:3 | | | | |
| 194:4 | 194:7 | | | | |
| 194:8 | 194:17 | | | | |

| Plaintiff's Designations (Murphy – 2017) | | Defendant's Objections | Defendant's Counter-Designations | | Plaintiff's Objections to Counter-Designations |
|---|---|---|---|---|---|
| **FROM (Page:Line)** | **TO (Page:Line)** | | **FROM (Page:Line)** | **TO (Page:Line)** | |
| 194:21 | 195:8 | | | | |
| 195:10 | 195:13 | | | | |
| 196:3 | 196:11 | | | | |
| 196:17 | 196:19 | | | | |
| 196:22 | 196:24 | | | | |
| 197:2 | | | | | |
| 197:15 | 197:25 | | | | |
| 199:8 | 199:18 | | | | |
| 199:19 | 200:18 | | | | |
| 200:19 | 201:9 | | | | |
| 201:13 | 201:23 | | | | |
| 202:2 | 202:14 | | | | |
| 202:18 | | | | | |
| 206:6 | 206:10 | | | | |
| 206:15 | 206:17 | | | | |
| 214:4 | 214:12 | | | | |
| 216:18 | 216:25 | | | | |
| 218:15 | 219:4 | | | | |
| 220:10 | 221:6 | | | | |
| 222:22 | 223:12 | | | | |
| 223:14 | 223:17 | | | | |
| 225:3 | 225:7 | | | | |
| 226:22 | 227:3 | | | | |
| 227:4 | 227:23 | | | | |
| 231:20 | 233:8 | | | | |
| 233:9 | 233:10 | | | | |
| 234:15 | 235:2 | | | | |
| 235:2 | 235:14 | | | | |
| 236:2 | 236:16 | | | | |
| 236:22 | 238:15 | | | | |
| 238:24 | 239:6 | | | | |
| 240:7 | 240:11 | | | | |
| 240:13 | 241:9 | | | | |
| 243:24 | 244:13 | | | | |
| 244:15 | 244:17 | | | | |
| 244:19 | 245:3 | | | | |
| 245:4 | 245:7 | | | | |
| 245:9 | 245:20 | | | | |
| 249:23 | 250:9 | | | | |

## Witness: Thomas Duffy – February 22, 2017

| Defendant Designations (Duffy – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendants Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| Natus objects generally to each and every of Nox's proposed designations from the deposition of Thomas Duffy on grounds that this testimony is largely irrelevant to any issue at trial, is cumulative, and cannot be introduced into evidence at trial within the time period allotted by the Court for this trial. Nox has designated nearly all of Mr. Duffy's nearly seven hours of deposition testimony. | | | | | |
| 11:14 | 11:20 | FRE 403 | | | |
| 12:4 | 12:10 | FRE 403 | | | |
| 12:11 | 12:18 | FRE 403 | | | |
| 13:7 | 13:16 | FRE 402 | | | |
| 24:3 | 24:8 | | | | |
| 24:9 | 24:14 | FRE 403 | 24:15 | 25:22 | |
| 27:2 | 27:12 | FRE 402 | | | |
| 27:13 | 27:20 | FRE 402 | | | |
| 27:21 | 27:22 | FRE 402 | | | |
| 27:23 | 28:6 | Natus objects to the form of the question for lack of foundation; and FRE 402, 602, 802 | 28:7 | 28:9 | |
| 29:3 | 29:7 | Natus objects to the form of the question as vague; lack of foundation; and FRE 402 | | | |
| 29:15 | 29:18 | Natus objects to the form of the question as vague; lack of foundation; and FRE 402 | | | |

| Defendant Designations (Duffy – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendants Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| 30:14 | 30:21 | FRE 402, 403, 602, 802 | | | |
| 30:22 | 31:25 | | | | |
| 32:19 | 32:24 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403 | | | |
| 32:25 | 33:10 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403 | | | |
| 33:11 | 33:22 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403 | | | |
| 33:23 | 33:25 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403 | | | |
| 34:2 | 34:21 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403 | | | |
| 34:22 | 35:18 | Natus objects to the form of | | | |

| Defendant Designations (Duffy – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendants Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| | | the question as calling for speculation; lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 35:19 | 36:6 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403 | 36:7 | 36:15 | |
| 41:16 | 42:5 | Natus objects to the form of the question as vague; lack of foundation; and FRE 402, 403 | 42:6 | 43:6 | |
| 46:7 | 46:22 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403 | 46:23 | 49:11 | |
| 50:16 | 50:22 | FRE 403 | 50:23 | 51:3 | |
| 51:4 | 51:14 | | | | |
| 51:15 | 51:25 | | | | |
| 52:2 | 52:9 | | | | |
| 53:4 | 53:5 | Natus objects to the form of the question as vague | | | |
| 53:7 | | | | | |
| 53:12 | 54:2 | | | | |
| 54:3 | 54:6 | | | | |

| Defendant Designations (Duffy – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendants Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| 54:24 | 55:2 | Natus objects to the form of the question as vague; FRE 402, 403 | | | |
| 55:4 | 55:6 | FRE 402, 403 | | | |
| 55:25 | 56:4 | Natus objects to the form of the question as vague; lack of foundation; and FRE 402, 403 | | | |
| 56:6 | 56:9 | | | | |
| 57:6 | 57:13 | | | | |
| 57:14 | 57:19 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403 | | | |
| 57:21 | | Natus objects to the form of the question for lack of foundation; and FRE 402, 403 | | | |
| 57:22 | 58:9 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403 | | | |
| 58:10 | 58:11 | Natus objects to the form of the question | | | |

| Defendant Designations (Duffy – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendants Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| | | for lack of foundation; and FRE 402, 403 | | | |
| 58:12 | 58:18 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403 | | | |
| 58:22 | 59:4 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403 | | | |
| 59:5 | 60:9 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403 | | | |
| 60:10 | 60:13 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403 | | | |
| 60:14 | 61:17 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403 | | | |

| Defendant Designations (Duffy – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendants Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| 61:18 | 62:19 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403 | | | |
| 62:20 | 63:14 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403 | | | |
| 63:25 | 64:12 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403 | | | |
| 65:4 | 65:6 | FRE 402, 403, 602, 802 | | | |
| 65:7 | 65:9 | FRE 402, 403, 602, 802 | 65:10 | 67:10 | |
| 67:11 | 67:22 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403 | 67:23 | 68:2 | |
| 68:21 | 69:7 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403, 602, 802 | 69:12 | 69:24 | Lack of foundation, |

| Defendant Designations (Duffy – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendants Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| 71:12 | 71:20 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403, 602, 802 | 69:25 | 71:11 | Lack of foundation, |
| 73:13 | 74:2 | FRE 402, 403 | | | |
| 74:3 | 74:7 | FRE 402, 403 | | | |
| 74:8 | 75:3 | FRE 402, 403 | | | |
| 75:13 | 76:7 | FRE 402, 403 | | | |
| 76:20 | 76:23 | Natus objects to the form of the question as vague; lack of foundation; and FRE 402 | 76:24 | 76:25 | |
| 77:2 | 77:6 | Natus objects to the form of the question as vague; lack of foundation; and FRE 402 | 77:7 78:12 | 77:12 78:19 | |
| 78:24 | 79:2 | Natus objects to the form of the question for lack of foundation; and FRE 402 | | | |
| 79:3 | 79:16 | Natus objects to the form of the question for lack of foundation; and FRE 402 | | | |
| 80:4 | 80:17 | Natus objects to the form of the question | 80:18 | 81:2 | |

| Defendant Designations (Duffy – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendants Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| | | for lack of foundation; and FRE 402, 403 | | | |
| 83:21 | 84:17 | Natus objects to the form of the question as vague; and FRE 402, 403 | | | |
| 84:19 | 84:23 | FRE 402, 403 | 84:24 | 85:4 | |
| 90:2 | 90:15 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 93:22 | 93:25 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403, 602, 802 | 94:2 | 94:9 | |
| 97:16 | 98:3 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 98:4 | 98:6 | FRE 402, 403 | | | |
| 98:7 | 98:15 | FRE 402, 403 | | | |
| 98:17 | 99:4 | Natus objects to the form of the question as vague; lack of foundation; | | | |

| Defendant Designations (Duffy – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendants Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| | | and FRE 402, 403 | | | |
| 99:5 | 99:20 | FRE 402, 403 | | | |
| 102:17 | 102:20 | FRE 402, 403 | | | |
| 102:21 | 102:24 | FRE 402, 403 | | | |
| 102:25 | 105:2 | FRE 402, 403, 602, 802 | | | |
| 105:3 | 105:6 | | 105:7 | 105:25 | |
| 109:9 | 109:22 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 109:24 | 110:3 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 110:4 | 110:8 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 110:9 | 110:16 | FRE 402, 403, 602, 802 | | | |
| 110:17 | 111:18 | FRE 402, 403, 602, 802 | 111:19 | 113:16 | |
| 113:17 | 113:20 | FRE 402, 403, 602, 802 | 113:21 | 113:24 | Lack foundation, FRE 4402, 03 |
| 114:4 | 114:17 | Natus objects to the form of the question as vague; and | | | |

| Defendant Designations (Duffy – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendants Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| | | FRE 402, 403, 802 | | | |
| 115:3 | 115:7 | | | | |
| 115:8 | 117:4 | FRE 402, 403 | | | |
| 117:5 | 117:8 | FRE 402, 403 | 117:9 | 117:20 | Lack foundation, FRE 4402, 03 |
| 141:24 | 142:8 | FRE 402, 403, 802 | | | |
| 142:20 | 143:8 | Natus objects to the form of the question as vague; and FRE 402, 403, 802 | 144:3 | 145:8 | Lack foundation, FRE 4402, 03 |
| 145:9 | 146:3 | FRE 402, 403, 602, 802 | 146:4 | 146:15 | Lack foundation, FRE 4402, 03 |
| 145:18 | 145:23 | Natus objects to this designation on grounds it is included in, and thus, duplicative of the previous designation | | | |
| 147:3 | 147:19 | FRE 402, 403, 602, 802 | | | |
| 147:21 | 147:24 | FRE 402, 403, 602, 802 | | | |
| 147:25 | 148:6 | FRE 402, 403, 602, 802 | | | |
| 151:21 | 152:21 | FRE 402, 403, 602, 802 | | | |
| 152:23 | 152:25 | FRE 402, 403 | | | |
| 153:2 | 153:24 | Natus objects to the form of the question for lack of foundation; | | | |

| Defendant Designations (Duffy – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendants Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| | | and FRE 402, 403 | | | |
| 154:3 | 154:15 | | | | |
| 154:20 | 155:2 | | | | |
| 155:3 | 156:4 | FRE 402, 403, 602, 802 | | | |
| 156:5 | 156:8 | FRE 402, 403, 802 | | | |
| 156:9 | 156:12 | FRE 402, 403, 802 | | | |
| 156:13 | 157:18 | FRE 402, 403, 802 | | | |
| 157:25 | 158:12 | FRE 402, 403, 802 | | | |
| 158:13 | 158:19 | Natus objects to the form of the question as vague; lack of foundation; and FRE 402, 403, 802 | | | |
| 158:21 | 160:2 | Natus objects to the form of the question as vague; calling for speculation; lack of foundation; and FRE 402, 403, 802 | | | |
| 160:3 | 162:10 | Natus objects to the form of the question as vague; calling for speculation; lack of foundation; | | | |

| Defendant Designations (Duffy – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendants Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| | | and FRE 402, 403, 802 | | | |
| 162:23 | 162:25 | Natus objects to the form of the question as vague; calling for speculation; lack of foundation; and FRE 402, 403, 802 | | | |
| 163:1 | 163:16 | Natus objects to the form of the question as vague; calling for speculation; lack of foundation; and FRE 402, 403, 802 | | | |
| 163:17 | 163:20 | Natus objects to the form of the question as vague; calling for speculation; lack of foundation; and FRE 402, 403, 802 | | | |
| 163:22 | 164:4 | Natus objects to the form of the question as vague; calling for speculation; lack of foundation; | | | |

| Defendant Designations (Duffy – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendants Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| | | and FRE 402, 403, 802 | | | |
| 164:5 | 164:8 | Natus objects to the form of the question as vague; calling for speculation; lack of foundation; and FRE 402, 403, 802 | | | |
| 164:9 | 164:11 | Natus objects to the form of the question as vague; calling for speculation; lack of foundation; and FRE 402, 403, 802 | | | |
| 164:12 | 164:25 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403, 802 | | | |
| 166:11 | 167:2 | FRE 402, 403, 802 | | | |
| 167:14 | 168:10 | Natus objects to the form of the question for lack of foundation; and FRE 402, 403, 802 | 168:11 | 169:8 | |
| 172:11 | 173:12 | FRE 402, 403, 802 | | | |

| Defendant Designations (Duffy – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendants Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| 175:4 | 176:1 | Natus objects to the form of the question as calling for speculation; lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 176:3 | 176:9 | Natus objects to the form of the question as calling for speculation; lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 176:12 | 176:13 | Natus objects to the form of the question as calling for speculation; lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 176:15 | 177:3 | Natus objects to the form of the question as calling for speculation; lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 177:6 | | Natus objects to the form of the question as calling for | | | |

| Defendant Designations (Duffy – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendants Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| | | speculation; lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 178:23 | 179:20 | Natus objects to the form of the question as calling for speculation; lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 179:23 | 180:20 | Natus objects to the form of the question as calling for speculation; lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 181:5 | 181:21 | Natus objects to the form of the question as calling for speculation; lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 183:11 | 183:20 | Natus objects to the form of the question as calling for speculation; lack of foundation; | | | |

| Defendant Designations (Duffy – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendants Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| | | and FRE 402, 403, 602, 802 | | | |
| 183:21 | 184:17 | Natus objects to the form of the question as calling for speculation; lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 184:18 | 184:25 | Natus objects to the form of the question as calling for speculation; lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 185:19 | 186:4 | Natus objects to the form of the question as vague; calling for speculation; lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 186:6 | 186:7 | Natus objects to the form of the question as calling for speculation; lack of foundation; and FRE 402, 403, 602, 802 | | | |

| Defendant Designations (Duffy – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendants Objections to Counter-Designations |
|---|---|---|---|---|---|
| **FROM (Page:Line)** | **TO (Page:Line)** | | **FROM (Page:Line)** | **TO (Page:Line)** | |
| 186:16 | 186:22 | Natus objects to the form of the question as calling for speculation; lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 187:3 | 187:10 | Natus objects to the form of the question as calling for speculation; lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 192:24 | 193:7 | | | | |
| 196:5 | 196:12 | FRE 402, 403, 802 | | | |
| 196:13 | 196:23 | FRE 402, 403, 802 | | | |
| 197:5 | 197:25 | Natus objects to the form of the question as calling for speculation; FRE 402, 403, 802 | | | |
| 198:1 | 198:3 | Natus objects to the form of the question as calling for speculation; FRE 402, 403, 802 | | | |
| 198:4 | 198:8 | Natus objects to the form of the question | 198:9 | 198:15 | |

| Defendant Designations (Duffy – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendants Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| | | as calling for speculation; FRE 402, 403, 802 | | | |
| 198:16 | 198:19 | Natus objects to the form of the question as calling for speculation; FRE 402, 403, 802 | 198:20 | 199:6 | |
| 200:14 | 200:19 | Natus objects to the form of the question as calling for speculation; FRE 402, 403, 602 | | | |
| 200:20 | 201:10 | Natus objects to the form of the question as calling for speculation; FRE 402, 403, 602 | | | |
| 201:11 | 201:24 | Natus objects to the form of the question as calling for speculation; FRE 402, 403, 602 | 201:25 | 203:13 | |
| 210:17 | 211:3 | Natus objects to the form of the question as calling for speculation; FRE 402, 403, 802 | 211:4 | 211:21 | |

| Defendant Designations (Duffy – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendants Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| 219:4 | 219:13 | Natus objects to the form of the question as calling for speculation; FRE 402, 403, 802 | | | |
| 219:14 | 219:24 | Natus objects to the form of the question as calling for speculation; lack of foundation; and FRE 402, 403, 802 | | | |
| 220:5 | 220:11 | Natus objects to the form of the question as calling for speculation; lack of foundation; and FRE 402, 403 | 220:12 | 222:18 | No testimony designated, FRE 402, 403 |
| 224:19 | 225:9 | Natus objects to the form of the question as calling for speculation; lack of foundation; and FRE 402, 403 | | | |
| 225:10 | 226:9 | Natus objects to the form of the question as calling for speculation; lack of | | | |

| Defendant Designations (Duffy – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendants Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| | | foundation; and FRE 402, 403 | | | |
| 227:4 | 227:14 | Natus objects to the form of the question as calling for speculation; lack of foundation; and FRE 402, 403 | | | |
| 227:21 | | Natus objects to the form of the question as calling for speculation; lack of foundation; and FRE 402, 403 | | | |
| 227:23 | 227:25 | Natus objects to the form of the question as calling for speculation; lack of foundation; and FRE 402, 403 | | | |
| 228:4 | 228:13 | Natus objects to the form of the question as calling for speculation; lack of foundation; and FRE 402, 403 | 228:14 | 229:20 | |

| Defendant Designations (Duffy – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendants Objections to Counter-Designations |
|---|---|---|---|---|---|
| **FROM (Page:Line)** | **TO (Page:Line)** | | **FROM (Page:Line)** | **TO (Page:Line)** | |
| 230:11 | 231:21 | Natus objects to the form of the question as calling for speculation; lack of foundation; and FRE 402, 403 | | | |
| 240:22 | 242:17 | Natus objects to the form of the question as calling for speculation; and FRE 402, 403, 802 | 242:18 | 242:22 | |
| 243:3 | 243:8 | FRE 402, 403, 602, 802 | | | |
| 245:8 | 245:18 | FRE 402, 403, 602, 802 | | | |
| 245:19 | 245:24 | Natus objects to the form of the question as vague; lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 260:10 | 260:11 | Natus objects to the form of the question as vague; calling for speculation; lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 260:21 | 261:15 | Natus objects to the form of | | | |

| Defendant Designations (Duffy – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendants Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| | | the question as vague; calling for speculation; lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 264:23 | 265:24 | FRE 402, 403 | | | |
| 267:17 | 269:19 | Natus objects to the form of the question as calling for speculation; lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 279:2 | 279:9 | Natus objects to the form of the question as calling for speculation; lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 279:10 | 280:15 | Natus objects to the form of the question as calling for speculation; lack of foundation; and FRE 402, 403, 602, 802 | 280:16 | 280:18 | |
| 280:19 | 281:2 | Natus objects to the form of the question as calling for | 281:3 | 281:16 | |

| Defendant Designations (Duffy – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendants Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| | | speculation; lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 286:4 | 286:15 | | | | |
| 286:21 | 287:11 | FRE 402, 403, 602, 802 | | | |
| 288:10 | 288:21 | Natus objects to the form of the question as calling for speculation; lack of foundation; and FRE 402, 403, 602, 802 | 288:22 | 289:4 | Lack foundation, FRE 402, 403, 602 |
| 289:5 | 289:13 | Natus objects to the form of the question as calling for speculation; lack of foundation; and FRE 402, 403, 602, 802 | | | |
| 302:3 | 303:21 | Natus objects to the form of the question as calling for speculation; and FRE 402, 403 | | | |

**Witness:  Ally Electek (Arif Rashid) – December 13, 2016**

| Plaintiff's Designations (Rashid – 2016) | | Defendant's Objections | Defendant's Counter-Designations | | Plaintiff's Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| 5:20 | 5:24 | None | | | |
| 12:13 | 13:5 | None | 13:6 | 13:18 | |
| 13:19 | 13:22 | None | 13:6 | 13:18 | |
| 82:9 | 82:20 | FRE 402, 403 | | | |
| 82:25 | 83:16 | FRE 402,403, 602, 802 | 83:17 | 84:9 | |
| 84:14 | 85:11 | FRE 402,403,602, 802 | 85:12 | 85:21 | Foundation, FRE 402, 403, 602 |
| 85:22 | 85:25 | FRE 402, 403, 602, 802 | 85:12 | 85:21 | Foundation, FRE 402, 403, 602 |
| 87:16 | 88:8 | FRE 402, 403, 602, 802 | 87:3 | 87:15 | Foundation, FRE 402, 403, 602 |
| 89:3 | 89:6 | FRE 402, 403, 602 | | | |
| 89:10 | 89:11 | Natus objects to the form of the question as calling for speculation; lack of foundation; FRE 402, 403, 602 | | | |
| 89:17 | 90:5 | Natus objects to the form of the question as calling for speculation; lack of foundation; FRE 402, 403, 602 | | | |
| 106:10 | 106:21 | FRE 402, 403 | | | |
| 107:13 | 107:22 | FRE 402, 403, 602 | | | |
| 111:5 | 111:13 | FRE 402, 403, 602, 802 | | | |

| Plaintiff's Designations (Rashid – 2016) | | Defendant's Objections | Defendant's Counter-Designations | | Plaintiff's Objections to Counter-Designations |
|---|---|---|---|---|---|
| **FROM (Page:Line)** | **TO (Page:Line)** | | **FROM (Page:Line)** | **TO (Page:Line)** | |
| 112:19 | 114:4 | FRE 402, 403, 602, 802 | | | |
| 116:19 | 116:25 | FRE 402, 403 | | | |
| 118:18 | 118:22 | FRE 402, 403 | 118:23 | 119:11 | |
| 119:12 | 120:6 | FRE 402, 403 | 118:23 | 119:11 | |
| 120:18 | 121:16 | FRE 402, 403, 802 | | | |
| 121:19 | 121:20 | FRE 402, 403, 802 | | | |
| 121:22 | 121:24 | FRE 402, 403, 802 | | | |
| 168:14 | 168:23 | FRE 402, 403, 802 | | | |
| 169:8 | 170:8 | FRE 402, 403, 802 | 170:9 | 170:16 | |

**Witness: Ajay Bhave – February 10, 2017**

| Plaintiff's Designations (Bhave – 2017) | | Defendant's Objections | Defendant's Counter-Designations | | Plaintiff's Objections to Counter-Designations |
|---|---|---|---|---|---|
| **FROM (Page:Line)** | **TO (Page:Line)** | | **FROM (Page:Line)** | **TO (Page:Line)** | |
| 8:10 | 8:12 | None | None | None | |
| 13:16 | 13:18 | None | 13:5 | 14:12 | |
| 14:9 | 14:12 | None | 13:5 | 14:12 | |
| 16:13 | 16:22 | None | 16:13 | 17:15 | |
| 16:23 | 16:24 | None | 16:13 | 17:15 | |
| 30:19 | 30:24 | None | 29:20 30:19 | 30:4 33:11 | |
| 31:10 | 31:13 | None | 29:20 | 30:4 | |
| 32:14 | 32:19 | FRE 402, 403, 602. | 30:4 33:11 | 30:4 33:11 | |
| 38:8 | 38:20 | FRE 602. | 38:21 39:17 | 39:8 39:12 | |
| 42:5 | 42:9 | Natus objects to the form of the question as vague; and FRE 402, 403, 602. | | | |
| 42:11 | 42:21 | Natus objects to the form of the question as vague; and FRE 402, 403, 602. | | | |
| 58:21 | 59:5 | FRE 402, 403, 602 | | | |
| 59:7 | 59:13 | FRE 402, 403, 602 | | | |
| 60:2 | 60:4 | Natus objects to lack of foundation, and FRE 402, 403, 602 | | | |
| 60:6 | 60:18 | Natus objects to lack of foundation, and | | | |

| Plaintiff's Designations (Bhave – 2017) | | Defendant's Objections | Defendant's Counter-Designations | | Plaintiff's Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| | | FRE 402, 403, 602 | | | |
| 180:3 | 180:10 | None | | | |
| 181:17 | 181:22 | None | 180:11 | 183:7 | |
| 182:12 | 182:21 | None | 180:11 | 183:7 | |
| 185:2 | 185:14 | FRE 602 | 185:15 | 185:18 | |
| 213:2 | 213:5 | Natus objects to the form of the question as calling for speculation; and FRE 402,403, 602 | 213:9 | 213:16 | |
| 213:17 | 213:19 | Natus objects to the form of the question as stated at 213:20-22; and FRE 402, 403, and 602 | 213:9 | 213:16 | |
| 213:24 | | Natus objects to the form of the question as stated at 213:20-22; and FRE 402, 403, and 602 | | | |
| 213:25 | 214:6 | Natus objects to the form of the question as stated at 213:20-22; and FRE 402, 403, and 602 | | | |
| 235:23 | 236:14 | FRE 602 | 236:15 | 236:23 | |
| 236:24 | 237:14 | FRE 602 | | | |
| 237:15 | 238:11 | FRE 602 | 238:12 | 238:14 | |
| 238:19 | 239:4 | FRE 602 | | | |

| Plaintiff's Designations (Bhave – 2017) | | Defendant's Objections | Defendant's Counter-Designations | | Plaintiff's Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| 239:5 | 239:7 | FRE 602 | 239:8 | 239:11 | No testimony designated, FRE 402, 403 |
| 239:12 | 239:15 | FRE 602 | 239:8 | 239:11 | No testimony designated, FRE 402, 403 |
| 239:16 | 240:6 | FRE 602 | | | |
| 240:12 | 241:2 | FRE 402, 602 | | | |
| 241:7 | 241:10 | FRE 402, 602 | | | |
| 249:9 | 250:8 | FRE 402, 602 | | | |
| 251:18 | 251:21 | Natus objects to the form of the question as calling for speculation; FRE 402, 602 | | | |
| 251:24 | 252:7 | Natus objects to the form of the question as calling for speculation; FRE 402, 602 | | | |
| 252:20 | 252:21 | Natus objects to the form of the question as vague; FRE 402, 602 | | | |
| 252:23 | 252:7 | Natus objects to the form of the question as calling for speculation; FRE 402, 602 | | | |

