```
 1                IN THE UNITED STATES DISTRICT COURT

 2                IN AND FOR THE DISTRICT OF DELAWARE

 3                            - - -

 4
       NOX MEDICAL EHF,                :   CIVIL ACTION
 5                                     :
                    Plaintiff,         :
 6                                     :
           vs.                         :
 7                                     :
       NATUS NEUROLOGY, INC.,          :
 8                                     :
                    Defendant.    :    NO. 15-709 (RGA)
 9

10                            - - -

11                            Wilmington, Delaware
                              Friday, April 13, 2018
12                            11:04 o'clock, a.m.

13                            - - -

14     BEFORE:  HONORABLE RICHARD G. ANDREWS, U.S.D.C.J.

15                            - - -

16     APPEARANCES:

17
                  POTTER, ANDERSON & CORROON LLP
18                BY:  BINDU A. PALAPURA, ESQ.

19
                         -and-
20

21

22

23

24                              Valerie J. Gunning
                                Official Court Reporter
25
```

1    APPEARANCES (Continued):

2
             WORKMAN NYDEGGER
3            BY:   CHAD E. NYDEGGER, ESQ.,
                   BRENT P. LORIMER, ESQ.
4                  (Salt Lake City, utah)

5
                   Counsel for Plaintiff
6

7
             CONNOLLY GALLAGHER LLP
8            BY:   ARTHUR G. CONNOLLY, III, ESQ.

9
                       -and-
10

11           HANSEN REYNOLDS L.L.C.
             BY:   THOMAS S. REYNOLDS II, ESQ.,
12                 ALAN W. NICGORSKI, ESQ.,
                   JOSEPH J. JACOBI, ESQ. and
13                 JEREMY ADELSON, ESQ.
                   (Milwaukee, Wisconsin)
14

15                 Counsel for Defendant

16                      -   -   -

17

18

19

20

21

22

23

24

25

```
  1                    P R O C E E D I N G S

  2

  3                  (Proceedings commenced in the courtroom,

  4        beginning at 11:04 a.m.)

  5

  6                       THE COURT:  All right.  Please be seated.

  7                       Good morning.  This is Nox versus Natus, Civil

  8        Action No. 15-709, the pretrial conference.

  9                       Ms. Palapura?

 10                       MS. PALAPURA:  Good morning, Your Honor.

 11        Bindu Palapura from Potter Anderson on behalf of plaintiff.

 12        And with me today from Workman Nydegger is Chad Nydegger and

 13        Brent Lorimer.

 14                       THE COURT:  All right.  Good morning to you

 15        all.

 16                       And Mr. Connolly?

 17                       MR. CONNOLLY:  Good morning, Your Honor.  Arthur

 18        Connolly for defendant Natus.

 19                       With me today are my co-counsel, Thomas

 20        Reynolds, Alan Neigroski, Joseph Jacobi and Jeremy Adelson.

 21                       THE COURT:  All right.  Well, good morning to

 22        you all, too.

 23                       All right.  I have some things in the pretrial

 24        order, which I will get to in a moment.

 25                       One thing I want to state first is for the
```

| | |
|---|---|
| 10:04:30 | 1 |
| 10:04:35 | 2 |
| 10:04:39 | 3 |
| 10:04:42 | 4 |
| 10:04:46 | 5 |
| 10:04:49 | 6 |
| 10:04:53 | 7 |
| 10:04:56 | 8 |
| 10:04:58 | 9 |
| 10:05:02 | 10 |
| 10:05:05 | 11 |
| 10:05:07 | 12 |
| 10:05:12 | 13 |
| 10:05:13 | 14 |
| 10:05:14 | 15 |
| 10:05:20 | 16 |
| 10:05:25 | 17 |
| 10:05:26 | 18 |
| 10:05:27 | 19 |
| 10:05:31 | 20 |
| 10:05:34 | 21 |
| 10:05:37 | 22 |
| 10:05:43 | 23 |
| 10:05:43 | 24 |
| 10:05:44 | 25 |

1  trial, you're going to need to provide a glossary of terms

2  and names to the court reporters on the morning of trial.

3  When playing depositions, provide the court reporters with

4  the designations highlighted before playing the videos.  And

5  provide the court reporter with a copy of each exhibit

6  notebook at the same time as it's provided to the witness.

7  Okay?  All right.

8          So before we go through the things that I have

9  here, is there anything that you all think that I ought to

10  be doing first that you want to bring up?  Otherwise, we'll

11  just start going through the pretrial order.

12          MR. NYDEGGER:  Yes, Your Honor.  We had a few

13  items to discuss and clarify.

14          THE COURT:  Okay.

15          MR. NYDEGGER:  Good morning, Your Honor.  These

16  have to do with the motions in limine that the orders came

17  out on yesterday.

18          THE COURT:  All right.

19          MR. NYDEGGER:  And the motion ruling on, or the

20  order ruling on the motion in limine number one filed by

21  Nox Medical, we did want to seek clarification about the

22  core statement that the Nox RES alone could be used as a

23  reference.

24          THE COURT:  Yes.

25          MR. NYDEGGER:  The reason we --

| | |
|---|---|
| 10:05:46 | 1 |

THE COURT:  When I say "alone," I mean with the ordinary skilled artisan or whatever it is that they're using to round it out.  Of course, I think they're also going to be doing the McIntire.

MR. NYDEGGER:  Yes.  They did have a specific combination.  The reason we're seeking clarification was because the Court's rule on summary judgment that Nox RES does not anticipate.

THE COURT:  That's true.

MR. NYDEGGER:  And also that their witness is precluded from testifying that the Nox RES belt teaches the receiving hole, and so we want a clarification.  It seems to be inconsistent.

THE COURT:  Right.  I think you got this right, which is, they can't say they anticipate.  They can't say it's obvious because it anticipates.  They have to abide by my ruling that it doesn't anticipate, but I assume, as I think I saw somewhere, they're going to try to fill in that gap by saying in so many words, it's obvious.  Right?  Right?

MR. NYDEGGER:  That's correct, yes.  Yes.

THE COURT:  All right.

MR. NYDEGGER:  And then on that note, Your Honor, there's no disclosure in the expert report of modifying the receiving hole to meet the claims, just on its

| | |
|---|---|
| 10:06:56 | 1 |
| 10:07:01 | 2 |
| 10:07:03 | 3 |
| 10:07:06 | 4 |
| 10:07:07 | 5 |
| 10:07:09 | 6 |
| 10:07:14 | 7 |
| 10:07:17 | 8 |
| 10:07:17 | 9 |
| 10:07:21 | 10 |
| 10:07:31 | 11 |
| 10:07:34 | 12 |
| 10:07:37 | 13 |
| 10:07:41 | 14 |
| 10:07:43 | 15 |
| 10:07:46 | 16 |
| 10:07:49 | 17 |
| 10:07:52 | 18 |
| 10:07:56 | 19 |
| 10:07:59 | 20 |
| 10:08:01 | 21 |
| 10:08:03 | 22 |
| 10:08:04 | 23 |
| 10:08:08 | 24 |
| 10:08:10 | 25 |

own in view of ordinary skill in the art.  That's not
disclosed at all anywhere in the expert report.

THE COURT:  What do you have to say about that,
Mr. Reynolds?

MR. REYNOLDS:  Your Honor, and I think that this
will clear up not just the question that Mr. Nydegger has,
but the question you asked us about some other disclosure,
too.

We've all gone down a rode here that I think is
misleading, and that is that these very specific
permutations and combinations, that's not the way we're
going to present this to the jury.  I mean, that's not the
way these things come into the case.

We have one argument, one single argument
against claim 1.  That is that the RES belt, which you found
on summary judgment does not anticipate, and we're fine with
that, we say, okay.  There's an element missing from the RES
belt, and that is that the receiving hole doesn't perform
the fastening function.  Remember that's what you found in
the summary judgment.

Our argument is that the RES belt -- and
Hermannsson is the patent -- the RES belt is a commercial
embodiment of the Hermannsson patent.  Hermannsson is a bad
word, of course, because, it is also the name of the
patent-in-suit, but we know what we're talking about here.

| | |
|---|---|
| 10:08:12 | 1 |

To the jury, we'll have to explain that.

But the point is, we have a single prior art reference and we say exactly what you just said, that that reference discloses everything in claim 1 except one thing is missing.  It doesn't know the fastening function.  But jury, Your Honor, that's in spades in prior the art.  One of ordinary skill in the prior art would know it.  That's what this is.  McIntire shows it, Harhen shows it.  It's in spades.  There's a million places we can that show it.  That is the whole case.  This is a one-day invalidity case on claim 1.

The only reason prior art has been swimming around in there and the only reason that these permutations and combinations have been laid out, A plus B, B plus A, is because there's other prior art that we at least are keeping there in case, we don't know what their validity position is.  We think it's that one single missing element of claim 1 that the receiving hole does not do the fastening.  But they are trying to keep alive every word of claim 1 and every detail of the dependent claims even though there's no independent basis of validity in those dependent claims, there's no argument that there is, but we didn't resolve all of that because we didn't, frankly, probably bring enough points in our summary judgment to try to clean up those other issues.

10:09:19    1          I think the trial is a one-day validity case.

