IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOX MEDICAL EHF,<br><br>Plaintiff,<br><br>v.<br><br>NATUS NEUROLOGY INC.,<br><br>Defendant. | Civil Action No. 1:15-cv-00709-RGA |

**MEMORANDUM ORDER**

Presently before me is Plaintiff's Motion for Reconsideration on Enhancement of Damages. (D.I. 332). The Parties have fully briefed the issues. (D.I. 333, 337, 343). Because I did not previously appreciate the differences between the related U.S. and European patents, I will **GRANT** Plaintiff's motion.

The Parties are familiar with the facts of this case. The subject of the present motion is whether I erred by inferring that Defendant had a good faith belief in the invalidity of U.S. Pat. No. 9,059,532 ("'532 Patent") based on Defendant's invalidity challenge to the '532 Patent's European counterpart. Because my inference was erroneous, I must also consider what impact, if any, that error has on my decision not to enhance damages.

I. LEGAL STANDARD

  A. *Reargument*

The purpose of a motion for reargument or reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "[M]otions for reconsideration 'should not

be used to rehash arguments already briefed.'" *BP Amoco Chem. Co. v. Sun Oil Co.*, 200 F. Supp. 2d 429, 432 (D. Del. 2002) (quoting *Schering Corp. v. Amgen, Inc.*, 25 F.Supp.2d 293, 295 (D. Del. 1998)). To succeed on a motion for reconsideration, a party must demonstrate one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café*, 176 F.3d at 677.

## B. Enhanced Damages

The Patent Act gives the Court discretion to "increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. The Court's discretion "should be exercised in light of the considerations underlying the grant of that discretion." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1926 (2016). Enhanced damages are "designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior," which is "willful, wanton, malicious, bad-faith, deliberate, consciously wrong, flagrant, or—indeed—characteristic of a pirate." *Id.* at 1932. Enhanced damages are "not to be meted out in a typical infringement case." *Id.* A jury's finding of willful infringement is a prerequisite to enhancement of damages but is not by itself sufficient. *Id.*

Where an infringer's behavior is willful, the Court may evaluate a set of "non-exclusive" factors set forth in *Read Corp. v. Portec, Inc.*, to determine if damages should be enhanced and the extent to which they should be enhanced. 970 F.2d 816, 826-27 (Fed. Cir. 1992); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1382-83 (Fed. Cir. 2017). The *Read* factors include:

> (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4)

2

defendant's size and financial condition; (5) closeness of the case; (6) duration of defendant's misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm; and (9) whether defendant attempted to conceal its misconduct.

*Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1348 (Fed. Cir. 2011) (citing *Read Corp.*, 970 F.2d at 826-27).

A movant must establish its entitlement to enhanced damages under Section 284 by a preponderance of the evidence. *Halo*, 136 S. Ct. at 1934.

## II. DISCUSSION

### A. Significance of Defendant's Challenge to the European Counterpart of the '532 Patent

In my Memorandum Opinion, which addressed the Parties' post-trial motions, I considered the *Read* factors to determine whether Plaintiff is entitled to enhanced damages. (D.I. 329 at 7-13). Plaintiff has identified an issue with my analysis of the second *Read* factor which considers Defendant's good faith belief in invalidity. 970 F.2d at 827. When deciding whether Defendant had a good faith belief that the '532 Patent was invalid I noted (1) Defendant's failure to present evidence of a good faith belief of invalidity during the jury trial, and (2) Defendant's introduction of evidence during the inequitable conduct trial of its pre-issuance challenge to the European counterpart to the '532 Patent. (D.I. 329 at 8). I concluded, "[E]ven though Defendant knew that it was copying the commercial embodiment of the '532 patent almost immediately upon the patent's issuance, it can be inferred [from its European invalidity challenge] that Defendant did so with a good-faith belief that the patent was invalid." (*Id.*).