**Witness: Austin Noll – March 2, 2017**

| Plaintiff's Designations (Noll – 2017) | | Defendant's Objections | Defendant's Counter-Designations | | Plaintiff's Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| In the event Mr. Noll appears at trial as a live witness, Natus objects to each and every line of Nox's designation of deposition on such grounds. Natus further objects to each and every of Nox's deposition designations on grounds that this testimony is largely irrelevant to any issue at trial, is cumulative, and cannot be introduced into evidence at trial within the time period allotted by the Court for this trial. Under the circumstances, Nox has designated an excessive portion of Mr. Noll's deposition testimony. | | | | | |
| 5:15 | 5:19 | None | | | |
| 10:25 | 11:2 | FRE 402 | 10:4 11:3 | 10:24 11:9 | |
| 18:14 | 18:25 | None | | | |
| 21:8 | 21:13 | None | 22:10 | 23:8 | |
| 48:16 | 48:17 | None | | | |
| 49:5 | 49:7 | Foundation, FRE 602 | | | |
| 49:8 | 49:11 | Foundation, FRE 602 | | | |
| 49:13 | 49:25 | FRE 602 | | | |
| 58:15 | 58:24 | None | 59:23 60:14 | 60:11 60:18 | |
| 60:20 | 61:2 | None | 61:14 | 61:18 | |
| 69:21 | 70:2 | None | | | |
| 70:5 | 70:8 | None | | | |
| 71:12 | 71:25 | FRE 402, 403, 602 | 72:9 74:7 | 73:24 74:8 | |
| 74:10 | 74:16 | FRE 402, 403, 602 | 74:17 | 74:20 | |
| 78:25 | 79:2 | None | | | |
| 81:2 | 81:6 | None | | | |
| 81:7 | 81:10 | None | | | |
| 81:15 | 82:10 | FRE 402, 403 602 | 82:11 | 82:24 | |
| 82:25 | 83:10 | FRE 402, 403 602 | | | |
| 83:11 | 83:21 | FRE 402 | 83:22 | 84:8 | |
| 84:12 | 85:21 | FRE 402, 403 602 | | | |

| Plaintiff's Designations (Noll – 2017) | | Defendant's Objections | Defendant's Counter-Designations | | Plaintiff's Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| 86:3 | 86:22 | FRE 402, 403 602 | | | |
| 88:25 | 89:7 | FRE 402, 403 602 | | | |
| 92:23 | 93:12 | FRE 402 | 93:13 | 93:25 | |
| 108:23 | 109:5 | None | | | |
| 109:6 | 109:18 | Foundation, FRE 602 | | | |
| 109:20 | 109:24 | Foundation, FRE 402, 602 | | | |
| 112:23 | 113:6 | FRE 402 | | | |
| 113:16 | 113:18 | FRE 402 | | | |
| 118:13 | 118:22 | None | | | |
| 120:12 | 121:2 | FRE 402, 403, 602 | 113:19 113:25 | 113:22 114:13 | |
| 127:13 | 128:3 | FRE 402, 802 | | | |
| 152:19 | 153:6 | FRE 402, 403, 602 | | | |
| 153:9 | 153:13 | FRE 402, 403, 602 | | | |
| 154:2 | 155:16 | FRE 402, 403, 602 | | | |
| 155:18 | 156:18 | FRE 402, 403, 602, Foundation | | | |
| 156:22 | 157:3 | None | | | |
| 157:14 | 158:14 | FRE 402, 403, 602, Foundation | | | |
| 158:16 | 159:2 | FRE 402 | | | |
| 159:19 | 160:1 | None | 159:18 | 159:19 | |
| 160:13 | 160:19 | FRE 402 | | | |
| 162:4 | 162:10 | FRE 402, 602 | 162:11 | 163:1 | Foundation, FRE 402, 403, 602 |
| 164:8 | 165:1 | Foundation, FRE 402, 602 | | | |
| 165:2 | 165:18 | FRE 402 | | | |
| 165:24 | 166:9 | Object to form, FRE 402, 403, 602 | | | |
| 166:12 | 166:20 | FRE 402, 602 | | | |

| Plaintiff's Designations (Noll – 2017) | | Defendant's Objections | Defendant's Counter-Designations | | Plaintiff's Objections to Counter-Designations |
|---|---|---|---|---|---|
| **FROM (Page:Line)** | **TO (Page:Line)** | | **FROM (Page:Line)** | **TO (Page:Line)** | |
| 166:21 | 167:1 | FRE 402, 602 | | | |
| 167:20 | 167:24 | FRE 402, 403, 602, Foundation | | | |
| 168:2 | 168:14 | FRE 402 | | | |
| 168:19 | 169:1 | FRE 402 | | | |
| 169:13 | 169:19 | FRE 402 | | | |
| 169:23 | 170:9 | FRE 402 | | | |
| 170:19 | 172:9 | Foundation, FRE 402, 602 | 173:2 | 173:15 | Non responsive, FRE 402, 403, 602 |
| 173:19 | 174:5 | FRE 402 | | | |
| 175:24 | 176:5 | FRE 402 | | | |
| 176:15 | 176:17 | None | | | |
| 176:18 | 176:23 | None | | | |
| 177:8 | 177:23 | FRE 402, 602 | | | |
| 178:9 | 179:6 | FRE 402, 602, Foundation | | | |
| 179:9 | | FRE 402 | | | |
| 179:10 | 179:18 | FRE 402 | | | |
| 180:8 | 180:24 | FRE 402, 602, Foundation | | | |
| 180:25 | 181:3 | FRE 402, 602, Foundation | | | |
| 181:5 | 181:9 | FRE 402, 602, Foundation | 181:12 | 182:5 | |
| 182:6 | 182:11 | FRE 402 | | | |

**Witness: Natus 30(b)(6) Austin Noll – March 3, 2017**

| Plaintiff's Designations (Natus 30(b)(6) – 2017) | | Defendant's Objections | Defendant's Counter-Designations | | Plaintiff's Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| In the event Mr. Noll appears at trial as a live witness, Natus objects to each and every line of Nox's designation of deposition on such grounds. Natus further objects to each and every of Nox's deposition designations on grounds that this testimony is largely irrelevant to any issue at trial, is cumulative, and cannot be introduced into evidence at trial within the time period allotted by the Court for this trial. Under the circumstances, Nox has designated an excessive portion of Mr. Noll's deposition testimony. | | | | | |
| 6:16 | 6:20 | None | | | |
| 8:17 | 9:10 | None | 9:5 | 9:10 | |
| 20:10 | 20:11 | None | | | |
| 20:13 | 20:15 | None | 21:3 21:6 | 21:4 21:10 | |
| 32:15 | 32:17 | Object to form (vague) | 32:18 | 32:21 | |
| 32:22 | 32:25 | None | | | |
| 35:19 | 35:22 | None | | | |
| 35:25 | 36:25 | None | | | |
| 73:23 | 73:25 | Foundation, FRE 602 | 73:7 73:13 | 73:10 73:22 | |
| 74:2 | 74:9 | Foundation, FRE 602 | | | |
| 103:7 | 103:25 | None | | | |
| 110:23 | 111:10 | None | 111:11 | 113:14 | |
| 114:8 | 114:12 | None | | | |
| 114:15 | 115:3 | None | | | |
| 115:4 | 116:5 | None | 116:6 | 116:14 | |
| 117:14 | 118:7 | None | | | |
| 120:5 | | None | | | |
| 120:6 | 120:18 | None | | | |
| 121:12 | 121:23 | None | | | |
| 121:24 | 122:3 | Object to form (vague) | | | |
| 122:6 | 122:8 | None | | | |
| 122:11 | 122:20 | None | 122:21 | 123:9 | |
| 123:10 | 123:16 | None | | | |
| 123:19 | 124:2 | None | 124:3 | 124:4 | |
| 127:15 | 128:14 | None | 128:22 | 128:25 | |

| Plaintiff's Designations (Natus 30(b)(6) – 2017) | | Defendant's Objections | Defendant's Counter-Designations | | Plaintiff's Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| 138:10 | 139:1 | None | 139:2 | 139:5 | |
| 139:14 | 139:18 | None | | | |
| 139:22 | 140:18 | None | | | |
| 140:19 | 141:11 | None | | | |
| 142:22 | 143:3 | None | 143:4 | 143:11 | |
| 146:16 | 147:10 | None | | | |
| 147:20 | 147:23 | None | | | |
| 148:2 | 148:12 | None | | | |
| 151:3 | 151:17 | None | | | |
| 176:18 | 176:24 | FRE 402, 403, exceeds scope of 30(b)(6) topics | 177:10 177:16 | 177:13 177:17 | |
| 179:2 | 179:7 | Foundation, FRE 402, 403, 602 | | | |
| 179:8 | | FRE 402 | 179:9 | 179:16 | |
| 179:17 | 179:20 | FRE 402 | | | |
| 180:5 | 180:12 | Foundation, FRE 402, 403, 602 | 180:13 | 181:5 | |
| 184:23 | 185:2 | Foundation, FRE 402, 403, 602 | 185:6 | 185:15 | |
| 186:20 | 187:13 | Foundation, FRE 402, 403 602 | 185:18 | 186:9 | |
| 187:17 | 187:24 | FRE 402, 403 | | | |
| 187:25 | 188:9 | Foundation, FRE 402, 403 602 | | | |
| 188:10 | 188:13 | FRE 402, 403 | | | |
| 188:22 | 188:23 | FRE 402, 403 | | | |
| 188:25 | 189:4 | FRE 402, 403 | 189:5 | 190:4 | Non responsive, FRE 402, 403 |
| 191:8 | 192:7 | Foundation, FRE 602 | 192:8 | 192:19 | |
| 192:23 | 193:2 | Foundation, FRE 602 | | | |

| Plaintiff's Designations (Natus 30(b)(6) – 2017) | | Defendant's Objections | Defendant's Counter-Designations | | Plaintiff's Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| 193:25 | 194:22 | None | 193:13 | 193:24 | |
| 195:2 | 195:9 | None | | | |
| 195:10 | 195:13 | None | | | |
| 196:10 | 196:22 | Foundation, FRE 602 | | | |
| 197:15 | 197:21 | Foundation, FRE 602 | | | |
| 197:22 | 199:2 | Foundation, FRE 602, object to form (vague) | | | |
| 199:5 | 199:14 | None | 199:15 | 200:1 | Non responsive, FRE 402, 403 |
| 208:7 | 208:10 | Foundation, FRE 402, 602 | | | |
| 210:2 | 210:5 | Foundation, FRE 602 | 210:6 | 210:12 | |
| 210:13 | 210:18 | Foundation, FRE 602 | | | |
| 210:19 | 210:22 | Object to form— Foundation, Vague, Compound | | | |
| 210:25 | 211:12 | None | | | |
| 211:17 | 211:24 | Foundation, FRE 402, 602 | 213:20 | 214:3 | |
| 214:8 | 215:14 | Foundation, FRE 602, Vague | | | |
| 215:17 | 215:20 | None | | | |
| 215:22 | 215:24 | None | | | |
| 216:2 | 216:10 | None | | | |
| 217:15 | 218:7 | Foundation, FRE 602 | | | |
| 218:10 | 218:13 | None | | | |
| 218:24 | 219:18 | Foundation, FRE 602 | | | |
| 219:21 | 220:3 | None | | | |
| 220:5 | 220:6 | None | 220:8 | 221:24 | |

| Plaintiff's Designations (Natus 30(b)(6) – 2017) | | Defendant's Objections | Defendant's Counter-Designations | | Plaintiff's Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| 221:25 | 222:18 | Foundation, FRE 602 | | | |
| 222:21 | 223:10 | None | | | |
| 223:13 | 223:15 | None | 223:16 | 224:1 | |
| 226:15 | 227:12 | FRE 402, 403 | 223:2 225:2 225:10 226:6 | 223:18 225:7 225:23 226:13 | Natus represented during discovery that it would not rely on an opinion of counsel and is the barred from entering such evidence now, FRE 402, 403 |
| 227:14 | 227:18 | FRE 402, 403 | | | |
| 227:20 | 227:25 | FRE 402, 403 | | | |
| 228:2 | 228:3 | FRE 402, 403 | | | |
| 228:6 | 228:14 | FRE 402, 403 | | | |
| 228:16 | 228:19 | FRE 402, 403 | | | |
| 228:23 | 229:8 | FRE 402, 403 | | | |
| 231:12 | 231:16 | FRE 402, 403 | 230:4 230:20 | 230:11 231:6 | |
| 231:19 | | FRE 402, 403 | | | |
| 231:25 | 232:11 | FRE 402, 403 | | | |
| 233:7 | 233:13 | FRE 402, 403 | | | |
| 238:18 | 238:22 | None | | | |
| 239:2 | 239:3 | None | | | |
| 239:12 | 239:17 | None | | | |
| 239:19 | 239:25 | None | 240:1 | 240:5 | |
| 240:6 | 240:9 | None | | | |
| 240:12 | 240:13 | None | | | |
| 240:15 | 240:17 | None | | | |
| 240:20 | 240:22 | None | | | |
| 249:10 | 249:21 | None | 248:3 248:7 | 248:4 249:9 | |
| 249:23 | 250:5 | None | | | |
| 250:22 | 251:15 | None | 250:6 251:16 | 250:21 251:19 | |

**EXHIBIT F**

## DEFENDANT'S DEPOSITION DESIGNATIONS

### Witness:  Kormakur Hlini Hermannsson

| Defendant's Designations (Hermannsson– 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| 7:2 | 7:15 | | | | |
| 8:6 | 8:19 | | | | |
| 9:13 | 9:19 | | | | |
| 27:6 | 27:16 | | | | |
| 28:10 | 30:10 | FRE 402, 403 | | | |
| 52:11 | 52:25 | Question not designated | | | |
| 53:23 | 54:13 | | | | |
| 56:24 | 57:20 | | | | |
| 72:17 | 75:14 | FRE 402, 403 | | | |
| 77:18 | 78:13 | | 75:15 | 77:17 | |
| 79:20 | 80:5 | | | | |
| 80:6 | 80:13 | | | | |
| 80:18 | 80:23 | Foundation, authentication | | | |
| 81:5 | 81:13 | Foundation, authentication | | | |
| 82:22 | 83:10 | | | | |
| 83:19 | 83:25 | | 84:1 | 84:5 | |
| 84:6 | 84:8 | | | | |
| 87:25 | 89:9 | FRE 402, 403 | | | |
| 96:2 | 96:14 | | 96:15 92:24 152:3 | 97:19 95:22 153:17 | |
| 99:20 | 100:16 | FRE 402, 403 | | | |
| 107:1 | 107:16 | Authentication | 107:25 | 110:1 | Nox's counter-designation is improper as it is unrelated to the designated testimony.  FRE 402, 403 |
| | | | 110:12 | 111:10 | Nox's counter-designation is improper as it is unrelated to the |

| Defendant's Designations (Hermannsson– 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| | | | | | designated testimony.  FRE 402, 403 |
| | | | 113:5 | 113:17 | |
| 122:4 | 123:20 | Foundation, authentication, misleading because the question is about a document not introduced, FRE 402, 403 | | | |
| 153:22 | 154:21 | Foundation, authentication | 158:18 | 158:24 | |
| 176:6 | 176:19 | | | | |
| 177:10 | 177:19 | | | | |
| 178:2 | 178:19 | | | | |
| 180:24 | 181:25 | | | | |
| 182:22 | 183:12 | | | | |
| 189:10 | 189:17 | | 189:18 | 189:21 | |
| 190:3 | 190:18 | | | | |
| 194:15 | 194:21 | Foundation, authentication | | | |
| 195:2 | 195:14 | | | | |
| 197:14 | 197:20 | Foundation, authentication | 197:21 | 198:8 | |
| 199:3 | 199:11 | | 69:22 124:12 | 70:3 126:8 | Nox's counter-designation is improper as it is unrelated to the designated testimony.  FRE 402, 403 |
| 200:10 | 200:22 | | 69:22 124:12 | 70:3 126:8 | Nox's counter-designation is improper as it is unrelated to the designated |

| Defendant's Designations (Hermannsson– 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| **FROM (Page:Line)** | **TO (Page:Line)** | | **FROM (Page:Line)** | **TO (Page:Line)** | |
| | | | | | testimony.  FRE 402, 403 |
| 201:3 | 203:8 | Foundation, authentication | | | |
| 203:9 | 205:2 | | | | |
| 205:10 | 205:23 | | | | |
| 206:3 | 206:18 | | | | |
| 207:7 | 211:11 | | 211:12 | 211:18 | |
| 212:7 | 213:25 | | 214:1 | 215:22 | |
| 218:18 | 219:21 | | | | |
| 221:13 | 223:2 | Calls for legal conclusion, FRE 402, 403 | | | |
| 228:1 | 228:11 | | | | |
| 229:3 | 230:10 | FRE 402, 403 | | | |
| 238:3 | 238:22 | | | | |
| 240:20 | 241:24 | FRE 402, 403 | 241:25 | 242:17 | |
| 243:17 | 244:23 | FRE 402, 403 | 244:34 | 245:9 | Natus objects to Nox's counter-designation to the extent it purports to include testimony not in the transcript. |
| 249:12 | 251:13 | Foundation, authentication, FRE 402, 403 | | | |
| 259:5 | 262:5 | Foundation, authentication, FRE 402, 403 | 262:6 | 262:8 | |
| 262:9 | 262:15 | FRE 402, 403 | | | |
| 263:15 | 263:21 | Foundation, authentication, FRE 402, 403 | | | |
| 264:25 | 265:7 | Foundation, authentication, FRE 402, 403 | | | |
| 267:20 | 268:12 | | | | |
| 284:22 | 285:18 | | 285:19 | 285:25 | |
| 298:21 | 299:9 | | | | |

| Defendant's Designations (Hermannsson– 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| **FROM (Page:Line)** | **TO (Page:Line)** | | **FROM (Page:Line)** | **TO (Page:Line)** | |
| 305:2 | 306:24 | | 69:22 124:12 | 70:3 126:8 | Nox's counter-designation is improper as it is unrelated to the designated testimony.  FRE 402, 403 |

**Witness:  Einar Karl Fridriksson**

| Defendant's Designations (Fridriksson – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| **FROM (Page:Line)** | **TO (Page:Line)** | | **FROM (Page:Line)** | **TO (Page:Line)** | |
| 6:2 | 6:18 | | | | |
| 7:5 | 7:16 | | | | |
| 7:19 | 8:7 | | | | |
| 10:19 | 11:11 | | | | |
| 16:24 | 18:25 | FRE 402, 403 | | | |
| 20:7 | 21:2 | | 19:15 | 20:15 | |
| | | | 21:3 | 22:8 | Nox's counter-designation is improper as it is unrelated to the designated testimony; and FRE 402, 403 |
| 24:22 | 25:10 | | | | |
| 26:5 | 26:13 | | | | |
| 27:11 | 27:19 | Incomplete designation, FRE 402, 403 | 27:20 | 28:13 | |
| 31:25 | 32:24 | | | | |
| 33:4 | 34:13 | | 34:15 | 37:6 | Nox's counter-designation is improper as it is unrelated to the designated testimony; and FRE 402, 403 |
| 38:17 | 40:7 | | | | |
| 40:20 | 41:10 | | | | |
| 48:10 | 49:15 | | 44:12 | 44:23 | Nox's counter-designation is improper as it is unrelated to the designated testimony; and FRE 402, 403 |
| | | | 45:21 | 48:9 | Nox's counter-designation is |

| Defendant's Designations (Fridriksson – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| | | | | | improper as it is unrelated to the designated testimony; and FRE 402, 403 |
| | | | 49:16 | 50:14 | |
| 50:15 | 51:19 | | | | |
| 53:2 | 53:9 | | | | |
| 54:9 | 56:2 | | | | |
| 56:13 | 57:9 | | | | |
| 57:25 | 58:17 | | 58:18 | 59:11 | FRE 402 |
| 59:12 | 59:23 | | 60:2 | 61:10 | |
| 67:19 | 71:24 | | 66:6 | 67:9 | Nox's counter-designation is improper as it is unrelated to the designated testimony; and FRE 402 403 |
| 72:19 | 73:6 | | 71:25 | 72:7 | |
| 74:9 | 75:3 | | | | |
| 75:11 | 79:4 | | | | |
| 79:13 | 80:1 | | | | |
| 94:8 | 96:5 | | | | |
| 99:12 | 100:10 | | | | |
| 100:23 | 101:22 | | 111:16 | 114:11 | |
| | | | 115:24 | 116:8 | |
| 102:21 | 105:6 | FRE 402, 403 | | | |
| 116:14 | 117:24 | FRE 402, 403 | | | |
| 118:3 | 119:7 | FRE 402, 403 | | | |
| 119:14 | 123:7 | Speculation, FRE 402, 403 | | | |
| 124:13 | 126:5 | FRE 402, 403 | | | |
| 126:16 | 128:10 | FRE 402, 403 | | | |
| 128:14 | 130:5 | Improper hypothetical, FRE 402, 403 | | | |
| 132:1 | 132:19 | | 132:21 | 133:10 | Natus objects to the form of the |

| Defendant's Designations (Fridriksson – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| **FROM (Page:Line)** | **TO (Page:Line)** | | **FROM (Page:Line)** | **TO (Page:Line)** | |
| | | | | | question for lack of foundation; and FRE 402, 403 |
| 133:22 | 134:6 | | | | |
| 134:15 | 135:5 | | | | |

**Witness:  Andre Puleo**

| Defendant's Designations (Puleo – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| **FROM (Page:Line)** | **TO (Page:Line)** | | **FROM (Page:Line)** | **TO (Page:Line)** | |
| 6:9 | 6:25 | | | | |
| 14:22 | 14:19 | | | | |
| 22:13 | 23:24 | | | | |
| 31:2 | 38:17 | | 38:18 | 38:21 | |
| 39:20 | 43:3 | | | | |
| 47:18 | 50:5 | Speculation, foundation, lacks personal knowledge, FRE 402, 403 | | | |
| 50:9 | 53:22 | Speculation, foundation, lacks personal knowledge, FRE 402, 403 | 171:17 172:11 172:18 | 172:4 172:15 172:20 | |
| 54:4 | 55:16 | | | | |
| 61:6 | 62:25 | | 57:1 168:18 | 61:5 171:7 | Nox's counter-designation is improper as it is unrelated to the designated testimony.  FRE 402, 403 |
| 63:16 | 63:23 | FRE 402, 403 | | | |
| 64:9 | 66:5 | | | | |
| 66:9 | 66:23 | | 66:24 | 67:1 | |
| 70:3 | 71:8 | | 71:9 | 71:17 | |
| 71:18 | 72:13 | | | | |
| 73:18 | 74:14 | FRE 402, 403 | | | |
| 75:22 | 76:25 | | | | |
| 77:9 | 77:25 | | 78:1 | 79:13 | |
| 82:4 | 83:7 | | | | |
| 84:9 | 85:4 | | | | |
| 88:3 | 88:7 | Misleading, FRE 402, 403 | | | |
| 103:11 | 107:9 | | | | |

| Defendant's Designations (Puleo – 2017) | | Plaintiff's Objections | Plaintiff's Counter-Designations | | Defendant's Objections to Counter-Designations |
|---|---|---|---|---|---|
| FROM (Page:Line) | TO (Page:Line) | | FROM (Page:Line) | TO (Page:Line) | |
| 117:23 | 118:20 | | 173:16 | 174:23 | Nox's counter-designation is improper as it is unrelated to the designated testimony.  FRE 402, 403; 602; 802. |
| 119:8 | 121:17 | FRE 402, 403 | | | |
| 122:5 | 123:17 | | 123:18 | 124:25 | Nox's counter-designation is improper as it is unrelated to the designated testimony.  FRE 402, 403; 602; 802. |
| 129:16 | 129:23 | | | | |
| 133:4 | 134:3 | | 134:4 166:15 | 134:14 167:17 | |
| 134:15 | 134:19 | | 134:20 | 135:25 | |
| 141:18 | 141:25 | FRE 402, 403 | 142:1 | 142:25 | Natus withdraws this designation. |
| | | | 148:8 | 149:5 | |
| 143:11 | 144:24 | FRE 402, 403 | | | |
| 162:13 | 165:1 | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

# EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NOX MEDICAL EHF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 15-709-RGA |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| NATUS NEUROLOGY INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF NOX MEDICAL EHF'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE
CERTAIN EVIDENCE REGARDING DEFENDANT'S DEFENSE OF INVALIDITY**

Plaintiff Nox Medical EHF ("Nox") moves to exclude any evidence regarding (1) obviousness theories that were not disclosed in Defendant Natus Neurology Inc.'s ("Natus's") invalidity contentions or its incorporated expert report, (2) obviousness theories that are barred by the IPR estoppel statute (35 U.S.C. § 315(e)(2)), and (3) arguments barred by issue preclusion arising from the IPR decision associated with this case.