10:09:24    2    We make this argument to the jury.  It's a single argument

10:09:26    3    and it's about the receiving hole.  But we've got a

10:09:28    4    situation here, Your Honor, where normally, the patentee has

10:09:31    5    to kick a field goal through a goalpost with two uprights,

10:09:35    6    infringement and validity.  They have to be broad enough

10:09:39    7    that they snare the accused product but narrow enough to

10:09:43    8    avoid invalidity.  That's navigating -- what you see in the

10:09:47    9    Federal Circuit rulings.

10:09:48    10         But here we have taken the one upright and they

10:09:52    11   just have to kick a field goal, kick anywhere 20 yards to

10:09:57    12   the right.  They just have to find some word in claim 1 or

10:09:59    13   some detail they're going to argue that's in a dependent

10:10:01    14   claim that saves the validity.  I don't think that's what

10:10:04    15   this case should be about.  It should be about one thing,

10:10:06    16   and it should be a one-day trial, and that's the validity

10:10:09    17   case.

10:10:09    18         So this is our case, Your Honor.  It clears up I

10:10:11    19   think the question you had, too.  You had asked specifically

10:10:14    20   about whether the IPR disclosed a particular combination

10:10:17    21   with regard to claim 4 or 5.  The answer is, yes, it did,

10:10:21    22   and I could argue specifically why.  That's our argument.

10:10:26    23   I'm disclosing it to everybody.  Clearly, that's what we

10:10:29    24   plan to do with the jury.  The jury doesn't look at this as

10:10:33    25   specific analytical combinations of A plus B, A plus B plus

| 10:10:38 | 1 | C, A plus B plus C.  That's where you get all of these |
| 10:10:43 | 2 | arguments and permutations. |
| 10:10:45 | 3 | THE COURT:  All right.  Thank you. |
| 10:10:46 | 4 | MR. NYDEGGER:  Your Honor, as Mr. Reynolds just |
| 10:10:54 | 5 | said, the defendants, they are saying we have all of this |
| 10:10:57 | 6 | prior art out there and we're going to argue all of it. |
| 10:11:00 | 7 | Well, we're entitled to know, especially at this stage, |
| 10:11:04 | 8 | exactly what they're going to argue. |
| 10:11:07 | 9 | He says they're not -- |
| 10:11:08 | 10 | THE COURT:  Mr. Nydegger, he just told you what |
| 10:11:10 | 11 | he's going to argue.  That doesn't mean he can't bring in |
| 10:11:13 | 12 | this other prior art to put it all in context.  Part of what |
| 10:11:18 | 13 | you are supposed to do in obviousness are the nature and |
| 10:11:21 | 14 | scope of the prior art. |
| 10:11:22 | 15 | MR. NYDEGGER:  Well, I still don't know.  Are |
| 10:11:26 | 16 | they arguing the RES belt would be modified by a PHOSITA? |
| 10:11:31 | 17 | Would it be modified just by knowledge of a PHOSITA? |
| 10:11:35 | 18 | THE COURT:  Apparently, the RES belt and the |
| 10:11:38 | 19 | Hermannsson, or the patent.  That's what he just said. |
| 10:11:41 | 20 | MR. NYDEGGER:  That's your combination?  I did |
| 10:11:45 | 21 | not understand it. |
| 10:11:46 | 22 | MR. REYNOLDS:  The RES belt and Hermannsson is |
| 10:11:47 | 23 | kind of one disclosure of the same thing.  Okay.  They |
| 10:11:50 | 24 | disclosed slightly different things.  One you can touch and |
| 10:11:54 | 25 | smell and feel, that's the thing.  The patent has words.  It |

10:11:56   1    discloses some things more and some things less than what

10:11:59   2    you can touch and smell and feel.

10:12:00   3               We think it has 90 percent of what your claim 1

10:12:02   4    has, but then the other stuff is, the other thing, it's only

10:12:05   5    one thing, does the receiving hole do the fastening

10:12:10   6    function?  That is what we found in summary judgment that is

10:12:13   7    not anticipated, is not explicitly disclosed.  A PHOSITA

10:12:18   8    would have known that.  That's obvious on what a PHOSITA

10:12:21   9    knew, and whether the PHOSITA knew, they knew it was

10:12:23  10    McIntire, they knew it was in Harhen.  They knew it was in

10:12:27  11    other locations.

10:12:28  12               I look at it as one argument.  I understand

10:12:31  13    that --

10:12:32  14               THE COURT:  So maybe I misunderstand stood you,

10:12:33  15    Mr. Reynolds.  The RES belt and the Hermannsson, that by

10:12:37  16    itself, if a PHOSITA was motivated to combine them, do they

10:12:46  17    make obvious all the claims or is there something else?

10:12:50  18               Now what I'm understanding you to say is the RES

10:12:54  19    belt and Hermannsson are basically two sides of the same

10:12:57  20    coin.

10:12:57  21               MR. REYNOLDS:  They are, Your Honor.  Based on

10:12:58  22    your ruling, the RES belt and Hermannsson, we're not going

10:13:02  23    to argue together they disclose everything.  They disclose

10:13:06  24    the 90 percent.

10:13:07  25               THE COURT:  Okay.  I misunderstood what you were

| | |
|---|---|
| 10:13:09 | 1 |
| 10:13:10 | 2 |
| 10:13:13 | 3 |
| 10:13:23 | 4 |
| 10:13:25 | 5 |
| 10:13:27 | 6 |
| 10:13:31 | 7 |
| 10:13:35 | 8 |
| 10:13:36 | 9 |
| 10:13:38 | 10 |
| 10:13:39 | 11 |
| 10:13:39 | 12 |
| 10:13:41 | 13 |
| 10:13:43 | 14 |
| 10:13:44 | 15 |
| 10:13:45 | 16 |
| 10:13:47 | 17 |
| 10:13:48 | 18 |
| 10:13:48 | 19 |
| 10:13:50 | 20 |
| 10:13:54 | 21 |
| 10:13:57 | 22 |
| 10:14:00 | 23 |
| 10:14:03 | 24 |
| 10:14:06 | 25 |

saying.

All right.  So the question is:  The other ten percent, has your expert in his report disclosed it?

MR. REYNOLDS:  Yes.  We believe in many, many ways.  The issue is, Your Honor, is that if you break it out that the RES belt plus Hermannsson plus PHOSITA is one thing and the RES belt and Hermannsson and McIntire is another thing and this is another thing --

THE COURT:  I get it.  That's a plus sign there.

MR. REYNOLDS:  That's what that is.  I am just saying --

THE COURT:  All right.  I thought not that was an equals.

MR. REYNOLDS:  I'm sorry, Your Honor.

THE COURT:  No.  I get it now.

MR. REYNOLDS:  A quick demonstrative at the eleventh hour here.

THE COURT:  I get it.

MR. REYNOLDS:  But that's our argument.  I just wanted to sort of say to the Court and to opposing counsel here, we only have one argument.  It's just we've all gone down this track of these analytical permutations and combinations.  That's just not the way the case comes in I don't think.  That's not the way we plan on doing it.  If we were told by the Court that we have to stick to multiple

permutations, we'll do that, but that's the way I look at
the case.

        THE COURT:  All right.

        MR. NYDEGGER:  So, Your Honor, this illustrates
my point exactly.  So it's not just one argument.  In fact,
Mr. Reynolds just said, we're going to argue that a PHOSITA,
he knew about, for example, Harhen, and so because that's
part of his background knowledge that he knew about, well,
it would have been obvious to modify the RES but with
Hermannsson.  But in the Court's motion in limine, the Court
expressly ruled the combination of the Nox RES belt and
Hermannsson is out, and yet they're going to try and
back-door this through the PHOSITA by saying, well, that is
part of his knowledge.  And that's where we don't know what
they are trying to argue and where the expert witness, does
not say just based on the general knowledge of a PHOSITA, a
person of skill in the art --

        THE COURT:  He's going to say also McIntire,
which is a specific reference and I think, I'm quite sure
that the RES belt and the McIntire, Hermannsson and
McIntire, that's a combination that the defense can use.
Right?

        MR. NYDEGGER:  We would argue that, yes, that is
still in the case.  The combination of the RES belt plus
McIntire or Hermannsson plus McIntire, those would still be

10:15:23    1    available at trial.  Those have not been excluded at this

10:15:26    2    point.  But once again, we're entitled to know which of

10:15:29    3    these they're going to argue and they can't argue, back-door

10:15:32    4    these through just the knowledge general of a PHOSITA, which

10:15:35    5    is what Mr. Reynolds just said they plan to do.

10:15:39    6             And if I could hand Your Honor -- may I

10:15:46    7    approach, Your Honor?

10:15:47    8             THE COURT:  Yes.

10:15:48    9             (Mr. Nydegger handed a document to the Court.)

10:15:51   10             MR. NYDEGGER:  So this, Your Honor, this -- it

10:15:58   11    says "Joint Proposed."  Ignore the "Joint" because this is

10:16:00   12    not joint.  This was an eleventh hour demonstrative I did

10:16:04   13    this morning and used a prior draft of the joint proposed

10:16:08   14    verdict form.  And in Nox Medical's verdict form that they

10:16:12   15    submitted originally, it had all the combinations, all the

10:16:17   16    permutations from Natus' March 25th e-mail that indicated it

10:16:22   17    would follow, or that they intended to present at trial.