Plaintiff argues that, considering the differences between the European patent and the '532 Patent, my inference was inappropriate. It notes claim elements which are unique to the '532 Patent and were significant at trial: "(i) a conductor 'passing through the receiving hole,' (ii) a conductor 'wrapped around the engaging member,' [and] (iii) that the conductor be a

3

conductor 'of the electrode belt' . . . ." (D.I. 333 at 4 (quoting '532 Patent, claim 1)). Plaintiff concludes, "It is impossible to have a good faith belief of invalidity of the '532 patent without addressing these claim limitations, which are not in the European counterpart." (*Id.*). After additional review of the record, I agree. I did not previously appreciate the differences between the U.S. and European patents. *Compare* '532 Patent, claim 1, *with* European Pat. No. 2,584,962, claim 1. Thus, I must admit that Plaintiff is correct. I overstated the significance of Defendant's challenge to the European counterpart to the '532 Patent. A good faith belief that a broader patent is invalid does not, by itself, establish a good faith belief that a narrower patent on the same matter is invalid. Perhaps it supports the conclusion that Defendant was not acting in bad faith. It does not, however, establish that Defendant had a good faith belief of invalidity based on its evaluation of the claims of the '532 Patent.

*B. Modified Analysis of the* Read *Factors*

I addressed each of the nine *Read* factors in my Memorandum Opinion. (D.I. 329 at 7-13). I summarize and clarify my reasoning on each of those factors below. On balance, despite changing my view on the second *Read* factor, I do not find that Defendant's behavior was "willful, wanton, malicious, bad-faith, deliberate, consciously wrong, flagrant, or—indeed—characteristic of a pirate." *Halo Elecs.*, 136 S. Ct. at 1932. Thus, I do not believe enhanced damages are appropriate. I will again deny Plaintiff's Post-Trial Motion, as to Enhanced Damages. (D.I. 288).

I previously found that the first *Read* factor, whether Defendant deliberately copied Plaintiff's design, supports enhancement of damages. (D.I. 329 at 7). The evidence shows that Defendant sent Plaintiff's commercial product to Defendant's Chinese manufacturer and told the manufacturer to copy it, calling it the "Nox knock off." (*Id.*). However, I found that the weight

4

of Defendant's copying in the overall analysis was reduced because the actions pre-dated the issuance of Plaintiff's patent. (*Id.*).

As I address above, I previously found that the second factor, whether Defendant had a good faith belief in the invalidity of the '532 Patent, does not support enhancement of damages. (*Id.* at 8). Specifically, I found that Defendant's pre-suit challenge to the European counterpart supported an inference of Defendant's good faith. (*Id.*). That inference was faulty. However, I take note of Defendant's consistent course of action regarding the invalidity of patents on Plaintiff's invention. Defendant challenged the broader claims in Europe, contested the claims through trial here, and instituted *inter partes* review challenging the claims at the Patent Office. These actions are circumstantial evidence that Defendant held a good faith belief that the '532 Patent was invalid. This evidence does not support a conclusive finding that Defendant was acting in good faith, but it does make it a close question. Accordingly, I find that the second *Read* factor weighs against enhancing damages, albeit weakly.

In the Memorandum Opinion, I found that the third *Read* factor, Defendant's behavior during the litigation, did not support enhancing damages. (*Id.*). I rejected Plaintiff's position, stating, "Plaintiff's argument is ultimately devoid of any persuasive evidence that Defendant engaged in bad faith behaviors over the course of the litigation." (*Id.* at 9-10). My view of this factor remains unchanged.[1]

I also found that the fourth factor, Defendant's size and financial condition, is neutral. (*Id.* at 10). I noted, "Plaintiff offers no information about Defendant's size or financial condition." (*Id.*). Thus, Plaintiff did not establish that this factor supports enhancing damages.