### Non-Disclosed Obviousness Theories

Natus has disclosed to Nox that it intends to assert obviousness theories not previously disclosed in Natus's invalidity contentions (or in its incorporated expert report). (*E.g.*, Ex. A, March 25 email; Ex. B, March 19 email.) Pursuant to FRCP 37(c)(1), Natus should be barred from presenting expert testimony or other evidence about the non-disclosed theories at trial.[1] *Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457, 463-64 (D. Del. 2005) (excluding new invalidity theories raised a month before trial), *rev'd on other grounds*, 543 F.3d 1306 (Fed. Cir. 2008).

For example, the following theories that Natus now intends to assert were ***not*** previously disclosed in Natus's invalidity contentions or Dr. Williams' expert report:[2]

| Claims | Natus's New Non-Disclosed Obviousness Theories for These Claims |
|--------|----------------------------------------------------------------|
| 1, 4-9 | Nox RES Belt alone |
| 1, 4-9 | Nox RES Belt in view of Harhen |
| 6-8 | Nox RES Belt in view of Harhen in further view of Abizaid or Orewiler |
| 4-5 | Hermannsson in view of Harhen |
| 4-5, 9 | Gobron in view of Lawrence or Sommer |
| 8 | Nox RES Belt in view of McIntire |

Natus also intends to assert additional non-disclosed obviousness theories that change its disclosed theories so as to use secondary references as primary references and *vice versa*. The resulting theories are different from those previously identified:

---

[1] With trial only a month away, Natus should be barred from changing the defenses identified in its March 25 email (Ex. A) in response to this motion in order to prevent prejudice to Nox.

[2] *Compare* Ex. A, Natus March 25 email *with* D.I. 159, Exh. 9 (invalidity contentions incorporating D.I. 138, Exhs. B & C (Williams Report)).

| Claims | Natus's Additional Non-Disclosed Obviousness Theories (Ex. A, Natus March 25 Email) | Natus's Different Disclosed Theories (D.I. 138, Exh. C (Att. A to Williams Expert Report)) |
|---|---|---|
| 1, 4-9 | Hermannsson in view of McIntire | McIntire in view of Hermannsson (pp. 24-33, 71-73, 104-05, 119-20, 144, 169-70, 190-91) |
| 1, 6-9 | Hermannsson in view of Harhen | Harhen in view of Hermannsson (pp. 43-49, 119-20, 144, 169-70, 190-91) |
| 4-7, 9 | Nox RES Belt in view of McIntire | McIntire in view of Nox RES Belt (pp. 92-93, 112-13, 137, 162-63, 195) |
| 6-8 | Nox RES Belt in view of McIntire in further view of Abizaid or Orewiler | McIntire in view of Nox RES Belt in further view of Abizaid or Orewiler (pp. 138, 164, 185) |
| 6-8 | Hermannsson in view of McIntire in further view of Abizaid or Orewiler | McIntire in view of Hermannsson in further view of Abizaid or Orewiler (pp. 131-32, 156-57, 178-79) |
| 6-8 | Hermannsson in view of Harhen in further view of Abizaid or Orewiler. | Harhen in view of Hermannsson in further view of Abizaid or Orewiler (pp. 131-32, 156-57, 178-79) |

Natus has also indicated that it intends to make other new arguments.  (Ex. B.)  Natus and its expert should be held to the theories that they disclosed and should be barred from presenting any theories they did not disclose because Nox has had no discovery on those theories.

### Obviousness Theories Precluded By The IPR Estoppel Statute

In its IPR, Natus lost on all of the claims-in-suit. (D.I. 231.)  Pursuant to 35 U.S.C. § 315(e)(2), Natus is barred in this action from asserting that any of those claims is invalid "on any ground that the petitioner [Natus] raised *or reasonably could have raised* during that inter partes review."  For example, at least two of the theories Natus intends to assert at trial could have been raised in Natus's IPR but were not raised for the claims now challenged under those theories:

| Claims | New Natus Obviousness Theory for These Claims | Different Claims Challenged Under This Theory in IPR Petition |
|---|---|---|
| 4, 5, & 9 | Gobron in view of Lawrence or Sommer | Ex. C, IPR Petition, pp. ii-iii, 43-51 (challenging only claims 1-3) |
| 4, 5 | Hermannsson and Harhen | Ex. C, IPR Petition, pp. i-iii, 28-35 (challenging only claims 1, 6-9, & 13) |

Some of Natus's other theories reverse the primary and secondary references from theories asserted in the IPR Petition and hence could have been but were not asserted in the IPR:

| Claims | New Natus Obviousness Theory | Different Theory in IPR Petition (Ex. C) |
|---|---|---|
| 1, 4-9 | Hermannsson in view of McIntire | "McIntire in View of Hermannsson" (pp. i, 18) |
| 1, 4-9 | Hermannsson in view of Harhen | "Harhen in View of Hermannsson" (pp. ii, 28) |
| 6-8 | Hermannsson in view of McIntire in further view of Abizaid or Orewiler | "McIntire In View of Hermannsson…in Further View of…Abizaid or Orewiler" (pp. i, ii, 18, 56) |
| 6-8 | Hermannsson in view of Harhen in further view of Abizaid or Orewiler | "Harhen In View of Hermannsson…in Further View of…Abizaid or Orewiler" (pp. ii, 28, 56) |

All of the foregoing (and other similar) theories are barred by section 315(e)(2) because all of the references involved were identified in the IPR Petition and the theories were therefore available for Natus's IPR, but Natus did not assert them. *Parallel Networks Licensing v. Int'l Business Machines*, 2017 WL 1045912, *11-*12 (D. Del. 2017); *Network-1 Technologies v. Alcatel-Lucent USA*, 2017 WL 4856473, *1-*2 (E.D. Tex. 2017) (collecting cases).

**Theories Barred By Issue Preclusion**

Issue preclusion arises out of IPR decisions for issues actually litigated and necessary to that decision. *MaxLinear, Inc. v. CF Crespe LLC*, 880 F.3d 1373, 1376 (Fed. Cir. 2018); *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006). Based on the PTAB's IPR decision, issue preclusion bars Natus from presenting evidence, *inter alia*, that (1) Figures 13 or 14 of McIntire disclose a conductor exiting a receiving hole, (2) it would have been obvious to modify Figure 14 of McIntire so that the conductor exits the receiving hole, (3) there is a reasonable interpretation of "wrapped around" that is broader than "following a path that substantially surrounds and encloses," or (4) Figures 13 or 14 of McIntire disclose a conductor "wrapped around" an engaging member. (D.I. 231, IPR Decision, pp. 27-28, 32, 32-33, 8-13, 28-29, 29-32.) The Court should issue an order barring Natus from presenting evidence in support of any of these arguments.

3

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Chad E. Nydegger
WORKMAN NYDEGGER
60 East South Temple, Suite 1000
Salt Lake City, UT  84111
Tel:  (801) 533-9800


Dated:  March 29, 2018
1222892 / 42707

By:   */s/Bindu A. Palapura*
        David E. Moore (#3983)
        Bindu A. Palapura (#5370)
        Stephanie E. O'Byrne (#4446)
        Hercules Plaza, 6th Floor
        1313 N. Market Street
        Wilmington, DE  19801
        Tel:  (302) 984-6000
        dmoore@potteranderson.com
        bpalapura@potteranderson.com
        sobyrne@potteranderson.com

*Attorneys for Plaintiff Nox Medical Ehf*

# EXHIBIT A

| | |
|---|---|
| **From:** | Jeremy Adelson <jadelson@hansenreynolds.com> |
| **Sent:** | Sunday, March 25, 2018 6:50 PM |
| **To:** | Chad Nydegger; Thomas Reynolds; Joe Jacobi; Alan Nicgorski; John McCauley; Ryan P. Newell; Arthur G. Connolly III |
| **Cc:** | Palapura, Bindu A.; Brent Lorimer; David R. Todd |
| **Subject:** | RE: Narrowing Natus' invalidity contentions [WNDMS-DMS1.FID1622887] |
| **Attachments:** | Natus 282 Notice.pdf |

Counsel,

This email responds to your request that Natus identify the bases of invalidity it intends to rely upon at trial. Below is a listing of the bases Natus intends to rely on to demonstrate the invalidity of the asserted claims of the '532 Patent. Also attached to this email is Natus' disclosure pursuant to 35 U.S.C. § 282.

We also write to request that Nox identify a representative claim for invalidity purposes. In your email correspondence of March 13, 2018 to Mr. Reynolds, you indicated that Nox would be in a position to identify a representative claim following the IPR decision. Please let us know by close of business this Wednesday, March 28, 2018 if Nox will agree to a representative claim for invalidity and, if so, what claim Nox will agree to for that purpose. If Nox will not agree to a representative claim, please identify by the close of business this Wednesday the reasons why Nox will not agree to a representative claim.

Natus intends to demonstrate at trial that the following claims are invalid as obvious based on the listed prior art references in view of the knowledge a PHOSITA is presumed to have and the prior art admitted by the '532 Patent. Natus reserves the right to update or amend this listing in the event of any decision by the Court that impacts the availability or applicability of the listed prior art for use at trial. Natus further reserves the right to update or amend this listing based on any limitation of the asserted claims to a representative claim for purposes of determining invalidity.

| Claims | Reference(s) |
|---|---|
| 1, 4-9 | Nox RES Belt |
| 1,4-9 | Nox RES Belt and (McIntire or Harhen) |
| 6-8 | Nox RES Belt, (McIntire or Harhen) and (Abizaid or Orewiler) |
| 1,4-9 | Hermannsson and (McIntire or Harhen) |
| 6-8 | Hermannsson, (McIntire or Harhen) and (Abizaid or Orewiler) |
| 1, 4, 5 & 9 | Gobron and (Lawrence or Sommer) |
| 6-8 | Gobron, (Lawrence or Sommer) and (Abizaid or Orewiler) |

Regards,

**Jeremy Adelson**
ATTORNEY AT LAW

1

414.326.4043



**From:** Chad Nydegger [mailto:CNydegger@WNLaw.com]
**Sent:** Wednesday, March 21, 2018 5:54 PM
**To:** Thomas Reynolds <treynolds@hansenreynolds.com>; Jeremy Adelson <jadelson@hansenreynolds.com>; Joe Jacobi <jjacobi@hansenreynolds.com>; Alan Nicgorski <anicgorski@hansenreynolds.com>; John McCauley <jmccauley@hansenreynolds.com>; Ryan P. Newell <rnewell@connollygallagher.com>; Arthur G. Connolly III <aconnolly@connollygallagher.com>
**Cc:** Palapura, Bindu A. <bpalapura@potteranderson.com>; dmdavid@hollandhart.com; Brent Lorimer <BLorimer@WNLaw.com>; David R. Todd <DTodd@WNLaw.com>
**Subject:** Narrowing Natus' invalidity contentions [WNDMS-DMS1.FID1622887]

Counsel,

We imagine that you are aware today the PTAB issued its final written decision in the IPR upholding the validity of all challenged claims of the '532 patent.  You may also recall that during the hearing on the parties' summary judgment motions in Delaware the court addressed the need for Natus to significantly narrow its invalidity assertions should the PTAB rule in Nox Medical's favor on the IPR.  The transcript at page 86:14-88:2 reads as follows:

THE COURT: Okay.
Once the PTAB has ruled -- and let's assume they ruled
in the plaintiff's favor -- how much streamlining can I expect
from the defendants on the invalidity case?
MR. REYNOLDS: Your Honor, assuming that the PTAB rules
in favor of Nox in the patent validity, and it comes out that we
--
THE COURT REPORTER: Mr. Reynolds.
MR. REYNOLDS: I'm sorry.
We'll just talk a little more about exactly which
references we maintain in light of essentially what you rule on
the claim constructions and –
THE COURT: Right.
And I'm not asking you right now to tell me which ones
to go forward on.
But I was more just wondering, you know, because
really, you know, if you have -- well, it strikes me, you only
have -- am I right you have three anticipatory references and a
lot of obviousness combinations.
The one anticipatory references is Hermannsson?
Wait.
Hermannsson, the CareFusion Catalog, and the RES Belt.
And Hermannsson is not before the PTAB, right?
MR. REYNOLDS: Hermannsson is not in front of the PTAB.
That's the one the PTAB declined.
THE COURT: I got it.
All right.
Well, I certainly expect at a maximum you're going to
have two anticipatory references. I would think that you should
be aiming for about no more than three obviousness combinations.
MR. REYNOLDS: I would say probably less than that,
your Honor.
THE COURT: Okay.
And, so, if it gets to -- if the plaintiff wins at the
PTAB, because it will be pretty close to trial, I would ask that
you make up your mind, as promptly as you can after that
decision, and tell them so that people can be preparing for what
is actually going to happen in the trial.
*MR. REYNOLDS: Sure.

In view of the foregoing discussion with the court, the PTAB's ruling, and the exchange of opening motions in *limine* set for March 29, we ask that Natus identify the invalidity contentions it intends to present at trial by Sunday, March 25 so that Nox Medical will have sufficient time to prepare a motion in *limine* should it be necessary in view of the invalidity contentions Natus elects to present at trial.

Regards,
Chad


**CHAD E. NYDEGGER**
WORKMAN | NYDEGGER
OFFICE DIRECT:801-321-8810
EMAIL: CNYDEGGER@WNLAW.COM
BIOGRAPHY: CNYDEGGER



PRIVACY: This e-mail may contain information that is privileged or confidential. If you are not the intended recipient, please delete the e-mail and any attachments and notify the sender immediately, and do not use, copy, or disclose to anyone any of the contents hereof.

# EXHIBIT B

| | |
|---|---|
| **From:** | Alan Nicgorski <anicgorski@hansenreynolds.com> |
| **Sent:** | Monday, March 19, 2018 10:30 AM |
| **To:** | Chad Nydegger; Thomas Reynolds; Joe Jacobi; John McCauley; Jeremy Adelson |
| **Cc:** | Brent Lorimer; Palapura, Bindu A.; Ryan P. Newell; Arthur G. Connolly III; Brittany Frandsen |
| **Subject:** | RE: Nox Medical v. Natus [WNDMS-DMS1.FID1622887] |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |
| | |
| **FilingDate:** | 3/19/2018 3:07:00 PM |

Chad:

As Toby is unavailable, he asked me to respond to your most recent e-mails from Thursday, March 15:

(1)  As we stated earlier in this litigation, Natus will not rely on an opinion of counsel relating to the infringement or validity of '532 Patent.  Of course, such an opinion could only have been rendered *after* the '532 Patent issued.  Further, it is undisputed that there was no '532 Patent at the time Natus developed and launched the accused belt and, as Natus' witnesses testified (w/o objection), Natus **did** investigate whether there was an issued patent covering the Nox product and concluded (not surprisingly) that there was not.  *See, e.g.,* Natus 30(b)(6) Dep. at 230:9-231:6; 221:17-18; see also 225:10-19; 258:8-18.  Thus, to the extent Nox plans to (and is allowed to) introduce evidence of Natus' pre-issuance conduct as evidence of willful infringement, Natus will, of course, rely on the fact that there was no issued patent covering the Nox belt at the time of Natus' development and launch of the accused product.

(2)  Natus will not argue that any of the asserted claims of the '532 Patent is anticipated by the Nox RES Belt, CareFusion, or Hermannsson. <mark>However, Natus cannot agree that it will not argue that the limitation of a "receiving hole being configured to function as a female snap button fastener for receiving and fastening the frame to a protrusion of the male snap portion of the snap connector electrode" is not obvious in view of the Nox RES Belt, CareFusion, Hermannsson.</mark>

In sum, we believe that in both instances Nox is attempting to force Natus to stipulate to matters beyond what we have previously agreed to and/or the Court's rulings.  Thus, to the extent our statements above do not satisfy you, you are free to file your motions in *limine* and we will respond according to the scheduled agreed to by the parties.

**Alan W. Nicgorski**
ATTORNEY AT LAW
312-265-2253


HANSEN REYNOLDS LLC

---

**From:** Chad Nydegger [mailto:CNydegger@WNLaw.com]
**Sent:** Thursday, March 15, 2018 6:45 PM
**To:** Thomas Reynolds <treynolds@hansenreynolds.com>; Joe Jacobi <jjacobi@hansenreynolds.com>; John McCauley <jmccauley@hansenreynolds.com>; Jeremy Adelson <jadelson@hansenreynolds.com>; Alan Nicgorski

<anicgorski@hansenreynolds.com>
**Cc:** Brent Lorimer <BLorimer@WNLaw.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Ryan P. Newell
<rnewell@connollygallagher.com>; Arthur G. Connolly III <aconnolly@connollygallagher.com>; Brittany Frandsen
<BFrandsen@WNLaw.com>
**Subject:** RE: Nox Medical v. Natus [WNDMS-DMS1.FID1622887]

Toby,

Further concerning whether Natus will agree that it will not seek to introduce any testimony, evidence or argument at
trial that Natus relied upon an opinion or advice of counsel (whether obtained orally or in writing) pertaining to its
decision to sell, or to continue to sell, the infringing XactTrace Pre-cut Belts, please see the attached letter to Alan
Nicgorski asking whether Natus intended to so rely on the opinion of counsel.  In response to that letter, please see the
attached email in which Alan expressly states, "Natus will not be relying on any opinion of counsel in defense of Nox's
claim of willful infringement [sic] the '532 patent."

Please let us know if Natus will reconsider its position and agree that it will not seek to introduce any testimony,
evidence or argument at trial that Natus relied upon an opinion or advice of counsel (whether obtained orally or in
writing) pertaining to its decision to sell, or to continue to sell, the infringing XactTrace Pre-cut Belts.

Best regards,
Chad


**CHAD E. NYDEGGER**
WORKMAN | NYDEGGER
OFFICE DIRECT: 801-321-8810
EMAIL: CNYDEGGER@WNLAW.COM
BIOGRAPHY: CNYDEGGER



---

**From:** Chad Nydegger
**Sent:** Thursday, March 15, 2018 3:39 PM
**To:** 'Thomas Reynolds' <treynolds@hansenreynolds.com>; Joe Jacobi <jjacobi@hansenreynolds.com>; John McCauley
<jmccauley@hansenreynolds.com>; Jeremy Adelson <jadelson@hansenreynolds.com>; Alan Nicgorski
<anicgorski@hansenreynolds.com>
**Cc:** Brent Lorimer <BLorimer@WNLaw.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Ryan P. Newell
<rnewell@connollygallagher.com>; Arthur G. Connolly III <aconnolly@connollygallagher.com>; Brittany Frandsen
<BFrandsen@WNLaw.com>
**Subject:** RE: Nox Medical v. Natus [WNDMS-DMS1.FID1622887]

Toby,

We agree that the parties will necessarily be under strict time constraints during trial.  However, we understand that at
times Judge Andrews does not include charging the jury and closing arguments in the time constraints.  We expect that
this issue will be resolved at the pretrial conference.  Once we have a more concrete understanding for the time that we
will have and what must be accomplished during that time then we will be happy to agree to strict time constraints
based on that information.

We agree with the proposed schedule for exchanging motions in *limine.*

With regard to Natus' intention to present evidence concerning the opinions of counsel, Natus invoked the attorney-client privilege on numerous occasions to prevent witnesses from answering questions related to that topic.  For example, we direct your attention to the following passages:

"Q.   Okay.  And then if you look down at the third, I guess, paragraph or sentence down, it says: We still need confirmation that we are not infringing on any existing patents. Do you see that?
   A.   Yes.
   Q.   At that point, had you learned of any patents that might exist on the belt?
      MR. NICGORSKI:  I'm just going to object to the extent it calls for attorney-client privilege.  You can answer it excluding any information that you might have learned from people other than Mr. Hill or any outside counsel."  (Bhave Tr. at 202:19-203:6.)

"Q.   All right.  And do you know anything about the process of looking into patent protection at Natus during this due diligence period that we've been talking about?
      MR. NICGORSKI:  Are we just talking generally or --
      MS. FRANDSEN:  Just talk generally.
      THE WITNESS:  As to how we go about doing the --
   Q.   (By Ms. Frandsen)  Yes
      MR. NICGORSKI:  And I'm just going to caution the witness if there's anything specific that you learned from either in-house or outside counsel regarding the process generally, then that information is -- is privileged.  So to the -- but if you are able to describe the process generally without relying on that information, you can testify."  (Bhave Tr. at 53:11-54:2.)

"Q.   Were searches done with regard to any specific design proposal?
      MR. McCAULEY:  I'm going to caution the witness.  You can respond if there were searches done by the company.  If there was information provided by counsel, however, that would be privileged and you should not answer." (Noll Tr. 145:13-19; see generally 145 – 148:24.)

"Q.   And so my question is when did Natus first become aware of what's identified as Attachment B 12/781,572 or the 572 App?
      MR. McCAULEY:  I'm going to caution the witness.  If you became aware of prior art independent of counsel, you can answer that question.  But if you learned of prior art through counsel, that's privileged and I'll instruct you not to answer."  (Natus Rule 30(b)(6) Tr. at 229:9-17; see also 92:23-93:24, 100:10-102:8, 132:10-133:24, and 190:5-191:2.)

In view of Natus' assertion of the attorney-client privilege preventing Nox Medical from delving into this issue during depositions on several occasions, we request Natus to reconsider its position on this issue.

With regard to Natus' position concerning the Nox RES Belt, CareFusion Catalog, and Hermannsson references, Natus' position is unclear to us.  We understand that Natus will not argue that any of these references anticipate any claim, but will Natus argue that any of these references teach a "receiving hole being configured to function as a female snap button fastener for receiving and fastening the frame to a protrusion of the male snap portion of the snap connector electrode" in connection with an obviousness assertion?

We are happy to discuss any of the forgoing issues if you would like to do so.


Best regards,
Chad

3

**CHAD E. NYDEGGER**
WORKMAN | NYDEGGER
OFFICE DIRECT:801-321-8810
EMAIL: CNYDEGGER@WNLAW.COM
BIOGRAPHY: CNYDEGGER



**From:** Thomas Reynolds <treynolds@hansenreynolds.com>
**Sent:** Thursday, March 15, 2018 2:00 PM
**To:** Chad Nydegger <CNydegger@WNLaw.com>; Joe Jacobi <jjacobi@hansenreynolds.com>; John McCauley <jmccauley@hansenreynolds.com>; Jeremy Adelson <jadelson@hansenreynolds.com>; Alan Nicgorski <anicgorski@hansenreynolds.com>
**Cc:** Brent Lorimer <BLorimer@WNLaw.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Ryan P. Newell <rnewell@connollygallagher.com>; Arthur G. Connolly III <aconnolly@connollygallagher.com>; Brittany Frandsen <BFrandsen@WNLaw.com>
**Subject:** RE: Nox Medical v. Natus [WNDMS-DMS1.FID1622887]

Chad-

Based on your March 13, 2018, response, we understand that Nox is unwilling to consider bifurcating the trial to separately try the issues of damages and willfulness. In view of Nox's position and the number and length of Nox's intended witnesses and deposition designations, it seems nearly impossible to us to keep the trial within the scheduled three days. Accordingly, it is imperative that the parties agree in advance to a set schedule for the presentation of evidence and that that schedule be strictly adhered to. Based on Judge Andrews' trial scheduling, allowing 2 ½ hours for empaneling a jury on the morning of April 30th, and estimating an hour at the close of trial for charging the jury, there is a total of 16 hours for the parties to present their respective cases (including opening and closing statements). As an initial proposal we suggest that the parties agree that they will each have a total of 8 hours for opening and closing statements, presenting their respective cases-in-chief, and rebuttal evidence. Please let us know if you agree to this proposal.

With respect to the schedule for motions *in limine*, we propose an exchange of opening briefs on March 29th, exchange of responsive briefs on April 5, with reply briefs due April 9. Please let us know if you agree to these proposed dates and confirm your understanding that opening and response briefs will be limited to 3 pages in length and reply briefs are limited to 1 page, and that the parties are limited to a total of three motions *in limine*.