10:16:24   18             Well, from that, we've taken out claims 6, 17

10:16:28   19    and 8, because in view of the Court's order yesterday, we're

10:16:33   20    dropping those claims.  And I will talk about the other

10:16:36   21    claims that are still left here in a minute.

10:16:38   22             THE COURT:  I see you've got three claims.

10:16:42   23    That's certainly within the bounds of reasonableness.

10:16:44   24             MR. NYDEGGER:  And the Court mentioned two in

10:16:45   25    its order, but we were going to ask the Court for three.

| | |
|---|---|
| 10:16:48 | 1 |

THE COURT:  Well, in some ways it doesn't make any difference, because claim 1, you could just say claim 5, claim 9, you would get to the same point.

MR. NYDEGGER:  Almost, Your Honor.  It is relevant when you come to secondary considerations and the nexus issue.

THE COURT:  All right.  Fair enough.

MR. NYDEGGER:  But really, as you know, for validity, as far as showing where the elements are found in the prior art, it does not make a difference.

When it comes to the nexus issue, it does, which is why we would ask Your Honor that we be allowed the one independent claim --

THE COURT:  Yes, yes.  I'm all right with that, because in effect, from my point of view, you've got two claims.

MR. NYDEGGER:  Okay.

THE COURT:  I understand you have three, but close enough.

MR. NYDEGGER:  All right.  Thank you, Your Honor.

So what this shows is, this has all the permutations for those three claims that were disclaimed in Natus' March 25th e-mail.  From that, the redline shows the ones that are no longer available.

|  |  |  |
|---|---|---|
| 10:17:44 | 1 | And you can see that as far as claim 1 goes, |
| 10:17:48 | 2 | based on their March 25th e-mail, there are still six |
| 10:17:55 | 3 | permutations possibly available that they would argue.  The |
| 10:17:58 | 4 | Nox RES belt alone would be the one that the PHOSITA -- |
| 10:18:02 | 5 | THE COURT:  Mr. Reynolds is just saying, Gobron |
| 10:18:07 | 6 | is not something that he's going to be arguing.  It may be |
| 10:18:11 | 7 | mentioned somewhere in the background, but not something |
| 10:18:13 | 8 | he's arguing.  Right? |
| 10:18:15 | 9 | MR. REYNOLDS:  Your Honor, yes, that's right, |
| 10:18:17 | 10 | but one of the things that -- two things.  One is this |
| 10:18:20 | 11 | verdict form, do you ever instruct -- do you ever put in |
| 10:18:23 | 12 | your verdict form the specific combinations? |
| 10:18:25 | 13 | THE COURT:  I haven't, but it's not a terrible |
| 10:18:27 | 14 | idea, but I'm not deciding that right now. |
| 10:18:32 | 15 | MR. REYNOLDS:  Okay, because that would change |
| 10:18:34 | 16 | the way we would, of course, argue the case.  We're not |
| 10:18:36 | 17 | arguing specific combinations.  We think the verdict form |
| 10:18:39 | 18 | should say claim 1, yes or no, valid or invalid.  Claim 5 or |
| 10:18:42 | 19 | whatever you want to have, yes or no. |
| 10:18:44 | 20 | THE COURT:  Yes. |
| 10:18:44 | 21 | MR. REYNOLDS:  My only point is that we, as we |
| 10:18:47 | 22 | sit here today, this is the first time we've seen the pared |
| 10:18:49 | 23 | down list.  I don't know with claim 5 or 9, what additional |
| 10:18:53 | 24 | limitation saves the validity of it over claim 1.  I don't |
| 10:18:56 | 25 | think there's anything that -- |

10:18:57   1        THE COURT:  All right.  Well, in any event,

10:18:59   2    we've spent enough time talking about this this morning

10:19:02   3    because I don't have an unlimited amount of time.

10:19:05   4        MR. REYNOLDS:  Sure.

10:19:06   5        THE COURT:  Is there some takeaway you need from

10:19:08   6    this, Mr. Nydegger?

10:19:10   7        MR. NYDEGGER:  Well, Your Honor, originally, we

10:19:12   8    started talking about the Nox RES belt and whether that

10:19:15   9    would be available given there's no disclosure to modify

10:19:17   10   that belt alone just based on the knowledge of a PHOSITA,

10:19:22   11   not with reference to any other specific prior art.  And so

10:19:25   12   that's where we originally started.

10:19:27   13       But this does lead me to the second point that I

10:19:29   14   wanted to discuss with Your Honor, and whereas the Court has

10:19:33   15   asked us to narrow our claims down to three, we would ask

10:19:37   16   the Court to have opposing counsel narrow its obviousness

10:19:42   17   contentions down to three, as it indicated it would at the

10:19:46   18   last summary judgment hearing.

10:19:47   19       THE COURT:  Well, see, from looking at things,

10:19:50   20   it appears to me that other than this reference to Gobron,

10:19:55   21   there certainly is no more than four right now.

10:19:59   22       MR. NYDEGGER:  Yes.  Well, if Gobron is out,

10:20:02   23   that certainly helps.  This morning is the first time we've

10:20:06   24   heard that Gobron may be out.

10:20:08   25       THE COURT:  When we're saying "out," I don't

| | |
|---|---|
| 10:20:10 | 1 |
| 10:20:12 | 2 |
| 10:20:17 | 3 |
| 10:20:19 | 4 |
| 10:20:26 | 5 |
| 10:20:28 | 6 |
| 10:20:33 | 7 |
| 10:20:38 | 8 |
| 10:20:42 | 9 |
| 10:20:46 | 10 |
| 10:20:48 | 11 |
| 10:21:00 | 12 |
| 10:21:05 | 13 |
| 10:21:12 | 14 |
| 10:21:15 | 15 |
| 10:21:16 | 16 |
| 10:21:16 | 17 |
| 10:21:17 | 18 |
| 10:21:19 | 19 |
| 10:21:24 | 20 |
| 10:21:24 | 21 |
| 10:21:27 | 22 |
| 10:21:29 | 23 |
| 10:21:32 | 24 |
| 10:21:32 | 25 |

1  understand that it won't be mentioned.  I'm just

2  understanding that they won't be arguing, maybe they have a

3  different idea of how they're going to argue this than what

4  I usually see, but usually you argue to the jury some

5  specific combination against the background of whatever it

6  is that's out there, and.  So I certainly understand them to

7  be saying that they're not going to say Gobron and Lawrence

8  or Gobron and Sommer.  It seems completely inconsistent with

9  what Mr. Reynolds just said.

10           MR. REYNOLDS:  That's correct, Your Honor.

11           THE COURT:  So, in any event, at least in my own

12  mind I'm going to cross out Gobron, and I'm satisfied

13  otherwise, because the RES belt, Hermannsson are more or

14  less the same thing and that they've done enough narrowing

15  here.  All right?

16           MR. NYDEGGER:  Okay.

17           THE COURT:  Do you have anything else?

18           MR. NYDEGGER:  Yes, Your Honor.  My colleague,

19  Mr. Lorimer, was just going to address one or two small

20  matters.

21           THE COURT:  All right.  Mr. Lorimer, you have

22  the important small matters.

23           MR. LORIMER:  Perfectly suited to my abilities,

24  Your Honor.

25           The first one again is a clarification of one of

10:21:36  1    the Court's orders on the motions in limine.

10:21:39  2            The Court ruled that the IPR materials are out,

10:21:41  3    that they are not going to come in at all, and we understand

10:21:44  4    that.  Sort of the other side of that coin is that in Dr.

10:21:48  5    Williams', Dr. Williams report, he makes a number of

10:21:50  6    references to what the Examiner found or how he

10:21:54  7    characterized particular references.

10:21:56  8            It seems to me they're all employees of the

10:21:58  9    Patent and Trademark Office.  We're not doing claim

10:22:00  10   construction.  We're not doing doctrine of equivalents or

10:22:03  11   prosecution history estoppel.  So we don't want the jury to

10:22:06  12   be misled by having the defendant say, look, this is what

10:22:10  13   the Examiner found, this is what the Examiner said, this

10:22:14  14   piece of art teaches, so in fairness, it ought to be sauce

10:22:17  15   for the goose and sauce for the gander.

10:22:19  16            THE COURT:  Well, when you are talking about the

10:22:20  17   Examiner, you're talking about the original prosecution.

10:22:22  18   Right?

10:22:23  19            MR. LORIMER:  I am, but he's not a PHOSITA.  I

10:22:28  20   don't want the jury believing just because he said it, it's

10:22:31  21   true.

10:22:35  22            THE COURT:  You know, I guess that's something

10:22:41  23   we'll have to deal with at trial, but it strikes me that if

10:22:49  24   what the Examiner is doing is not claim construction, which,

10:22:53  25   of course, then we don't count that, but it strikes me that

10:22:59    1    if he is a person of ordinary skill in the art, my

10:23:01    2    understanding is that, generally speaking, patent examiners

10:23:04    3    are people of ordinary skill in the art, but I don't know

10:23:06    4    what the person of ordinary skill in the art here is.

10:23:12    5                    MR. LORIMER:  We certainly don't know what this

10:23:14    6    examiner's background was.

10:23:15    7                    THE COURT:  Isn't the standard of ordinary skill

10:23:19    8    in the art pretty low for this?