---

[1] Although I maintain that this factor is on balance a wash, I note that the neutrality of any given factor generally favors a finding for Defendant. That is, when a factor is neutral it indicates that the case looks like most other infringement cases in that respect. The fewer facts, and factors, favoring Plaintiff's position, the less likely the case is to stand out as egregious.

5

I found that the fifth factor, closeness of the case, weighs against enhancement of damages. (*Id.*). I based this determination on the strength of Defendant's invalidity defense. (*Id.*). I found, "No claim element among the asserted claims of the '532 patent stands out as being nakedly absent from the prior art." (*Id.* at 11). Plaintiff takes issue with this finding. (*See* D.I. 333 at 7 n.4). It argues that I considered only whether all elements were present in the prior art and failed to acknowledge the requirement that there be a reason to combine. (*Id.*). It also notes that Defendant's defenses were developed, "long after it knew about the '532 Patent and long after it had decided to infringe it." (*Id.* at 7).

Plaintiff's arguments on this point do not persuade me that this was not a close case on the invalidity question. Defendant presented prior art references containing every element of the asserted claims. (D.I. 329 at 11). In the obviousness analysis, finding prior art that maps onto each of the claim elements is a major part of the inquiry. Having accomplished this, Defendant was inarguably close to making a successful obviousness argument. Defendant's failure to win on the issue does not negate that fact. Moreover, the fifth *Read* factor deals with the closeness of the case, not how close the Defendant felt the case was at the time of first infringement. Thus, I maintain that the fifth factor weighs against enhancement of damages.

I found that the sixth *Read* factor, duration of Defendant's misconduct, supports enhancement of damages. (*Id.* at 11). Plaintiff willfully infringed the '532 Patent for three years, starting on the date of its issuance. (*Id.* at 11-12). Three years is an objectively lengthy time to knowingly infringe a valid patent.

I found that the seventh *Read* factor, Defendant's remedial action, weakly supports enhancement of damages. (*Id.* at 12). In reaching that conclusion, I balanced Defendant's

6

voluntary replacement of the infringing belt in January 2018 against the ease of avoiding significant infringement by moving the product out of the country. (*Id.*).

I found that the eighth factor, Defendant's motivation for harm, does not support enhancement. (*Id.*). Plaintiff did not present persuasive evidence that Defendant acted with a motivation to cause harm other than the harm incidental to direct business competition.

I found that the ninth factor, Defendant's attempts to conceal misconduct, does not support enhancement. (*Id.* at 13). Plaintiff did not present evidence that Defendant attempted to hide its product or sales.

Weighing the *Read* factors and considering the totality of the circumstances, I again find that enhancement of damages is not warranted. The evidence establishes that Defendant deliberately copied Plaintiff's product, willfully sold its infringing product for three years, and failed to take an apparently easy remedial action. However, Defendant's deliberate copying occurred before the '532 Patent issued and Defendant did, eventually, voluntarily end its infringing activity. Overall, the three facts supporting enhancement are weak. Thus, even absent any offsetting factors, I do not find that Defendant's behavior rose to the level of "willful, wanton, malicious, bad faith, deliberate, consciously wrong, flagrant," or pirate-like. With counterbalancing factors such as Defendant's likely good faith belief of invalidity and the strength of Defendant's case, I am convinced that enhancement is inappropriate in this case. Accordingly, I decline to enhance the damages awarded by the jury. I will again deny Plaintiff's Post-Trial Motion, as to Enhanced Damages. (D.I. 288).

## III. CONCLUSION

Plaintiff identified a clear error of fact which required me to reconsider a portion of the Memorandum Order. (D.I. 329). However, after reconsidering the *Read* factors, I still believe enhanced damages are inappropriate in this case. Plaintiff's Motion for Reconsideration on

7

Enhancement of Damages (D.I. 332) is **GRANTED**. Plaintiff's Post-Trial Motion, as to Enhanced Damages (D.I. 288), remains **DENIED**.

IT IS SO ORDERED this __7__ day of December 2018.

*[signature]*
United States District Judge