Regarding your two questions relating to evidence that Natus intends to present at trial:

1. As you are aware from documents produced and depositions taken in this case, prior to the release of the Xact-Trace disposable belts Natus conducted investigations into the scope of Nox's patents relating to RIP belts. Accordingly, we cannot agree to Nox's request as worded.
2. In light of the Court's ruling, Natus will not introduce any testimony, evidence or argument that the Nox RES Belt, CareFusion Catalog or Hermannsson anticipate the asserted claims of the '532 Patent.

Please let us know if you want to discuss any of the above issues.

-Toby

4

**Thomas S. Reynolds II**
ATTORNEY AT LAW
414.273.8470



**From:** Chad Nydegger [mailto:CNydegger@WNLaw.com]
**Sent:** Thursday, March 15, 2018 11:57 AM
**To:** Thomas Reynolds <treynolds@hansenreynolds.com>; Joe Jacobi <jjacobi@hansenreynolds.com>; John McCauley <jmccauley@hansenreynolds.com>; Jeremy Adelson <jadelson@hansenreynolds.com>; Alan Nicgorski <anicgorski@hansenreynolds.com>
**Cc:** Brent Lorimer <BLorimer@WNLaw.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Ryan P. Newell <rnewell@connollygallagher.com>; Arthur G. Connolly III <aconnolly@connollygallagher.com>; Brittany Frandsen <BFrandsen@WNLaw.com>
**Subject:** RE: Nox Medical v. Natus [WNDMS-DMS1.FID1622887]

Toby,

I have not received a response to my email below regarding suggesting a schedule for the exchange of motions in *limine*.  Please let us know Natus' position on this issue.

Related to that issue, we write to request whether Natus will agree that it will not seek to introduce any testimony, evidence or argument at trial that Natus relied upon an opinion or advice of counsel (whether obtained orally or in writing) pertaining to its decision to sell, or to continue to sell, the infringing XactTrace Pre-cut Belts.  If Natus intends to present such testimony, evidence or argument then Nox Medical intends to file a motion in *limine* that seeks to exclude such testimony, evidence and argument.

Second, we request that Natus confirm that it will not seek to introduce any testimony, evidence or argument that the Nox RES Belt, CareFusion Catalog, and Hermannsson prior art references teach "the receiving hole being configured to function as a female snap button fastener for receiving and fastening the frame to a protrusion of the male snap portion of the snap connector electrode."  As you are aware, in granting summary judgment that the Nox RES Belt does not anticipate claim 1, the Court construed this claim element to require that "the plastic defining the receiving hole must be able to receive and fasten to a protrusion of the male snap connector electrode for which the belt connector has been designed."  (D.I. 227 at 10; D.I. 230 at 1.)  The Court went on to conclude that "the hole [of the Nox RES Belt] itself does not perform any fastening function," and as such, granted summary judgment of no anticipation by the Nox RES Belt because it does not teach this claim element.  (D.I. 227 at 14.)  Whereas Natus has represented on multiple occasions that the teachings of a "receiving hole" in the CareFusion Catalog and Hermannsson are the same as that of the Nox RES Belt, we view the Court's findings concerning the receiving hole of the Nox RES Belt to apply equally to the CareFusion Catalog and Hermannsson references.  (See, e.g., Natus' Invalidity Cont., pp. 13-14 ("A comparison of the Nox RIP Belt depicted in the CareFusion [C]atalog confirms that the connectors and belt disclosed in the CareFusion Catalog is the commercial embodiment of the device described and claimed in the '572 App. [i.e., the Hermannsson reference]."), p. 16 ("...the NOX RIP belt embodying the '572 App. [i.e., Hermannsson] and advertised and disclosed in 2009 CareFusion Catalog (the "Nox RES Belt").").)  Please let us know whether Natus intends to present testimony, evidence or argument at trial that the CareFusion Catalog and/or Hermannsson references teach a "receiving hole being configured to function as a female snap button fastener for receiving and fastening the frame to a protrusion of the male snap portion of the snap connector electrode."  If Natus intends to present such testimony, evidence or argument then Nox Medical intends to file a motion in *limine* that seeks to exclude such testimony, evidence and argument.

Regards,

Chad

**CHAD E. NYDEGGER**
WORKMAN | NYDEGGER
OFFICE DIRECT: 801-321-8810
EMAIL: CNYDEGGER@WNLAW.COM
BIOGRAPHY: CNYDEGGER

workman
nydegger

Intellectual Property Law

60 East South Temple   •   Suite 1000
Salt Lake City, UT 84111

T (800) 533-9800   •   F (801) 328-1707
www.wnlaw.com

---

**From:** Chad Nydegger
**Sent:** Tuesday, March 13, 2018 2:04 PM
**To:** 'Thomas Reynolds' <treynolds@hansenreynolds.com>; 'Joe Jacobi' <jjacobi@hansenreynolds.com>; 'John McCauley' <jmccauley@hansenreynolds.com>; 'Jeremy Adelson' <jadelson@hansenreynolds.com>; 'Alan Nicgorski' <anicgorski@hansenreynolds.com>
**Cc:** Brent Lorimer <BLorimer@WNLaw.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; 'Ryan P. Newell' <rnewell@connollygallagher.com>; 'Arthur G. Connolly III' <aconnolly@connollygallagher.com>
**Subject:** Nox Medical v. Natus [WNDMS-DMS1.FID1622887]

Tom,

I'm sorry that I missed your call earlier today.  I was in a hearing when you called, and I understand that you are traveling today.

In your email your raised three issues.  First, is whether Nox Medical has given consideration to bifurcating damages from the trial.  We do not believe bifurcating the trial will be productive.  Nox Medical's damages expert will also present evidence concerning secondary considerations of nonobviousness.  Thus, he will need to appear at the trial on validity even if we were to bifurcate the damages issue.  Thus, we see little time to be gained through bifurcation, yet bifurcation would require us to bring the witness twice.

Second, is whether Nox Medical has given consideration to identifying a representative claim.  After looking at this issue, we are not in a position to make a determination on that issue at this time.  Before we can make a determination on that issue we need to see which claims survive the IPR.

Third, you asked whether Nox Medical intends to file any motions in *limine*.  Nox Medical intends to file motions in *limine*.  After discussing this issue with our local counsel, we understand that the common practice in Delaware is for the parties to agree on a briefing schedule for the motions in *limine* that will allow all briefing on the motions to be complete by, and filed with, the filing of the Proposed Pretrial Order.  We propose that the parties exchange opening briefs March 21, response briefs on March 28, and reply briefs on March 2.  Please let us know if this schedule works for you.

If you have additional questions that I have not addressed in this email, please feel free to contact me.

Safe travels,
Chad

**CHAD E. NYDEGGER**
WORKMAN | NYDEGGER
OFFICE DIRECT:801-321-8810
EMAIL: CNYDEGGER@WNLAW.COM
BIOGRAPHY: CNYDEGGER



PRIVACY: This e-mail may contain information that is privileged or confidential. If you are not the intended recipient, please delete the e-mail and any attachments and notify the sender immediately, and do not use, copy, or disclose to anyone any of the contents hereof.

PRIVACY: This e-mail may contain information that is privileged or confidential. If you are not the intended recipient, please delete the e-mail and any attachments and notify the sender immediately, and do not use, copy, or disclose to anyone any of the contents hereof.

# EXHIBIT C

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

NATUS MEDICAL INC., NATUS NEUROLOGY INC.,
EMBLA SYSTEMS LLC AND EMBLA SYSTEMS LTD.
Petitioners

v.

NOX MEDICAL EHF.
Patent Owner
_____

IPR - unassigned
Patent 9,059,532
_____

Mailed: September 15, 2016

PETITION FOR INTER PARTES REVIEW
OF U.S. PATENT NO. 9,059,532 UNDER 35 U.S.C. §§ 311-319

On behalf of Natus Medical Inc., Natus Neurology Inc., Embla Systems LLC and Embla Systems Ltd. ("Petitioners"), *inter partes* review is respectfully requested for claims 1-9 and 13 of U.S. Patent No. 9,059,532 ("the '532 Patent").

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

# TABLE OF CONTENTS

I.   MANDATORY NOTICES PURSUANT TO 37 C.F.R. § 42.8 ...................1

   A.   Real Parties-in-Interest.................................................................1

   B.   Related Matters ...........................................................................1

   C.   Lead and Back-Up Counsel and Service Information ............................1

II.  GROUNDS FOR STANDING ...........................................................1

III. INTRODUCTION .............................................................................2

   A.   The '532 Patent ............................................................................2

   B.   The '532 Patent Prosecution ..........................................................4

IV.  STATUTORY GROUNDS FOR THE CHALLENGES............................5

V.   CLAIM CONSTRUCTION ................................................................6

   A.   "flexibility" ................................................................................7

   B.   "passing through the receiving hole".................................................8

VI.  CLAIMS 1-9 AND 13 OF THE '532 PATENT ARE UNPATENTABLE.
   …………………………………………………………………………8

   A.   Ground 1: Claims 1-3, 6-9, and 13 Are Anticipated by Hermannsson. .9

     1.   Claim 1 .............................................................................10

     2.   Claim 2 .............................................................................14

     3.   Claim 3 .............................................................................14

     4.   Claim 6 .............................................................................15

     5.   Claim 7 .............................................................................16

     6.   Claim 8 .............................................................................17

     7.   Claim 9 .............................................................................17

     8.   Claim 13 ............................................................................18

   B.   Ground 2: Claims 1-9 and 13 Are Obvious Based on McIntire in View
of Hermannsson. .............................................................................18

     1.   Motivation to Combine .........................................................19

     2.   Claim 1 .............................................................................21

     3.   Claim 2 .............................................................................25

     4.   Claim 3 .............................................................................26

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

5. Claim 4 ...................................................................................27

6. Claim 5 ...................................................................................28

7. Claims 6-9 and 13 ...................................................................28

C. Ground 3: Claims 1, 6-9, and 13 Are Obvious Based on Harhen in View of Hermannsson. ...............................................................28

   1. Motivation to Combine ...........................................................29

   2. Claim 1 ...................................................................................31

   3. Claims 6-9, and 13 .................................................................35

D. Ground 4 Claims 1-5, 9 and 13 Are Obvious Based on McIntire in View of Kristbjarnarson or Linville; Claims 6-8 Are Obvious Based on McIntire in View of Kristbjarnarson. ........................................35

   1. Motivation to Combine ...........................................................37

   2. Claim 1 ...................................................................................38

   3. Claims 2-5 ..............................................................................40

   4. Claim 9 ...................................................................................41

   5. Claim 13 .................................................................................41

   6. Claims 6-8 ..............................................................................42

E. Ground 5: Claims 1-3 Are Obvious Based on Gobron in View of Williams, Lawrence, or Sommer. .................................................43

   1. Motivation to Combine ...........................................................46

   2. Claim 1 ...................................................................................47

   3. Claim 2 ...................................................................................51

   4. Claim 3 ...................................................................................51

F. Ground 6: Claims 4 and 5 Are Obvious Based on the Claim 1 Grounds in View of Archer or Caldecott. ..................................................51

   1. Motivation to Combine ...........................................................53

   2. Claim 4 ...................................................................................53

   3. Claim 5 ...................................................................................55

G. Ground 7: Claims 6-8 Are Obvious Based on the Claim 1 Grounds in Further View of Uehara, Abizaid, or Orewiler. ...........................56

   1. Motivation to Combine ...........................................................58

   2. Claims 6-8 ..............................................................................58

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

H.     Ground 8: Claims 9 and 13 Are Obvious Based on Claim 1 Grounds in Further View of Kristbjarnarson or Linville.......................................................61

    1.     Motivation to Combine .....................................................62

    2.     Claim 9 ............................................................................62

    3.     Claim 13 ..........................................................................62

VII.   CONCLUSION .........................................................................63

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

## LIST OF EXHIBITS

Exhibit 1001 – U.S. Patent No. 9,059,532 B2 ("the '532 Patent")

Exhibit 1002 – Expert Invalidity Report of Dr. Justin C. Williams and all attachments thereto (for the purposes of this Petition, Dr. Williams's report and attachments are consecutively paginated and citation herein is made to the Exhibit page number).

Exhibit 1003 – U.S. Patent No. 937,130 to Williams ("Williams")

Exhibit 1004 – U.S. Patent No. 1,001,054 to Lawrence ("Lawrence")

Exhibit 1005 – U.S. Patent No. 1,115,459 to Abizaid ("Abizaid")

Exhibit 1006 – U.S. Patent No. 1,193,050 to Orewiler ("Orewiler")

Exhibit 1007 – U.S. Patent No. 3,092,759 to Sommer ("Sommer")

Exhibit 1008 – U.S. Patent No. 4,671,591 to Archer ("Archer")

Exhibit 1009 – U.S. Patent No. 4,832,608 to Kroll ("Kroll")

Exhibit 1010 – U.S. Patent No. 5,326,272 to Harhen et al. ("Harhen")

Exhibit 1011 – U.S. Patent No. 6,148,486 to Uehara et al. ("Uehara")

Exhibit 1012 – U.S. Patent No. 6,461,307 to Kristbjarnarson et al. ("Kristbjarnarson")

Exhibit 1013 – U.S. Patent Application Publication No. 2006/0258948 to Linville ("Linville")

Exhibit 1014 – U.S. Patent Application Publication No. 2007/0167089 to Gobron et al. ("Gobron")

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

Exhibit 1015 – International Patent Application Publication No. WO 2008/102140 to Caldecott ("Caldecott") (for the purposes of this Petition, citation to Caldecott is made to the original page numbers)

Exhibit 1016 – U.S. Patent Application Publication No. 2010/0075527 to McIntire et al. ("McIntire Pub.")

Exhibit 1017 – U.S. Patent No. 8,025,539 to Hermannsson ("Hermannsson")

Exhibit 1018 – U.S. Patent No. 8,251,736 to McIntire et al. ("McIntire")

Exhibit 1019 – U.S. Provisional Application No. 61/358,472

Exhibit 1020 – PCT Application No. IS/050010

Exhibit 1021 – File History U.S. Application No. 13/806,834, Application as filed Dec. 24, 2012

Exhibit 1022 – File History U.S. Application No. 13/806,834, Non-Final Rejection, Oct. 1, 2014

Exhibit 1023 – File History U.S. Application No. 13/806,834, Applicant Remarks, Mar. 24, 2015

Exhibit 1024 – File History U.S. Application No. 13/806,834, Request to Correct Inventorship (Jan. 19, 2016), Response to Request (Feb. 2, 2016) and Certificate of Correction (Mar. 1, 2016).

Exhibit 1025 – File History European Patent No. 2584962, Response to Opposition, November 23, 2015

Exhibit 1026 – File History U.S. Application No. 13/806,834, Applicant Summary of Examiner Interview (and attachments thereto), Jun. 3, 2015

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

Exhibit 1027 – European Patent No. EP 2,584,962 (European equivalent of '532 Patent)

Exhibit 1028 – 2009 CareFusion Catalog

Exhibit 1029 – U.S. Patent No. 4,430,777 to Takeda ("Takeda")

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

## I.      MANDATORY NOTICES PURSUANT TO 37 C.F.R. § 42.8

### A.      Real Parties-in-Interest

Natus Medical Inc., Natus Neurology Inc., Embla Systems LLC and Embla Systems Ltd. are the Petitioners and real parties-in-interest.

### B.      Related Matters

U.S. Patent No. 9,059,532 ("the '532 Patent") is the subject of *Nox Medical Ehf. v. Natus Neurology Inc.*, Civil Action No. 15-709-RGA (D. Del. 2015) ("Related Litigation"). European Patent No. EP 2,584,962, the European equivalent of the '532 Patent, is the subject of an opposition proceeding. U.S. Patent App. No. 14/733,744, which claims priority to the '532 Patent, is pending before the U.S. PTO ("PTO").

### C.      Lead and Back-Up Counsel and Service Information

Petitioners designate the following counsel, available at 316 N. Milwaukee St., Suite 200, Milwaukee, WI 53202. Petitioners consent to electronic service.

| Lead Counsel | Back-Up Counsel | Back-Up Counsel |
|---|---|---|
| Thomas S. Reynolds II (Reg. No. 45,262) treynolds@hrdclaw.com (414) 273-8470 (t) (414) 273-8476 (f) | Marlee A. Jansen (Reg. No. 64,677) mjansen@hrdclaw.com (414) 939-8387 (t) (414) 273-8476 (f) | Jeremy Adelson (admission to be requested) jadelson@hrdclaw.com (414) 326-4043 (t) (414) 273-8476 (f) |

## II.     GROUNDS FOR STANDING

Petitioners certify that the '532 Patent is available for *inter partes* review and that Petitioners are not barred or estopped from requesting *inter partes* review based on the grounds identified in this Petition.

1

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

## III.   INTRODUCTION

### A.   The '532 Patent

The '532 Patent describes and claims a belt connector for electrically connecting an electrode belt to a biometric device. As the patent admits, belts and belt connectors were known in the prior art and used for, among other things, respiratory inductance plethysmography (RIP), a method of monitoring respiration based on the inductive changes in a wire loop that encircles the torso of a patient. '532 Patent, col. 1 ll. 12-18. Such belts—comprising conductive wires attached in a zig-zag pattern to elastic bandages—were known since at least the 1980s. *See, e.g.*, U.S. Patent No. 4,308,872; Ex. 1002 at 13-15. The invention of the '532 Patent is purportedly an "improved belt connector[] that [is] reliable and easy to use and maintain." '532 Patent, col. 1 ll. 16-18.

Claim 1, the only independent claim at issue in this Petition, is directed to typical features of electrode belt connectors. It requires a molded plastic connector frame including a receiving hole with a slot extending from it "configured to function as a female snap button fastener for receiving and fastening the frame to a protrusion of the male portion of the snap connector electrode." '532 Patent, col. 5 ll. 36-60. Electrical contact between the electrode belt and a "male portion of the snap connector electrode" is made between a conductor of the belt that passes through the

2

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

receiving hole while being "wrapped around" an "engaging member" adjacent to the

receiving hole. Figure 2A of the patent, annotated below, shows an embodiment:



Snap connections for making electrical contact, of course, were well known prior

to 2010, as were electrical connections in which male conductor is inserted into a

hole to make electrical contact. *See* Ex. 1002 at 28-47. These features were also

known in electrode belt connectors well before the date of the purported invention.

*Id.* at 26-27. Although the dependent claims addressed in this Petition recite certain

additional features—a shield, a cover, and a row of teeth to fasten the belt and adjust

its length—all of these features were also conventional and known prior to the time

of the purported invention. *Id.* at 27. The purported invention, therefore, does not

improve upon prior art belt connectors; it is unpatentable over the prior art.

3

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

## B.    The '532 Patent Prosecution

The '532 Patent issued from U.S. Patent App. No. 13/806,834, filed December 24, 2012 (§ 371(c) date March 18, 2013), as the U.S. entry of PCT No. IS2011/050010 (filed June 24, 2011), which in turn claims priority to U.S. Provisional Patent App. No. 61/358,472, filed June 25, 2010. Thus, the earliest priority date of the '532 Patent is June 25, 2010.

All applications leading to the issuance of the '532 Patent identify Kormakur Hlini Hermannsson as the sole named inventor. Exs. 1019, 1020, 1021. After the '532 Patent issued, however, the Patent Owner ("Nox") filed a request to add Sveinbjorn Hoskuldsson as a named inventor. Ex. 1024. On February 2, 2016, the PTO granted Nox's request to change the inventorship of the '532 Patent and issued a post-issuance Certificate of Correction on March 1, 2016. *Id*. An earlier Nox patent (U.S. Patent No. 8,025,539 to Hermannsson) was not considered as prior art by the PTO during examination of the application that issued as the '532 Patent because the Hermannsson '539 Patent appeared to enjoy unity of inventorship with the application that issued as the '532 Patent. It was not until March 1, 2016, nine months after the '532 Patent issued and when Hoskuldsson was added as an inventor post-issuance, that unity of inventorship with the Hermannsson '539 Patent was broken.

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

## IV.   STATUTORY GROUNDS FOR THE CHALLENGES

The '532 Patent issued from an application filed before March 16, 2013, so pre-AIA law applies. MPEP 2159.01. This Petition provides challenges (discussed in Section VI as Grounds 1-8) under pre-AIA 35 U.S.C. §§ 102 and 103 based on the following prior art patent references:

| | Reference | Publication Date |
|---|---|---|
| **(1)** | US 937,130 (Ex. 1003, "Williams") | Oct. 19, 1909 |
| **(2)** | US 1,001,054 (Ex. 1004, "Lawrence") | Aug. 22, 1911 |
| **(3)** | US 1,115,459 (Ex. 1005, "Abizaid") | Oct. 27, 1914 |
| **(4)** | US 1,193,050 (Ex. 1006, "Orewiler") | Aug. 1, 1916 |
| **(5)** | US 3,092,759 (Ex. 1007, "Sommer") | Jan. 2, 1959 |
| **(6)** | US 4,671,591 (Ex. 1008, "Archer") | Jun. 9, 1987 |
| **(7)** | US 5,326,272 (Ex. 1010, "Harhen") | Jul. 5, 1994 |
| **(8)** | US 6,148,486 (Ex. 1011, "Uehara") | Nov. 21, 2000 |
| **(9)** | US 6,461,307 (Ex. 1012, "Kristbjarnarson") | Oct. 8, 2002 |
| **(10)** | US 2006/0258948 (Ex. 1013, "Linville") | Nov. 16, 2006 |
| **(11)** | US 2007/0167089 (Ex. 1014, "Gobron") | Jul. 19, 2007 |
| **(12)** | WO 2008/102140 (Ex. 1015, "Caldecott") | Aug. 28, 2008 |
| **(13)** | US 8,025,539 (Ex. 1017, "Hermannsson") | Sep. 27, 2011 |
| **(14)** | US 8,251,736 (Ex. 1018, "McIntire") | Aug. 28, 2012 |

References 1-12 all published more than one year prior to June 25, 2010; thus, they are prior art under pre-AIA 35 U.S.C. § 102(b).

Hermannsson issued from an application filed on May 17, 2010—prior to the application that issued as the '532 Patent—and lists only Kormakur Hermannsson as an inventor. Following issuance of the '532 Patent, the PTO granted Nox's request to add Sveinborn Hoskuldsson as an inventor to the '532 Patent. Accordingly, Hermannsson is a previously filed application "to another" for the purposes of 35

5

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

U.S.C. § 102(e). *See* MPEP 2136.04 ("The inventive entity is different if not all inventors are the same. The fact that the application and reference have one or more inventors in common is immaterial."). Further, Nox admits that Hermannsson is prior art to the '532 Patent. Ex. 1025 ¶ 3.19 (identifying U.S. Patent App. Pub. No. 2010/0297868, first publication of Hermannsson, as reference "D1, and admitting that an embodiment of the Hermannsson's connector "was produced and sold by Nox *prior to the invention* of the present patent[.]" (*Id.* (emphasis added) (referring to EP 2,584,962, the European equivalent to the '532 Patent)).

McIntire is also prior art to the '532 Patent under at least 35 U.S.C. § 102(e) (pre-AIA) because it issued from U.S. Patent App. No. 12/336,333, filed Sept. 23, 2008, naming inventors not named on the '532 Patent. McIntire first published as U.S. Patent App. Pub. No. 2010/0075527 ("McIntire Pub.") on March 25, 2010. Thus, McIntire Pub. is prior art to the '532 Patent under both U.S.C. §§102(a) & (e) (pre-AIA). Because the disclosures of the patent and published application are identical, arguments based on McIntire apply equally to both references.

## V.    CLAIM CONSTRUCTION

Pursuant to 37 C.F.R. § 42.100(b), each claim at issue in this proceeding should be given its broadest reasonable construction or interpretation ("BRI") to a person

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

having ordinary skill in the art ("PHOSITA")[1] in light of the specification. *In re Cuozzo Speed Techs.*, 778 F.3d 1271, 1279-81 (Fed. Cir. 2015). Because the BRI standard of claim construction is different than the litigation standard, Petitioners reserve the right to present different claim constructions in the Related Litigation. *See In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d 1359, 1369 (Fed. Cir. 2004).

## A. "flexibility"

Claim 1 recites a plastic frame including a "receiving hole having radial flexibility." The specification does not discuss or define this "flexibility" other than to say that the receiving hole has "sufficient flexibility to function as a female snap fastener." '532 Patent, col. 5 ll. 18-20; col. 2 ll. 59-62.

Petitioners propose that the BRI for the term "flexibility" is "the ability of a part (related to its geometry and material properties) to elastically deform under an applied stress." PHOSITAs understood that most engineering materials exhibit

---

[1] Petitioners submit that the relevant field is medical device development and that a PHOSITA, at the time of the alleged invention of the '532 Patent, would have a Master's or Doctorate's degree in mechanical engineering, bio-medical engineering or equivalent related field; a Bachelor's degree and roughly one year of relevant experience; or an Associate's degree with approximately three years of relevant design experience. Ex. 1002 at 11-12.