10:23:20    9                    MR. LORIMER:  We have define amongst us, we've

10:23:24   10    agreed what that level of skill is.

10:23:25   11                    THE COURT:  AND what is it?

10:23:26   12                    MR. LORIMER:  It is either somebody with an

10:23:27   13    advances degree and less experience, or lesser degree and

10:23:31   14    more experience in the field of engineering, electrical

10:23:33   15    engineering or medical devices.  And we have no idea what

10:23:35   16    this examiner's background is.  We can't, we can't know.  We

10:23:40   17    can't depose him.

10:23:41   18                    THE COURT:  No, no, I understand that.  All

10:23:42   19    right.  Well, I will think about that.

10:23:44   20                    What else?

10:23:45   21                    MR. LORIMER:  The only other thing is, Your

10:23:47   22    Honor, at the last hearing we were very short on time

10:23:50   23    and the Court was not feeling well, and we didn't hear

10:23:53   24    the inequitable conduct motion for summary judgment, and

10:23:56   25    we're curious whether the Court would like to hear that

10:23:58    1    today.

10:23:58    2                      THE COURT:  No.  I don't want to hear that

10:24:00    3    today.

10:24:01    4                      MR. LORIMER:  All right.

10:24:02    5                      THE COURT:  My plan is, we'll just try that

10:24:04    6    after we finish with the other trial.

10:24:07    7                      MR. LORIMER:  And in that regard, Your Honor,

10:24:09    8    this trial is set to go from Monday to Wednesday, I think.

10:24:12    9                      THE COURT:  Yes.

10:24:13   10                      MR. LORIMER:  The 30th to the 2nd.  So is the

10:24:16   11    intent that we would start inequitable conduct on the

10:24:18   12    morning of Thursday?

10:24:19   13                      THE COURT:  Is that something you can do?

10:24:23   14    Actually, we are going to talk in a minute about how long --

10:24:30   15    so I don't recall seeing anything.

10:24:32   16                      How much time do we need for this inequitable

10:24:35   17    conduct trial?

10:24:36   18                      MR. LORIMER:  We don't think very long at all.

10:24:39   19    I wouldn't speak for Mr. Reynolds, however.

10:24:43   20                      THE COURT:  Do you have --

10:24:44   21                      MR. REYNOLDS:  We've been assuming it's one day,

10:24:46   22    Thursday.

10:24:46   23                      THE COURT:  All right.  Well, so, yes.  So we

10:24:50   24    should just plan that we'll do that at the end of the other

10:24:53   25    trial.  And, in fact, you should really plan that once the

| | |
|---|---|
| 10:25:01 | 1 |

jury starts to deliberate on the first thing, we'll just

10:25:05  2    start the inequitable conduct since we'll all be hanging

10:25:08  3    around anyhow.  Okay?

10:25:10  4              MR. LORIMER:  Very well.

10:25:11  5              THE COURT:  So that brings up a question of how

10:25:16  6    long do you all think you need to try the case?  And by that

10:25:22  7    I mean, the way I count things, which is I give each side a

10:25:26  8    certain amount of time, and for that time, that covers your

10:25:29  9    opening statement, your direct exam, and your cross exam.

10:25:33  10   It does not cover closing arguments.

10:25:36  11             MR. LORIMER:  Your Honor, we have -- we believe

10:25:40  12   it can do it in the three days the Court has allotted, but

10:25:43  13   not less than that.

10:25:44  14             We're going to be pushing it to get --

10:25:45  15             THE COURT:  Yes.  I wasn't really -- and,

10:25:46  16   Mr. Reynolds, I take it from what you've said, that you

10:25:48  17   think likewise?

10:25:49  18             MR. REYNOLDS:  Yes.  I think three days is fine.

10:25:52  19   It somewhat depends on the what the counter to our

10:25:54  20   invalidity case is.  Yes, we can make it happen.

10:25:56  21             THE COURT:  Okay.  So in terms of hours, seven

10:26:08  22   hours a side?

10:26:11  23             MR. LORIMER:  Well, Your Honor, it depends on,

10:26:12  24   of course, how long it takes us to pick the jury.

10:26:15  25             THE COURT:  No, the jury, that's on me.

10:26:17   1      MR. LORIMER:  Oh, that's on you?

10:26:18   2      THE COURT:  Yes.  If it takes for four days, you

10:26:22   3   still get seven hours a side.  I will tell you how long it's

10:26:24   4   actually going to take.  It's going to take an

10:26:27   5   hour-and-a-half.

10:26:28   6      MR. LORIMER:  Okay.

10:26:28   7      THE COURT:  But you don't have to worry about

10:26:30   8   that.

10:26:30   9      MR. LORIMER:  Okay.  Okay.  Well, we were under

10:26:32   10   the belief that the Court's trial days are about six hours,

10:26:35   11   five-and-a-half, six hours a day?

10:26:38   12      THE COURT:  Six, yes.

10:26:39   13      MR. LORIMER:  Six hours.  And so we were

10:26:40   14   thinking that if we divide that in two, that's nine hours

10:26:44   15   each.

10:26:45   16      THE COURT:  Yes.  That's not a three-day trial

10:26:46   17   though, because the jury doesn't get picked like that.

10:26:50   18      MR. LORIMER:  Fair enough.  Fair enough.  We

10:26:53   19   were thinking more like eight hours, Your Honor.

10:26:55   20      THE COURT:  All right.  Mr. Reynolds?

10:26:57   21      MR. REYNOLDS:  Seven or eight is fine with us.

10:27:00   22      THE COURT:  All right.  Well, I will tell you

10:27:02   23   what.  I will go with seven-and-a-half.  And the thinking

10:27:05   24   there is based on prior experience, the 18 hours that are in

10:27:11   25   Monday through Wednesday, I say it will take an

| | |
|---|---|
| 10:27:19 | 1 |
| 10:27:21 | 2 |
| 10:27:24 | 3 |
| 10:27:29 | 4 |
| 10:27:31 | 5 |
| 10:27:31 | 6 |
| 10:27:33 | 7 |
| 10:27:37 | 8 |
| 10:27:40 | 9 |
| 10:27:41 | 10 |
| 10:27:43 | 11 |
| 10:27:47 | 12 |
| 10:27:50 | 13 |
| 10:27:50 | 14 |
| 10:27:51 | 15 |
| 10:27:55 | 16 |
| 10:27:58 | 17 |
| 10:28:03 | 18 |
| 10:28:06 | 19 |
| 10:28:10 | 20 |
| 10:28:14 | 21 |
| 10:28:17 | 22 |
| 10:28:19 | 23 |
| 10:28:23 | 24 |
| 10:28:25 | 25 |

1   hour-and-a-half to pick the jury, and I think that's

2   probably a very close estimate, but I've got opening

3   instructions to give and that takes some time.

4           Do you all want to play the patent video or

5   not?

6           MR. LORIMER:  Your Honor, we've spoken about

7   that just this morning, and we would prefer to do the patent

8   video.  It's short.  It's fair.  It's even-handed.

9           THE COURT:  All right.  What about you?

10           MR. REYNOLDS:  We have to review it, Your Honor.

11   I've seen the 1985 one or whatever, so I want to see the new

12   one, just take a look at that.  We just got that raised to

13   us this morning.

14           THE COURT:  All right.  Why don't you think

15   about it.  My preference would be to play it because it does

16   give them an overview of the system.  The only thing that

17   I'm sure Ms. Palapura and Mr. Connolly know is, that when we

18   do play the modern version, the part where Judge Fogel says

19   "I'm a United States District Judge" has to be edited out.

20   It's fine if he says he's the Administrative Officer of the

21   Courts, or whatever his other title is.  We once had a jury

22   thinking he was the one that was instructing them as opposed

23   to the person in the black robe here.

24           But that would be my preference.  But if you

25   don't want to do it, let me know.  I'm not wedded to it.

10:28:29    1    Okay?

10:28:29    2    But I think -- and that doesn't count against

10:28:32    3    your time either, but it does take up some time.  That's the

10:28:35    4    reason why I think seven-and-a-half hours is the right

10:28:38    5    number.

10:28:39    6    MR. LORIMER:  On that issue, Your Honor, as part

10:28:41    7    of the pretrial order, we have looked at the juror

10:28:44    8    questionnaire that the Court submitted in the Wilmington

10:28:47    9    Trust case.

10:28:47    10    THE COURT:  Yes, which is bad to go by, because

10:28:52    11    that was in person at the court.  It wasn't mailed out.  And

10:29:01    12    so I don't mail out questionnaires telling them who the

10:29:04    13    parties are because then the person will Google the parties,

10:29:07    14    and all of a sudden I've got a whole bunch of disqualified

10:29:10    15    jurors.

10:29:10    16    So I think actually, it will be just as

10:29:14    17    efficient and we'll have the benefit that you get to see the

10:29:19    18    people speak when they give their answers to just do the

10:29:22    19    basic questionnaires that I, or the basic in-court

10:29:25    20    questionnaire, questioning that I normally do.  When I have

10:29:30    21    sent out things in advance in patent cases, it has been a

10:29:33    22    maximum of two pages, and it basically it is just the same

10:29:37    23    questions, the same general material you get in court while

10:29:42    24    creating a lot of paper.