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

elastic properties, meaning that for applied stresses below the elastic limit (yield limit) of the material, a part made of the material will return to its original configuration (i.e., exhibit flexibility). Ex. 1002 at 24-24. PHOSITAs further understood that parts can undergo both plastic and elastic deformation if loaded above the elastic limit of their material, meaning that the applied stress causes both permanent (plastic) and temporary (elastic) deformation. *Id*. Parts loaded beyond the material's elastic limit still exhibit "flexibility" consistent with a PHOSITA's ordinary and customary understanding of the term, even if the higher applied stress also happens to lead to permanent deformation. *Id*.

### B.    "passing through the receiving hole"

Claim 1 also recites a conductor "passing through the receiving hole." Petitioners propose that the BRI for the term "passing through the receiving hole" is self-evident and is without any limitation as to direction or extent. *Id*. at 25. The specification does not limit the ordinary and customary meaning of the term; the only requirement of the claimed conductor "passing through the receiving hole" is that it make physical (and thus electrical) contact with a male electrode inserted into the receiving hole. *Id.*; '532 Patent, col. 5 ll. 49-54; col. 3 ll. 14-24.

## VI.    CLAIMS 1-9 AND 13 OF THE '532 PATENT ARE UNPATENTABLE.

Claims 1-9 and 13 are unpatentable based on the prior art and grounds discussed herein. These grounds are supported by the declaration and opinions of Dr. Justin C.

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

Williams, chair of the department of Biomedical Engineering at the University of Wisconsin-Madison. Ex. 1002. Dr. William's declaration includes further analysis and detailed claim charts demonstrating the invalidity of the claims of the '532 Patent in view of the prior art. *See* Ex. 1002.

### A.    Ground 1: Claims 1-3, 6-9, and 13 Are Anticipated by Hermannsson.

Claims 1-3, 6-9, and 13 are anticipated by Hermannsson under 35 U.S.C. § 102(e) because it discloses each limitation of those claims either expressly or inherently. *See Schering Corp. v. Geneva Pharms., Inc*., 339 F.3d 1373, 1377 (Fed. Cir. 2003); *Verdegal Bros., Inc. v. Union Oil Co. of Cal.*, 814 F.2d 628, 631 (Fed. Cir. 1987) (citations omitted).

Hermannsson, the Nox-owned patent not considered as prior art during prosecution of the '532 Patent, teaches an "electrode belt and a belt connector" with a plastic frame that receives and fastens to a mating male snap protrusion to make an electrical connection with a biometric device. Like the '532 Patent, Hermannsson's belt connector includes a conductor from the belt that passes through the receiving hole (so it can physically and electrically connect with a male snap inserted into the hole) that wraps around structure adjacent the receiving hole.

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532



Ex. 1017, figs. 1a & 5 (annotated); col. 3 ll. 22-33.

1.     **Claim 1**

**An electrode belt and a belt connector for electrically connecting a conductor of the electrode belt to a male portion of a snap connector electrode connected to a biometric device, the belt connector comprising:**

Hermannsson teaches "a belt connector for electrically connecting an electrode belt to a biometric device." Ex. 1017, col. 1 ll. 22-39. Hermannsson further teaches that the belt connector has a circular hole "of suitable dimension to form a female snap button receiver for a male snap fastener on said biometric device." *Id.*

**a molded plastic frame including a receiving hole having radial flexibility, the receiving hole being configured to function as a female snap button fastener for receiving and fastening the frame to a protrusion of the male portion of the snap connector electrode,**

Hermannsson teaches an electrode belt connector made from "plastic, such as polyethylene, e.g. low density polyethylene (LDPE) or high density polyethylene (HDPE), or derivatives such as polyethylene terephthalate (PET) or polyfluoroethylene (PTFE), or more preferably polypropylene." Ex. 1017, col. 62-

10

67. Hermannsson expressly teaches a receiving hole formed in the plastic frame "configured to function as a female snap button fastener for receiving and fastening" to a male snap fastener, specifying that the hole in the electrode belt connector "itself forms a female snap button receiver;" is "of suitable dimension to form a female snap button receiver;" and is "the main connecting hole" or the "main fastener and connection hole." Ex. 1017, col. 2 ll. 29-32; col. 2 ll. 56-60; col 2 l. 65-col. 3 l. 1; col. 3 ll. 12-16.

PHOSITAs knew the plastics taught by Hermannsson are conventionally injection molded to make parts (like the disclosed belt connector) and that such plastics are examples of elastic materials (i.e., materials that exhibit flexibility). Ex. 1002 at 30, 58. PHOSITAs further understood that a hole "of suitable dimension to form a female snap button receiver" as taught by Hermannsson, bounded by such elastic materials, inherently exhibits "radial flexibility"—i.e., will elastically deform in response to a radially applied load (normal to the surface of a curved wall bounding the hole)—and will function as a female snap button fastener. *Id*. at 30-31, 57-59.

### a fastener configured to fasten the frame to a first end of said electrode belt, and

Hermannsson teaches a plastic frame of the belt connector with teeth 13 that fasten an electrode belt to the frame—i.e., the teeth 13 are a "fastener configured to

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

fasten the frame to a first end of said electrode belt." Ex. 1017, col. 2 ll. 14-17; col. 3 ll. 32-35, figs. 2-4a.



**an engaging member adjacent to said receiving hole, the engaging member engaging the conductor of the electrode belt by the conductor passing through the receiving hole while being wrapped around the engaging member, such that when the male portion of the snap connector electrode penetrates the receiving hole, the conductor is forced into physical contact with at least a lateral surface of the male portion of the snap connector electrode,**

Hermannsson also teaches the claimed electrode belt conductor passing through the receiving hole of a belt connector while being wrapped around an engaging member adjacent to the receiving hole, and forced into physical (and, therefore, electrical) contact with a lateral surface of a mating male snap. *See, e.g.*, Ex. 1017, fig. 1a (showing wire 5 positioned to make contact with a lateral surface of a male snap electrode inserted into the main fastener and electrical connection hole 4). Hermannsson's conducting wire from the belt (wire loop 5) is "held in place" by wrapping around "extending ridge 12 and small wings 19" adjacent to the receiving hole. Ex. 1017, col. 3 ll. 47-48; figs. 1a & 5. The ridge and wings ensure "proper placement and location of the wire loop 5," and these members "hold the wire loop in suitable proximity to the hole"—i.e., the ridge and wings are engaging members

adjacent the receiving hole that engage the electrode belt conductor, which wraps around them. *Id.* col. 3 ll. 22-29; figs.1a & 5.

Hermannsson further teaches that the conducting wire "will be exposed and visible from the outside through the [receiving] hole" and that "part of said wire loop comes in contact with the male snap fastener when [the male snap fastener is] inserted in the hole, forming an electrical connection." *Id.* col. 2 ll. 32-35; col. 2 ll. 66-67 (identifying the "hole" as the "main fastener and electrical connection hole"). Accordingly, the wire loop of Hermannsson necessarily "passes through" the receiving hole; if it did not, electrical connection with a male snap fastener inserted in the hole would not be possible. Ex. 1002 at 61.

**wherein radial flexibility of said receiving hole is achieved by one or more slot extending from said hole, and wherein said receiving hole and one or more slot are formed by at least one elongated member having flexibility transverse to its longitudinal axis, thus imparting flexibility to the width of the hole.**

Finally, Hermannsson teaches an electrode belt connector having a "slot" extending from its receiving hole and contributing to its flexibility as required by claim 1. Slot or "extended hole 10" extends from the receiving hole giving it a "keyhole-like shape." Ex. 1017, fig. 2; col. 2 ll. 56-60; col. 3 ll. 29-31. PHOSITAs knew that plastics (LDPE, HDPE and polypropylene) are elastic materials that exhibit flexibility in all directions, including transverse to a longitudinal axis, thereby imparting "flexibility to the width of the hole." Ex. 1002 at 30-31 & 62.

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

PHOSITAs knew that structure surrounding a hole is more amenable to elastic deformation (i.e., is more flexible) if the hole is not fully bounded—i.e., a slot, or the absence of structure contributes to the "radial flexibility" of the hole. *Id.* at 31 n.10.

### 2.  Claim 2

**The electrode belt and the belt connector of claim 1, wherein said belt connector further comprises a shield member which is arranged on a rear side of said frame to electrically shield the conductor of the electrode belt from the rear side exterior of the belt connector.**

As taught by Hermannsson, back element (2) of the electrode connector separates the conductor of the electrode belt from a patient's body. Ex. 1017, col. 2 ll. 14-21; figs. 3a, 3b, 4a, 4b, 4c. Thus, Hermannsson's back element (2)—made out of "non-conducting materials, most preferably plastic," like the rest of the belt connector—is "a shield member which is arranged on a rear side of said frame to electrically shield the conductor of the electrode belt from the rear side exterior of the belt connector." *Id.* col. 1 ll. 62-63.

### 3.  Claim 3

**The electrode belt and the belt connector of claim 2, wherein said shield member is a sheet member extending from the frame, which sheet member is configured to be folded over onto the rear side of the frame to cover the back side of said receiving hole and engaged conductor.**

Figure 4 of Hermannsson "shows the outside faces of a front element [3] and back element [2] joined together with a hinge." Ex. 1017, col. 1 ll. 49-50 (reference

14

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

numerals corrected, *see id*. col. 4 l. 5); col. 2 ll. 14-17. Back element (2), which

separates the conductor of the electrode belt from a patient's body (i.e., is the "shield

member" of Claim 2) that extends from and is connected to the frame (front member

3) by a hinge 18 so it can fold over and cover the "back side of said receiving hole

and engaged conductor." Thus, Hermannsson teaches this claim.



Ex. 1017, Fig. 4a.

### 4. Claim 6

**<u>The electrode belt and the belt connector of claim 1, wherein said fastening means comprise a slot with a row of teeth, pins or hooks transverse to the belt direction, to engage a belt end.</u>**

Claim 6, which depends from Claim 1, includes a limitation directed to "said

fastening means." Claim 1 does not recite a "fastening means." Accordingly, this

claim does not comply with the requirements of 35 U.S.C. § 112 (pre-AIA). For the

purposes of this Petition, and in an attempt to make sense of the claim, Petitioners

have construed the limitation of Claim 6 directed to "said fastening means" as

referring to the claimed "fastener" of Claim 1. Petitioners reserve the right to argue

that Claim 6 is invalid under 35 U.S.C. § 112 in the Related Litigation.

Hermannsson teaches an electrode belt held between front and back elements of a connector having a row of teeth (13) to "hold firmly the end of a belt 8 when inserted between the engaged front and back elements." Ex. 1017, col. 3 ll. 31-33, figs. 4a-4b. Thus, Hermannsson teaches fastening means comprising a slot (the space between front and back elements that accepts the belt) "with a row of teeth, pins or hooks transverse to the belt direction, to engage a belt end." Ex. 1002 at 165.

### 5.   Claim 7

**The electrode belt and the belt connector of claim 1, wherein said fastening means comprise a ridge member or row of pins which lies transverse to the belt direction and to which a belt end can be fastened onto with heat melting or gluing.**

Like Claim 6, this claim includes a limitation directed to "said fastening means" which is not present in Claim 1 and is therefore also invalid under 35 U.S.C. § 112 (pre-AIA). Again, without waiving its rights to make this argument in the Related Litigation, Petitioners have construed the limitation as referring to the claimed "fastener" of Claim 1 for the purposes of this Petition only.

Hermannsson teaches an electrode connector with a row of teeth (13) which are a row of pins "to which a belt end can be fastened onto with heat melting or gluing." Ex. 1017, col. 2 ll. 14-28. Hermannsson explains the front element (with teeth) can be glued or melted to the back element "fastening in between them an end of said electrode belt." *Id.* Notably, during examination of the '532 Patent, the Examiner

took Official Notice that "use of gluing techniques is well known for fastening pieces together." Ex. 1022 at 9.

### 6. Claim 8

**The electrode belt and the belt connector of claim 1, wherein said belt connector comprises an adjustment slot with teeth, pin or hook members, through which slot a loop of desired length of said belt can be inserted, to adjust and fix the length of the belt.**

Belt adjusting opening (17) is an adjustment slot. *See* Ex. 1017, col. 3 ll. 42-43, fig. 3a. Hermannsson teaches that "any of various conventional means can be used to make the length of the belt adjustable," understood by PHOSITAs to include typical features of buckles, like teeth, pins or hooks in a slot, for adjusting a belt length. *Id.* col. 2 ll. 9-10; Ex. 1002 at 208-209. To the extent not anticipated, Claim 8 is obvious in view of Hermannsson and the knowledge of a PHOSITA. *See id*.

### 7. Claim 9

**The electrode belt and the belt connector of claim 1, wherein said belt is a flexible textile belt with an electrode wire interwoven in the belt or laminated between two layers of the belt.**

PHOSITAs understood that the "inductive belts used in respiratory inductive plethysmography" taught by Hermannsson are "flexible textile belt[s] with an electrode wire interwoven in the belt or laminated between two layers of the belt." Ex. 1002 at 223-24; U.S. Patent No. 4,308,872 (early disclosure of RIP belt technology); *see also, generally*, Exs. 1012-13.

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

### 8.   Claim 13

**<u>The electrode belt and the belt connector of claim 1, wherein the conductor of the electrode belt is an electrode wire.</u>**

Hermannsson teaches that the wire of the electrode belt is "itself the conducting element." Ex. 1017, col. 2 ll. 47-51.

### B.   Ground 2: Claims 1-9 and 13 Are Obvious Based on McIntire in View of Hermannsson.

McIntire teaches multiple embodiments of a connector assembly for connecting an electrical lead to a male stud electrode. These embodiments include a retention plate with an opening (i.e., a receiving hole) therein that receives and fastens to a male snap protrusion of an electrode. Ex. 1018, figs. 12-14. The retention plates are "sufficiently resilient" to "deform" to fit over and retain a male snap stud of an electrode to form a "snap-fit connection." *See, e.g.*, *id.* col. 6 ll. 3-32. The embodiment of Figure 12 includes two slots extending from the opening 450 in retention plate 444 and a cover sheet 478 that is adhered to the retention plate:



FIG. 12

*Id.* fig. 12; col. 10 l. 59-col. 11 l. 35.

Figure 13 teaches a similar connector assembly with "an end portion 542 of [an] electrical conductor 522" that wraps around the material that defines opening 550 of

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

retention plate 544. The electrical conductor is "held between, and in engagement with, the electrical contact 530 [male snap protrusion] and a wall 527 of the retention plate 548."



*Id.* fig. 13 (annotated); col. 11 l. 36-col. 12 l. 9; *see also*, fig. 14.

### 1.    Motivation to Combine

The combination of McIntire and Hermannsson renders Claim 1 and all of the dependent claims challenged in this Petition invalid as obvious. *See* 35 U.S.C. § 103(a); *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1739 (2007) ("The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."). To the extent McIntire lacks any limitation of the challenged claims, Hermannsson teaches such limitation and would be combined with the teachings of McIntire by a PHOSITA in a single device having all the limitations of each claim.

PHOSITAs would be motivated to combine the teachings of McIntire and Hermannsson, both of which are examples of admittedly known prior art electrode connectors, into a single device. '532 Patent, col. 1 ll. 12-16; Ex. 1002 at 52-55 & 67-68. McIntire explicitly states that its teachings "may be used with any system for measuring any physiologic information or performing any physiologic procedure"—i.e., with a RIP belt like that taught by Hermannsson. Ex. 1018, col. 12 l. 65-col. 13 l. 1. The prior art teaches the market demands for low-cost, mass-producible electrode belts that can adjust to a variety of patient sizes (Ex. 1002 at 52), and McIntire and Hermannsson both teach various electrode belt and connector designs that seek to meet these design criteria. Ex. 1018, col. 12 ll. 57-60; Ex. 1017, col. 1 ll. 57-61, col. 2 ll. 9-13. McIntire and Hermannsson also suggest the use of compatible structures and features in a single electrode belt connector; for example, McIntire states that "[e]ach component, and/or each step of one embodiment, can also be used in combination with other components and/or steps of other embodiments." Ex. 1018, col. 13 ll. 14-17. Accordingly, PHOSITAs would reasonably expect to successfully combine the compatible (and similar) teachings of McIntire and Hermannsson into an electrode belt with all the limitations of each of the claims of the '532 Patent.

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

### 2.    Claim 1

**An electrode belt and a belt connector for electrically connecting a conductor of the electrode belt to a male portion of a snap connector electrode connected to a biometric device, the belt connector comprising:**

Like Hermannsson (Section VI.A.1), McIntire suggests to a PHOSITA that the "connector assembly for connecting an electrical lead to an electrode" disclosed therein "may be used with any system for measuring any physiologic information or performing any physiologic procedure." Ex. 1018, col. 1, ll. 7-10; col. 12 l. 65-col. 13 l.1. PHOSITAs would understand that McIntire's teachings apply to electrode belts. Ex. 1002 at 54, 68.

### a molded plastic frame including a receiving hole having radial flexibility, the receiving hole being configured to function as a female snap button fastener for receiving and fastening the frame to a protrusion of the male portion of the snap connector electrode,

Hermannsson teaches an electrode connector with a plastic frame and a "main fastener and electrical connection hole." Section VI.A.1. McIntire teaches multiple embodiments of electrode connectors having a retention plate with an opening therein sized to fit over a male snap fastener electrode—i.e., a receiving hole. The material of the retention plate is "sufficiently resilient" so the retention plate "connects to the electrical contact [male snap fastener electrode] in a snap-fit connection." *See, e.g.*, Ex. 1018, col. 11 ll. 36-60, figs. 12-14. Figures 13 and 14 expressly teach retention plates 544/644 with respective openings 550/650 that

21

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

receive and fasten to a male snap electrode 530/630. *See, e.g.*, *id*. col. 11 ll. 54-60

("Once the enlarged-diameter portion 552 has passed through the opening 550, the

opening 550 returns toward the undeformed size to engage a reduced-diameter

portion 553 of the electrical contact 530, such that . . . the retention plate 544

connects to the electrical contact 530 in a snap-fit connection."); *see also id*. col. 13

ll. 42-60. PHOSITAs knew and understood such retention plates of "sufficiently

resilient" material to include and mean retention plates of molded plastic. Ex. 1002

at 34-38 & 69.

### a fastener configured to fasten the frame to a first end of said electrode belt, and

Hermannsson teaches teeth that fasten the frame to a belt. Section VI.A.1.

PHOSITAs knew a connector with such a fastener is one of the known ways that

"[t]he embodiments [of McIntire] may be used with any system for measuring any

physiologic information or performing any physiologic procedure." Ex. 1018, col.

12 l. 65-col. 13 l.1; Ex. 1002 at 54-55, 67-68.

### an engaging member adjacent to said receiving hole, the engaging member engaging the conductor of the electrode belt by the conductor passing through the receiving hole while being wrapped around the engaging member, such that when the male portion of the snap connector electrode penetrates the receiving hole, the conductor is forced into physical contact with at least a lateral surface of the male portion of the snap connector electrode,

Hermannsson teaches the claimed electrode belt conductor passing through the

receiving hole while wrapped around a ridge and wings adjacent to the receiving

22

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

hole. Section VI.A.1. McIntire teaches at least two embodiments of an electrode connector including a conductor that wraps around structure adjacent a receiving hole in the connector, wherein the conductor passes through the receiving hole to make electrical contact with a lateral surface of a male snap electrode inserted in the hole.

In Figure 13 (annotated), electrical conductor 522 wraps around retention plate 544 (engaging member) and passes through opening 550 such that the electrical conductor 522 is forced into contact with a lateral surface of a male snap electrode 530 when inserted into opening 550. Ex. 1018, fig. 13; col. 11 ll. 61-64; col. 12 ll. 38-43; Ex. 1002 at 35-38, 71-73.



In Figure 14, end portion 642 of electrical conductor 622 wraps around channel 663 formed in retention plate 644 (engaging member) adjacent to an opening 650. End portion 642 passes through opening 650 such that the conductor 642 is forced

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

into contact with a lateral surface of a male snap electrode 630 when inserted into

opening 650:



*Id.* fig. 14, col. 12 ll. 38-43; Ex. 1002 at 72-73.

> **wherein radial flexibility of said receiving hole is achieved by one
> or more slot extending from said hole, and wherein said receiving
> hole and one or more slot are formed by at least one elongated
> member having flexibility transverse to its longitudinal axis, thus
> imparting flexibility to the width of the hole.**

Hermannsson teaches a plastic electrode belt connector having a slot extending

from its flexible receiving hole. Section VI.A.1. McIntire also teaches this limitation.

For example, Figure 12 shows connector assembly 412, with a retention plate 444

of "sufficiently resilient" material having two slots extending from a central portion

of opening 450, bounded by "a pair of flexible beams 427" that are "sufficiently

resilient such that the size of the opening 450 may deform to allow the enlarged-

diameter portion 452 of the electrical contact 430 to be forced through the opening

24

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

450." Ex. 1018, col. 11 ll. 4-16. Once the male portion of the electrical contact has

passed through, opening 450 "return[s] toward the undeformed size" to engage a

reduced-diameter portion of the contact in a "snap-fit connection." *Id.* PHOSITAs

understood that the flexible beams 427, made of a resilient (i.e., elastic) material,

have "flexibility transverse to [their] longitudinal ax[es]." Ex. 1002 at 35 & 73-74

(opining that the embodiments of Figures 13 and 14 also teach this limitation).

### 3.    Claim 2

**The electrode belt and the belt connector of claim 1, wherein said belt connector further comprises a shield member which is arranged on a rear side of said frame to electrically shield the conductor of the electrode belt from the rear side exterior of the belt connector.**

Hermannsson teaches this limitation. Section VI.A.2. So does McIntire, which

teaches electrode connectors with a housing or cover that shields a conductor of the

electrode connector from a rear side exterior of the connector. *See, e.g.*, Ex. 1018,

col. 9 l. 52-col. 10 l. 4, fig. 7. For example, the embodiment of Figure 7 includes

hinge 125 connecting housing 126 to retention plate 144, wherein housing 126 is a

"shield member . . . arranged on a rear side" of the connector to shield the electrode

belt's conductor:

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532



FIG. 7

Further embodiments of McInitire include a cover sheet (578 or 678) on the rear side of the frame to shield the conductor and also teach this limitation. *Id.* col. 11 ll. 42-44; col. 12 ll. 43-50, figs. 13-14.

### 4.    Claim 3

**The electrode belt and the belt connector of claim 2, wherein said shield member is a sheet member extending from the frame, which sheet member is configured to be folded over onto the rear side of the frame to cover the back side of said receiving hole and engaged conductor.**

Hermannsson teaches this limitation. Section VI.A.3. Likewise, McIntire's housing 126 (depicted in Figure 7, discussed above) is a shield member (and a sheet member extending from the frame) that is connected to the frame by hinge 125 so that it folds over onto the rear side of the frame as claim 3 requires. Ex. 1002 at 125-26.

26

### 5. Claim 4

**The electrode belt and the belt connector of claim 1, wherein said belt connector comprises a cover enclosing the frame, which cover either includes a hole overlapping the receiving hole of the frame, or can be readily perforated by pressing the connector onto a male fastener which fits the receiving hole of the frame.**

The '532 Patent admits that "existing standards for medical devices," require electrode belts and connectors to "be configured such that a person wearing the belt . . . is insulated from current running through the belt." '532 Patent, col. 1 ll. 41-44. Hermannsson teaches that direct contact between the conductor of the belt connector and a patient's skin should be avoided. Ex. 1017, col. 2 ll. 52-55. McIntire teaches an adhesive layer (sticker), including embodiments with openings, to cover and attach to a connector body for various purposes including securing an electrical lead to the connector body. Ex. 1018, col. 7 ll. 40-56; col. 11 l.64-col. 12 l. 3; col. 12 ll. 43-50, figs. 2, 13-14.

PHOSITAs aware of the "existing standards" and Hermannsson's instruction to avoid contact with the conductor through the receiving hole would be motivated to use the adhesive layer (sticker) taught by McIntire to enclose the frame and allow access to the receiving hole. Ex. 1002 at 131-32.

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

### 6. Claim 5

**The electrode belt and the belt connector of claim 4, wherein said cover is selected from the group consisting of a folded paper, plastic or fabric sticker, a plastic envelope and a textile envelope.**

In rejecting Claim 5 (Pending Claim 7) during prosecution, the Examiner noted that "many plastic materials are known to make such covers," and selection of such a cover is an obvious design choice. Ex. 1022 at 7. Indeed, McIntire teaches an adhesive layer 78 (a sticker), understood by PHOSITAs to be a "plastic sticker" that covers an electrode connector housing. *See, e.g.*, Ex. 1018, col. 7 ll. 40-46; col. 11 l.64-col. 12 l. 3; col. 12 ll. 43-50, figs. 2, 13 & 14; Ex. 1002 at 152-53.