10:29:44    25    I did notice that there was some request that if

| | |
|---|---|
| 10:29:49 | 1 |
| 10:29:52 | 2 |
| 10:29:59 | 3 |
| 10:30:04 | 4 |
| 10:30:07 | 5 |
| 10:30:10 | 6 |
| 10:30:11 | 7 |
| 10:30:12 | 8 |
| 10:30:14 | 9 |
| 10:30:14 | 10 |
| 10:30:17 | 11 |
| 10:30:19 | 12 |
| 10:30:21 | 13 |
| 10:30:23 | 14 |
| 10:30:24 | 15 |
| 10:30:26 | 16 |
| 10:30:30 | 17 |
| 10:30:36 | 18 |
| 10:30:38 | 19 |
| 10:30:41 | 20 |
| 10:30:43 | 21 |
| 10:30:46 | 22 |
| 10:30:46 | 23 |
| 10:30:51 | 24 |
| 10:30:53 | 25 |

1  I didn't send out the questionnaire, that I add four

2  questions from the proposed questionnaire.  One of them had

3  to do with, have you served on a jury trial before, civil

4  jury trial.  I will include that question.  The other three,

5  I won't.

6              MR. LORIMER:  Okay.

7              THE COURT:  All right?

8              MR. LORIMER:  Those are my small things, Your

9  Honor.

10             MR. REYNOLDS:  On the matter of preliminary jury

11  instructions and the video, we'll propose that we will work

12  together.  We're trying to work together to have a single

13  preliminary jury instruction document.

14             THE COURT:  Well, that would be good.

15             MR. REYNOLDS:  And I think it's April 20th, you

16  asked for a letter, the 18th.  Okay.  The 18th.  You asked

17  for a letter from us and we will advise as to where we are

18  on that.  I assume that we'll be able to agree on the video

19  and/or the preliminary jury instructions.

20             THE COURT:  Yes.  I actually wrote on here,

21  parties had submitted two versions.

22             MR. REYNOLDS:  Right.

23             THE COURT:  I require -- and the preliminary

24  jury instructions is a lot closer obviously than the final

25  jury instructions, but I do require you to submit one

10:30:56    1    document so I don't have to sit there comparing pages,

10:30:58    2    trying to figure out what it is you're actually disagreeing

10:31:01    3    about.

10:31:01    4              The other thing I would suggest is, the more

10:31:06    5    disagreements I see, the more I just pick the one that I did

10:31:10    6    in the last jury trial and use it again, just plugging in

10:31:15    7    the two paragraphs where you describe what your dispute is.

10:31:17    8    I mean, that's the most significant thing you can do for me

10:31:20    9    in preliminary jury instructions, is figure out the way to

10:31:23   10    characterize for the jury what it is they're about to see,

10:31:28   11    because you know your case a lot better than I do.

10:31:31   12              But, in any event, if you can submit

10:31:33   13    something --

10:31:33   14              MR. LORIMER:  We're happy to do that.

10:31:35   15              THE COURT:  That would be good.

10:31:36   16              MR. REYNOLDS:  Thank you.

10:31:36   17              THE COURT:  For what it's worth, the proposed

10:31:38   18    verdict form and the proposed final jury instructions, I

10:31:42   19    basically don't pay them any attention until we start the

10:31:45   20    trial, and the way that I'm envisioning this happening is,

10:31:53   21    the testimony would take us through Wednesday.  The jury

10:31:56   22    would be charged on Thursday morning and closing arguments

10:31:59   23    would be on Thursday morning.  And so we'd have a prayer

10:32:07   24    conference perhaps Tuesday, after the testimony on Tuesday.

10:32:14   25    I mean, it depends how much is actually in disagreement,

10:32:17   1    which when you submit something in one document, I will have

10:32:23   2    a much better idea.   Okay?

10:32:24   3                    MR. LORIMER:   Great.

10:32:25   4                    THE COURT:   Anything else that you all want to

10:32:27   5    discuss?

10:32:28   6                    MR. LORIMER:   No.   I'm assuming given the

10:32:31   7    Court's comments that we are not going to be bumped by

10:32:35   8    the current proceedings, that we're going to go forward

10:32:38   9    on --

10:32:39   10                   THE COURT:   You know, it's hard to say.   I'm

10:32:41   11   thinking that they will resolve by that time, but I don't

10:32:46   12   know.

10:32:47   13                   I also have another trial, another civil trial

10:32:50   14   scheduled the same day.   I've got to keep these balls up in

10:32:56   15   the air and see what is still left.

10:32:58   16                   MR. LORIMER:   So the Court will obviously inform

10:33:00   17   us at some point that we need to be here on that day, I

10:33:04   18   assume.

10:33:05   19                   THE COURT:   Well, right now you should operate

10:33:08   20   on the principle you need to be here that day.

10:33:11   21                   MR. LORIMER:   I'm sorry:   You're correct.

10:33:13   22                   THE COURT:   Yes, yes.   I know what you meant to

10:33:16   23   say.   No problem.

10:33:17   24                   Is there anything in particular you want to

10:33:18   25   bring up, Mr. Reynolds?

| | |
|---|---|
| 10:33:20 | 1 |
| 10:33:20 | 2 |
| 10:33:22 | 3 |
| 10:33:27 | 4 |
| 10:33:29 | 5 |
| 10:33:34 | 6 |
| 10:33:37 | 7 |
| 10:33:43 | 8 |
| 10:33:46 | 9 |
| 10:33:50 | 10 |
| 10:33:54 | 11 |
| 10:34:02 | 12 |
| 10:34:05 | 13 |
| 10:34:12 | 14 |
| 10:34:21 | 15 |
| 10:34:24 | 16 |
| 10:34:26 | 17 |
| 10:34:29 | 18 |
| 10:34:34 | 19 |
| 10:34:38 | 20 |
| 10:34:40 | 21 |
| 10:34:42 | 22 |
| 10:34:43 | 23 |
| 10:34:46 | 24 |
| 10:34:48 | 25 |

1    MR. REYNOLDS:  No Your Honor.

2    THE COURT:  Let me just go through.  In the

3 pretrial order -- oh, there was a dispute as to whether

4 these products should be called the infringing products or

5 the accused products.  To the extent you have to call them

6 one or the other, call them the accused products, because

7 until we figure out whether the patent is valid or not,

8 they're not infringing.

9        I'm going to have to tell them, and, in fact,

10 I'm not entirely sure how I'm going to do this, but I'm

11 certainly going to have to -- in fact, this is something

12 else you could work on.  You have not actually figured out

13 how it is I'm going to tell the jury it's agreed that the

14 products meet the claims of the patent, have you?

15    MR. LORIMER:  We were just planning on using the

16 language of the Court's order that said the parties have

17 agreed that they infringe.  That's what it says.

18    THE COURT:  And that was the court order that I

19 actually wrote like two years ago.  Right?

20    MR. NYDEGGER:  Actually, Your Honor, that was a

21 stipulated order that the Court just signed.  It was drafted

22 by defendants.

23    THE COURT:  Oh, okay.  All right.

24        Mr. Reynolds, what do you have to say about

25 that?

| | |
|---|---|
| 10:34:48 | 1 |
| 10:34:50 | 2 |
| 10:34:52 | 3 |
| 10:35:10 | 4 |
| 10:35:16 | 5 |
| 10:35:19 | 6 |
| 10:35:22 | 7 |
| 10:35:25 | 8 |
| 10:35:26 | 9 |
| 10:35:37 | 10 |
| 10:35:42 | 11 |
| 10:35:47 | 12 |
| 10:35:51 | 13 |
| 10:35:52 | 14 |
| 10:35:55 | 15 |
| 10:35:57 | 16 |
| 10:36:01 | 17 |
| 10:36:04 | 18 |
| 10:36:06 | 19 |
| 10:36:07 | 20 |
| 10:36:09 | 21 |
| 10:36:13 | 22 |
| 10:36:18 | 23 |
| 10:36:24 | 24 |
| 10:36:27 | 25 |

MR. REYNOLDS:  Your Honor, I'm trying to remember if we have something in either the final jury instructions or -- yes, we're fine with that.  In C-35 on page 10, it says Natus has stipulated that its products, parts number.  And we did have the word "infringe" in there, but then we don't want to have the drumbeat of infringing products.  That's why we had that slash in there.  Yes, you've got the issue.

THE COURT:  All right.  Well, so if I use basically the wording that's in paragraph 35, and I suggest that you might even want to put it in the preliminary jury instructions -- I mean, I think I ought to tell them that before you start doing opening statements.

MR. REYNOLDS:  I'm sorry, Your Honor, yes.  If you talk to the jury either in preliminary jury instructions or in final, that's why I wonder if we have that, I think our language was like stipulate that the claims cover the product or something like that.  We had some language that was not this.  Right?

THE COURT:  Well, so I will tell you what.  You all talk to each other about it.  I've had disputes on this before, this kind of thing.

So it would be best if you had some proposal that told me exactly what it is you want me to tell the jury.  I think it is required as a -- I think it should be

10:36:34    1   in the opening statement to orient them, particularly if

10:36:37    2   we're going to be playing the patent video which, after all,

10:36:40    3   needs to be part of it, about the boundaries and

10:36:43    4   infringement, which I think they ought to have the

10:36:45    5   understanding of what it is we're talking about, but then I

10:36:47    6   think also, as a stipulation of fact, which could be

10:36:53    7   paragraph 35, it ought to actually be presented to the

10:36:58    8   jury.