### 7. Claims 6-9 and 13

To the extent these claims can be construed, Hermannsson teaches their limitations. Sections VI.A.4-VI.A.8. Thus, the combination of McIntire and Hermannsson, combined for at least the reasons discussed with respect to Claim 1, renders Claims 6-9 and 13 unpatentable under 35 U.S.C. § 103. Ex. 1002 at 165-66, 186, 211, 225-26, 232.

### C. Ground 3: Claims 1, 6-9, and 13 Are Obvious Based on Harhen in View of Hermannsson.

Like the prior art already discussed, Harhen teaches "restriction fit electrode connector assemblies or adapters in which a connector body slides over an upstanding member, e.g., a bulbous post, of an electrode, 'snapping' into place so as to permit secure, rotatable electrical coupling between the connector and the

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

electrode." Ex. 1010, col. 1 ll. 17-23. Harhen teaches that the connector body should "provide sufficient resilience or compressibility . . . to cause, e.g., and electrode post, to 'snap' into place . . . ." *Id.* col. 3 ll. 30-35. Harhen further teaches an electrode connector having a "conductor that passes through [a] receiving hole while being wrapped around an engaging member" that has "one or more slot[s] extending from the hole." *Id.* col. 5 ll. 40-42; figs. 10-12. As shown in Figure 10, wire 58 is embedded in the material of body 50 and therefore wraps around portions of the body 50 that are adjacent to the receiving hole (channel 57). As shown in Figure 12, wire 58 "is located at the surface" of the channel that receives a male electrode so that "electrical contact" is made "between the wire 58 and the [male snap electrode] 32" when the male snap electrode is received in channel 57.



*Id.* figs. 10 & 12 (annotated); col. 5 ll. 32-45.

### 1.   Motivation to Combine

The combination of Harhen and Hermannsson renders independent claim 1 and at least dependent claims 6-9 and 13 invalid as obvious. *See* 35 U.S.C. § 103(a);

29

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

*KSR*, 127 S. Ct. at 1739. To the extent Harhen lacks any limitation of those claims, the limitation can be found in Hermannsson, which would be incorporated with the teachings of Harhen by a PHOSITA into a single device having all of the limitations of each claim.

PHOSITAs would be motivated to combine the teachings of Harhen and Hermannsson, both of which are examples of admittedly known prior art electrode connectors, into a single device. '532 Patent, col. 1 ll. 12-16; Ex. 1002 at 52-55 & 75-76. The prior art teaches the market demand for low-cost, mass-producible electrode belts that can adjust to a variety of patient sizes. Ex. 1002 at 52-55. Harhen and Hermannsson not only teach the desire for low-profile electrode connectors that are easy to use and maintain, but embodiments of the same. Ex. 1010, col. 32-37 (teaching an electrode connector with a secure, but detachable, restriction fit coupling); Ex. 1017, col. 1 ll. 57-61, col. 2 ll. 9-13. Further, prior to the earliest priority date of the '532 Patent, PHOSITAs knew and understood that the primary design functions of an electrode belt are to adjustably fit a patient's body and to connect and conduct electrical current. Ex. 1002 at 54. Thus, PHOSITAs would naturally consider and combine the teachings of existing prior art electrode belts and connectors to address the market demand for low-cost, mass-producible, adjustable electrode belts. *Id*. at 52-55.

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

Harhen and Hermannsson teach and suggest the use of compatible structures and features in a single electrode belt connector. *See, e.g.*, Ex. 1010, col. 6 ll. 21-23 ("Many other variations will occur to one of skill in this art in view of this disclosure."). Accordingly, PHOSITAs would reasonably expect to successfully combine the teachings of Harhen and Hermannsson into an electrode belt having the limitations of Claim 1. Ex. 1002 at 75-76. Being no more than a combination of familiar elements according to known methods with predictable results, Claim 1 is obvious under *KSR*. *See* 127 S. Ct. at 1739.

### 2.    Claim 1

**An electrode belt and a belt connector for electrically connecting a conductor of the electrode belt to a male portion of a snap connector electrode connected to a biometric device, the belt connector comprising:**

Like Hermannsson (Section VI.A.1), Harhen teaches a connector assembly "in which a connector body slides over an upstanding member, e.g., a bulbous post, of an electrode, 'snapping' into place so as to permit secure, rotatable electrical coupling between the connector and the electrode." Ex. 1010, col. 1 ll. 17-23. PHOSITAs would reasonably expect to successfully combine features of Harhen's electrode connector with Hermannsson's electrode belt and connector, such combination being no more than an electrode belt attached to an electrode connector using conventional means. Ex. 1002 at 75-81.

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

**a molded plastic frame including a receiving hole having radial flexibility, the receiving hole being configured to function as a female snap button fastener for receiving and fastening the frame to a protrusion of the male portion of the snap connector electrode,**

Hermannsson teaches an electrode connector with a plastic frame and a "main fastener and electrical connection hole." Section VI.A.1. Harhen teaches that "[t]he composition of the connector body 10 is chosen so as to provide sufficient resilience or compressibility in the sides 18a-18b of channel 18 and stop 30 to cause, e.g., an electrode post, to 'snap' into place adjacent stop 30, thereby providing a secure restriction fit." Ex. 1010, col. 3 ll. 29-35. Harhen also teaches that the connector may comprise "thermoplastic" or "polymeric" materials and be made from a mold, which PHOSITAs understand as being a molded plastic frame with elastic (i.e., flexible) properties. Ex. 1002 at 77-78; Ex. 1010, col. 5 l. 50-60. Thus, the receiving hole (channel 55 in Figure 10) designed to receive a bulbous post (i.e., the male portion of an electrode) exhibits radial flexibility. Ex. 1002 at 77-78; Ex. 1010, col. 4 l. 65-col. 5 l.2.

**a fastener configured to fasten the frame to a first end of said electrode belt, and**

Hermannsson teaches teeth to fasten the frame to a belt. Section VI.A.1. PHOSITAs knew that such a fastener is one of the known ways Harhen's "low profile connector [could be adapted to be] especially useful in the biomedical field." Ex. 1010, col. 1 ll. 9-17; Ex. 1002 at 75-76.

32

**an engaging member adjacent to said receiving hole, the engaging member engaging the conductor of the electrode belt by the conductor passing through the receiving hole while being wrapped around the engaging member, such that when the male portion of the snap connector electrode penetrates the receiving hole, the conductor is forced into physical contact with at least a lateral surface of the male portion of the snap connector electrode,**

Hermannsson teaches the claimed conductor of the electrode belt passing through the receiving hole while being wrapped around a ridge and wings adjacent to the receiving hole. Section VI.A.1. Harhen also teaches this limitation. As shown in Figure 10, wire 58 (the conductor) is engaged by a portion of the body of connector 50 (the engaging member) adjacent to and defining the receiving hole (channel 55). Ex. 1010, col. 4 l. 65-col. 5 l. 17; Ex. 1002 at 38-40 & 78-81. Wire 58 wraps around the structure of connector 50 (the engaging member) while the wire 58 passes through the receiving hole. Ex. 1010, col. 5 ll. 40-45 ("[W]ire 58 is located at the surface of the narrower portion 57 of the channel 55 [such] that . . . electrical contact may be achieved between the wire 58 and the upstanding connecting member 32 when . . . the upstanding connecting member 32 is received in the narrower portion 57 of the channel 55."). Figure 12 shows wire 58 at the surface of the channel 55 so that it makes physical (and electrical) contact with the lateral surface of the male electrode when inserted into channel 55 (a receiving hole).

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532



Ex. 1010, figs. 10 & 12.

> **wherein radial flexibility of said receiving hole is achieved by one or more slot extending from said hole, and wherein said receiving hole and one or more slot are formed by at least one elongated member having flexibility transverse to its longitudinal axis, thus imparting flexibility to the width of the hole.**

Finally, Hermannsson teaches a plastic electrode belt connector having a slot extending from its flexible receiving hole. Section VI.A.1. Harhen also teaches this limitation. Harhen's electrode connector includes a channel with a semi-circular end, which is a hole (labeled as 55) having a narrow portion 57 where the electrode is retained and an elongated portion (not labeled in Figure 10) which is a slot extending from the semi-circular end. Ex. 1010, col. 4 l. 68-col. 5 l. 2. As expressly taught by Harhen, PHOSITAs knew and understood that the material that defines receiving channel/hole 55 is flexible and allows for flexibility of the width of the receiving hole for connecting to a male snap; i.e., such structure includes flexibility in a direction transverse to a longitudinal direction. *Id.* col. 3 ll. 29-35; Ex. 1002 at 81.

34

### 3. Claims 6-9, and 13

To the extent these claims can be construed, Hermannsson teaches their limitations. Sections VI.A.4-VI.A.8. Thus, the combination of Harhen and Hermannsson, combined for at least the reasons discussed with respect to Claim 1, renders Claims 6-9 and 13 unpatentable under 35 U.S.C. § 103. Ex. 1002 at 165-66, 186, 211, 225-26 & 232.

### D. Ground 4: Claims 1-5, 9 and 13 Are Obvious Based on McIntire in View of Kristbjarnarson or Linville; Claims 6-8 Are Obvious Based on McIntire in View of Kristbjarnarson.

Kristbjarnarson and Linville are prior art references that teach biometric belts. Kristbjarnarson[2] teaches a sensor belt that includes a "flexible ribbon" with a conductor strip secured therein and adapted to encircle the chest or abdomen of a patient. Ex. 1012, Abstract. Kristbjarnarson explains that the conductor strip may be woven into the flexible ribbon or laminated between two flexible ribbons, further teaching a connector assembly secured to an end of this "ribbon" such that electrical signals from the belt are transmitted through the connector assembly to a monitoring device. *Id.* col. 5 ll. 2-4; col. 5 ll. 28-45; col. 3 ll. 37-45.

---

[2] The named inventors of Kristbjarnarson include Kormakur Hermannsson (misspelled "Hermannson"), sole inventor of the Hermannsson patent discussed above and one of the named inventors of the '532 Patent.

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532



Ex. 1012, fig. 3.

Linville teaches a RIP transducer belt having a conductor woven into the elastic material of a belt. Ex. 1013 ¶0001, fig. 6. Linville teaches a low-cost, reusable belt "having a common size that can be expanded for use on a wide range of patient sizes" with "ends attached to releasable connectors . . . to secure the encompassing belt around a body part under study." *Id.* ¶¶0017, 0028, fig. 1.





Ex. 1013, figs. 1-2.

36

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

Either of these references combined with the electrode connector of McIntire renders Claims 1-5, 9, and 13 unpatentable under 35 U.S.C. § 103; the combination of McIntire and Kristbjarnarson, which teaches an electrode connector with teeth to adjust and fix and end of an electrode belt, also renders Claims 6-8 obvious.

### 1.    Motivation to Combine

PHOSITAs would be motivated and reasonably expect to successfully combine elements of the biometric electrical connector taught by McIntire with Kristbjarnarson's or Linville's electrode belt into a single entity because these references state that their respective teachings can be used in "any system for measuring any physiologic information" (Ex. 1018, col. 12 ll. 66-67), that it is "readily apparent to those skilled in the art that the [Linville's device] can be adapted to other uses including, . . . other fields in the life sciences and related research industries" (Ex. 1013 ¶0057), and that variations and modifications of belts and belt connectors are "apparent to those skilled in the art" (Ex. 1012, col. 8 ll. 29-30). It would be obvious to PHOSITAs to combine the wholly compatible teachings of Kristbjarnarson or Linville with McIntire in a single device without producing new or different functions than those separately performed by the elements. *See KSR*, 127 S. Ct. at 1739; Ex. 1002 at 81-82, 89-90.

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

    2.    **Claim 1**

**<u>An electrode belt and a belt connector for electrically connecting a conductor of the electrode belt to a male portion of a snap connector electrode connected to a biometric device, the belt connector comprising:</u>**

Both Kristbjarnarson and Linville teach electrode belts and belt connectors compatible with the electrode connector of McIntire (Section VI.B.2) that connects to a male snap protrusion of a biometric device. Ex. 1002 at 81-82, 89-90. Kristbjarnarson teaches a RIP transducer belt (a "ribbon") and teaches "a connector assembly for connecting and securing a first free end of the ribbon to a second free end of the ribbon." Ex. 1012, Abstract. Linville teaches a transducer (RIP) belt "in the form of a woven fabric providing a substantially flat extensible belt for encircling a portion of a patient for a wide range of patient sizes." Ex. 1013, Abstract.

**<u>a molded plastic frame including a receiving hole having radial flexibility, the receiving hole being configured to function as a female snap button fastener for receiving and fastening the frame to a protrusion of the male portion of the snap connector electrode,</u>**

McIntire teaches multiple embodiments of electrode connectors made of molded plastic with an opening therein sized to fit over a male snap fastener electrode. Section VI.B.2. Both Kristbjarnarson and Linville teach electrode belts connected to an electrode connector. Kristbjarnarson teaches "a connector assembly for connecting and securing a first free end of the ribbon to a second free end of the ribbon [that] is further adapted to be connected to a monitoring device." Ex. 1012,

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

Abstract. Linville teaches that an "attachment means is provided for releasably connecting and securing the ends of the extensible transducer belt about a patient, and is preferably in the form of corresponding plastic buckle ends at each end of the belt." (Ex. 1013, ¶0019).

### <u>a fastener configured to fasten the frame to a first end of said electrode belt, and</u>

McIntire suggests that the electrode connector disclosed therein "may be used with any system for measuring any physiologic information or performing any physiologic procedure." Section VI.B.2; Ex. 1018, col. 12 l. 65-col. 13 l.1. Both Kristbjarnarson and Linville teach electrode belts with a connector including a fastener configured to fasten an electrode connector frame to a first end of a belt.

Kristbjarnarson teaches a connector assembly having a "piercing assembly" to fasten and secure the connector to a belt end. Ex. 1012, col. 6 ll. 30-41, fig. 3 ("A first end of the ribbon 10 is secured to a first connector portion 31 of a connector assembly 30, as shown in FIG. 3."). Similarly, Linville teaches an electrode belt "attached to releasable connectors" at each end. Ex. 1013, ¶0028 ("The ends of the belt are attached to releasable connectors 14. . . to secure the encompassing belt around a body part under study.").

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

**an engaging member adjacent to said receiving hole, the engaging member engaging the conductor of the electrode belt by the conductor passing through the receiving hole while being wrapped around the engaging member, such that when the male portion of the snap connector electrode penetrates the receiving hole, the conductor is forced into physical contact with at least a lateral surface of the male portion of the snap connector electrode,**

McIntire teaches an electrode connector having a conductor wrapped around a structure adjacent an opening in a retention plate such that when a male portion of a snap electrode is retained by the connector the conductor is forced into physical contact with a lateral surface of the male snap electrode. Section VI.B.2.

**wherein radial flexibility of said receiving hole is achieved by one or more slot extending from said hole, and wherein said receiving hole and one or more slot are formed by at least one elongated member having flexibility transverse to its longitudinal axis, thus imparting flexibility to the width of the hole.**

Finally, McIntire teaches electrode connectors that include this limitation. Section VI.B.2. Figures 12-14 of McIntire teach electrode connectors with a receiving hole in a resilient material having a slot extending therefrom and having an elongated member with flexibility transverse to a longitudinal axis. *Id.*

### 3.    Claims 2-5

The combination of McIntire and Kristbjarnarson or Linville renders independent claim 1 obvious. Section VI.D.2. Because McIntire also teaches all the dependent limitation of claims 2-5 (Sections VI.B.3-VI.B.6), and PHOSITAs would be motivated to combine the teachings of McIntire with Kristbjarnarson or Linville in a single device for at least the same reasons discussed in Section VI.D.1, these claims

40

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

are also rendered obvious by either combination. Ex. 1002 at 116-19, 126-27, 149-50 & 161.

### 4. Claim 9

**The electrode belt and the belt connector of claim 1, wherein said belt is a flexible textile belt with an electrode wire interwoven in the belt or laminated between two layers of the belt.**

Kristbjarnarson and Linville each teach an electrode belt connector connected to a flexible textile belt with an electrode wire interwoven in the belt or laminated between two layers of the belt. Kristbjarnarson teaches that "sensor ribbon 10 includes a conductor strip 13 secured thereto. The conductor strip 13 may be woven into the flexible ribbon." Ex. 1012, col. 5 ll. 2-4; col. 5 ll. 28-45, fig. 2. Linville teaches "[a]t least one electrical conductor is woven directly into the fabric." Ex. 1013, Abstract. Thus, the same combinations (McIntire/Kristbjarnarson) or (McIntire/Linville) that render Claim 1 invalid (combined for at least the same reasons) render Claim 9 invalid. Ex. 1002 at 226-28.

### 5. Claim 13

**The electrode belt and the belt connector of claim 1, wherein the conductor of the electrode belt is an electrode wire.**

McIntire teaches an electrode connector having a conductor that is an electrode wire. *See, e.g.*, Ex. 1018, col. 11 ll. 40-42, fig. 13. PHOSITAs would be motivated to combine McIntire with an electrode belt like the ones taught by Kristbjarnarson and Linville (a wire in the belt that is a conductor) for at least the reason that

41

PHOSITAs understood that electrode belts include a conductor that is an electrode wire. Ex. 1012, Abstract (teaching an electrode belt (ribbon) with a "conductor strip secured thereto."); Ex. 1013 ¶0034 (teaching a "high strand count copper wire conductor woven into an elastic fabric belt."); Ex. 1002 at 232-34. Thus, the same combinations (McIntire/Kristbjarnarson) or (McIntire/Linville) that render Claim 1 invalid (combined for at least the same reasons) render Claim 13 invalid.

### 6.   Claims 6-8

To the extent Claims 6-8 can be construed, they are obvious based on McIntire in view of the teachings of Kristbjarnarson related to a "piercing assembly." Ex. 1012, fig. 3, col. 6 ll. 31-43; Ex. 1002 at 177-78, 199-202, 218-19. Pertinent to Claim 6, this piercing assembly includes a slot with a row of teeth transverse to the belt direction to "pierce and engage"—i.e., engage—a belt end. *Id.* Regarding Claim 7, Kristbjarnarson's piercing assembly is "a ridge member or row of pins transverse to the belt direction" to which the belt end can be fastened by gluing or heat melting. During examination of the '532 Patent, the Examiner took Official Notice that "use of gluing techniques is well known for fastening pieces together." Ex. 1022 at 9. Finally, with respect to Claim 8 Kristbjarnarson's piercing assembly has a slot through which a loop of desired belt length is inserted to adjust and fix the belt length. Ex. 1012, figs. 3, col. 6 ll. 24-41 (describing how the belt ends are connected to piercing assemblies to create a RIP belt of desired length).

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

### E.    Ground 5: Claims 1-3 Are Obvious Based on Gobron in View of Williams, Lawrence, or Sommer.

Gobron teaches a connector for use with an electrocardiogram (ECG) unit—one of many types of electrode belts known to PHOSITAs (Ex. 1002 at 54)—to establish electrical connection between electrodes and/or sensors and a biomedical device. Ex. 1014 ¶0017. Gobron teaches male conductive pins 2 that are "forced through" and retained by keyhole slots 20 formed in a plastic plug body 7. *Id.* ¶¶0018-20. The keyhole slots 20 include features (ramps 16 and conductive cone 17) designed to facilitate "electrical connection between traces 11 [electrically connected to a flexible circuit 1] and pins 2." *Id.* ¶0020. Thus, Gobron teaches an electrode connector with keyhole-shaped slots in a plastic body to facilitate mechanical and electrical connection between the male pins of a medical electronic device and electrical traces connected to a flexible circuit.



*Id.* fig. 1 (annotated); ¶¶0019-20.

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

Pending Claim 1 of the '532 Patent was rejected as anticipated by Gobron during prosecution. Ex. 1022 at 4-5. To gain allowance, Nox amended Claim 1 and argued that Gobron specifically did not teach a "*conductor passing through the receiving hole while being wrapped around* [an] *engaging member* [adjacent the receiving hole]." *See* Ex. 1023 at 5 & 11-12 (emphasis in original). In allowing the amended claims, the Examiner apparently did not consider prior art teaching that electromechanical connections of a conductor wrapped around an engaging member adjacent a receiving hole was already well-known and understood by PHOSITAs. Williams, Lawrence and Sommer are examples of such references. Ex. 1002 at 43-47.

Williams teaches a simple device to make physical and electrical connection between a ground wire (conductor) and a ground pipe (a male conductor inserted into the ground cap device). Ex. 1003, p. 1 ll. 11-20. Cap 2 includes bore (hole) sized to "fit snugly upon" the end of a conductive pipe. *Id.* ll. 67-70. The cap further includes features (grooves, slots, etc.) that receive a wire 3 (conductor) as it passes through the bore of the cap, while also wrapping around the wall of the cap (engaging member adjacent to the receiving hole), so that the wire is forced into contact with a lateral surface of the male portion of the pipe inserted into the cap. *Id.* ll. 70-94, fig. 2.

44

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532



Williams, fig 2.

Lawrence teaches "new and useful improvements in electrical conductors" to easily secure and detach a wire (conductor) to a mating ground rod. Ex. 1004, p. 1 ll. 8-26. Lawrence teaches a collar ("thimble") 4 with a bore (hole) having a groove 5 along the wall of the bore. *Id.* ll. 56-65, fig. 2. Lawrence further teaches that the wire is at least partially held in position because the "end of the wire . . . [has] its end turned up around the lower end of the thimble 4"—i.e., the wire is wrapped around an engaging member adjacent to a hole that the wire passes through. *See id.* at 78-89, fig. 1.



Lawrence, fig. 1.

45

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

Finally, Sommer teaches a wire connector for making electrical connection with an electrical component inserted into a hole. Ex. 1007, Figs. 2-3. Sommer teaches a conductor (wire loop 6) passing through a hole in a carrier plate 1 and wrapping around the edge of the carrier plate and a bushing 5 (both engaging members adjacent the receiving hole). *Id.* As shown in Figures 2 and 3, the conductor (wire loop 6) engages a conductor (terminal wire 7) to make electrical contact with terminal wire 7 when it is inserted into the receiving hole of bushing 5.



Sommer, figs. 2-3.

### 1.    Motivation to Combine

PHOSITAs would combine Gobron with the teachings of Williams, Lawrence or Sommer for at least the reason that PHOSITAs consider and adopt well-known methods of making electrical connections in the development of biomedical devices. Ex. 1002 at 43-44. The basic design requirements of an electrode belt and connector are to encircle a patient's body and to connect and conduct electrical current. *Id.* This has long been known and understood by PHOSITAs. *Id.* PHOSITAs well informed of the market and design demands for low-cost, mass-producible electrode

46

belts would consider and be motivated to incorporate basic and mature technology relating to electromechanical connections with predictable results. *Id.*; *KSR*, 127 S. Ct. at 1739.

### 2.    Claim 1

**An electrode belt and a belt connector for electrically connecting a conductor of the electrode belt to a male portion of a snap connector electrode connected to a biometric device, the belt connector comprising:**

Gobron teaches "electrical connectors used to connect a single or multi-trace circuit to a separate electronic device," including a biometric device such as an ECG apparatus. Ex. 1014 ¶¶0003-4, 0019. Gobron teaches "a keyhole-shaped electrical connector that is used to connect . . . a separate electronics device comprised of one or more fixed pins [e.g., male snap protrusion] which serve to mechanically secure the connection between the trace(s) and electrical contacts on the body." Ex. 1014 ¶¶0017, 0019, figs. 1-5.

**a molded plastic frame including a receiving hole having radial flexibility, the receiving hole being configured to function as a female snap button fastener for receiving and fastening the frame to a protrusion of the male portion of the snap connector electrode,**

Gobron teaches an electrode connector with a plug portion 7 that "is comprised of a nonconducting plastic." *Id.* ¶0019. As shown in Figure 1, "female plug portion 7" includes "keyhole shaped slots 20" which receive and fasten to "pins 2 located on the body of [a] separate electronics device." *Id.* ¶0019, fig. 1. PHOSITAs knew

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

and understood that parts made of plastic like the "female plug portion 7" exhibit properties of elastic deformation—i.e., deform under load and return to their original form when the load is removed. Ex. 1002 at 106. Thus, PHOSITAs knew and understood that the "keyhole shaped slots 20" of the "female plug portion 7, which receive and fasten to pins 2, have radial flexibility. *Id*.

### a fastener configured to fasten the frame to a first end of said electrode belt, and

Gobron teaches "double-sided foam adhesive 25 may be applied between the bottom surface 9 of plug 7 and flexible circuit 1 in order to retain the circuit on the bottom surface of the plug." Ex. 1014 ¶0019. The flexible circuit taught by Gobron is understood by a PHOSITA to be a type of electrode belt. *Id*. ¶¶0017, 0019; Ex. 1002 at 106-07. Thus, Gobron teaches a fastener that fastens a belt to a connector frame.