10:36:58    9           MR. REYNOLDS:   Okay.   But you want it in both

10:37:00   10   the preliminary jury instructions and the final.

10:37:03   11           THE COURT:   That's my thinking.   You all can

10:37:05   12   talk to each other and working on the preliminary jury

10:37:11   13   instructions, see whether you agree on that.   But it seems

10:37:14   14   to me to just make sense, because it would be kind of odd I

10:37:18   15   instruct the jury, here are the issues in the case.   Part of

10:37:23   16   that is, I would think that I'm going to instruct them,

10:37:28   17   infringement is not an issue, because --

10:37:31   18           MR. REYNOLDS:   Okay.   Well, we'll work on that,

10:37:33   19   Your Honor.   We knew it was going to be potentially an issue

10:37:35   20   for final jury instructions, but as we are working towards

10:37:38   21   the submissions to you next week, we will see if we can put

10:37:42   22   it in both sides.

10:37:47   23           THE COURT:   All right.   Nevertheless, I would

10:37:49   24   think during the trial, the normal way to refer to the

10:37:52   25   product is going to be the belt.

| | |
|---|---|
| 10:37:57 | 1 |

                    MR. LORIMER:  Yes.   The Natus belt or something

like that.  We're happy with that.

                    MR. REYNOLDS:  Fine.

                    THE COURT:  All right.  So there's talk on pages

15, 16 -- pages 15 and 16 in paragraphs 55, 56 and 57, which

I think have to do -- I think these are all stipulations.  I

don't know what they are, actually, but, in any event, one

thing I couldn't tell from the objections of Nox is whether

these patents are referred to in your expert reports, this

being the Archer patent, the Caldecott reference and the

Takeda reference.

                    MR. REYNOLDS:  You said Nox.  Did you ask if

it's in --

                    THE COURT:  Well, Nox is the one who is

objecting.  They say, you did not identify these patents as

a basis for finding obviousness.  I can't tell --

                    MR. REYNOLDS:  They are all in the expert

report.

                    THE COURT:  All right.  So they're just part of

the background?

                    MR. REYNOLDS:  Yes.

                    MR. NYDEGGER:  They are in the expert report.

As we've discussed already, they're not part of the

obviousness combinations or anything that they're asserting.

                    THE COURT:  Okay.

10:39:14   1        MR. NYDEGGER:  And so if they're not relying on

10:39:16   2   them, we don't think they should be in the case.

10:39:18   3        THE COURT:  No.  They'll decide what is

10:39:23   4   redundant in terms of the background, but I'm certainly

10:39:27   5   not going to say that in the first instance they can't

10:39:31   6   decide what background information they want to present.

10:39:36   7   I mean, it's in their expert report, so I'm going to let

10:39:40   8   them do it.

10:39:40   9        MR. NYDEGGER:  All right.  Your Honor, my only

10:39:41   10  concern is, and I mentioned this before, is that we believe

10:39:45   11  that there has to be some kind of a separation between the

10:39:47   12  background knowledge of a person of skill in the art and

10:39:51   13  reliance on a reference.  I mean, they should not be allowed

10:39:54   14  to say, for example, the Takeda reference, that Takeda

10:40:00   15  teaches element X, and so that's in the background knowledge

10:40:03   16  of a PHOSITA, and then argue that, oh, well, a PHOSITA knew

10:40:07   17  this, and so would have modified it to have it, because

10:40:11   18  that's the same thing as arguing that the combination of

10:40:15   19  Takeda.

10:40:16   20       THE COURT:  All right.  Well, I can't rule on

10:40:18   21  hypothetical situations.  I'm certainly going to --

10:40:25   22  normally, a way to do this, and I'm not telling the

10:40:30   23  defendant that's the way they have to do it -- normally, the

10:40:32   24  expert spends some time talking about the development in the

10:40:35   25  field so that the jury has kind of a perspective on this.

| 10:40:39 | 1 | They lead up to whatever their lead references are, which I |
| 10:40:45 | 2 | take it are the belt and McIntire, and then the expert does |
| 10:40:52 | 3 | motive to combine and reasonable expectation of success, and |
| 10:40:57 | 4 | voila, you have your case. |
| 10:40:58 | 5 | MR. NYDEGGER:  And if it's just used for |
| 10:41:00 | 6 | purposes of general background, then we have no objection, |
| 10:41:03 | 7 | but, once again, if they plan to argue that a PHOSITA, if |
| 10:41:10 | 8 | they're going to try and pull specific elements from the |
| 10:41:12 | 9 | general background, that's where we have an issue. |
| 10:41:13 | 10 | THE COURT:  Yes.  I mean, it seems like it's not |
| 10:41:18 | 11 | going to be very necessary because they are saying the |
| 10:41:20 | 12 | elements are elsewhere.  But some things you have to object |
| 10:41:24 | 13 | to at trial. |
| 10:41:25 | 14 | MR. NYDEGGER:  Okay.  Thank you, Your Honor. |
| 10:41:26 | 15 | THE COURT:  All right.  So the list of witnesses |
| 10:41:28 | 16 | to be called, this is page 21 and 22.  I counted ten people |
| 10:41:39 | 17 | on the live, the will call live witnesses.  Actually, I |
| 10:41:45 | 18 | guess it's may call even on that. |
| 10:41:47 | 19 | But so just to go over them, Oslan is the |
| 10:41:52 | 20 | plaintiff's technical expert.  Cragun is the plaintiff's |
| 10:41:56 | 21 | damages expert. |
| 10:41:58 | 22 | On the defense side, Williams is the technical |
| 10:42:01 | 23 | expert and Bero is the damages expert.  Right? |
| 10:42:06 | 24 | MR. REYNOLDS:  That's right. |
| 10:42:07 | 25 | THE COURT:  Okay.  So then we also have Terrence |

| | |
|---|---|
| 10:42:11 | 1 |
| 10:42:18 | 2 |
| 10:42:23 | 3 |
| 10:42:26 | 4 |
| 10:42:28 | 5 |
| 10:42:29 | 6 |
| 10:42:31 | 7 |
| 10:42:35 | 8 |
| 10:42:35 | 9 |
| 10:42:37 | 10 |
| 10:42:42 | 11 |
| 10:42:46 | 12 |
| 10:42:50 | 13 |
| 10:42:58 | 14 |
| 10:42:59 | 15 |
| 10:43:02 | 16 |
| 10:43:07 | 17 |
| 10:43:09 | 18 |
| 10:43:13 | 19 |
| 10:43:14 | 20 |
| 10:43:16 | 21 |
| 10:43:20 | 22 |
| 10:43:24 | 23 |
| 10:43:24 | 24 |
| 10:43:26 | 25 |

Murphy, Peter Halldorsson, Sveinbjorn Hoskuldsson and Austin
Noll.  I take it, I can't remember now.  Either Hoskuldsson
or Halldorsson, one of them is the co-inventor.  Right?

        MR. NYDEGGER:  Well, those are, those two
together are the co-inventors.

        THE COURT:  Oh, I thought you had earlier
represented that one of those two would not be appearing
live.

        MR. NYDEGGER:  Oh, I'm sorry, Your Honor.  We
have Hoskuldsson, Hermannsson and Halldorsson.  Halldorsson,
Peter Halldorsson, he is a company representative.
Sveinbjorn Hoskuldsson, he is a co-inventor.

        THE COURT:  Okay.  All right.  So who is Austin
Noll?

        MR. NYDEGGER:  Austin Noll was the 30(b)(6)
representative of Natus on discovery.

        THE COURT:  So I take it Austin Noll is not
actually going to be here live?  He's on videotape saying
whatever it is he says?

        MR. NYDEGGER:  At least, at least he'll be
presented by deposition.  If he's here, we will call him
live.  We can't force him to come here, but if he's here, we
will call him.