### an engaging member adjacent to said receiving hole, the engaging member engaging the conductor of the electrode belt by the conductor passing through the receiving hole while being wrapped around the engaging member, such that when the male portion of the snap connector electrode penetrates the receiving hole, the conductor is forced into physical contact with at least a lateral surface of the male portion of the snap connector electrode,

Gobron teaches a conductor 17 that is present on both sides of the female plug portion 7 and extends through the narrow portion 14 of keyhole slot 20. Ex. 1014 fig. 3A (showing cone structure 17 on the top surface 8 of plug portion 7); fig. 3B (showing cone structure 17 on the bottom surface 9 of plug portion 7). As noted

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

above, Gobron teaches that the male conductive pins 2 are "forced through narrower portion 14 such that the pins are restrictively secured in place." *Id.* ¶0020.

Thus, Gobron teaches an engaging member (unlabeled portion of plug portion 7 that defines the narrow portion 14 of keyhole slot 20) that not only defines the receiving hole but is adjacent to the hole. Further, Gobron teaches that when pin 2 is inserted into portion 14 of the keyhole slot 20, the pin 2 "glides easily into electrical contact with cone structure 17"—i.e., at least a lateral surface of the male conductor (pin 2) is forced into contact with conductor (cone structure 17).

Williams, Lawrence, and Sommer teach the well-known and understood concept of wrapping a conductor around an engaging member adjacent a receiving hole, wherein the conductor passes through the hole and makes electrical contact with at least a lateral surface of a conductor inserted into the receiving hole. These references demonstrate that it was well-known to PHOSITAs to wrap a conductor around an engaging member adjacent a receiving hole wherein the conductor passes through the hole to make electrical contact with at least a lateral surface of a conductor inserted into the receiving hole. Ex. 1003, p. 1 ll. 27-32, fig. 2 ("[C]ap is also provided with a space . . . capable of accommodating a wire when the cap is placed upon the top of the pipe, and fitting so closely that a tight joint or connection is made between the wire and pipe."); Ex. 1004, p. 1 ll. 70-83, fig. 1 ("[T]he wire . . . passe[s] through the groove 5 between the rod and thimble, and the lower end of

49

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

the wire is bent up . . . around the lower edge of the thimble 4."); Ex. 1007, col. 2 ll. 43-57, fig. 3.

An express purpose of the electrical connector taught by Gobron is to make electrical connection between the male conductive pins 2 and the electrical traces 11 of the female plug portion 7 (each trace 11 corresponding to a trace of the flexible circuit/belt). Ex. 1014 ¶¶0019-20. Accordingly, it would be obvious to a PHOSITA to combine the teachings of Williams, Lawrence, or Sommer with the keyhole-shaped electrical connector taught by Gobron. Ex. 1002 at 104-109.

> **wherein radial flexibility of said receiving hole is achieved by one or more slot extending from said hole, and wherein said receiving hole and one or more slot are formed by at least one elongated member having flexibility transverse to its longitudinal axis, thus imparting flexibility to the width of the hole.**

PHOSITAs knew and understood that plastic parts like Gobron's "female plug portion 7" exhibit properties of elastic deformation—i.e., deform under load and return to original form when the load is removed. Ex. 1002 at 106. Thus, PHOSITAs knew and understood that the "keyhole shaped slots 20" of the "female plug portion 7" have flexibility, including in a direction transverse to a longitudinal axis. *Id.* Further, PHOSITAs knew and understood that the structure defining a hole will be more flexible when bounded by less material—i.e., structure bounding a hole having one or more slots extending from the hole, as taught by Gobron, is innately more flexible because less material bounds the hole. *Id.* at 109.

50

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

### 3. Claim 2

**The electrode belt and the belt connector of claim 1, wherein said belt connector further comprises a shield member which is arranged on a rear side of said frame to electrically shield the conductor of the electrode belt from the rear side exterior of the belt connector.**

Gobron teaches a connector with cover 12 that completely encloses the conductor of the electrode belt, such that the conductor is electrically shielded from a rear side exterior of the belt connector. *See* Ex. 1014 ¶¶0019, 0022, figs. 1, 6A, 6B (showing an alternate embodiment with a hinged cover that electrically shields the conductor from a rear side exterior of the belt connector).

### 4. Claim 3

**The electrode belt and the belt connector of claim 2, wherein said shield member is a sheet member extending from the frame, which sheet member is configured to be folded over onto the rear side of the frame to cover the back side of said receiving hole and engaged conductor.**

Gobron teaches an electrode connector with a cover attached to the frame by a hinge so it can fold over the rear side to cover the receiving hole and engaged conductor. Ex. 1014, ¶0022, figs. 6A, 6B.

### F. Ground 6: Claims 4 and 5 Are Obvious Based on the Claim 1 Grounds in View of Archer or Caldecott.

Claims 4 and 5 depend from Claim 1, which is invalid based on the prior art as demonstrated in Sections VI.A.1 (Hermannsson), VI.B.2 (McIntire in view of Hermannsson), VI.C.2 (Harhen in view of Hermannsson), VI.D.2 (McIntire in view

51

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

of Kristbjarnarson or Linville), and VI.E.2 (Gobron in view of Williams, Lawrence, or Sommer) (collectively, "the Claim 1 Grounds"). Claims 4 and 5 add limitations related to a cover over the frame of the electrode connector of Claim 1. Archer and Caldecott teach well-known and understood technology related to protective coatings and insulating films; when added to any of the Claim 1 Grounds that invalidate independent Claim 1, these references render Claims 4 and 5 unpatentable under 35 U.S.C. § 103. *See KSR*, 127 S. Ct. at 1739.

Archer teaches a "connector for establishing electrical connection between a conductor and a patient engaging electrode" including a "[p]rotective covering 32 [having a] central opening 38 through which post [male fastener] 12 may be inserted." Ex. 1008, Abstract; col. 2 ll. 45-48, fig. 3). Archer specifically teaches that the "protective coating functions to protect a person handling connector 18 from electric shock"—i.e., contact with the electrical conductor of the device. (*Id.* col. 2 ll. 51-53).

Similarly, Caldecott teaches that "polymer films are widely used . . . as barrier layers and interconnect layers when mounting integrated circuits and other devices onto or into packages." Ex. 1015, p. 1 ll. 11-13. Caldecott further teaches that such "polymer films conventionally . . . require apertures at predetermined positions on the film to allow electrical connections to be made through the otherwise electrically insulating film." *Id.* at ll. 13-16. Caldecott also teaches that such insulating films

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

often include "perforations" or "apertures" for use in a variety of applications, including in the medical field. *Id.* at ll. 18-24.

### 1. Motivation to Combine

The '532 Patent admits that "existing standards for medical devices," require electrode belts and connectors to "be configured such that a person wearing the belt . . . is insulated from current running through the belt." '532 Patent, col. 1 ll. 41-44. The Claim 1 Grounds teach the importance of protecting a patient from contacting an electrode belt conductor and the use of adhesive stickers to secure electrical leads to a connector body. Ex. 1017, col. 2 ll. 52-55; Ex. 1018 col. 7 ll. 46-50; *id.* col. 12 ll. 43-44. PHOSITAs knew and understood that medical device standards require that patients should be shielded from electrically conductive parts of the belt and connector. *See, e.g.*, Ex. 1002 at 130-31. Thus, PHOSITAs would be motivated to include the protective coating or insulating film taught by Archer or Caldecott with the electrode belt and connectors taught by each of the Claim 1 Grounds. *Id.* at 132-36, 140-145, 150-51; *see also KSR*, 127 S. Ct. at 1739.

### 2. Claim 4

**The electrode belt and the belt connector of claim 1, wherein said belt connector comprises a cover enclosing the frame, which cover either includes a hole overlapping the receiving hole of the frame, or can be readily perforated by pressing the connector onto a male fastener which fits the receiving hole of the frame.**

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

The Claim 1 Grounds teach the belt and belt connector of Claim 1. Archer and Caldecott each teach the additional limitations of Claim 4. Archer teaches a "connector for establishing electrical connection between a conductor and a patient engaging electrode" that includes a "[p]rotective covering 3[3] [having a] central opening 38 through which post [male fastener] 12 may be inserted." Ex. 1008, Abstract; col. 2 ll. 45-48, fig. 3. The "protective coating functions to protect a person handling connector 18 from electric shock"—i.e., contact with the electrical conductor of the device. *Id.* col. 2 ll. 51-53. Caldecott teaches that insulating polymer films are used in a variety of industries including the medical field, and that such "polymer films conventionally . . . *require apertures at predetermined positions* on the film to allow electrical connections to be made through the *otherwise electrically insulating* film." Ex. 1015, p. 1 ll. 11-20 (emphasis added).

PHOSITAs familiar with the "existing standards for medical devices" would be motivated to combine the "protective coating" taught by Archer or the "electrically insulating film" having "apertures at predetermined positions on . . . to allow electrical connections" taught by Caldecott with the Claim 1 Grounds to obtain a device meeting all the limitations of Claim 4. Ex. 1002 at 132-36, 140-145, 150-51. Being no more that the combination of familiar elements taught by the Claim 1 Grounds and either Archer or Caldecott, Claim 4 is rendered invalid as obvious by each of the Claim 1 Grounds in view of either Archer or Caldecott. *Id.*

54

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

### 3.  Claim 5

### <u>The electrode belt and the belt connector of claim 4, wherein said cover is selected from the group consisting of a folded paper, plastic or fabric sticker, a plastic envelope and a textile envelope.</u>

Claim 4 is invalid under each of the grounds discussed in Section VI.F.2. Archer and Caldecott teach the additional limitations of dependent Claim 5, rendering this claim invalid as obvious based on the same grounds. Archer teaches that the opening of an electrode connector can be covered with "any suitable elastomeric insulating material such as a soft vinyl rubber." Ex. 1008, col. 2 ll. 46-50. Thus, Archer teaches and suggests to a PHOSITA the use of a cover of plastic sticker or envelope. Caldecott teaches the well-known use of insulating films that are adhesive backed and are labels—i.e., are plastic "stickers." Ex. 1015, p. 1 ll. 11-16; p. 11 l. 29-p. 12 l. 2. Indeed, the Examiner rejected Claim 5 (Pending Claim 7) on the basis that "many plastic materials," like those of Archer and Caldecott "are known to make such covers," and selection of such a cover is an obvious design choice.  Ex. 1022 at 7. Thus, for at least the reasons discussed above, including the existing requirement that patients be insulated from electrical current in medical devices admitted in the '532 Patent, it would be obvious to a PHOSITA to combine Archer or Caldecott with any of the Claim 1 Grounds. Ex. 1002 at 153-55, 157-160, 161-63.

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

### G.  Ground 7: Claims 6-8 Are Obvious Based on the Claim 1 Grounds in Further View of Uehara, Abizaid, or Orewiler.

Claims 6-8 depend from Claim 1, which is invalid based on the Claim 1 Grounds as demonstrated in Sections VI.A.1, VI.B.2, VI.C.2, VI.D.2, and VI.E.2. Claims 6 and 7—which Petitioners submit are invalid as indefinite—appear to add limitations related to a slot and row of teeth or a ridge member and row of pins to fasten the belt of Claim 1. Claim 8 includes a limitation directed to a slot with a row of teeth, pins, or hooks to adjust the length of the belt of claim 1. Uehara, Abizaid, and Orewiler all teach these well-known methods of belt fastening and adjusting; when added to any of the Claim 1 Grounds that invalidate independent Claim 1, each reference renders Claims 6-8—to the extent they can be construed—unpatentable under 35 U.S.C. § 103.

Uehara teaches a "belt mounting structure in a buckle which can securely fix a belt in use and allows easy adjustment of an effective belt length and removal of the belt." Ex. 1011, Abstract. Specifically, Uehara teaches that a buckle including a "belt mounting hole 12a is formed substantially in a rectangular shape, and an uneven surface 12b' for eating into the belt 2 is formed on an inner surface of an upper end edge of a connection rod 12b disposed in the side opposite to the extending side of the insertion leg portion 14." *Id.* col. 5 ll. 59-64, figs. 1-5.

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532



Uehara, fig. 1.

Abizaid teaches a buckle for adjusting the length of webbing suspenders—i.e., woven belt material. Ex. 1005, p. 1 ll. 9-16. Abizaid's buckle has cross bars 6 and 7 and "an open space 8, and the upper bar 6 [with] teeth 9 formed on its lower edge of such length that their ends project over the upper edge of the lower bar . . . ." *Id.* ll. 54-62, fig. 1. In use, the suspender webbing (belt) is engaged by "teeth 9 and be [*sic*] thereby pressed into the notches 10 so that it will be firmly gripped between the bars 6 and 7." *Id.* ll. 82-93.



Abizaid, fig. 1.

Orewiler teaches a buckle for adjusting the length of a webbing belt or strap, wherein the buckle has a slot having a "serrated clamping portion 19" along one edge. Ex. 1006, p. 1 ll. 94-96. In use, the "teeth of the prong portion . . . bite into the

57

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

fabric [of the belt passing through the slot] and resist any tendency of the same to slide through the buckle." *Id.* at p. 2 ll. 20-28.



Orewiler, fig. 4.

### 1.    Motivation to Combine

The prior art identifies the market-driven desire for low-cost, mass-producible electrode belts that can adjust to a wide range of patient sizes. Ex. 1002 at 52-55. One of the basic design requirements of a RIP electrode belt is that it adjusts to encircle and fit a part of a patient's body—i.e., function like a belt. *Id.* Further, the prior art teaches that "any of various means can be used to make the length of the belt adjustable." Ex. 1017, col. 2 ll. 9-13. A PHOSITA, well-informed of the market and design demands, would consider and be motivated to incorporate basic and mature technology relating to belt attachment and adjustment (buckles) like that taught by Uehara, Abizaid, and Orewiler into a single device having all of the limitations of claims 6-8. *See KSR*, 127 S. Ct. at 1739.

### 2.    Claims 6-8

To the extent Claims 6-8 can be construed, they are obvious in view of well-known buckles, like those taught by Uehara, Abizaid and Orewiler, that include a

58

slot with a row of teeth, pins or hook members transverse to a belt direction for adjusting and fastening (or fixing) a belt length. Ex. 1002 at 166-70, 177-184, 186-191, 199-208, 211-223.

With respect to Claim 6, Uehara teaches a buckle with a "belt mounting hole 12a [of] rectangular shape, and an uneven surface 12b' for eating into the belt 2." Ex. 1011, col. 5 ll. 59-61, figs. 1-5. Thus, Uehara teaches a slot (belt mounting hole 12a) with a row of teeth, pins or hooks (the projecting portions of uneven surface 12b') transverse to the belt direction to engage a belt end. Indeed, this claim, as originally Pending Claim 8, was rejected based on Gobron in view of Uehara. Ex. 1022 at 8. It was ultimately allowed based on Nox's amendments to Claim 1, which, as discussed above, is unpatentable over the prior art. *Id.*; Section VI.E. Abizaid and Orewiler also teach this limitation. Abizaid's slot between crossbars 6 and 7 has a row of teeth 5 transverse to the belt direction to engage the belt end. Ex. 1005, p. 2 ll. 50-55 (describing crossbars 6 and 7 as "web-gripping jaws around which the webbing [i.e. belt] is secured"). Orewiler's slot is formed between crossbars 12 and 13, and has a row of teeth 19 transverse to the belt direction to engage the belt end. Ex. 1006, fig. 4.

The limitations of Claim 7 are also taught by Uehara, Abizaid and Orewiler. *See* Ex. 1002 at 186-191, 199-208. The "uneven surface 12b'" of the buckle taught by Uehara is a ridge member or row of pins "to which a belt end can be fastened onto

with heat melting or gluing." Ex. 1011, Abstract; *see also id*. col. 5 ll. 60-61. This claim (as Pending Claim 9) was rejected based on Gobron in view of Uehara during prosecution, with Uehara being cited for teaching a "ridge member or row of pins which lies transverse to the belt direction and to which a belt end can be fastened onto with heat melting or gluing." Ex. 1022 at 8-9. For at least the same reason cited by the Examiner ("better engagement . . . of the belt") it would have been obvious to a PHOSITA to fasten the belt end to all of the prior art buckles with melting or gluing and to include the teachings of Uehara with the Claim 1 Grounds. Similarly, the buckles of Abizaid and Orewiler include rows of teeth transverse to a belt direction to which "a belt end can be fastened onto with heat melting or gluing." Ex. 1005 (Abizaid), fig. 1 (row of teeth 5); Ex. 1006 (Orewiler), fig. 4 (row of teeth 19).

With respect to Claim 8, the Claim 1 Grounds prior art teach electrode belts and connectors having the limitations of Claim 1 and the desire (and designs) to adjust the length of an attached electrode belt. Ex. 1017, col. 2 ll. 9-13, fig. 3a; Ex. 1012, col. 2 ll. 62-64, col. 8 ll. 24-26. Uehara, Abizaid and Orewiler teach prior art buckles having an adjustment slot with teeth through which a loop of belt can be inserted so as to adjust its length. In Uehara, "easy adjustment" of belt length is achieved by inserting a loop of desired length into the belt mounting hole (slot) and "eating into" the belt with teeth 12b'. Ex. 1011, Abstract, col. 5 ll. 59-64, figs. 1-5. In Abizaid, "[t]he lower edge of cross bar 2 is formed with teeth 5 which are adapted to take into

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

the webbing and thereby hold the buckle at the point to which it may be adjusted." Ex. 1005, p. 1 ll. 33-42; p. 1 ll. 54-62; p. 1 ll. 82-93, fig. 1. Finally, in Orewiler, "the teeth of the prong surface 19 are extending in oblique downward position [so that in use] the teeth of the prong portion bite into the fabric and resist the tendency of the same to slide through the buckle." Ex. 1006, p. 2 ll. 21-28; p. 1 ll. 94-96, fig. 4.

For at least the reasons discussed above, a PHOSITA would be motivated to combine well-known and understood mechanisms for adjusting and fastening a belt (as taught by Uehara, Abizaid, and Orewiler) with the Claim 1 Grounds, rendering Claims 6-8 invalid as obvious. *See* Ex. 1002 at 166-70, 177-184, 186-191, 199-208, 211-223.

### H.   Ground 8: Claims 9 and 13 Are Obvious Based on Claim 1 Grounds in Further View of Kristbjarnarson or Linville.

Claims 9 and 13 depend from Claim 1, which is invalid based on the prior art. *See* Sections VI.A.1, VI.B.2, V.C.2, V.D.2 & V.E.2. Claims 9 and 13 add limitations related to the electrode belt being a flexible textile belt with an electrode wire interwoven in or laminated between layers in the belt and wherein the conductor of the electrode belt is an electrode wire. Kristbjarnarson and Linville (*see* Section VI.D) both teach these features in an electrode belt; when either reference is added to the Claim 1 Grounds, the resulting combination renders claims 9 and 13 unpatentable under 35 U.S.C. § 103. *See KSR*, 127 S. Ct. at 1739.

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

### 1.    Motivation to Combine

A PHOSITA would combine the Claim 1 Grounds with Kristbjarnarson or Linville for at least the reason that  Claim 1 Grounds are based on prior art electrode belt connectors and methods of connecting belts to such connectors; including admittedly known RIP belts, known and understood to PHOSITAs to have the limitations of Claims 9 and 13. Ex. 1002 at 223-24, 226-230, 232-235;'532 Patent, col. 1 ll. 12-16.

### 2.    Claim 9

**The electrode belt and the belt connector of claim 1, wherein said belt is a flexible textile belt with an electrode wire interwoven in the belt or laminated between two layers of the belt.**

Kristbjarnarson and Linville each teach an electrode belt and belt connector with a flexible textile belt and an electrode wire interwoven in the belt or laminated between two layers of the belt. Section VI.D.4. Indeed, the Examiner recognized this; Claim 9 (originally Pending Claim 14) was rejected based on Gobron in view of Kristbjarnarson before it was ultimately allowed based on Nox's amendments to Claim 1. Ex. 1022 at 10.

### 3.    Claim 13

**The electrode belt and the belt connector of claim 1, wherein the conductor of the electrode belt is an electrode wire.**

Kristbjarnarson and Linville both teach electrode belts with a wire in the belt that is a conductor. Section VI.D.5.

Petition for *Inter Partes* Review of U.S. Patent No. 9,059,532

## VII.  CONCLUSION

The grounds above, supported by the opinions of Dr. Williams, demonstrate that

Claims 1-9 and 13 of the '532 Patent are unpatentable as anticipated or obvious.

Petitioners have therefore established a reasonable likelihood of prevailing on each

ground set forth in this Petition, and respectfully request that the Board institute a

trial based on the stated grounds. The undersigned authorizes the Office to charge

Deposit Account No. 506271 for the fee set forth in 37 C.F.R. § 42.15(a), and any

other applicable fees in connection with this Petition.

Respectfully submitted,

By:    /Thomas S. Reynolds II/
Thomas S. Reynolds II
(Registration No. 45,262)

63

## CERTIFICATE OF COMPLIANCE

In accordance with 37 C.F.R. § 42.24, the undersigned certifies that this Petition complies with the applicable type-volume limitation of 37 C.F.R. § 42.24 (a) (i). Exclusive of the portions exempted by 37 C.F.R. § 42.24 (a), this Petition contains 13,948 words as counted by the word processing program used for its preparation (Microsoft Word 2013).

Dated: September 15, 2016

By:   /Thomas S. Reynolds II/
Thomas S. Reynolds II
(Registration No. 45,262)

## CERTIFICATE OF SERVICE

The undersigned herby certifies that a copy of this Petition, along with all exhibits and other documents filed together with this Petition, has been served in its entirety on the Patent Owner as required by 37 C.F.R. §§ 42.6 and 42.105. A copy of this Petition along with all exhibits and other documents filed together with this Petition was served via Priority Mail Express®, or by means at least as fast and reliable as Priority Mail Express®, on the following counsel record for the patent owner of U.S. Patent No. 9,059,532 Patent at the below listed address:

Attn: Chad Nydegger
Workman Nydegger
60 East South Temple
Suite 1000
Salt Lake City, UT 84111

By:     /Thomas S. Reynolds II/
Thomas S. Reynolds II

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **NOX MEDICAL EHF**, | |
| Plaintiff, | |
| v. | Civil Action No. 1:15-cv-00709-RGA |
| **NATUS NEUROLOGY INC.**, | |
| Defendants. | |

## NATUS' RESPONSES IN OPPOSITION TO NOX'S MOTIONS *IN LIMINE*

Of Counsel:

Thomas S. Reynolds II (admitted *pro hac vice*)
Alan W. Nicgorski (admitted *pro hac vice*)
Joseph J. Jacobi (admitted *pro hac vice*)
John W. McCauley (admitted *pro hac vice*)
Jeremy Adelson (admitted *pro hac vice*)
Hansen Reynolds LLC
316 North Milwaukee St., Suite 200
Milwaukee, WI 53202
(414) 455-7676
treynolds@hansenreynolds.com
anicgorski@hansenreynolds.com
jjacobi@hansenreynolds.com
jmccauley@hansenreynolds.com
jadelson@hansenreynolds.com

Arthur G. Connolly, III (#2667)
Ryan P. Newell (#4744)
Mary I. Akhimien (#5448)
Connolly Gallagher LLP
The Brandywine Building
1000 West Street, Suite 1400
Wilmington, DE 19801
(302) 757-7300
aconnolly@connollygallagher.com
rnewell@connollygallagher.com
makhimien@connollygallagher.com

*Attorneys for Natus Neurology Inc.*

**Natus' Response in Opposition to Nox Motion *in Limine* No. 1**:

**Exclusion of Certain Evidence Regarding Natus' Invalidity Defense**

For its first motion *in limine*, Nox seeks an order precluding Natus from relying on certain prior art in support of its claim that the '532 patent is invalid. Nox launches a two-prong attack in support of its motion. First, Nox argues that some of Natus' prior art combinations were not previously disclosed and should be excluded for that reason.[1] Second, Nox contends that Natus' obviousness combinations are precluded by the IPR. Neither of Nox's arguments is supported by fact or law, and the Court should deny Nox's motion.

## A.  Nox Erroneously Argues That the Order of Disclosed References Is Relevant.

In support of both prongs of its attack, Nox argues that the order in which references are listed in an obviousness combination matters. It first contends that certain prior art combinations were not disclosed because the individual references were listed in Natus' invalidity contentions and expert reports in a different order. That is, Nox argues that, for example, the combination of Hermannsson and McIntire was not disclosed because it is different than the combination of McIntire and Hermannsson, which was disclosed. Not surprisingly, Nox cites no legal authority for this position. It is bedrock patent law that obviousness is determined based on "the teachings of the prior art as a whole." *In re Etter*, 756 F.2d 852, 859 (Fed. Cir. 1985) (holding it is legal error to argue non-obviousness based on whether prior art could be physically combined.); *see also Allied Erecting and Dismantling Co. v. Genesis Attachments, LLC*, 825 F.3d 1373, 1381 (Fed. Cir. 2016).).