        THE COURT:  When is it that you expect to get
out of calling him live?

| | |
|---|---|
| 10:43:30 | 1 |
| 10:43:32 | 2 |
| 10:43:36 | 3 |
| 10:43:39 | 4 |
| 10:43:40 | 5 |
| 10:43:41 | 6 |
| 10:43:43 | 7 |
| 10:43:44 | 8 |
| 10:43:47 | 9 |
| 10:43:49 | 10 |
| 10:43:50 | 11 |
| 10:43:52 | 12 |
| 10:43:55 | 13 |
| 10:43:56 | 14 |
| 10:43:59 | 15 |
| 10:44:03 | 16 |
| 10:44:03 | 17 |
| 10:44:05 | 18 |
| 10:44:05 | 19 |
| 10:44:07 | 20 |
| 10:44:07 | 21 |
| 10:44:13 | 22 |
| 10:44:14 | 23 |
| 10:44:16 | 24 |
| 10:44:16 | 25 |

1       MR. NYDEGGER:  Well, more or less, the same
2  things that we got out of him when we deposed him, only we
3  think it's a little more engaging and dynamic for the jury
4  to pay attention and understand.
5       THE COURT:  Do you expect him to be here?
6       MR. REYNOLDS:  He won't be here, Your Honor.
7       THE COURT:  All right.  Well, there's a
8  representation, so you can make sure you have your videotape
9  lined up, and that's one less witness.
10       MR. NYDEGGER:  Thank you.
11       THE COURT:  So who is Terrence Murphy?
12       MR. NYDEGGER:  Terrence Murphy is a former
13  employee of Natus.
14       THE COURT:  Oh, he is the one with the willful
15  e-mail, knock off, that guy?
16       MR. NYDEGGER:  That's the guy.
17       THE COURT:  Okay.  And he's going to be here
18  live?
19       MR. NYDEGGER:  We understand that he is, Your
20  Honor.
21       THE COURT:  Okay.  Mr. Jacobi, you're standing
22  up for a reason?
23       MR. JACOBI:  I just like to stand up once in
24  awhile.
25       THE COURT:  That's all right.  If anybody has

| | |
|---|---|
| 10:44:18 | 1 |
| 10:44:21 | 2 |
| 10:44:23 | 3 |
| 10:44:25 | 4 |
| 10:44:30 | 5 |
| 10:44:35 | 6 |
| 10:44:37 | 7 |
| 10:44:40 | 8 |
| 10:44:44 | 9 |
| 10:44:49 | 10 |
| 10:44:53 | 11 |
| 10:44:54 | 12 |
| 10:45:00 | 13 |
| 10:45:04 | 14 |
| 10:45:06 | 15 |
| 10:45:09 | 16 |
| 10:45:13 | 17 |
| 10:45:15 | 18 |
| 10:45:17 | 19 |
| 10:45:20 | 20 |
| 10:45:25 | 21 |
| 10:45:28 | 22 |
| 10:45:32 | 23 |
| 10:45:34 | 24 |
| 10:45:36 | 25 |

back problems, feel free to stand up as needed.

MR. JACOBI:  I was just going to confirm to the
Court that Mr. Murphy will be here live.

THE COURT:  Okay.  All right.  All right.  And
then on the defendant's list, there's also Anthony Ferrelli.
Who is he?

MR. JACOBI:  Mr. Ferrelli is in charge -- he
actually replaced Terrence Murphy when Terrence Murphy
retired.  He was in charge of marketing from the time that
the belt was released and is a representative of Natus, so
he will be here live.

THE COURT:  Okay.  And he's going to testify
about the marketing of your product?

MR. JACOBI:  His testimony will bear on
marketing of the product insofar as that affects damages,
and also just to provide the jury a basic outline.

THE COURT:  All right.  Who is Sterling Filmore?

MR. JACOBI:  Mr. Filmore has not been deposed.
He's identified on our 26(a) one disclosures as a
representative of the law firm who was responsible for the
prosecution of the patent-in-suit, and his testimony bears
on the issues involved in inequitable conduct.

And we understand from defendant's counsel --
plaintiff's counsel that he is not available and will not be
attending, but --

| | |
|---|---|
| 10:45:39 | 1 |
| 10:45:40 | 2 |
| 10:45:45 | 3 |
| 10:45:47 | 4 |
| 10:45:48 | 5 |
| 10:45:49 | 6 |
| 10:45:53 | 7 |
| 10:45:59 | 8 |
| 10:46:01 | 9 |
| 10:46:02 | 10 |
| 10:46:04 | 11 |
| 10:46:07 | 12 |
| 10:46:09 | 13 |
| 10:46:12 | 14 |
| 10:46:15 | 15 |
| 10:46:21 | 16 |
| 10:46:24 | 17 |
| 10:46:28 | 18 |
| 10:46:33 | 19 |
| 10:46:36 | 20 |
| 10:46:39 | 21 |
| 10:46:42 | 22 |
| 10:46:45 | 23 |
| 10:46:47 | 24 |
| 10:46:50 | 25 |

THE COURT:  Okay.

MR. JACOBI:  He's listed at this point.

THE COURT:  All right.  I take it he's probably based in Utah?

MR. NYDEGGER:  Yes, Your Honor.

THE COURT:  All right.  Okay.  So, in any event, plaintiff has represented he's not going to be attending and certainly would be shocked if he decided to show up here on vacation.

All right.  So we're down to eight witnesses, max, or eight live witnesses.

MR. JACOBI:  Your Honor, could I just further elaborate on the identification of Mr. Filmore?

Mr. Filmore is not counsel of record for the prosecution.  The entire law firm is including Mr. Nydegger and several other people.  And to the extent that they have knowledge about some of the issues that have come up in the inequitable conduct claim, we believe it's germane to those issues and their testimony would be valuable to the Court in deciding that issue.

THE COURT:  Well, time to find out if Mr. Filmore, or to try to find out -- I guess I'm not sure. What is your point, Mr. Jacobi?

MR. JACOBI:  That the issues, the issues specifically here are in September or before the patent

| | |
|---|---|
| 10:46:52 | 1 |
| 10:46:56 | 2 |
| 10:46:58 | 3 |
| 10:47:01 | 4 |
| 10:47:04 | 5 |
| 10:47:09 | 6 |
| 10:47:10 | 7 |
| 10:47:13 | 8 |
| 10:47:16 | 9 |
| 10:47:18 | 10 |
| 10:47:20 | 11 |
| 10:47:23 | 12 |
| 10:47:25 | 13 |
| 10:47:28 | 14 |
| 10:47:29 | 15 |
| 10:47:29 | 16 |
| 10:47:33 | 17 |
| 10:47:35 | 18 |
| 10:47:36 | 19 |
| 10:47:45 | 20 |
| 10:47:52 | 21 |
| 10:47:55 | 22 |
| 10:47:58 | 23 |
| 10:48:03 | 24 |
| 10:48:05 | 25 |

issued, Workman Nydegger took over the prosecution of the
patent.  They never did anything to address --

          THE COURT:  No.  What is it you're telling me?
That I should be issuing a subpoena for Mr. Filmore to show
up and show whether he knows whether or not Utah is within a
hundred miles of Delaware or what?

          MR. JACOBI:  It doesn't need to be Mr. Filmore
because it isn't Mr. Filmore who is solely the attorney.
It's Workman Nydegger.

          This is all outside the jury's --

          THE COURT:  Yes.  So I am not going to let you
call the law firm representative on the other side if that's
what you are asking me to do.

          MR. JACOBI:  All right.  That's fine, Your
Honor.

          THE COURT:  All right.

          MR. LORIMER:  Well, I agree completely, so I
will sit down.

          THE COURT: All right.  All right.  Yes.  And
this is a minor thing.  The pretrial order says at page 26,
each trial day will begin at 9:00 a.m., which is correct for
the lawyers, but we don't actually get the jury started
until 9:30.  9:00 a.m. is for you to interact with me on
whatever your disputes are.

          On page 27, the order of presentation of

| | |
|---|---|
| 10:48:09 | 1 |

evidence, paragraph 5, closing arguments, Nox Medical first

followed by Natus followed by Nox Medical's rebuttal.

            Nox understands you're going to be making your,

not only your willfulness and damages, but your also

nonobvious arguments as part of your main closing argument?

            MR. NYDEGGER:  Yes, Your Honor.

            THE COURT:  Okay.  So the chances of you getting

any rebuttal are just about nil.

            MR. NYDEGGER:  Duly noted.  Thank you, Your

Honor.

            THE COURT:  Okay.  All right.  So page 28,

paragraph 122.  I dealt with the voir dire examination.

            Paragraph 128 on page 29, you say persons not

entitled to have access to confidential or confidential

attorneys' eyes only information shall be excluded from the

courtroom at the request of any parties subsequent to the

Court's approval during the presentation of any evidence

designated confidential, confidential attorneys' eyes only,

or any testimony reasonably anticipated with such

information.

            If you work out some agreement between

yourselves as to what you are doing, that's fine.  Don't

expect me to be excluding anybody from the courtroom.  Okay?

All right.

            So let's see.  I have something else tabbed

| | |
|---|---|
| 10:49:41 | 1 |

here.  What is this?  Okay.  So actually, that's all I've

got.  Let me check my other list here.

            So I take it that you're not anticipating any

witness scheduling problems?

            MR. NYDEGGER:  No, Your Honor.  We're not.

Actually, Your Honor, one real quick clarification.  The

exclusionary rule for the witnesses will still apply, we

assume?

            THE COURT:  Yes, yes.

            MR. NYDEGGER:  Okay.

            THE COURT:  Sorry.  Sequestration.  You each get

a representative.  The experts can sit in, but to the extent

you have fact witnesses, they are sequestered.

            MR. NYDEGGER:  All right.  Thank you, Your

Honor.

            THE COURT:  All right.  Thank you, Mr. Nydegger.

            All right.  And so I also saw defendants have

filed a motion to stay, which I take it is based on your

belief that the PTAB got their analysis wrong.  Unless both

sides agree to stay the case, I'm not going to stay the

case.