When Nox, through its expert, Mr. Oslan, argued that the order of prior art references was somehow relevant to the obviousness analysis or ignored the complete teachings of the presented prior art, Dr. Williams addressed these errors in his reply report. (*See e.g.,* D.I. 139-10 ¶¶ 121, 147-49, 204-5). Mr. Oslan did not respond to these issues in his supplemental report (D.I. 160 at 77-90 (Ex. 28)), and neither did Nox question Dr. Williams about them during his two depositions.

---

[1] Nox does not contend that Natus is relying on any prior art references—only allegedly undisclosed *combinations* of those references. Thus, even if it could identify undisclosed combinations of those references, Nox cannot reasonably claim to be prejudiced for this reason alone.

### B.  Natus' Invalidity Arguments Were Timely Disclosed.

Nox further argues that Natus intends to present certain "obviousness theories" that were not previously disclosed. Consequently, argues Nox, it did not have an opportunity to conduct discovery on those theories. For example, Nox takes issue with the fact that Natus, following the Court's determination that the Nox RES Belt does not include a receiving hole that fastens, intends to present obviousness arguments using the Nox RES Belt and the knowledge of a PHOSITA to show that receiving holes that provide the "fastening" function were well known in the art. But Nox does not, and cannot, deny that Natus timely disclosed all of the individual prior art references on which Natus intends to rely, as well as the scope of what each reference discloses and teaches to a PHOSITA. [2] Nor can Nox deny that Dr. Williams expressly explained that "in the event a reference was found not to anticipate or render a claim obvious, it would have been obvious to combine the teachings of that reference with one or more of the other presented prior art references that disclose such limitation for at least the reasons presented." (D.I. 138-3 at 2 (ECF pagination)). Having deposed Dr. Williams twice (once each in this litigation and IPR), Nox had ample opportunity to conduct discovery on his opinions, but Nox never questioned Dr. Williams on this matter. As such, Nox cannot object to obviousness arguments based on the Nox RES Belt that lie within the scope of Dr. Williams' opinions.

Separately, Nox takes issue with Natus' identification of Hermannsson and Harhen as invalidating Claims 4 & 5, Gobron and (Lawrence or Sommer) as invalidating Claims 4, 5 & 9, and Nox RES and McIntire as invalidating Claim 8. These invalidity bases were all presented as invalidating Claim 1 of the '532 patent, and Nox's expert did not identify any separate bases of validity of those claims based on the above combinations over Claim 1, the claim from which they all depend. Moreover, these invalidity bases were presented in combination with prior art references showing that

---

[2] Natus timely supplemented its invalidity contentions throughout discovery as new prior art was discovered or finally produced by Nox. In contrast, Nox never supplemented its response to Natus' Interrogatory No. 14, which requested Nox's validity positions responsive to Natus' contentions.

2

basic features such as stickers, slots with teeth for fixing a belt length, and flexible textile electrode belts were known to PHOSITAs. As explained to Nox, Natus intends to demonstrate the invalidity of the claims based on the identified prior art, the knowledge a PHOSITA, and the prior art admissions of the '532 Patent. As such, there is no meaningful difference between the arguments Natus intends to make at trial and those disclosed in its invalidity contentions and Dr. Williams' reports.

### C. Natus' Obviousness Arguments are Not Precluded by the IPR Decision.

Doubling down on its erroneous argument that the order in which prior art references are combined is material to an obviousness analysis, Nox contends that Natus must be precluded from relying on certain combinations because it listed the individual references in a different order in its petition for IPR. For the reasons stated above, this argument is without merit. In its IPR petition, supported by Dr. Williams' opinions, Natus presented prior art combinations for the totality of what was taught. (*See e.g.,* Nox MIL1 Ex. C, Petition at 21-25 (explaining that the limitations of Claim 1 are taught by the *combination* of Hermannsson and McIntire and identifying most limitations as taught by both references individually).) None of the cases cited by Nox in support of its argument stand for the theory for which Nox advocates, and Natus is aware of no authority that does.

Nox also argues that the principle of issue preclusion should bar Natus from presenting evidence on four other matters based on the PTAB's written decision. As to the first of these, Natus agrees that it will not present evidence that Figures 13 & 14 of McIntire expressly disclose a conductor exiting a receiving hole. However, as to the other three matters, nothing in the PTAB's decision precludes Natus in those regards. As threshold matters, the PTAB decision does not bar Natus from presenting evidence as to whether it would have been obvious to modify Figure 14 of McIntire such that a conductor exits, nor does it limit the meaning and scope of "wrapped around," a term not construed by this Court, and whether that limitation is taught by the McIntire. Thus, Natus must be permitted to present evidence to the jury on these matters.

Dated:  April 5, 2018

By: /s/ Thomas S. Reynolds II

Thomas S. Reynolds II
Jeremy Adelson
HANSEN REYNOLDS LLC
316 North Milwaukee, Suite 200
Milwaukee, WI 53202
(414) 273-8470
treynolds@hansenreynolds.com
jadelson@hansenreynolds.com

Joseph J. Jacobi
Alan W. Nicgorski
HANSEN REYNOLDS LLC
150 S. Wacker St., Suite 2400
Chicago, IL 60606
jjacobi@hansenreynolds.com
anicgorski@hansenreynolds.com

John W. McCauley
HANSEN REYNOLDS LLC
10 East Doty St. Suite 800
Madison, WI 53703
jmccauley@hansenreynolds.com

Arthur G. Connolly, III (#2667)
Ryan P. Newell (#4744)
Mary I. Akhimien (#5448)
CONNOLLY GALLAGHER LLP
The Brandywine Building
1000 West Street, Suite 1400
Wilmington, DE 19801
(302) 757-7300
aconnolly@connollygallagher.com
rnewell@connollygallagher.com
makhimien@connollygallagher.com

*Attorneys for Natus Neurology Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

NOX MEDICAL EHF,                    )
                                    )
            Plaintiff,              )
                                    )
                                    )   C.A. No. 15-709-RGA
        v.                          )
                                    )   **JURY TRIAL DEMANDED**
NATUS NEUROLOGY INC.,               )
                                    )
            Defendant.              )


## PLAINTIFF NOX MEDICAL EHF'S REPLY IN FURTHER SUPPORT OF ITS MOTION *IN LIMINE* NO. 1 TO EXCLUDE CERTAIN EVIDENCE REGARDING DEFENDANT'S DEFENSE OF INVALIDITY

Nox's motion presented four tables (summarized in Ex. A hereto) identifying new invalidity theories that should be excluded. As for the first table, Natus is silent about the 1st, 2nd, and 3rd rows, conceding it never disclosed those theories. As for the 4th, 5th, and 6th rows, Natus admits that those grounds were only "presented as invalidating Claim 1" but argues they should be allowed against other claims because "Nox's expert did not identify any separate bases of invalidity" for those claims. However, Nox's expert's report is irrelevant; Natus has the burden of proof, not Nox. Amazingly, Natus also adds yet another theory using "the Nox RES Belt and the knowledge of a PHOSITA" to show "receiving holes that provide the 'fastening' function were well known *in the [unidentified] art*." But this vague new theory also was not disclosed. The statement from Dr. Williams' report is equally vague and therefore insufficient.

With respect to Nox's third table, Natus has no response, conceding that the grounds identified there are barred by the IPR estoppel statute. Natus also asserts that issue preclusion does not apply to three issues actually litigated and decided in the IPR, but offers no reason why.

As for the second and fourth tables, Natus argues that it should be allowed to argue, *e.g.*, Hermannsson in view of McIntire, even though its expert report and IPR petition clearly argued McIntire in view of Hermannsson, because "the order in which references are listed" does not matter. But the issue is not the order *per se* but the theory of obviousness implied by that order. The reason(s) for modifying Hermannsson because of a teaching in (or to add a feature from) McIntire are different—and undisclosed—compared to the reason(s) for modifying McIntire because of a teaching in (or to add a feature from) Hermannsson, as Natus tacitly admits in its MIL No. 2. The fact that Natus disclosed all the *references* used in its new theories is insufficient. *See In re Leithem*, 661 F.3d 1316, 1319 (Fed. Cir. 2011) ("Mere reliance on…the same prior art references…is insufficient to avoid making a new ground of rejection….").

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Chad E. Nydegger
Brent P. Lorimer
WORKMAN NYDEGGER
60 East South Temple, Suite 1000
Salt Lake City, UT  84111
Tel:  (801) 533-9800


Dated:  April 9, 2018
1222892 / 42707

By:   */s/Bindu A. Palapura*
        David E. Moore (#3983)
        Bindu A. Palapura (#5370)
        Stephanie E. O'Byrne (#4446)
        Hercules Plaza, 6th Floor
        1313 N. Market Street
        Wilmington, DE  19801
        Tel:  (302) 984-6000
        dmoore@potteranderson.com
        bpalapura@potteranderson.com
        sobyrne@potteranderson.com

*Attorneys for Plaintiff Nox Medical Ehf*

2

# EXHIBIT A

| Claims | Natus' New Theories for These Claims | Theory Not Disclosed at All | Principal and Secondary References Reversed from the Disclosed Theory | Could Have Been Raised in the IPR, But Was Not |
|---|---|---|---|---|
| 1, 4-9 | Nox RES Belt alone | X | | |
| 1, 4-9 | Nox RES Belt in view of Harhen | X | | |
| 6-8 | Nox RES Belt in view of Harhen in further view of Abizaid or Orewiler | X | | |
| 4-5 | Hermannsson in view of Harhen | X | | X |
| 4-5, 9 | Gobron in view of Lawrence or Sommer | X | | X |
| 8 | Nox RES Belt in view of McIntire | X | | |
| 1, 4-9 | Hermannsson in view of McIntire | | X | X |
| 1, 4-9 | Hermannsson in view of Harhen | | X | X |
| 4-7, 9 | Nox RES Belt in view of McIntire | | X | |
| 6-8 | Nox RES Belt in view of McIntire in further view of Abizaid or Orewiler | | X | |
| 6-8 | Hermannsson in view of McIntire in further view of Abizaid or Orewiler | | X | X |
| 6-8 | Hermannsson in view of Harhen in further view of Abizaid or Orewiler. | | X | X |

# EXHIBIT H

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NOX MEDICAL EHF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 15-709-RGA |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| NATUS NEUROLOGY INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF NOX MEDICAL EHF'S MOTION *IN LIMINE* NO. 2**
**TO PRECLUDE NATUS FROM INTRODUCING EVIDENCE RELATED TO ITS**
**INEQUITABLE CONDUCT CLAIM**

Nox Medical EHF ("Nox") hereby moves the Court for an order *in limine* prohibiting Defendant Natus Neurology, Inc. ("Natus") from introducing evidence related to its claim for inequitable conduct to the jury.  Specifically, Nox moves the Court for an order prohibiting Natus from introducing any evidence related to the following topics:

> Evidence related to the allegation that Nox, Hermannsson, Höskuldsson, Fridriksson or others associated with the prosecution of the '532 patent should have but did not submit the Nox RES Belt, the Nox PRIP Belt, the CareFusion catalog, or the Nox International Design Registrations ("Alleged Undisclosed Art") to the PTO with the intent to deceive the PTO;

> Evidence related to the allegation that Höskuldsson should have been but was not originally named as an inventor of the '532 patent;

> Evidence related to the allegation that Nox, Hermannsson, Höskuldsson, Fridriksson or others associated with the prosecution of the '532 patent knew that Höskuldsson was an inventor on the '532 patent;

> Evidence related to the allegation that Nox, Hermannsson, Höskuldsson, Fridriksson or others associated with the prosecution of the '532 patent withheld the fact that Höskuldsson was an inventor on the '532 patent with intent to deceive the PTO;

> Evidence related to the allegation that Nox, Hermannsson, Höskuldsson, Fridriksson or anyone else associated with the prosecution of the '532 patent withheld material information from the PTO with the intent to deceive the PTO or otherwise breached the duty of candor to the PTO; and

> Evidence related to the alleged materiality of the Alleged Undisclosed Art to the prosecution of the application that issued as the '532 patent.

The defense of inequitable conduct is entirely equitable in nature, and thus not an issue for a jury to decide. *See Paragon Podiatry Lab. Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1190 (Fed. Cir. 1993).  As this Court has previously opined, "[i]equitable conduct is not a matter for the jury to decide, and the jury should not hear any of that evidence unless it is independently admissible for some other purpose."  *Interdigital Comms. v. Nokia Corp.*, C.A. No. 13-10-RGA, D.I. 339 (D. Del., August 28, 2014); *see also Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d

1209, 1211–13 (Fed. Cir. 1987) (inequitable conduct is a discretionary decision to be made by the judge on his or her own factual findings, not those of the jury); *General Electro Music Corp. v. Samick Music Corp.*, 19 F.3d 1405, 1408 (Fed. Cir. 1994) (disputed issues of fact underlying the issue of inequitable conduct are not jury questions, the issue being entirely equitable in nature).  Counsel for Natus conceded at the January 9, 2018 hearing on summary judgment that the issue of inequitable conduct will not be decided by the jury, and the Court stated that if inequitable conduct is still in the case, it will be tried after the jury retires to deliberate.  (D.I. 224 at 85:24–86:7, 88:3–10.)  Yet, based on their pretrial disclosures and edits to the pretrial order and jury instructions, Natus has indicated that it will seek to inject evidence relevant to inequitable conduct into the jury trial.

Because the charge of inequitable conduct is basically a charge that the patent owner / inventors have committed fraud on the PTO, evidence related to inequitable conduct, especially evidence related to intent, withholding of information and materiality[1] can only be offered to prejudice the jury against Nox.  Further, because the Court must ultimately decide the issue of inequitable conduct, there is no reason to have the jury decide issues related to inequitable conduct.  While the jury may decide issues related to validity, those issues do not require

---

[1] Whether a claim would have been obvious in light of an asserted combination of references can be decided without deciding whether a particular reference was material, or withheld with intent to deceive. Moreover, each of the obviousness defenses Natus now asserts in support of its invalidity challenge include references that were not known to Nox Medical or to the PTO during prosecution of the '532 patent, so evidence related to invalidity in view of those theories does not overlap with evidence of alleged materiality for inequitable conduct. The one possible exception is the Nox RES belt, which Natus now asserts for the first time as a stand-alone obviousness reference. But Nox is moving *in limine* to exclude that invalidity challenge because it was not disclosed during discovery.  Moreover, the Nox RES belt is simply the commercial embodiment of the Hermannsson '539 patent which was in fact considered by the Examiner, as evidenced by the Examiner's notations on the IDS containing the Hermannsson '539 patent.  Further, the PTAB found that the Hermannsson '539 patent does not anticipate in denying institution of the IPR based on that reference, and the Court has found that the Nox RES belt does not anticipate (D.I. 228).

2

findings of knowledge or withholding of references, nor do they require findings of intent to deceive.  The evidence cited above is not independently admissible for some other purpose, and as such should be excluded in the jury trial.

Practical considerations also favor granting this motion.  The Court has allotted a total of three (3) days to try this case, and it is going to be difficult to try the issues of damages, willfulness and validity in that time frame, independent of the issues of inequitable conduct. Inequitable conduct should be severed from the jury trial of this case and evidence related to inequitable conduct should not be presented to the jury. Additionally, Nox has a motion for summary judgment pending on the issue of inequitable conduct, and if the Court grants that motion, putting evidence related to inequitable conduct before the jury will be a waste of precious time and resources. If the Court does not grant the summary judgment motion, inequitable conduct can be tried separately in a bench trial.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Chad E. Nydegger
Brent P. Lorimer
WORKMAN NYDEGGER
60 East South Temple, Suite 1000
Salt Lake City, UT  84111
Tel:  (801) 533-9800


Dated:  March 29, 2018
1222892 / 42707

By:  _/s/Bindu A. Palapura_
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Plaintiff Nox Medical Ehf*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **NOX MEDICAL EHF**,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>**NATUS NEUROLOGY INC.**,<br><br>　　　　Defendants. | Civil Action No. 1:15-cv-00709-RGA |

## NATUS' RESPONSES IN OPPOSITION TO NOX'S MOTIONS *IN LIMINE*

Of Counsel:

Thomas S. Reynolds II (admitted *pro hac vice*)
Alan W. Nicgorski (admitted *pro hac vice*)
Joseph J. Jacobi (admitted *pro hac vice*)
John W. McCauley (admitted *pro hac vice*)
Jeremy Adelson (admitted *pro hac vice*)
Hansen Reynolds LLC
316 North Milwaukee St., Suite 200
Milwaukee, WI 53202
(414) 455-7676
treynolds@hansenreynolds.com
anicgorski@hansenreynolds.com
jjacobi@hansenreynolds.com
jmccauley@hansenreynolds.com
jadelson@hansenreynolds.com

Arthur G. Connolly, III (#2667)
Ryan P. Newell (#4744)
Mary I. Akhimien (#5448)
Connolly Gallagher LLP
The Brandywine Building
1000 West Street, Suite 1400
Wilmington, DE 19801
(302) 757-7300
aconnolly@connollygallagher.com
rnewell@connollygallagher.com
makhimien@connollygallagher.com

*Attorneys for Natus Neurology Inc.*

**<u>Natus' Response in Opposition to Nox's Motion <i>in Limine</i> No. 2</u>**:

**Exclusion of Evidence Related to Natus' Inequitable Conduct Claim**

For its second motion *in limine*, Nox seeks an order from the Court precluding Natus from presenting any evidence in support of its inequitable conduct claim before the jury. Specifically, Nox provides a list of six categories of evidence that it argues must be presented only to the Court and not to the jury.

As Natus acknowledged during the January 9, 2018, hearing, inequitable conduct is a matter for the Court, and not the jury, to decide. For this reason, Natus agreed with the Court's suggestion that this claim should be the subject of a second phase of the trial conducted before the Court after the jury begins deliberations on the other issues. (D.I. 224, at 88:6-89:6.) In light of that discussion, the Court's suggested approach, and the parties' agreement with that approach, it is not at all clear why Nox deems it necessary to bring this motion. However, in the interests of resolving the matter with minimal impact on the Court, Natus will state—again—its agreement with the Court's approach.

On the subject of the intent to deceive the PTO, Natus currently intends to present evidence in the form of testimony by Messrs. Hermannsson, Hoskuldsson, Fridriksson, Halldorsson, Fillmore, and Oslan.[1] To the extent that Nox has concerns about the effect on the jury of its witnesses' testimony on this subject, Natus agrees to the approach previously described by the Court under which these witnesses will be examined outside the presence of the jury on the subjects of their intent to deceive the PTO, provided, of course, that Nox will make its witnesses available for this second examination, and that the Court has no concerns about the efficiency of conducting multiple examinations of the same witnesses.

Nox also seeks to preclude evidence of the materiality of the information withheld from the PTO from being presented to the jury. During the January 9, 2018, hearing, the Court specifically acknowledged that some overlap of this evidence with Natus' evidence of obviousness of the asserted

---

[1] Natus understands that Nox will not make Messrs. Hermannsson and Fridriksson available to testify in person at trial, and therefore, will introduce their deposition testimony.

1

claims of the '532 patent would be inevitable and unavoidable. (D.I. 224, at 88:6-89:6.) Specifically, Nox contends that "[w]hether a claim would have been obvious in light of an asserted combination of references can be decided without deciding whether a particular reference was material." (Nox MIL 2, at 2 n.1.)

Setting aside the question of whether that statement is objectively true, it is irrelevant. There can be no dispute that the factual bases for each determination—i.e., obviousness and materiality—is at least very likely to overlap, and thus, may depend on presentation of the same evidence.

To the extent that this evidence comprises the meaning and scope of the prior art—including the prior art withheld from the PTO—as well as what that art teaches and how it is understood by a person of ordinary skill in the art, it is not unduly prejudicial. Natus should be permitted to present this evidence once and in its entirety. Because this evidence informs the question of whether the asserted claims of the '532 patent are obvious, this presentation should be made to the jury.

However, to the extent there is additional evidence addressed solely to the question of whether the information withheld from the PTO was material to the patentability of the '532 patent claims, that evidence is limited to Natus' claim of inequitable conduct. It does not overlap with the evidence of invalidity. Accordingly, Natus agrees—as it previously represented to the Court—that such evidence of materiality should be presented only to the Court and not to the jury, and thus, only during the inequitable conduct phase of the trial.

Dated:  April 5, 2018

By: /s/ Thomas S. Reynolds II

Thomas S. Reynolds II
Jeremy Adelson
HANSEN REYNOLDS LLC
316 North Milwaukee, Suite 200
Milwaukee, WI 53202
(414) 273-8470
treynolds@hansenreynolds.com
jadelson@hansenreynolds.com

Joseph J. Jacobi
Alan W. Nicgorski
HANSEN REYNOLDS LLC
150 S. Wacker St., Suite 2400
Chicago, IL 60606
jjacobi@hansenreynolds.com
anicgorski@hansenreynolds.com

John W. McCauley
HANSEN REYNOLDS LLC
10 East Doty St. Suite 800
Madison, WI 53703
jmccauley@hansenreynolds.com

Arthur G. Connolly, III (#2667)
Ryan P. Newell (#4744)
Mary I. Akhimien (#5448)
CONNOLLY GALLAGHER LLP
The Brandywine Building
1000 West Street, Suite 1400
Wilmington, DE 19801
(302) 757-7300
aconnolly@connollygallagher.com
rnewell@connollygallagher.com
makhimien@connollygallagher.com

*Attorneys for Natus Neurology Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NOX MEDICAL EHF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 15-709-RGA |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| NATUS NEUROLOGY INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF NOX MEDICAL EHF'S REPLY IN FURTHER SUPPORT OF ITS
MOTION *IN LIMINE* NO. 2 TO PRECLUDE NATUS FROM INTRODUCING
EVIDENCE RELATED TO ITS INEQUITABLE CONDUCT CLAIM**

Natus' opposition insists that it is entitled to present evidence of the materiality of "the prior art withheld from the PTO" (which according to Natus includes the Nox RES Belt, the CareFusion catalog, the Nox PRIP Belt, and the Nox International Design Registrations) as part of its obviousness case.  Natus is in error.  On March 25, 2018, counsel for Natus sent an email to counsel for Nox, stating that it would limit its obviousness claims at trial to particular combinations of references.[1] None of the CareFusion catalog, the NOX PRIP Belt, nor the Nox International Design Registrations is on the March 25 list, so whether those references were or were not material will be irrelevant to the question of obviousness at trial.

The *only* allegedly withheld reference common to Natus' obviousness and inequitable conduct claims is the Nox RES Belt. But that reference could not have been considered by the examiner in the obviousness combinations Natus now asserts.  Natus now asserts obviousness over the Nox RES Belt in view of McIntire, Harhen, Abizaid, and Orewiler.  None of McIntire, Harhen, Abizaid, or Orewiler was before the examiner.  And although Natus' March 25 email also asserts obviousness based on the Nox RES Belt alone, the Nox RES belt is simply the commercial embodiment of the Hermannsson '539 patent which was in fact considered by the Examiner. The result is that whether the Nox RES Belt was "but for" material to examination is entirely independent of Natus' obviousness case.  Natus should be prohibited from arguing materiality of any of the Alleged Undisclosed Art, intent to deceive the PTO, whether Höskuldsson should have been but was not originally named as an inventor of the '532 patent, whether his inventorship was withheld from the PTO with intent to deceive, and whether any of the inequitable conduct references were or should have been disclosed to the PTO.

---

[1] See Exhibit A to Nox's MIL No. 1, email correspondence from Jeremy Adelson, counsel for Natus, identifying the combinations Natus intends to assert at trial in support of its claim of obviousness.  Even these combinations are likely to be reduced, based on Natus' commitment to the Court to limit its asserted combinations to three and based on the fact that Natus should be barred from asserting many of the combinations identified.  See Nox MIL No. 1.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Chad E. Nydegger
Brent P. Lorimer
WORKMAN NYDEGGER
60 East South Temple, Suite 1000
Salt Lake City, UT  84111
Tel:  (801) 533-9800


Dated:  April 9, 2018
1222892 / 42707

By:   */s/Bindu A. Palapura*
        David E. Moore (#3983)
        Bindu A. Palapura (#5370)
        Stephanie E. O'Byrne (#4446)
        Hercules Plaza, 6th Floor
        1313 N. Market Street
        Wilmington, DE  19801
        Tel:  (302) 984-6000
        dmoore@potteranderson.com
        bpalapura@potteranderson.com
        sobyrne@potteranderson.com

*Attorneys for Plaintiff Nox Medical Ehf*

2