            MR. REYNOLDS:  Your Honor, to be completely fair

about it, you know, we wanted to put that in front of you

because it's not just that.  It also that we stopped making

the product.  We wanted to give the option.  We're somewhat

| | |
|---|---|
| 10:51:15 | 1 |
| 10:51:18 | 2 |
| 10:51:21 | 3 |
| 10:51:25 | 4 |
| 10:51:27 | 5 |
| 10:51:28 | 6 |
| 10:51:28 | 7 |
| 10:51:29 | 8 |
| 10:51:31 | 9 |
| 10:51:32 | 10 |
| 10:51:34 | 11 |
| 10:51:35 | 12 |
| 10:51:38 | 13 |
| 10:51:39 | 14 |
| 10:51:41 | 15 |
| 10:51:42 | 16 |
| 10:51:43 | 17 |
| 10:51:44 | 18 |
| 10:51:46 | 19 |
| 10:51:47 | 20 |
| 10:51:50 | 21 |
| 10:51:50 | 22 |
| 10:51:51 | 23 |
| 10:51:54 | 24 |
| 10:52:00 | 25 |

1  ambivalent.  We want to give the option to save the cost and

2  the jury and all of that now.  That's fine.  If you are

3  denying it, we can save them the response if they are not

4  going to join in the motion.

5          MR. NYDEGGER:  We do not join the motion, Your

6  Honor.

7          THE COURT:  All right.

8          MR. NYDEGGER:  So, Your Honor, do we not need to

9  worry about responding?

10          THE COURT:  Yes.  Yes.  I will just enter an

11  order denying it.

12          MR. NYDEGGER:  Thank you.

13          MR. REYNOLDS:  Your Honor, if you want, I could

14  put on the record that we withdraw the motion.

15          THE COURT:  Okay.

16          MR. REYNOLDS:  Sure.

17          THE COURT:  That is even better.

18          MR. REYNOLDS:  I mean, just to make it easy in

19  light of the Court's comments and what the point of that

20  motion was, we're happy to withdraw the motion on the

21  record.

22          THE COURT:  All right.  Okay.  The motion is

23  withdrawn.

24          All right.  Is there anything else?  That's --

25          MR. NYDEGGER:  Your Honor, nothing else from Nox

10:52:02   1    Medical.

10:52:02   2                    MR. REYNOLDS:  We have two little housekeeping

10:52:03   3    things.

10:52:04   4                    One is, do you have a page limit you want for

10:52:06   5    the briefing you requested by next Friday?

10:52:08   6                    THE COURT:  No.  I thought it was something that

10:52:11   7    would not require so many pages that you would outrage me by

10:52:14   8    submitting something that was too long.

10:52:16   9                    MR. REYNOLDS:  Right.  We think it's a page or

10:52:18   10   two.

10:52:19   11                   THE COURT:  Okay.  Well, you don't need to make

10:52:22   12   it five just to impress me.

10:52:25   13                   MR. REYNOLDS:  Okay.

10:52:27   14                   THE COURT:  But if that's it, I thought it was

10:52:29   15   not terribly long, so I was going to leave it to your own

10:52:33   16   good judgment.

10:52:34   17                   MR. REYNOLDS:  Okay.  Sure.

10:52:35   18                   And the second thing was, Alan, you had one

10:52:37   19   thing.

10:52:38   20                   MR. NICGORSKI:  Yes.  Just a clarification,

10:52:39   21   because there are some witnesses who may be -- for instance,

10:52:42   22   Mr. Murphy they have on their list.

10:52:44   23                   Does Your Honor have a preference in terms of,

10:52:48   24   you know, one time on, one time off?

10:52:50   25                   THE COURT:  I do, yes.  Thank you for bringing

| | |
|---|---|
| 10:52:52 | 1 |
| 10:52:57 | 2 |
| 10:52:59 | 3 |
| 10:53:05 | 4 |
| 10:53:08 | 5 |
| 10:53:09 | 6 |
| 10:53:10 | 7 |
| 10:53:21 | 8 |
| 10:53:23 | 9 |
| 10:53:26 | 10 |
| 10:53:27 | 11 |
| 10:53:30 | 12 |
| 10:53:34 | 13 |
| 10:53:34 | 14 |
| 10:53:36 | 15 |
| 10:53:48 | 16 |
| 10:53:50 | 17 |
| 10:53:53 | 18 |
| 10:53:56 | 19 |
| 10:53:57 | 20 |
| 10:53:59 | 21 |
| 10:54:03 | 22 |
| 10:54:06 | 23 |
| 10:54:09 | 24 |
| 10:54:11 | 25 |

that up.  Yes.  My preference is if at all possible, just put them on the stand once.  I understand for the technical experts, that's not possible.

        Is your technical expert going to testify in your case-in-chief?

        MR. NYDEGGER:  No, Your Honor.

        THE COURT:  Oh, all right.  Well, so you mentioned something about secondary consideration.  Are there any secondary considerations coming from anybody other than the technical expert?

        MR. NYDEGGER:  Yes, Your Honor.  Also our damages expert.  Secondary consideration of commercial success.

        THE COURT:  Okay.  Presumably, the damages person, I'm not going to make you put on the commercial -- wait.  I guess the burden is on you.

        Maybe it would make sense since commercial success is presumably tied up with the damages to do that all at once?

        MR. NYDEGGER:  We would be fine with that.  And just to clarify, Your Honor, when I responded to the question, I was thinking about people who will actually talk about, this is a secondary consideration type thing.  Of course, there are facts in the case about secondary considerations.

| | |
|---|---|
| 10:54:12 | 1 |
| 10:54:13 | 2 |
| 10:54:14 | 3 |
| 10:54:17 | 4 |
| 10:54:17 | 5 |
| 10:54:20 | 6 |
| 10:54:22 | 7 |
| 10:54:26 | 8 |
| 10:54:28 | 9 |
| 10:54:29 | 10 |
| 10:54:30 | 11 |
| 10:54:33 | 12 |
| 10:54:35 | 13 |
| 10:54:38 | 14 |
| 10:54:40 | 15 |
| 10:54:41 | 16 |
| 10:54:42 | 17 |
| 10:54:44 | 18 |
| 10:54:46 | 19 |
| 10:54:48 | 20 |
| 10:54:50 | 21 |
| 10:54:51 | 22 |
| 10:54:53 | 23 |
| 10:54:54 | 24 |
| 10:54:55 | 25 |

THE COURT:  Right.  Right.

MR. NYDEGGER:  Long-felt need, but those will come out from the fact witnesses when they're originally on.

THE COURT:  All right.  Okay.

MR. NICGORSKI:  My thought, it was more like a person like Mr. Murphy, you know, dealing with scope objections or just get them done.

THE COURT:  No.

MR. NICGORSKI:  Okay.

THE COURT:  As you go, do what you need to do.

MR. NICGORSKI:  Clock method.

THE COURT:  I'm sorry?

MR. NICGORSKI:  Sort of with the way time is kept, it probably makes sense.

THE COURT:  It probably does.

MR. NYDEGGER:  Your Honor, we would ask for one exception to that, and that's with regard to witnesses that may have evidence concerning the inequitable conduct.

THE COURT:  Right.  They're different.

MR. NYDEGGER:  They're different?

THE COURT:  Inequitable conduct is not going to occur in front of the jury.

MR. NYDEGGER:  Okay.  I just wanted to make sure that was clear.  Thank you.

10:54:56  1          THE COURT:  Okay.

10:54:57  2          MR. NYDEGGER:  Sorry.  I keep getting up when I

10:55:00  3  think I'm done.

10:55:01  4          On the briefing issue that Mr. Reynolds brought

10:55:05  5  up, that raises one briefing issue on our end.

10:55:07  6          The Court has asked the defendants to submit a

10:55:10  7  letter to the, Court and we would just ask that we have an

10:55:13  8  opportunity to respond if we feel one is necessary.  We

10:55:16  9  don't know whether one would be or not.

10:55:18  10         THE COURT:  That was on the disclosure.  Right?

10:55:21  11 That's what we're talking about?

10:55:22  12         MR. NYDEGGER:  Motivations to combine, yes.

10:55:24  13         THE COURT:  Sure.  When did I tell them?

10:55:27  14 Tuesday or Wednesday?

10:55:28  15         MR. NYDEGGER:  One of those.

10:55:35  16         MR. REYNOLDS:  The 18th, I believe.

10:55:36  17         THE COURT:  All right.  Yes, if you want to

10:55:37  18 respond, if there's something you need to respond two days

10:55:40  19 later, it's not as though I'm going to do something in the

10:55:44  20 interim.

10:55:44  21         MR. NYDEGGER:  Okay.  Thank you.

10:55:45  22         THE COURT:  All right.  So I will sign an order

10:55:46  23 adopting your proposed pretrial order, which basically is

10:55:51  24 modified by whatever we've discussed here today.

10:55:54  25         And I've got something else I've got to do at

| | |
|---|---|
| 10:55:57 | 1 |
| 10:56:04 | 2 |
| 10:56:05 | 3 |
| 10:56:09 | 4 |
| 10:56:18 | 5 |
| 10:56:20 | 6 |
| 10:56:25 | 7 |
| 10:56:26 | 8 |
| 10:56:39 | 9 |
| 10:56:42 | 10 |
| 10:56:42 | 11 |

1  soon, so unless there's anything else, I will see you down

2  the road.

3          And I would just ask the local counsel, Delaware

4  counsel, to monitor my criminal trial.  Okay?  If it starts

5  to be obvious that the criminal trial is not going to end

6  in time, you should be able to figure that out from

7  something.

8          Okay?  All right.  We'll be in recess.

9          (Counsel respond, "Thank you, Your Honor.")

10         (Hearing concluded at 11:58 a.m.)

11                     -  -  -